George R. Hirsch (GH 8284)
BRESSLER, AMERY & ROSS
A Professional Corporation
P.O. Box 1980
Morristown, New Jersey 07962
325 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 514-1200
Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC., <br><br> Plaintiff, <br><br> vs. <br><br> ARTHUR KUPPERMAN, E. ROSS BROWNE, PAULETTE KRELMAN and PGB INTERNATIONAL, LLC, <br><br> Defendants. | 06 Civ. <br><br> **VERIFIED COMPLAINT** |

Plaintiff Merrill Lynch Business Financial Services Inc. ("MLBFS"), having a principal address at 222 North LaSalle Street, 17th Floor, Chicago, IL 60601, for its Verified Complaint against the Defendants, state:

### Jurisdiction And Venue

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

2.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because the Defendants reside in, many of the actions at issue took place in, and subject property is located in this District.

## The Parties

3. Plaintiff MLBFS is a Delaware corporation with its principal place of business in Chicago, Illinois. MLBFS is in the business, *inter alia,* of providing commercial loans to small and middle market companies.

4. Upon information and belief, non-party PITTRA G.B. International, Inc. ("PITTRA") is a New Jersey corporation having a place of business at 123 Madison Avenue, Madison, New Jersey, and/or 6 South Street, Morristown, New Jersey, and/or 25 Commerce Drive, Morristown, New Jersey.

5. PITTRA is not named as Defendant in this action because it is a debtor in a case pending in this District under Chapter 7 of the United States Bankruptcy Code encaptioned <u>In re: PITTRA G.B. International, Inc.</u>, Case No: 06-10889 (MS), and the automatic stay of 11 U.S.C. §362 applies. Plaintiff reserves the right to name PITTRA as a Defendant, if appropriate, at a subsequent time.

6. Upon information and belief, Defendant Arthur Kupperman is a citizen of the State of New Jersey, resides at 43 Hampshire Drive, Mendham, New Jersey, is the President and a director and shareholder of PITTRA, and is a member and the Manager of Defendant PGB International, LLC.

7. Upon information and belief, Defendant Paulette Krelman is a citizen of the State of New Jersey, resides at 43 Hampshire Drive, Mendham, New Jersey, and is the Secretary and Treasurer, a director and shareholder of PITTRA, and a member of Defendant PGB International, LLC.

8. Upon information and belief, Defendant E. Ross Browne is a citizen of the State of New Jersey, resides at 27 Waterford Drive, Montville, New Jersey, and is the

Vice President, a director and shareholder of PITTRA, and a member of Defendant PGB International, LLC.

9. Defendant PGB International, LLC ("PGB") is a New Jersey limited liability company with its principal place of business at 123 Madison Avenue, Madison, New Jersey, 07940, and/or 6 South Street, Morristown, New Jersey, and/or 25 Commerce Drive, Morristown, New Jersey. Upon information and belief, the members of PGB are Defendants Kupperman, Krelman, and Browne.

10. Upon information and belief, PITTRA was, and PGB is, engaged in the business of importing, exporting, and trading in food ingredients (primarily fruit juice, oils, essences, and related products). As such PGB regularly engages in transfers of funds and other assets out of the United States of America, and its officers travel frequently.

**MLBFS' Loans To PITTRA**

11. In or about November of 2002, MLBFS extended financial accommodations to PITTRA in the form of a line of credit pursuant to a WCMA Loan and Security Agreement (the "WCMA") and related loan documents. A copy of the WCMA is annexed hereto as **Exhibit "A."**

12. The WCMA bears the signatures of each of Defendants Kupperman, Krelman, and Browne as officers of PITTRA.

13. MLBFS duly filed Uniform Commercial Code Financing Statements with regard to its extension of credit to PITTRA, thereby perfecting a first position security interest in:

> All Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts,

3

Documents, Instruments, Investment Property and Financial Assets of Debtor, howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with all parts thereof (including spare parts), all accessories and accessions thereto, all books and records (including computer records) directly related thereto, all proceeds thereof (including, without limitation, proceeds in the form of Accounts and insurance proceeds).

14.    In connection with, and as an inducement to MLBFS in its extension of credit to PITTRA, Defendants Krelman and Browne executed and delivered to MLBFS Unconditional Guaranties of all sums at any time due from PITTRA to MLBFS. Copies of the 2002 Krelman and Browne Unconditional Guaranties are collectively annexed hereto as **Exhibit "B."**

15.    To induce MLBFS to grant the loan and to rely upon their guaranties in connection therewith, Defendants Krelman and Browne provided personal financial statements to MLBFS.

16.    In or about January 2003, Defendants Kupperman, Krelman, and Browne, on behalf of PITTRA, applied for and received a renewal and increase of the November 2002 WCMA to $2,750,000.00 pursuant to a letter dated January 15, 2003 (the "January 2003 WCMA Increase"), a copy of which is annexed hereto as **Exhibit "C."**

17.    The January 2003 WCMA Increase was signed as "accepted" by Defendant Kupperman on behalf of PITTRA and as "approved" by Defendants Krelman and Browne, individually.

18.    To induce the January 2003 WCMA Increase, the Defendants provided to MLBFS, among other things, an "audited" financial statement for PITTRA dated December 12, 2002 for the fiscal year ended September 30, 2002 on the letterhead of

4

Amper, Politzner & Mattia, P.A., Certified Accountants (the "Amper Firm") as well as an internal statement for the three months ended December 31, 2002.

19.     Again, in or about January 2004, Defendants applied for and received a renewal and increase of the November 2002 WCMA to $3,250,000.00 (the "January 2004 WCMA Increase").  A copy of the January 2004 WCMA Increase is annexed hereto as **Exhibit "D."**

20.     To induce the January 2004 WCMA Increase, Defendants provided to MLBFS, among other things, a "draft" September 30, 2003 "audited" financial statement and "audit" letter, purportedly prepared by the Amper Firm (Defendants subsequently provided the statement in "final"), and an "opinion" letter dated January 16, 2004 reporting on the status of various litigations, purportedly prepared by the law firm of Becker Meisel, LLC ("Becker Meisel").  A copy of the January 16, 2004 Becker Meisel opinion letter is annexed hereto as **Exhibit "E."**   Defendants also provided new personal financial statements for Defendants Krelman and Browne (**Exhibit "F"** hereto).

21.     The January 2004 WCMA Increase was signed as "accepted" by Defendant Kupperman on behalf of PITTRA and as "approved" by Defendants Krelman and Browne individually.

22.     In or about May of 2004, Defendants requested and received a further increase and extension of the credit extended to PITTRA.  In connection with that request, they provided to MLBFS, among other things, the following: (i) a PITTRA internal financial statement as of March 31, 2004 (**Exhibit "G"** hereto); (ii) an updated status letter dated May 28, 2004, purportedly from Becker Meisel (**Exhibit "H"** hereto); (iii) a Secretary's Certificate executed by each of Defendants Kupperman, Krelman, and

Browne (**Exhibit "I"** hereto); and (iv) new Unconditional Guaranties by Krelman and Browne and an Unconditional Guaranty by Kupperman (collectively **Exhibit "J"** hereto).

23.     The May 2004 renewal increased the credit extended to PITTRA to a total of $4,250,000.00 of which $3,750,000.00 was treated as a WCMA renewal and extension (**Exhibit "K"** hereto), and $500,000.00 was treated as a term loan which was documented by a Collateral Installment Note and a Term Loan And Security Agreement (together **Exhibit "L"** hereto).

24.     The May 2004 WCMA renewal and extension was signed as "accepted" by Defendant Kupperman on behalf of PITTRA and as "approved" by Defendants Kupperman, Krelman and Browne.

25.     In or about July of 2005, Defendants requested and received a renewal of the PITTRA financing, documented by, *inter alia,* a July 7, 2005 Amendment (**Exhibit "M"** hereto).

26.     To induce the July 2005 financing renewal, Defendants provided to MLBFS, among other things, a formal audit as of September 30, 2004 purportedly by the Amper Firm (**Exhibit "N"**); receivables agings and internal financial statements as of December 31, 2004 and March 31, 2005 (together **Exhibit "O"**); and new personal financial statements for each of Defendants Kupperman, Krelman, and Browne (**Exhibit "P"**) hereto.

27.     The July 7, 2005 Amendment was signed as "accepted" by Defendant Kupperman on behalf of PITTRA and as "approved" by Defendants Kupperman, Krelman, and Browne.

28.     In or about July 2006, Defendants requested another renewal and increase of the financing.

29.     In connection with the July 2006 request, Defendants provided to MLBFS, among other things, a formal audit of PITTRA for the fiscal year ended September 30, 2005 (**Exhibit "Q"** hereto) purportedly prepared by the Amper Firm, together with various receivables agings, and internal statements.

30.     In addition to the financial information specifically referenced above, Defendants provided to MLBFS on a regular basis through July of 2006, periodic PITTRA receivables agings, financial statements, and borrowing base certificates.

31.     In connection with its review of Defendants' July 2006 renewal and increase request, MLBFS learned for the first time that: (i) Defendants had caused PITTRA to file a "no-asset" Chapter 7 Bankruptcy Petition on February 9, 2006; (ii) the letters provided by Defendants purportedly from Becker Meisel were forgeries; (iii) upon information and belief, the PITTRA audits purportedly prepared by the Amper Firm were forgeries; (iv) the financial information and representations to MLBFS regarding PITTRA and its receivables were false, fictitious, and fraudulent; and (v) PITTRA had ceased doing business as "PITTRA" in or about September 2003 and was now doing business as PGB.

32.     As of September 15, 2006, PITTRA and Defendants Kupperman, Krelman and Browne owed MLBFS a total of $3,980,400.59 on the WCMA and $158,746.19 on the term loan.  As indicated in the loan documents and UCC Financing Statements, the indebtedness is secured by a blanket lien on PITTRA's assets.

### The Fraud

33.     As part of its review of Defendants' July 2006 renewal and increase request, MLBFS conducted a LEXIS/NEXIS search regarding PITTRA on or about July 27, 2006 and discovered the PITTRA bankruptcy filing.  MLBFS had not received notification from the Bankruptcy Court because the petition did not list MLBFS as a creditor, did not include MLBFS in the creditor matrix, and fraudulently stated that the debt owed by MLBFS had been paid in full.

34.     Upon learning of the bankruptcy filing, MLBFS confronted Mr. Kupperman. He represented to MLBFS that PITTRA was still operating and that the filing had been a mistake which was being corrected.  Throughout the month of August, Mr. Kupperman continued to advise that the filing was being corrected, and he assured MLBFS that the indebtedness would be paid off shortly.

35.     Under date of September 7, 2006, Mr. Kupperman provided to MLBFS a letter and payoff statement from "Escrow And Closing Services, Ltd." and an attached schedule of use of proceeds.  The letter and payoff statement represented that $10,000,000.00 was being held at Wachovia Bank and said that "disbursements" would be made on September 11, 2006.

36.     MLBFS did not receive payment.

37.     On or about September 15, 2006, MLBFS received a subpoena from PITTRA's bankruptcy trustee, which MLBFS immediately complied with.  On September 20, 2006, based in part upon information provided by MLBFS, PITTRA's bankruptcy trustee instituted an adversary proceeding against Arthur Kupperman, Paulette Krelman, E. Ross Browne, Sr. and others in the United States Bankruptcy Court for the

District of New Jersey encaptioned <u>Benjamin A. Stanziale, Jr., Chapter 7 Trustee v.</u> <u>Arthur Kupperman, et al.</u>, Adv. Pro. No. 06-02702 (MS).  (the "Adversary Proceeding")  A copy of the Trustee's Verified Complaint in the Adversary Proceeding is annexed hereto as **Exhibit "R."**

38.     In the Adversary Proceeding, the Trustee alleges that Arthur Kupperman, Paulette Krelman, E. Ross Browne, Sr. formed PGB and transferred PITTRA's assets and business opportunities to it for little or no consideration in an effort to defraud PITTRA's creditors, including MLBFS.

39.     The Defendants did not disclose to MLBFS the transfer of PITTRA's assets and business opportunities to PGB.  Indeed, by letter dated March 8, 2004, Mr. Kupperman affirmatively represented to MLBFS in a letter that "we never actually transferred anything from one company to another."  (**Exhibit "S"**).  Furthermore, Defendants continued to provide MLBFS with agreements, agings, financial statements, and other documents, all in the name of PITTRA.

40.     MLBFS has learned that PITTRA did not have $10,000,000 in an account at Wachovia as represented and that no such account exists.

41.     MLBFS also has learned that the December 16, 2005 "audit" letter from the Amper Firm was a forgery as was the prior "audit" letter dated.

42.     MLBFS also has learned that both "opinion" letters purportedly from the law firm of Becker Meisel discussing various litigation in which PITTRA was involved, were forgeries.  Annexed hereto as **Exhibit "T"** is the Certification of Ben Becker, Esq., a founding member of Becker Meisel, confirming that the opinion letters were not issued by his firm.

43.     MLBFS has also learned that on June 22, 2005, in a deposition in an action brought by a PITTRA creditor, <u>Empresas Lourdes, S.A. v. PITTRA GB International, Inc. and PGB International LLC</u>, 05 Civ. 1409 (HAA), Mr. Kupperman testified under oath that PITTRA ceased doing business as of "[a]pproximately August, September of 2003" and does not conduct any business.  Copies of relevant pages of the June 22, 2005 deposition are annexed hereto as **Exhibit "U."**

44.     During a September 26, 2006 deposition conducted in Adversary Proceeding No: 06-02702 (MS), Defendant Arthur Kupperman invoked the Fifth Amendment and refused to answer any questions other than his name and address, including any questions relating to the debt owed to MLBFS.

45.     Thus, Defendants have been defrauding MLBFS since at least in or about September of 2003.  They have done so with the intent of misleading MLBFS to grant, continue, and increase its financial accommodations to PITTRA and the Guarantors.

46.     Defendants' fraudulent actions and representations have included the following, among others:

A.     Transferring the assets of PITTRA to PGB in or about September 2003, without notice to MLBFS, thus removing and concealing collateral of MLBFS;

B.     Continuing on regular basis to submit to MLBFS receivables agings, borrowing base certificates, and financial statements for PITTRA after PITTRA had stopped doing business;

C.    In connection with the January 2004 WCMA renewal and increase:

(i)    submitting fraudulent "draft" financial statements purportedly prepared by the Amper Firm;

(ii)   submitting a fraudulent January 16, 2004 opinion letter purportedly prepared by Becker Meisel; and

(iii)  executing as "approved" and "accepted" and submitting the WCMA increase agreement which included representations that:

> Customer and said Guarantors acknowledge, warrant and agree, as a primary inducement to MLBFS to enter into this Agreement, that: (a) no Default or Event of Default has occurred and is continuing under the Loan Documents; (b) each of the warranties of Customer in the Loan Documents are true and correct as of the date hereof and shall be deemed remade as of the date hereof; (c) neither Customer nor any of said Guarantors have any claim against MLBFS or any of its affiliates arising out of or in connection with the Loan Documents or any other matter whatsoever; and (d) neither Customer nor any of said Guarantors have any defense to payment of any amounts owing, or any right of counterclaim for any reason under, the Loan Documents.

D.    In connection with the May 2004 Renewal and Increase:

11

(i)   submitting forged "audited" financial statements;

(ii)  submitting a false PITTRA March 31, 2004 internal financial statement;

(iii) submitting a forged May 28, 2004 Becker Meisel status letter;

(iv)  submitting the Secretary's Certificate suggesting continued operation;

(v)   executing as "approved" and "accepted" and submitting the WCMA increase agreement which included representations that:

> Customer and said Guarantors acknowledge, warrant and agree, as a primary inducement to MLBFS to enter into this Agreement, that: (a) no Default or Event of Default has occurred and is continuing under the Loan Documents; (b) each of the warranties of Customer in the Loan Documents are true and correct as of the date hereof and shall be deemed remade as of the date hereof; (c) neither Customer nor any of said Guarantors have any claim against MLBFS or any of its affiliates arising out of or in connection with the Loan Documents or any other matter whatsoever; and (d) neither Customer nor any of said Guarantors have any defense to payment of any amounts owing, or any right of counterclaim for any reason under, the Loan Documents;

(vi)  and warranting in the Term Loan And Security Agreement that PITTRA has good and marketable title to the collateral, etc.

12

    E.    In connection with the July 2005 renewal:

        (i)    submitting forged "audited" financial statements;

        (ii)    submitting a false PITTRA March 31, 2005 internal financial statement;

        (iii)    submitting false receivables agings;

        (iv)    executing as "approved" and "accepted" and submitting the July 7, 2005 renewal letter which included representations that:

> Customer and said Guarantors acknowledge, warrant and agree, as a primary inducement to MLBFS to enter into this Agreement, that: (a) no Default or Event of Default has occurred and is continuing under the Loan Documents; (b) each of the warranties of Customer in the Loan Documents are true and correct as of the date hereof and shall be deemed remade as of the date hereof; (c) neither Customer nor any of said Guarantors have any claim against MLBFS or any of its affiliates arising out of or in connection with the Loan Documents or any other matter whatsoever; and (d) neither Customer nor any of said Guarantors have any defense to payment of any amounts owing, or any right of counterclaim for any reason under, the Loan Documents;

47.    MLBFS reasonably relied upon Defendant's representations.

48.    MLBFS has been damaged.

## FIRST COUNT

### (Attachment Against Kupperman, Krelman And Browne)

49.    MLBFS repeats the foregoing averments.

50. By reason of the foregoing, Defendants Arthur Kupperman, Paulette Krelman, and E. Ross Browne have fraudulently contracted their indebtedness to MLBFS within the meaning of N.J.S.A. §2A:15-42(d).

51. There is a probability that final judgment will be rendered in favor of MLBFS.

52. Defendants each have real and/or personal property within specific locations in the State of New Jersey that are subject to attachment. Such property includes those assets which Defendants identified in personal financial statements provided to MLBFS and include:

    A.    Defendant E. Ross Browne's interests in the following:

        i.    Real property located at 27 Waterford Drive, Montville, New Jersey;

        ii.    Real property located at 123 Madison Avenue, Madison, New Jersey;

        iii.    Real property located at 107 East Shore Drive, Vernon, New York;

        iv.    Cash balances on any and all life insurance policies issued by Phoenix Insurance;

        v.    Bank accounts maintained at PNC Bank;

        vi.    Rental income from 123 Madison Avenue, Madison, New Jersey;

        vii.    Stock in PITTRA; and

        viii.    LLC interest in PGB.

14

    B.    Defendant Paulette Krelman's interests in the following:

        i.    Real property located at 43 Hampshire Drive, Mendham, New Jersey;

        ii.    Accounts at Wachovia Bank;

        iii.    Accounts at Smith Barney;

        iv.    Accounts at Commerce Bank;

        v.    Accounts at Dean Witter;

        vi.    Stock in PITTRA; and

        vii.    LLC interest in PGB.

    C.    Defendant Arthur Kupperman's interests in the following:

        i.    43 Hampshire Drive, Mendham, New Jersey;

        ii.    Accounts at JP Morgan; Chase Bank;

        iii.    Stock in PITTRA; and

        iv.    LLC interest in PGB.

53.    By reason of the foregoing, writs of attachment should issue attaching for the benefit of MLBFS against all assets of each Defendant, including, but not limited to, the assets referred to in the foregoing paragraphs and any other real or personal property in which any of them has an interest.

### SECOND COUNT

### (Fraud Against All Defendants)

54.    MLBFS repeats the foregoing averments.

55.    As detailed in paragraphs 32 through 52 above, Defendants knowingly made false representations to MLBFS.

56.     Defendants did so with the intent that MLBFS rely upon same in granting, continuing, and/or extending financial accommodations to PITTRA and the Guaranties.

57.     MLBFS reasonably relied upon Defendants' statements.

58.     As a result of the foregoing, Defendants have defrauded MLBFS and MLBFS has been damaged.

## THIRD COUNT

### (Restraint On Transfer Of Assets Against All Defendants)

59.     MLBFS repeats the foregoing averments.

60.     Defendants have engaged in fraudulent and deceptive conduct and have caused assets to be transferred and concealed in defraud of creditors, including MLBFS.

61.     Unless Defendants are restrained and enjoined from transferring, hypothecating or otherwise impairing their assets, MLBFS may recover a judgment but have no adequate remedy at law and otherwise be irreparably harmed.

62.     The harm to MLBFS if Defendants are not restrained and enjoined outweighs the harm to Defendants if such relief is granted.

63.     With regard to PGB, this relief is particularly appropriate given the role which international transactions play in its business.

64.     The restraints requested are favored by public policy as they will prevent future fraudulent conduct.

## FOURTH COUNT

### (Breach of Contract Against Defendants Kupperman, Krelman and Browne)

65.     MLBFS repeats the foregoing averments.

16

66.     Defendants Arthur Kupperman, Paulette Krelman, and E. Ross Browne are in default of their contractual obligations to MLBFS under their Unconditional Guaranties and otherwise, and all amounts due under the various loan documents are now immediately due and payable.

## FIFTH COUNT

### (Alter Ego Against PGB)

67.     MLBFS repeats the foregoing averments.

68.     Defendant PGB was created and/or used by Defendants Arthur Kupperman, Paulette Krelman, E. Ross Browne for the purpose of transferring the assets, business opportunities, and revenues of PITTRA and placing such assets and revenues beyond the reach of PITTRA's creditors, including MLBFS.

69.     Defendants Arthur Kupperman, Paulette Krelman, E. Ross Browne maintain ownership interests in PGB and consummated the transfer of the assets of PITTRA and have conducted and are conducting affairs of PITTRA and the affairs of PITTRA utilizing Defendant PGB as a vehicle of fraud.

70.     Defendant PGB has no significant good faith separate and independent purpose except as a vehicle by which Defendants Arthur Kupperman, Paulette Krelman, and E. Ross Browne have diverted the assets and opportunities of PITTRA and perpetrated their fraud.

71.     During the period from approximately mid-2004 through mid-2006, Defendants made deposits on a regular basis into the PITTRA loan account via wire transfers originating from PGB.

72. During approximately the same period, Defendants drew checks from the PITTRA loan account payable to PGB in an amount totaling in excess of $650,000.00

73. As noted in paragraph 43 above, Mr. Kupperman has testified under oath that PITTRA ceased doing business as of August or September of 2003. Accordingly, upon information and belief, all checks drawn on, and all transfers out of, the PITTRA loan account at MLBFS were to or for the benefit of PGB. MLBFS' review and investigation of the transactions relating to the PITTRA loan account is ongoing.

74. In addition, Defendants have set up the PITTRA web address "www.pittra.com" to show PGB not PITTRA content. The site lists Defendants Kupperman, Krelman, and Browne as the main contacts for PGB. The website claims that "PGB International LLC was founded in the 1980's…" In fact, PGB was not formed until April 30, 2003.

75. Defendants continue to use the PITTRA name to divert business to PGB.

76. Accordingly, PGB should be deemed the alter ego of PITTRA and all relief otherwise available against PITTRA should also be available against PGB as the alter ego of PITTRA.

## SIXTH COUNT

### (Attachment Against PGB)

77. MLBFS repeats the foregoing averments.

78. By reason of the foregoing, in light of the fact that PGB is PITTRA's alter ego, and in light of the risk that Defendants will use the international business of PGB to transfer assets out of the United States, a writ of attachment should issue against all assets of PGB.

## SEVENTH COUNT

### (Foreclosure Of Security Interest Against PGB)

79.     MLBFS repeats the foregoing averments.

80.     MLBFS holds a first priority, fully perfected security interest in the assets of PITTRA and the proceeds thereof.

81.     The assets of PITTRA which were transferred to PGB were subject to MLBFS security interest, which was perfected by Uniform Commercial Code filings.

82.     MLBFS' Uniform Commercial Code filings gave creditors of PGB notice of MLBFS' security interest.

83.     MLBFS has the right to enforce its security interest against the assets transferred and the proceeds thereof, ahead of any creditors of PGB, by virtue of such notice and because PGB is PITTRA's alter ego.

84.     MLBFS may enforce its rights against the assets of PBG acquired from PITTRA, and the proceeds thereof, and PGB should be directed to account for such assets and the proceeds thereof and should be directed to turn over same to MLBFS.

**WHEREFORE**, MLBFS demands judgment as follows:

A.     Directing the issuance of Writs of Attachment against the interests of Defendants Arthur Kupperman, Paulette Krelman, E. Ross Browne in any real or personal property, including, but not limited to attachments upon the real and personal property described above.

B.     Directing the issuance of a Writ of Attachment against all assets of PGB.

19

C. Enjoining and restraining Defendants from selling, transferring, encumbering, hypothecating, or otherwise alienating their interests in the specific real property identified in this Verified Complaint or any other real property in which they have an interest, whether said interest be equitable or legal in nature;

D. Enjoining and restraining Defendants from withdrawing, transferring, spending, hypothecating, or otherwise removing or alienating their interests in any checking, savings, investment, or other banking or security accounts held in their names, either individually or with others, which are maintained anywhere;

E. Enjoining and restraining Defendants from withdrawing, transferring, spending, hypothecating, or otherwise removing or alienating their interests in any and all real or personal property;

F. Ordering PGB to account for all assets acquired from PITTRA and the proceeds thereof and to turn over same to MLBFS;

G. Damages in the amount of all sums due to MLFBS under the terms of the loan documents, including attorney's fees, interest, default interest and costs;

H. Punitive Damages;

I. Costs of suit; and

J. Such other relief as the Court may deem just and proper.

Respectfully submitted,

BRESSLER, AMERY & ROSS, P.C.
Attorneys for Plaintiff

By: _____
George R. Hirsch

Dated:  October 5, 2006

## VERIFICATION DECLARATION

**CATHERINE L. BRIICK,** of full age, pursuant to 28 U.S.C. §1746, declares as follows:

1.  I am Vice President with Merrill Lynch Business Financial Services Inc.

2.  I have read the above Verified Complaint and the matters stated therein are true and correct except as to those matters therein stated to be upon information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Catherine L. Briick

Dated:  October 5, 2006

813701_1