George R. Hirsch, Esq. (GH 8284)
BRESSLER, AMERY & ROSS
A Professional Corporation
P. O. Box 1980
Morristown, New Jersey 07962
325 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 514-1200
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC., <br><br> Plaintiff, <br><br> vs. <br><br> ARTHUR KUPPERMAN; E. ROSS BROWNE; PAULETTE KRELMAN, PGB INTERNATIONAL, LLC; and JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, <br><br> Defendants. | Civil Action No:  06 Civ. 4802 (DMC) <br><br> **DECLARATION OF GEORGE R. HIRSCH IN SUPPORT OF CONTINUATION OF ATTACHMENTS AND RESTRAINTS** |

**GEORGE R. HIRSCH**, declares as follows pursuant to 28 U.S.C. §1746:

1.      I am a member of Bressler, Amery & Ross, P.C., attorneys for Plaintiff Merrill Lynch Business Financial Services Inc. ("MLBFS") in the above matter.  I make this Declaration in support of Plaintiff's request for the continuation of the October 6, 2006 attachments and restraints.

2.     Paragraph 6 of this Court's Order to Show Cause required Defendants to serve and file any answering papers by October 20, 2006. Defendants did not submit opposition papers.

3.     On October 23, 2006, Defendants E. Ross Browne, Arthur Kupperman, Paulette Krelman, and PGB International, LLC (pursuant to Fed. R. Civ. P. 30(b)(6)) appeared for depositions in accordance with paragraph 4 of the Order to Show Cause.

4.     At the depositions, each of the Defendants signed Declarations stating that there is no subject matter as to which they are willing to answer questions. In their Declarations, the Defendants acknowledged that they understand that declining to answer may result in adverse inferences or other consequences, and they consent to being deemed to have been asked all possible questions and to have asserted the Fifth Amendment privilege in response to each. Copies of the Declarations have been filed with this Court as docket entries 32, 33, and 34.

5.     Nevertheless, the undersigned posed certain questions to the Defendants in an effort to confirm essential facts and to seek to learn what Defendants have done with MLBFS' money. Each of the Defendants invoked the Fifth Amendment privilege against self-incrimination and refused to answer any of questions asked of them. Copies of the transcripts of the depositions are annexed hereto as Exhibits "A," "B," and "C" respectively.

6.     Plaintiff's Notice of Depositions required each of the Defendants to produce personal financial documents, as well as documents relating to both PITTRA

G.B. International, Inc. ("PITTRA") and PGB International, LLC ("PGB").  A copy of the Notice is annexed hereto as Exhibit "D."

7.    Defendant Browne produced some personal documents.    Defendant Krelman produced no documents, but her attorney stated that some personal documents would be produced at a later date.  Defendant Kupperman produced a very limited number of personal documents.

8.    None of the Defendants produced any PITTRA business records whatsoever.

9.    The auditors sent to PGB last week to make a preliminary assessment of its viability as a going concern have advised me that, among other things: (i) despite their requests, they were provided only with payable vendor names, and not with contact information (i.e., address, phone, etc.); (ii) they were provided with few if any original invoices, bills of lading, or purchase orders which they had requested to verify receivables; (iii) it appears that PGB substantially overstated receivables by reporting the full sale amount on commission transactions, rather than reporting only PGB's commissions; and (iv) PGB provided documents for only about a quarter of the transactions for which vendor invoice and backup was requested, most of the sample invoices provided were copies not originals, and the vast majority of payments by PGB were made by wire transfer.  In addition, the auditors have advised that their task was impeded by PGB and its attorneys, who did not give the auditors unfettered access to the PGB records.  Instead, the practice of PGB and its attorneys was to caucus privately

after each request and then to provide only those documents which PGB chose to produce.

I declare under penalty of perjury that the foregoing is true and correct.

George R. Hirsch

Dated: October 25, 2006

817390_1

4

**EXHIBIT "A"**

1          UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
2          CASE NO. 06 CIV. 4802 (DMC)

3  - - - - - - - - - -
   MERRILL LYNCH BUSINESS        :
4  FINANCIAL SERVICES, INC.,     :
                                 :
5          Plaintiff,            :    DEPOSITION OF:
                                 :
6                                :    E. ROSS BROWNE
           -vs-                  :
7                                :
                                 :
8  ARTHUR KUPPERMAN, E. ROSS     :
   BROWNE, PAULETTE KRELMAN      :
9  and PGB INTERNATIONAL LLC,    :
                                 :
10         Defendants            :
   - - - - - - - - - - -

11

12

13

14  B E F O R E:

15    THERESA GARRITY, a Certified Shorthand Reporter and

16  Notary Public of the State of New Jersey at the

17  offices of BRESSLER, AMERY & ROSS, ESQS, 325 Columbia

18  Turnpike, Florham Park, New Jersey, on October 23, 2006,

19  commencing at 9:50 a.m., pursuant to Notice.

20

21

22        REPORTING SERVICES ARRANGED THROUGH

23     VERITEXT/NEW JERSEY REPORTING COMPANY
          25B Vreeland Road, Suite 301
24        Florham Park, New Jersey   07932
           TEL:  No. (973) 410-4040
25           Fax:  (973) 410-1313

**Page 2**

1 A P P E A R A N C E S:
2 BRESSLER, AMERY & ROSS, P.C.
    BY: GEORGE R. HIRSCH, ESQ.
3 325 Columbia Turnpike
    Florham Park, New Jersey 07932
4 (973) 514-1200
    E-mail: ghirsch@bressler.com
5 Attorneys for Plaintiff
6 HERRICK, FEINSTEIN, L.L.P.
    BY: JOHN M. AUGUST, ESQ.
7 One Gateway Center
    Newark, New Jersey 07102
8 (973) 274-2529
    E-mail: jaugust@herrick.com
9 Attorneys for Defendant J.P. Morgan Chase Bank
10 BUDD LARNER, P.C.
    BY: A. MICHAEL COVINO, ESQ.
11 150 John F. Kennedy Parkway
    Short Hills, New Jersey 07078
12 (973) 379-4800
    E-mail: mcovino@budd-larner.com
13 Attorneys for PGB International and Arthur
    Kupperman individually
14
    SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, L.L.C.
15 BY: VINCENT F. PAPALIA, ESQ.
    One Gateway Center, 13th floor
16 Newark, New Jersey 07102-5311
    (973) 622-3333
17 Email: vfp@saiber.com
    Attorneys for E. Ross Browne
18
19
20
21
22
23
24
25

---

**Page 3**

1           I N D E X
2 WITNESS          DIRECT CROSS
3 E. Ross Browne
4   By Mr. Hirsch    4
    By Mr. August        24
5
6
7
8        E X H I B I T S
9 IDENT.      DESCRIPTION          PAGE
10 Browne-1    Declaration           7
11 Browne-2    Guaranty             24
12 Browne-3    Browne 2006 personal financial
           statement to JP Morgan Chase    24
13
   Browne-4    Browne personal financial
14       statement to Merrill Lynch    24
15 Browne-5    Browne 2004 personal financial
           Statement            24
16
17
18
19
20
21
22
23
24
25

---

**Page 4**

1 E D W A R D   R O S S   B R O W N E, 27 Waterford Drive,
2 Montville, New Jersey 07045, having been first duly
3 sworn according to law, testified as follows:
4
5 DIRECT EXAMINATION BY MR. HIRSCH:
6    Q.    Mr. Browne, my name is George Hirsch.
7 I'm a member of this firm Bressler, Amery & Ross. We
8 represent Merrill Lynch Business Financial Services,
9 Inc., the plaintiff in this action. It is normally
10 the custom in New Jersey when a deposition is being
11 taken for the person taking the deposition to explain
12 a little bit about what a deposition is to the
13 witness. I'm going to give you the short form. If
14 you want the long form, if your attorney wants the
15 long form, let me know.
16    MR. PAPALIA: The short form is fine.
17    Q.    The person to my left is a certified
18 shorthand reporter, who is creating a transcript of
19 these proceedings. Only the words that are spoken
20 show up on the transcript. When you smile, when you
21 are sarcastic, tones of voice, that kind of thing
22 doesn't show up on the transcripts, only the words.
23 So we all need to be very careful to convey our
24 meaning only through words.
25    If you need a bathroom break, anything

---

**Page 5**

1 like that, the goal here is not to make you physically
2 uncomfortable. And the transcript can be used in the
3 case. And you understand you're represented by
4 counsel here. Is that correct?
5 A.   Yes.
6    Q.    And that would be Mr. Papalia?
7 A.   Yes.
8    Q.    From the Saiber, Schlesinger firm and
9 he is seated to your left?
10 A.   Yes.
11    Q.    Do you have any questions about this
12 proceeding before we begin?
13 A.   No.
14    Q.    Prior to beginning the proceedings, we
15 had a discussion amongst counsel in the way of
16 potentially shortening the amount of time this will
17 take and the discussion, in very short form, was that
18 Mr. Papalia advised that Mr. Browne would be invoking
19 the Fifth Amendment privilege. And so, to shorten
20 things, I prepared a declaration, which Mr. Papalia
21 reviewed, made some changes to, and I've now had,
22 hopefully, correctly put in final and we're going to
23 proof it one more time. The declaration is for the
24 purpose of shortening the proceedings without
25 prejudicing anyone's rights so that I won't have to

1 ask every conceivable question and I won't lose any
2 rights by not having asked a particular question and
3 any rights that the witness would have by reason of
4 the invocation of the Fifth Amendment other than to
5 say, hey, you didn't ask that particular question,
6 would be preserved. Is that essentially --
7        MR. PAPALIA: Would be protected you
8 said, right?
9        MR. HIRSCH: Preserved.
10        MR. PAPALIA: Preserved, okay.
11        MR. HIRSCH: If you prefer protected, I
12 think they're synonymous under these circumstances.
13        MR. PAPALIA: Yeah.
14        MR. HIRSCH: I'll show you, this is
15 the -- if it's okay, we'll have the witness, if he's
16 willing, sign the declaration. I have an original
17 here.
18        MR. PAPALIA: George, just for the
19 record, we do want to participate in this process and
20 try to streamline it, if possible, but we are invoking
21 the Fifth Amendment at this time because of our
22 relatively recent involvement in the case and our
23 needing to conduct an investigation. And we certainly
24 reserve our right to and may, in fact, later on change
25 our position on this issue and decide to go forward

1 with testimony.
2        MR. HIRSCH: Okay. I don't concede
3 that -- I don't -- in other words, since it's without
4 prejudice, I understand that that's your reasoning. I
5 don't concede that you have the right to change or if
6 you do have such right, I would certainly expect that
7 I would have the right to redepose the witness and
8 et cetera, but that's for a later day. I understand
9 that you're not making a concession on that, whether
10 or not the law permits you to invoke the privilege and
11 then change or not agreeing or ruling at this time.
12        MR. PAPALIA: Yes.
13        MR. HIRSCH: And, certainly, you and I
14 don't rule.
15        MR. PAPALIA: That's correct. I agree
16 with all that.
17        MR. HIRSCH: Off the record.
18        (There was an off-the-record
19 discussion.)
20        MR. HIRSCH: The witness has signed the
21 declaration, which I'm going to ask be marked as
22 Browne Exhibit 1.
23        (Browne-1 is marked for
24 identification.)
25        MR. HIRSCH: If you would mark this

1 point in the transcript so that when we depose the
2 other witnesses, I don't -- we don't have to repeat
3 the same things about the declaration. I mean
4 Mr. Covino would certainly have the opportunity to say
5 something for his witness, but I won't have to repeat
6 the same thing that we just graft it on or just refer
7 back to it.
8        MR. COVINO: Understood.
9 BY MR. HIRSCH:
10        Q.    Mr. Browne, were you shown a document
11 request in connection with this deposition?
12 A.    On advice of counsel, I respectfully decline
13 to answer the question because I invoke my Fifth
14 Amendment privilege against self-incrimination.
15        Q.    Did you, Mr. Browne, bring with you for
16 production copies of your passports?
17 A.    On advice of counsel, I respectfully decline
18 to answer the question because I invoke my Fifth
19 Amendment privilege.
20        MR. PAPALIA: MR. Papalia, I had
21 intended to go through the items listed on the
22 document request annexed to the deposition notice.
23 Will his answer be the same as to all of those items?
24        MR. PAPALIA: Yes, it will.
25        MR. HIRSCH: Okay.

1        MR. PAPALIA: But as you know, we do
2 have a response to the -- the documents with those.
3        MR. HIRSCH: So that there is some
4 production that you are making.
5        MR. PAPALIA: Yes. Subject to the
6 confidentiality issue that I mentioned to you.
7        MR. HIRSCH: What are you producing?
8        MR. PAPALIA: I have it here.
9        MR. HIRSCH: What is it? What does it
10 consist of?
11        MR. PAPALIA: I don't have a complete
12 listing in my -- but I would say generally it consists
13 of bank statements, some real property records, some
14 brokerage or other accounts.
15        MR. HIRSCH: They're all personal?
16        MR. PAPALIA: All personal.
17        MR. HIRSCH: Any documents relating to
18 Pittra? Actually, do you want to go through just the
19 list and tell me what you have?
20        MR. PAPALIA: I have a response. I
21 have a response.
22        MR. HIRSCH: You mean a written
23 response?
24        MR. PAPALIA: Yes.
25        MR. HIRSCH: Can you give me that at

**10**

1 this time? We're going to -- I'm going to have this
2 marked, but -- and I'll have the -- if I need to, but
3 essentially, and please correct me if I'm wrong, there
4 is no -- items one through five, there's no
5 production.
6      MR. PAPALIA: Yeah, other than -- well,
7 no, no. Actually, two is, I guess, to the extent
8 there were documents produced in litigation or filed
9 in the litigation that relate to Pittra, you served it
10 on him, and that's it. So he does have those, but
11 we're not producing those.
12      MR. HIRSCH: You're not producing --
13 you mean pleadings already served in this litigation.
14 He's not producing any Pittra documents.
15      MR. PAPALIA: No, and then, but, three,
16 for example, there are documents being produced, so.
17      MR. HIRSCH: Okay. So I'm sorry. I
18 apologize. One and two, there's no -- I mean, that's
19 kind of circular, but one and two, there's no
20 production.
21      MR. PAPALIA: Right.
22      MR. HIRSCH: Three, there is some
23 production, which is some personal, no business, bank
24 statements and cancelled checks.
25      MR. PAPALIA: But just, if I may, just

**11**

1 to short circuit it if I can, other than the
2 pleading -- other than documents that are filed in
3 this litigation, none of the documents are related to
4 Pittra or PGB business.
5      MR. HIRSCH: So other than the
6 documents filed in this litigation, you're making no
7 production related to Pittra or PGB.
8      MR. PAPALIA: We don't have any. We
9 don't possess those documents, right.
10      MR. HIRSCH: Okay. So, and again,
11 everything is -- if it's already filed in this
12 litigation, I mean, so no to No. 1, no to No. 2, other
13 than documents that are filed in the litigation, No.
14 3, there is some production of personal bank
15 statements, cancelled checks; four, five -- four and
16 five, there's no production.
17      MR. PAPALIA: Uh-huh.
18      MR. HIRSCH: Six, there is -- you're
19 producing some account statements. Seven, there's no
20 production.
21      MR. PAPALIA: Right. Hopefully, this
22 speaks for itself, I guess.
23      MR. HIRSCH: Eight, there's no
24 production. Nine, there's no production.
25      MR. PAPALIA: Well, eight is

**12**

1 actually --
2      MR. HIRSCH: No production includes if
3 you don't have. You're not producing anything.
4      MR. PAPALIA: No, but eight, I think,
5 is -- also covers three and six. That's why I just
6 don't want to --
7      MR. HIRSCH: I see. So eight -- the
8 exception to eight is what you're producing pursuant
9 to three and six.
10      MR. PAPALIA: Correct.
11      MR. HIRSCH: There's nothing new being
12 produced pursuant to eight.
13      MR. PAPALIA: Right, but it's
14 responsive.
15      MR. HIRSCH: 10 through 20, there's
16 no -- you're not producing anything.
17      MR. PAPALIA: Well, again, 14 --
18      MR. HIRSCH: Oh, 14, which is documents
19 related to a location of any assets of the
20 subject's -- you have some production.
21      MR. PAPALIA: Right.
22      MR. HIRSCH: I apologize.
23      MR. PAPALIA: That's why I'm --
24      MR. HIRSCH: I see. I didn't read the
25 as to any other party. So 14 there is some

**13**

1 production. So 10 through 13 and 15 through 20.
2      MR. PAPALIA: There's no production,
3 no. Right. Just, you know, subject to all those
4 things we're talking about.
5      MR. HIRSCH: 21, you have some
6 production as with 22 and 23. And 24 through 33, no
7 production. 34 and -- I'm sorry, 34, no production.
8      MR. PAPALIA: 34, no.
9      MR. HIRSCH: I'm sorry. I apologize,
10 34 and 35 you have some production. And you -- what
11 is the stipulation you want with regard to the
12 confidentiality that you want?
13      MR. PAPALIA: That these documents
14 are -- that contain personal financial information
15 are, obviously, private and confidential and we do not
16 want them disclosed to any third parties without our
17 consent or a protective order that we agree on in
18 consent or that the Court enters.
19      MR. HIRSCH: Okay. So will it suffice
20 if I stipulate that they would -- that I would share
21 them only with my client and professionals involved on
22 behalf of my firm or my client in this case. I guess,
23 the next -- I guess there would be a question as to
24 the trustee in the bankruptcy case.
25      MR. PAPALIA: I'd have to just -- I

4 (Pages 10 to 13)

**14**

1 didn't think about that, but do we need to deal with
2 that right now?
3         MR. HIRSCH: Okay, but.
4         MR. PAPALIA: The gist of it is --
5         MR. HIRSCH: Yeah, and we'll work out
6 a -- you'll send me what you want. We'll work out a
7 stipulation.
8         MR. PAPALIA: That's the intent.
9         MR. HIRSCH: Can I give these to
10 somebody to copy since he's not going to answer
11 questions about them, can I give them to somebody to
12 copy now?
13         MR. PAPALIA: I was going to say to you
14 that, you know, we have spent quite a bit of time, you
15 know, going through records and putting this together
16 and did not have time to copy them. And the bank
17 statements themselves are particularly voluminous and
18 difficult to copy.
19         MR. HIRSCH: I'm a trustworthy person
20 and I would put on it who would devote herself to
21 getting them copied now. That way -- I wouldn't just
22 say send it to the mail room is what I'm saying. I
23 don't mean any -- I don't mean to slight our mail
24 room, but there's a lot of activity going on there. I
25 would actually assign a paralegal, you know, and I

**15**

1 would say, copy these yourself very carefully.
2         MR. PAPALIA: And mark it confidential.
3 So that nobody, you know -- so that, if it gets into
4 somebody else's hands, that it's so noted and it'll be
5 treated as such. That would be in any stipulation.
6         MR. HIRSCH: You want every page
7 stamped confidential?
8         MR. PAPALIA: I mean, in our offices,
9 I'm not a -- I don't do document productions every
10 day, but I understand we have a stamp that goes
11 through on that, puts --
12         MR. HIRSCH: Okay. The answer is, I
13 don't have a problem with that being done. I just
14 think that -- I don't want to slow the copying down to
15 effectuate that. That may be done as a second step.
16         MR. PAPALIA: Like later today or
17 tomorrow?
18         MR. HIRSCH: Yeah.
19         MR. PAPALIA: I don't believe I have a
20 problem with that.
21         MR. HIRSCH: I hear you. I just want
22 to get it done. And so if it's all right with you,
23 I'll -- and I -- you know, I may even be able to
24 arrange for them to be Bates stamped in some way, too.
25         MR. PAPALIA: To be what?

**16**

1         MR. HIRSCH: Numbered.
2         MR. PAPALIA: Oh, yeah, that would be
3 another good thing.
4         MR. HIRSCH: Off the record.
5         (There was an off-the-record
6 discussion.)
7         MR. AUGUST: Vince, do you have any
8 objection to my having a copy of those documents on
9 behalf of J.P. Morgan Chase Bank?
10         MR. PAPALIA: On the same terms?
11         MR. AUGUST: On the same terms is fine,
12 yes.
13         MR. PAPALIA: Which is confidential,
14 maintained an confidential, not disclosed to any third
15 parties without our written consent or a stipulation
16 or order of the Court and -- but I understand that a
17 third party doesn't include your particular client.
18         MR. AUGUST: Okay. Thank you. Off the
19 record.
20         (There was an off-the-record
21 discussion.)
22 BY MR. HIRSCH:
23     Q.    Mr. Browne, are you or were you at any
24 time a shareholder of Pittra GB International, Inc.?
25     A.    On the advice of counsel, I respectfully

**17**

1 decline to answer the question because I invoke my
2 Fifth Amendment privilege.
3     Q.    Why don't we find a shorthand for that,
4 too.
5     A.    I invoke the Fifth Amendment.
6     Q.    You can just say "same answer."
7 That'll be fine and it will be deemed -- we'll agree
8 that it will be deemed that you read the whole thing.
9         MR. PAPALIA: Okay.
10     Q.    Are you or were you at any time a
11 director of Pittra?
12 A.    Same answer.
13     Q.    Are you or were you at any time an
14 officer of Pittra?
15 A.    Same answer.
16     Q.    Were you a shareholder, director or
17 officer of Pittra in November of 2002?
18 A.    Same answer.
19     Q.    Or at any of the following times,
20 January of 2003?
21 A.    Same answer.
22     Q.    January of 2004?
23 A.    Same answer.
24     Q.    May of 2004?
25 A.    Same answer.

1 Q. July of 2005?
2 A. Same answer.
3 Q. July of 2006?
4 A. Same answer.
5 Q. February of 2006?
6 A. Same answer.
7 Q. September of 2006?
8 A. Same answer.
9 Q. Does Pittra -- as of today, does Pittra
10 do business?
11 A. Same answer.
12 Q. Were the assets of Pittra transferred
13 to PGB International, L.L.C., at any time?
14 A. Same answer.
15 Q. Did you participate in submitting
16 fraudulent financial statements to Merrill Lynch
17 Business Financial Services, Inc.?
18 A. Same answer.
19 Q. Did you participate in submitting
20 fraudulent attorney opinion letters to Merrill Lynch
21 Business Financial Services, Inc.?
22 A. Same answer.
23 Q. Did you, at any time, sign a guaranty
24 in favor of Merrill Lynch Business Financial Services,
25 Inc.?

1 A. Same answer.
2 Q. I'm going to show you a document, which
3 is part of Exhibit B to the Verified Complaint in this
4 case, which, at the top, says Unconditional Guaranty,
5 and, at the bottom, it says, dated as of
6 November 19, 2002, and Guarantor, and then there's a
7 signature underneath. It says, type name, E. Ross
8 Browne. Is that your signature?
9 A. Same answer.
10 Q. Did you at any time sign any agreements
11 whatsoever in any capacity with regard to the
12 borrowing by or the continuation of the extension of
13 credit by Merrill Lynch Business Financial Services,
14 Inc., to Pittra?
15 A. Same answer.
16 MR. PAPALIA: I just note objection to
17 form, but it doesn't really matter.
18 MR. HIRSCH: You want to specify the
19 objection so we don't have to --
20 MR. PAPALIA: Just go ahead.
21 MR. HIRSCH: So you're waiving the
22 objection?
23 MR. PAPALIA: No, no. It's just that
24 it was several questions in there, that's all.
25 Q. Did you at any time sign any agreement

1 whatsoever in any capacity with Merrill Lynch Business
2 Financial Services, Inc.?
3 A. Same answer.
4 MR. HIRSCH: Covered it?
5 MR. PAPALIA: That covered it.
6 Q. Did you provide personal financial
7 statements to Merrill Lynch Business Financial
8 Services, Inc., in connection with its extensions of
9 credit to Pittra?
10 A. Same answer.
11 Q. Pittra borrowed -- are you aware that
12 Pittra borrowed money from Merrill Lynch Business
13 Financial Services, Inc.?
14 A. Same answer.
15 Q. Where is that money?
16 A. Same answer.
17 MR. HIRSCH: Can I have -- I'm just
18 going to take a minute to talk to Mr. August, but I'm
19 either -- I think I'm either at the end or close to
20 the end.
21 MR. PAPALIA: That's fine.
22 (There is a recess.)
23 BY MR. HIRSCH:
24 Q. Mr. Browne, do you hold an interest in
25 PGB International, L.L.C.?

1 A. Same answer.
2 Q. Did PGB receive any assets from Pittra?
3 A. Same answer.
4 Q. Where are those assets?
5 A. Same answer.
6 MR. HIRSCH: Off the record for a
7 minute.
8 (There was an off-the-record
9 discussion.)
10 MR. HIRSCH: I think I'm finished. If
11 I think of something after Mr. August, I'd like to
12 reserve the right to ask again. I understand the
13 answers are going to be the same, but I think we're --
14 I think I'm finished and I reserve whatever rights
15 there are with regard to the content of these
16 responses.
17 MR. PAPALIA: But this was your
18 deposition.
19 MR. HIRSCH: Yeah. Other parties to
20 the action have a right to ask questions, I believe.
21 MR. PAPALIA: Well, I didn't realize he
22 was a party to the action until just minutes, I guess,
23 just maybe he's been a party for minutes, but.
24 MR. HIRSCH: Well, I'll tell you. On
25 Friday, we filed an amendment to the Complaint that

**22**

1 added J.P. Morgan Chase Bank National Association as a
2 defendant. We did so because the relief that we seek
3 includes the contention that Merrill Lynch Business
4 Financial Services, with regard to the assets of PGB,
5 is ahead of creditors of PGB; and including secured
6 creditors, the only secured creditor that we know of
7 is J.P. Morgan Chase Bank National Association, and so
8 that their interests are affected and they probably
9 should have been named or at least should be now named
10 as a defendant.
11        So rather than putting Mr. August and
12 the parties and the Court through in what appeared to
13 be an appropriate intervention motion and run the risk
14 of somebody saying, well, you should have named them
15 to begin with, and saving everybody the trouble, I
16 named him as a defendant, which I think was the right
17 thing to do. And so they were added on Friday.
18        MR. PAPALIA: Okay. Can I have a
19 minute off the record.
20        MR. HIRSCH: Yeah.
21        MR. PAPALIA: Because I guess the issue
22 is that, I guess, this is your notice -- you're
23 adopting this Notice of Deposition? Is that what
24 you're doing?
25        MR. AUGUST: This deposition is being

**23**

1 held pursuant to an Order to Show Cause that allowed
2 expedited discovery in advance of October 31. Now,
3 we're all here. I don't think it's in anybody's
4 interest to reconvene at my offices on Wednesday and,
5 in fact, my guess is, that if we called Magistrate
6 Falk, he would say, J.P. Morgan Chase can ask
7 questions and, in fact, our interest in finding out
8 what happened here is the same interest that Merrill
9 Lynch has.
10        MR. PAPALIA: Well, my concern was
11 almost reverse of what you just said in the sense that
12 I don't want you, if you ask questions today, are
13 those the questions you're going to ask pursuant to
14 that Notice of Deposition that no more deposition
15 through the return date of the Order to Show Cause
16 or --
17        MR. AUGUST: No more deposition.
18        MR. PAPALIA: This is your deposition
19 then.
20        MR. AUGUST: Yes. That's true, but
21 also the declaration that would sign would run to all
22 questions also that my client would be asking.
23        MR. PAPALIA: Okay. I understand.
24 Thanks.
25        (There is a recess.)

**24**

1        MR. PAPALIA: On that basis, we are
2 going to let Mr. Browne answer Mr. August's questions.
3        (Browne-2 through 5 is marked for
4 identification.)
5
6 CROSS-EXAMINATION BY MR. AUGUST:
7        Q.    Mr. Browne, my name is John August. I
8 represent J.P. Morgan Chase Bank. And the same
9 deposition guidelines will apply, of course, as
10 Mr. Hirsch went through quickly.
11        Are you a director of PGB International
12 L.L.C.?
13 A.    Same answer.
14        Q.    Were you at any time a director of PGB?
15 A.    Same answer.
16        Q.    Are you an officer of PGB?
17 A.    Same answer.
18        Q.    Were you at any time an officer of PGB?
19 A.    Same answer.
20        Q.    Are you an employee of PGB?
21 A.    Same answer.
22        Q.    Were you at any time an employee of
23 PGB?
24 A.    Same answer.
25        Q.    Do you know that PGB borrowed money

**25**

1 from J.P. Morgan Chase Bank?
2 A.    Same answer.
3        Q.    On behalf of PGB, did you sign any
4 agreements with J.P. Morgan Chase Bank?
5 A.    Same answer.
6        Q.    In your personal capacity, did you sign
7 any agreements with J.P. Morgan Chase Bank in
8 connection with the loan to PGB?
9 A.    Same answer.
10        Q.    I'm going to show you what's been
11 marked as Browne No. 2 and I'm going ask you if you
12 recognize that document.
13 A.    Same answer. Same answer.
14        Q.    There is a signature on page 3. Is
15 that your signature on page 3 of that document?
16 A.    Same answer.
17        MR. PAPALIA: I have never seen this
18 document before. And I don't know if Mr. Browne has,
19 but I would like -- well, I guess we're going to make
20 copies of everything.
21        MR. AUGUST: I will make copies of
22 everything and circulate them to everyone, yes.
23        Q.    I'm going to show you what's been
24 marked as Browne-3. Can you tell me if you've ever
25 seen that document?

**26**

1 A.   Same answer.
2     Q.   There is a signature on the next to
3 last page of that document. Can you tell me if that
4 is your signature?
5 A.   Same answer.
6     Q.   I'm going to show you what's been
7 marked as Browne No. 4. Can you take a look at that
8 and tell me if you've ever seen that document?
9 A.   Same answer.
10     Q.   There is a signature on the next to
11 last page of that document?
12 A.   Same answer.
13     MR. PAPALIA: Can I see three again,
14 I'm sorry.
15     MR. AUGUST: You certainly may.
16     Q.   And just so the record is clear,
17 Mr. Browne, let me finish my question before you
18 answer. There is a signature on the next to last page
19 of Browne No. 4. Can you tell me if that is your
20 signature?
21 A.   Same answer.
22     Q.   Thank you. I'm going to show you what
23 has been marked as Browne No. 5. Can you take a look
24 and tell me if you've ever seen that document?
25 A.   Same answer.

**27**

1     Q.   There is a signature on that document.
2 Can you tell me if that is your signature?
3 A.   Same answer.
4     Q.   Mr. Browne, did you participate in
5 submitting any fraudulent documents to J.P. Morgan
6 Chase Bank?
7 A.   Same answer.
8     Q.   Did you participate in submitting any
9 fraudulent borrowing base certificates to J.P. Morgan
10 Chase Bank?
11 A.   Same answer.
12     MR. AUGUST: Thank you. I have no more
13 questions.
14     MR. HIRSCH: I have nothing further at
15 this time because I'm going to get the, quote, same
16 answer.
17     THE WITNESS: Same answer.
18     MR. PAPALIA: That's true.
19     MR. HIRSCH: Thank you, Mr. Browne.
20     THE WITNESS: Thank you.
21     (The deposition was concluded at
22 10:40 a.m.)
23
24
25

**28**

1         C E R T I F I C A T E
2
3
4     I, THERESA GARRITY, a Certified Shorthand
5 Reporter of the State of New Jersey, do hereby state
6 that prior to the examination of the witness was sworn
7 by me to testify the truth, the whole truth and
8 nothing but the truth.
9     I DO FURTHER CERTIFY that the foregoing is a
10 true and accurate transcript of the testimony as taken
11 stenographically by and before me at the time, place
12 and on the date hereinbefore set forth.
13     I DO FURTHER CERTIFY that I am neither of
14 counsel nor attorney for any party in this action and
15 that I am not interested in the event nor outcome of
16 this litigation.
17
18
19
20
21
22
23     Notary Public of the State of New Jersey
24     LICENSE NO. XIO1129
25

## A

**able** 15:23
**account** 11:19
**accounts** 9:14
**accurate** 28:10
**action** 4:9 21:20,22
  28:14
**activity** 14:24
**added** 22:1,17
**adopting** 22:23
**advance** 23:2
**advice** 8:12,17 16:25
**advised** 5:18
**agree** 7:15 13:17 17:7
**agreeing** 7:11
**agreement** 19:25
**agreements** 19:10
  25:4,7
**ahead** 19:20 22:5
**allowed** 23:1
**amendment** 5:19 6:4
  6:21 8:14,19 17:2,5
  21:25
**Amery** 1:17 2:2 4:7
**amount** 5:16
**annexed** 8:22
**answer** 8:13,18,23
  14:10 15:12 17:1,6
  17:12,15,18,21,23
  17:25 18:2,4,6,8,11
  18:14,18,22 19:1,9
  19:15 20:3,10,14,16
  21:1,3,5 24:2,13,15
  24:17,19,21,24 25:2
  25:5,9,13,13,16
  26:1,5,9,12,18,21
  26:25 27:3,7,11,16
  27:17
**answers** 21:13
**anybody's** 23:3
**anyone's** 5:25
**apologize** 10:18
  12:22 13:9
**appeared** 22:12
**apply** 24:9
**appropriate** 22:13
**arrange** 15:24
**ARRANGED** 1:22

## B

**Arthur** 1:8 2:13
**asked** 6:2
**asking** 23:22
**assets** 12:19 18:12
  21:2,4 22:4
**assign** 14:25
**Association** 22:1,7
**attorney** 4:14 18:20
  28:14
**Attorneys** 2:5,9,13
  2:17
**August** 2:6 3:4 16:7
  16:11,18 20:18
  21:11 22:11,25
  23:17,20 24:6,7
  25:21 26:15 27:12
**August's** 24:2
**aware** 20:11
**a.m** 1:19 27:22

## B

**B** 1:14 3:8 4:1 19:3
**back** 8:7
**bank** 2:9 9:13 10:23
  11:14 14:16 16:9
  22:1,7 24:8 25:1,4,7
  27:6,10
**bankruptcy** 13:24
**base** 27:9
**basis** 24:1
**Bates** 15:24
**bathroom** 4:25
**beginning** 5:14
**behalf** 13:22 16:9
  25:3
**believe** 15:19 21:20
**bit** 4:12 14:14
**borrowed** 20:11,12
  24:25
**borrowing** 19:12
  27:9
**bottom** 19:5
**break** 4:25
**Bressler** 1:17 2:2 4:7
**bring** 8:15
**brokerage** 9:14
**Browne** 1:6,8 2:17
  3:3,12,13,15 4:6
  5:18 7:22 8:10,15

16:23 19:8 20:24
  24:2,7 25:11,18
  26:7,17,19,23 27:4
  27:19
**Browne-1** 3:10 7:23
**Browne-2** 3:11 24:3
**Browne-3** 3:12 25:24
**Browne-4** 3:13
**Browne-5** 3:15
**BUDD** 2:10
**business** 1:3 4:8
  10:23 11:4 18:10,17
  18:21,24 19:13 20:1
  20:7,12 22:3

## C

**C** 2:1 28:1,1
**called** 23:5
**cancelled** 10:24
  11:15
**capacity** 19:11 20:1
  25:6
**careful** 4:23
**carefully** 15:1
**case** 1:2 5:3 6:22
  13:22,24 19:4
**Cause** 23:1,15
**Center** 2:7,15
**certainly** 6:23 7:6,13
  8:4 26:15
**certificates** 27:9
**certified** 1:15 4:17
  28:4
**CERTIFY** 28:9,13
**cetera** 7:8
**change** 6:24 7:5,11
**changes** 5:21
**Chase** 2:9 3:12 16:9
  22:1,7 23:6 24:8
  25:1,4,7 27:6,10
**checks** 10:24 11:15
**circuit** 11:1
**circular** 10:19
**circulate** 25:22
**circumstances** 6:12
**CIV** 1:2
**clear** 26:16
**client** 13:21,22 16:17
  23:22

**close** 20:19
**Columbia** 1:17 2:3
**commencing** 1:19
**COMPANY** 1:23
**Complaint** 19:3
  21:25
**complete** 9:11
**concede** 7:2,5
**conceivable** 6:1
**concern** 23:10
**concession** 7:9
**concluded** 27:21
**conduct** 6:23
**confidential** 13:15
  15:2,7 16:13,14
**confidentiality** 9:6
  13:12
**connection** 8:11 20:8
  25:8
**consent** 13:17,18
  16:15
**consist** 9:10
**consists** 9:12
**contain** 13:14
**content** 21:15
**contention** 22:3
**continuation** 19:12
**convey** 4:23
**copied** 14:21
**copies** 8:16 25:20,21
**copy** 14:10,12,16,18
  15:1 16:8
**copying** 15:14
**correct** 5:4 7:15 10:3
  12:10
**correctly** 5:22
**counsel** 5:4,15 8:12
  8:17 16:25 28:14
**course** 24:9
**Court** 1:1 13:18
  16:16 22:12
**covered** 20:4,5
**covers** 12:5
**Covino** 2:10 8:4,8
**creating** 4:18
**credit** 19:13 20:9
**creditor** 22:6
**creditors** 22:5,6
**CROSS** 3:2

**CROSS-EXAMIN...** 24:6
**custom** 4:10

**D**

**D** 3:1 4:1,1
**date** 23:15 28:12
**dated** 19:5
**day** 7:8 15:10
**deal** 14:1
**decide** 6:25
**declaration** 3:10 5:20 5:23 6:16 7:21 8:3 23:21
**decline** 8:12,17 17:1
**deemed** 17:7,8
**defendant** 2:9 22:2 22:10,16
**Defendants** 1:10
**depose** 8:1
**deposition** 1:5 4:10 4:11,12 8:11,22 21:18 22:23,25 23:14,14,17,18 24:9 27:21
**DESCRIPTION** 3:9
**devote** 14:20
**didn't** 6:5 12:24 14:1 21:21
**difficult** 14:18
**DIRECT** 3:2 4:5
**director** 17:11,16 24:11,14
**disclosed** 13:16 16:14
**discovery** 23:2
**discussion** 5:15,17 7:19 16:6,21 21:9
**DISTRICT** 1:1,1
**DMC** 1:2
**document** 8:10,22 15:9 19:2 25:12,15 25:18,25 26:3,8,11 26:24 27:1
**documents** 9:2,17 10:8,14,16 11:2,3,6 11:9,13 12:18 13:13 16:8 27:5
**doesn't** 4:22 16:17 19:17

**doing** 22:24
**don't** 7:2,3,5,14 8:2,2 9:11 11:8,9 12:3,6 14:23,23 15:9,13,14 15:19 17:3 19:19 23:3,12 25:18
**Drive** 4:1
**duly** 4:2

**E**

**E** 1:6,8,14,14 2:1,1,17 3:1,3,8 4:1,1 19:7 28:1,1
**effectuate** 15:15
**eight** 11:23,25 12:4,7 12:8,12
**either** 20:19,19
**else's** 15:4
**Email** 2:17
**employee** 24:20,22
**enters** 13:18
**ESQ** 2:2,6,10,15
**ESQS** 1:17
**essentially** 6:6 10:3
**et** 7:8
**event** 28:15
**everybody** 22:15
**examination** 4:5 28:6
**example** 10:16
**exception** 12:8
**Exhibit** 7:22 19:3
**expect** 7:6
**expedited** 23:2
**explain** 4:11
**extension** 19:12
**extensions** 20:8
**extent** 10:7
**E-mail** 2:4,8,12

**F**

**F** 1:14 2:11,15 28:1
**fact** 6:24 23:5,7
**Falk** 23:6
**favor** 18:24
**Fax** 1:25
**February** 18:5
**FEINSTEIN** 2:6
**Fifth** 5:19 6:4,21 8:13 8:18 17:2,5

**filed** 10:8 11:2,6,11 11:13 21:25
**final** 5:22
**financial** 1:4 3:12,13 3:15 4:8 13:14 18:16,17,21,24 19:13 20:2,6,7,13 22:4
**find** 17:3
**finding** 23:7
**fine** 4:16 16:11 17:7 20:21
**finish** 26:17
**finished** 21:10,14
**firm** 4:7 5:8 13:22
**first** 4:2
**five** 10:4 11:15,16
**floor** 2:15
**Florham** 1:18,24 2:3
**following** 17:19
**follows** 4:3
**foregoing** 28:9
**form** 4:13,14,15,16 5:17 19:17
**forth** 28:12
**forward** 6:25
**four** 11:15,15
**fraudulent** 18:16,20 27:5,9
**Friday** 21:25 22:17
**further** 27:14 28:9,13

**G**

**GARRITY** 1:15 28:4
**Gateway** 2:7,15
**GB** 16:24
**generally** 9:12
**George** 2:2 4:6 6:18
**getting** 14:21
**ghirsch@bressler....** 2:4
**gist** 14:4
**give** 4:13 9:25 14:9 14:11
**go** 6:25 8:21 9:18 19:20
**goal** 5:1
**goes** 15:10
**going** 4:13 5:22 7:21

10:1,1 14:10,13,15
14:24 19:2 20:18
21:13 23:13 24:2
25:10,11,19,23 26:6
26:22 27:15
**GOLDSTEIN** 2:14
**good** 16:3
**graft** 8:6
**Guarantor** 19:6
**guaranty** 3:11 18:23 19:4
**guess** 10:7 11:22 13:22,23 21:22 22:21,22 23:5 25:19
**guidelines** 24:9

**H**

**H** 3:8
**hands** 15:4
**happened** 23:8
**hear** 15:21
**held** 23:1
**hereinbefore** 28:12
**HERRICK** 2:6
**hey** 6:5
**he's** 6:15 10:14 14:10 21:23
**Hills** 2:11
**Hirsch** 2:2 3:4 4:5,6 6:9,11,14 7:2,13,17 7:20,25 8:9,20,25 9:3,7,9,15,17,22,25 10:12,17,22 11:5,10 11:18,23 12:2,7,11 12:15,18,22,24 13:5 13:9,19 14:3,5,9,19 15:6,12,18,21 16:1 16:4,22 19:18,21 20:4,17,23 21:6,10 21:19,24 22:20 24:10 27:14,19
**hold** 20:24
**hopefully** 5:22 11:21

**I**

**IDENT** 3:9
**identification** 7:24 24:4
**include** 16:17

includes 12:2 22:3
including 22:5
individually 2:13
information 13:14
intended 8:21
intent 14:8
interest 20:24 23:4,7
    23:8
interested 28:15
interests 22:8
International 1:9
    2:13 16:24 18:13
    20:25 24:11
intervention 22:13
investigation 6:23
invocation 6:4
invoke 7:10 8:13,18
    17:1,5
invoking 5:18 6:20
involved 13:21
involvement 6:22
issue 6:25 9:6 22:21
items 8:21,23 10:4
it'll 15:4
it's 6:15 7:3 11:11
    12:13 15:4,22 19:23
    23:3
I'd 13:25 21:11
I'll 6:14 10:2 15:23
    21:24
I'm 4:7,13 7:21 10:1
    10:3,17 12:23 13:7
    13:9 14:19,22 15:9
    19:2 20:17,18,19
    21:10,14 25:10,11
    25:23 26:6,14,22
    27:15
I've 5:21

_____

**J**

January 17:20,22
jaugust@herrick.c...
    2:8
Jersey 1:1,16,18,23
    1:24 2:3,7,11,16 4:2
    4:10 28:5,23
John 2:6,11 24:7
JP 3:12
July 18:1,3

**J.P** 2:9 16:9 22:1,7
    23:6 24:8 25:1,4,7
    27:5,9

_____

**K**

Kennedy 2:11
kind 4:21 10:19
know 4:15 9:1 13:3
    14:14,15,25 15:3,23
    22:6 24:25 25:18
KRELMAN 1:8
Kupperman 1:8 2:13

_____

**L**

LARNER 2:10
law 4:3 7:10
left 4:17 5:9
letters 18:20
LICENSE 28:24
list 9:19
listed 8:21
listing 9:12
litigation 10:8,9,13
    11:3,6,12,13 28:16
little 4:12
LLC 1:9
loan 25:8
location 12:19
long 4:14,15
look 26:7,23
lose 6:1
lot 14:24
Lynch 1:3 3:14 4:8
    18:16,20,24 19:13
    20:1,7,12 22:3 23:9
L.L.C 2:14 18:13
    20:25 24:12
L.L.P 2:6

_____

**M**

M 2:6
Magistrate 23:5
mail 14:22,23
maintained 16:14
making 7:9 9:4 11:6
mark 7:25 15:2
marked 7:21,23 10:2
    24:3 25:11,24 26:7
    26:23

matter 19:17
mcovino@budd-la...
    2:12
mean 8:3 9:22 10:13
    10:18 11:12 14:23
    14:23 15:8
meaning 4:24
member 4:7
mentioned 9:6
Merrill 1:3 3:14 4:8
    18:16,20,24 19:13
    20:1,7,12 22:3 23:8
MICHAEL 2:10
minute 20:18 21:7
    22:19
minutes 21:22,23
money 20:12,15
    24:25
Montville 4:2
Morgan 2:9 3:12
    16:9 22:1,7 23:6
    24:8 25:1,4,7 27:5,9
motion 22:13

_____

**N**

N 2:1 3:1 4:1
name 4:6 19:7 24:7
named 22:9,9,14,16
National 22:1,7
need 4:23,25 10:2
    14:1
needing 6:23
neither 28:13
never 25:17
new 1:1,16,18,24 2:3
    2:7,11,16 4:2,10
    12:11 28:5,23
Newark 2:7,16
Nine 11:24
normally 4:9
Notary 1:16 28:23
note 19:16
noted 15:4
notice 1:19 8:22
    22:22,23 23:14
November 17:17 19:6
Numbered 16:1

_____

**O**

O 1:14 4:1,1
objection 16:8 19:16
    19:19,22
obviously 13:15
October 1:18 23:2
officer 17:14,17
    24:16,18
offices 1:17 15:8 23:4
off-the-record 7:18
    16:5,20 21:8
Oh 12:18 16:2
okay 6:10,15 7:2 8:25
    10:17 11:10 13:19
    14:3 15:12 16:18
    17:9 22:18 23:23
opinion 18:20
opportunity 8:4
order 13:17 16:16
    23:1,15
original 6:16
outcome 28:15

_____

**P**

P 2:1,1
page 3:9 15:6 25:14
    25:15 26:3,11,18
Papalia 2:15 4:16 5:6
    5:18,20 6:7,10,13
    6:18 7:12,15 8:20
    8:24 9:1,5,8,11,16
    9:20,24 10:6,15,21
    10:25 11:8,17,21,25
    12:4,10,13,17,21,23
    13:2,8,13,25 14:4,8
    14:13 15:2,8,16,19
    15:25 16:2,10,13
    17:9 19:16,20,23
    20:5,21 21:17,21
    22:18,21 23:10,18
    23:23 24:1 25:17
    26:13 27:18
paralegal 14:25
Park 1:18,24 2:3
Parkway 2:11
part 19:3
participate 6:19
    18:15,19 27:4,8
particular 6:2,5
    16:17

particularly 14:17
parties 13:16 16:15
  21:19 22:12
party 12:25 16:17
  21:22,23 28:14
passports 8:16
PAULETTE 1:8
permits 7:10
person 4:11,17 14:19
personal 3:12,13,15
  9:15,16 10:23 11:14
  13:14 20:6 25:6
PGB 1:9 2:13 11:4,7
  18:13 20:25 21:2
  22:4,5 24:11,14,16
  24:18,20,23,25 25:3
  25:8
physically 5:1
Pittra 9:18 10:9,14
  11:4,7 16:24 17:11
  17:14,17 18:9,9,12
  19:14 20:9,11,12
  21:2
place 28:11
plaintiff 1:5 2:5 4:9
pleading 11:2
pleadings 10:13
please 10:3
point 8:1
position 6:25
possess 11:9
possible 6:20
potentially 5:16
prefer 6:11
prejudice 7:4
prejudicing 5:25
prepared 5:20
preserved 6:6,9,10
prior 5:14 28:6
private 13:15
privilege 5:19 7:10
  8:14,19 17:2
probably 22:8
problem 15:13,20
proceeding 5:12
proceedings 4:19
  5:14,24
process 6:19
produced 10:8,16

12:12
producing 9:7 10:11
  10:12,14 11:19 12:3
  12:8,16
production 8:16 9:4
  10:5,20,23 11:7,14
  11:16,20,24,24 12:2
  12:20 13:1,2,6,7,7
  13:10
productions 15:9
professionals 13:21
proof 5:23
property 9:13
protected 6:7,11
protective 13:17
provide 20:6
Public 1:16 28:23
purpose 5:24
pursuant 1:19 12:8
  12:12 23:1,13
put 5:22 14:20
puts 15:11
putting 14:15 22:11
P.C 2:2,10

_____
**Q**
question 6:1,2,5 8:13
  8:18 13:23 17:1
  26:17
questions 5:11 14:11
  19:24 21:20 23:7,12
  23:13,22 24:2 27:13
quickly 24:10
quite 14:14
quote 27:15

_____
**R**
R 1:14 2:1,2 4:1,1,1
  28:1
read 12:24 17:8
real 9:13
realize 21:21
really 19:17
reason 6:3
reasoning 7:4
receive 21:2
recess 20:22 23:25
recognize 25:12
reconvene 23:4

record 6:19 7:17 16:4
  16:19 21:6 22:19
  26:16
records 9:13 14:15
redepose 7:7
refer 8:6
regard 13:11 19:11
  21:15 22:4
relate 10:9
related 11:3,7 12:19
relating 9:17
relatively 6:22
relief 22:2
repeat 8:2,5
reporter 1:15 4:18
  28:5
REPORTING 1:22
  1:23
represent 4:8 24:8
represented 5:3
request 8:11,22
reserve 6:24 21:12,14
respectfully 8:12,17
  16:25
response 9:2,20,21
  9:23
responses 21:16
responsive 12:14
return 23:15
reverse 23:11
reviewed 5:21
right 6:8,24 7:5,6,7
  10:21 11:9,21 12:13
  12:21 13:3 14:2
  15:22 21:12,20
  22:16
rights 5:25 6:2,3
  21:14
risk 22:13
Road 1:23
room 14:22,24
Ross 1:6,8,17 2:2,17
  3:3 4:7 19:7
rule 7:14
ruling 7:11
run 22:13 23:21

_____
**S**
S 2:1 3:8 4:1,1

Saiber 2:14 5:8
sarcastic 4:21
SATZ 2:14
saving 22:15
saying 14:22 22:14
says 19:4,5,7
Schlesinger 2:14 5:8
seated 5:9
second 15:15
secured 22:5,6
see 6:17,24 26:13
seek 22:2
seen 25:17,25 26:8,24
self-incrimination
  8:14
send 14:6,22
sense 23:11
September 18:7
served 10:9,13
Services 1:4,22 4:8
  18:17,21,24 19:13
  20:2,8,13 22:4
set 28:12
Seven 11:19
share 13:20
shareholder 16:24
  17:16
short 2:11 4:13,16
  5:17 11:1
shorten 5:19
shortening 5:16,24
shorthand 1:15 4:18
  17:3 28:4
show 4:20,22 6:14
  19:2 23:1,15 25:10
  25:23 26:6,22
shown 8:10
sign 6:16 18:23 19:10
  19:25 23:21 25:3,6
signature 19:7,8
  25:14,15 26:2,4,10
  26:18,20 27:1,2
signed 7:20
six 11:18 12:5,9
slight 14:23
slow 15:14
smile 4:20
somebody 14:10,11
  15:4 22:14

**sorry** 10:17 13:7,9
26:14
**speaks** 11:22
**specify** 19:18
**spent** 14:14
**spoken** 4:19
**stamp** 15:10
**stamped** 15:7,24
**state** 1:16 28:5,5,23
**statement** 3:12,14,15
**statements** 9:13
10:24 11:15,19
14:17 18:16 20:7
**STATES** 1:1
**stenographically**
28:11
**step** 15:15
**stipulate** 13:20
**stipulation** 13:11
14:7 15:5 16:15
**streamline** 6:20
**subject** 9:5 13:3
**subject's** 12:20
**submitting** 18:15,19
27:5,8
**suffice** 13:19
**Suite** 1:23
**sworn** 4:3 28:6
**synonymous** 6:12

**T**

**T** 3:8 28:1,1
**take** 5:17 20:18 26:7
26:23
**taken** 4:11 28:10
**talk** 20:18
**talking** 13:4
**TEL** 1:24
**tell** 9:19 21:24 25:24
26:3,8,19,24 27:2
**terms** 16:10,11
**testified** 4:3
**testify** 28:7
**testimony** 7:1 28:10
**Thank** 16:18 26:22
27:12,19,20
**Thanks** 23:24
**That'll** 17:7
**that's** 7:4,8,15 10:10

10:18 12:5,23 14:8
19:24 20:21 23:20
27:18
**THERESA** 1:15 28:4
**there's** 10:4,18,19
11:16,19,23,24
12:11,15 13:2 14:24
19:6
**they're** 6:12 9:15
**thing** 4:21 8:6 16:3
17:8 22:17
**things** 5:20 8:3 13:4
**think** 6:12 12:4 14:1
15:14 20:19 21:10
21:11,13,14 22:16
23:3
**third** 13:16 16:14,17
**three** 10:15,22 12:5,9
26:13
**time** 5:16,23 6:21
7:11 10:1 14:14,16
16:24 17:10,13
18:13,23 19:10,25
24:14,18,22 27:15
28:11
**times** 17:19
**today** 15:16 18:9
23:12
**tomorrow** 15:17
**tones** 4:21
**top** 19:4
**transcript** 4:18,20
5:2 8:1 28:10
**transcripts** 4:22
**transferred** 18:12
**treated** 15:5
**trouble** 22:15
**true** 23:20 27:18
28:10
**trustee** 13:24
**trustworthy** 14:19
**truth** 28:7,7,8
**try** 6:20
**Turnpike** 1:18 2:3
**two** 10:7,18,19
**type** 19:7

**U**

**Uh-huh** 11:17

**uncomfortable** 5:2
**Unconditional** 19:4
**underneath** 19:7
**understand** 5:3 7:4,8
15:10 16:16 21:12
22:23
**Understood** 8:8
**UNITED** 1:1

**V**

**Verified** 19:3
**VERITEXT/NEW**
1:23
**vfp@saiber.com** 2:17
**Vince** 16:7
**VINCENT** 2:15
**voice** 4:21
**voluminous** 14:17
**Vreeland** 1:23
**vs** 1:6

**W**

**W** 4:1,1
**waiving** 19:21
**want** 4:14 6:19 9:18
12:6 13:11,12,16
14:6 15:6,14,21
19:18 23:12
**wants** 4:14
**Waterford** 4:1
**way** 5:15 14:21 15:24
**Wednesday** 23:4
**went** 24:10
**we'll** 6:15 14:5,6 17:7
**we're** 5:22 10:1,11
13:4 21:13 23:3
25:19
**whatsoever** 19:11
20:1
**what's** 25:10,23 26:6
**willing** 6:16
**witness** 3:2 4:13 6:3
6:15 7:7,20 8:5
27:17,20 28:6
**witnesses** 8:2
**won't** 5:25 6:1 8:5
**words** 4:19,22,24 7:3
**work** 14:5,6
**wouldn't** 14:21

**written** 9:22 16:15
**wrong** 10:3

**X**

**X** 3:1,8
**XIO1129** 28:24

**Y**

**yeah** 6:13 10:6 14:5
15:18 16:2 21:19
22:20
**you'll** 14:6
**you're** 5:3 7:9 10:12
11:6,18 12:3,8,16
19:21 22:22,24
23:13
**you've** 25:24 26:8,24

**0**

**06** 1:2
**07045** 4:2
**07078** 2:11
**07102** 2:7
**07102-5311** 2:16
**07932** 1:24 2:3

**1**

**1** 7:22 11:12
**10** 12:15 13:1
**10:40** 27:22
**13** 13:1
**13th** 2:15
**14** 12:17,18,25
**15** 13:1
**150** 2:11
**19** 19:6

**2**

**2** 11:12 25:11
**20** 12:15 13:1
**2002** 17:17 19:6
**2003** 17:20
**2004** 3:15 17:22,24
**2005** 18:1
**2006** 1:18 3:12 18:3,5
18:7
**21** 13:5
**22** 13:6
**23** 1:18 13:6
**24** 3:4,11,12,14,15

13:6
**25B** 1:23
**27** 4:1
**274-2529** 2:8

---
**3**
---

**3** 11:14 25:14,15
**301** 1:23
**31** 23:2
**325** 1:17 2:3
**33** 13:6
**34** 13:7,7,8,10
**35** 13:10
**379-4800** 2:12

---
**4**
---

**4** 3:4 26:7,19
**410-1313** 1:25
**410-4040** 1:24
**4802** 1:2

---
**5**
---

**5** 24:3 26:23
**514-1200** 2:4

---
**6**
---

**622-3333** 2:16

---
**7**
---

**7** 3:10

---
**9**
---

**9:50** 1:19
**973** 1:24,25 2:4,8,12
2:16

**EXHIBIT "B"**

```
1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
2               CASE NO. 06 CIV. 4802 (DMC)

3    - - - - - - - - -
     MERRILL LYNCH BUSINESS         :
4    FINANCIAL SERVICES, INC.,      :
                                    :
5              Plaintiff,           :   DEPOSITION OF:
                                    :
6                                   :   ARTHUR KUPPERMAN
          -vs-                      :
7                                   :
                                    :
8    ARTHUR KUPPERMAN, E. ROSS      :
     BROWNE, PAULETTE KRELMAN       :
9    and PGB INTERNATIONAL LLC,     :
                                    :
10             Defendants           :
     - - - - - - - - - - -
11

12

13

14   B E F O R E:

15      THERESA GARRITY, a Certified Shorthand Reporter and

16   Notary Public of the State of New Jersey at the

17   offices of BRESSLER, AMERY & ROSS, ESQS, 325 Columbia

18   Turnpike, Florham Park, New Jersey, on October 23, 2006,

19   commencing at 10:45 a.m., pursuant to Notice.

20

21

22        REPORTING SERVICES ARRANGED THROUGH

23      VERITEXT/NEW JERSEY REPORTING COMPANY
             25B Vreeland Road, Suite 301
24        Florham Park, New Jersey   07932
              TEL:  No. (973) 410-4040
25             Fax:  (973) 410-1313
```

Page 2:

1 A P P E A R A N C E S:
2 BRESSLER, AMERY & ROSS, P.C.
  BY: GEORGE R. HIRSCH, ESQ.
3 325 Columbia Turnpike
  Florham Park, New Jersey 07932
4 (973) 514-1200
  E-mail: ghirsch@bressler.com
5 Attorneys for Plaintiff
6 HERRICK, FEINSTEIN, L.L.P.
  BY: JOHN M. AUGUST, ESQ.
7 One Gateway Center
  Newark, New Jersey 07102
8 (973) 274-2529
  E-mail: jaugust@herrick.com
9 Attorneys for Defendant J.P. Morgan Chase Bank
10 BUDD LARNER, P.C.
  BY: A. MICHAEL COVINO, ESQ.
11 150 John F. Kennedy Parkway
  Short Hills, New Jersey 07078
12 (973) 379-4800
  E-mail: mcovino@budd-larner.com
13 Attorneys for PGB International and Arthur
  Kupperman individually
14
  SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, L.L.C.
15 BY: VINCENT F. PAPALIA, ESQ.
  One Gateway Center, 13th floor
16 Newark, New Jersey 07102-5311
  (973) 622-3333
17 Email: vfp@saiber.com
  Attorneys for E. Ross Browne
18
19
20
21
22
23
24
25

Page 3:

                    I N D E X

2 WITNESS          DIRECT CROSS REDIRECT
3 Arthur Kupperman
4   By Mr. Hirsch    6      24
    By Mr. August          19
5
6
7
8        E X H I B I T S
9 IDENT.     DESCRIPTION              PAGE
10 Kupperman-1  Declaration        4
11 Kupperman-2  Promissory note             18
12 Kupperman-3  Security Agreement          18
13 Kupperman-4  Borrowing Base Summary      18
14 Kupperman-5  PGB Accountant's Review
          Report containing balance
15        sheets, income statements    18
16
17
18
19
20
21
22
23
24
25

Page 4:

1 A R T H U R  K U P P E R M A N, 43 Hampshire Drive,
2 Mendham, New Jersey 07945, having been first duly
3 sworn according to law, testified as follows:
4
5       MR. HIRSCH: This is the deposition of
6 Mr. Kupperman individually, and the deposition of PGB
7 International, L.L.C., by Mr. Kupperman as PGB's
8 designated representative for purposes of the
9 deposition. Is that correct, Mr. Covino?
10       MR. COVINO: Yes.
11       MR. HIRSCH: And similar to the
12 agreement we had with regard to Mr. Browne and I asked
13 you to mark that section so we can reference it here,
14 we have the identical declaration for Mr. Kupperman.
15 Is that correct?
16       MR. COVINO: Yes, that's correct,
17 except that his name is different. Otherwise, it's
18 identical.
19       MR. HIRSCH: Correct. Did he sign it
20 yet?
21       MR. COVINO: No.
22       MR. HIRSCH: And this will be marked
23 Kupperman-1.
24       (Kupperman-1 is marked for
25 identification.)

Page 5:

1       MR. COVINO: That's right. And I just
2 want to reiterate what Mr. Papalia said with regard to
3 his client. Obviously, he's taking the Fifth
4 Amendment today on the advice of counsel and it's for
5 now. He may at some point decide to change that and
6 we understand you reserve all rights as to that as do
7 we and to the extent, obviously, that it has in there
8 that there's any implication that there will be a
9 negative inference based upon his taking the Fifth
10 Amendment, we reserve all rights as to argue,
11 obviously, that that should not be the case.
12       MR. HIRSCH: Okay.
13       MR. COVINO: Fair?
14       MR. HIRSCH: Yes. The purpose, just so
15 it's -- the purpose of this declaration is essentially
16 the same, to save time. As I've stated, I don't wish
17 it to be argued that I can't take the position that I
18 ask the question and so it's deemed -- it's deemed
19 that I've asked everything I could ask, but other than
20 that, it's he's invoking his Fifth Amendment privilege
21 in response to any questions and whatever -- at this
22 time, and whatever inferences, rights, arguments that
23 anyone has are preserved.
24       MR. COVINO: Correct.
25       MR. HIRSCH: The one that is not

2 (Pages 2 to 5)

1 preserved is that you can't say, well, but you didn't
2 ask that specific question.
3          MR. COVINO:  Correct.
4          MR. HIRSCH:  And that is in exchange
5 for the time saver.  That's where we get along here
6 and he understands the -- strike that.  And this
7 applies both as to Mr. Kupperman, and since it's not
8 clear here, this applies both as to Mr. Kupperman
9 individually and as to PGB.
10          MR. COVINO:  Yes.
11
12 DIRECT EXAMINATION BY MR. HIRSCH:
13    Q.    Mr. Kupperman, are you a -- do you hold
14 an interest in PGB?
15 A.    On advice of counsel, I decline to answer the
16 question at this time and assert my Fifth Amendment
17 rights.
18          MR. HIRSCH:  Can we stipulate he can
19 just say "same answer"?
20          MR. COVINO:  Yes, we can, by saying
21 "same answer," he's obviously referring to the
22 statement that he just made.
23          MR. HIRSCH:  Correct.
24    Q.    And do you participate in the operation
25 of PGB?

1 A.    Same answer.
2    Q.    How is it that you're authorized to
3 speak on behalf of PGB?
4 A.    Same answer.
5    Q.    Mr. Kupperman, did you bring with you
6 any documents to produce today?
7 A.    Same answer.
8          MR. COVINO:  I have some documents.
9          MR. HIRSCH:  What do you have,
10 Mr. Covino?
11          MR. COVINO:  Well, again, similar to
12 what Mr. Papalia asked for, we would ask for the same
13 confidentiality agreement.  Today, I have for you some
14 mortgage documents, some insurance policies, and we're
15 also prepared to produce Mr. Kupperman's tax returns
16 for you to look at.
17          MR. HIRSCH:  Okay.  I have no problem
18 with the same stipulation.  Let me take a look now and
19 then I will arrange for copying.
20          MR. COVINO:  I assume counsel for Chase
21 has no problem with the same situation.
22          MR. AUGUST:  I will agree to the same
23 stipulation, yes.
24          MR. COVINO:  These are being produced
25 on behalf of Mr. Kupperman personally.  We are also

1 producing, as I told you in a letter I wrote to you
2 last week, documents on behalf of PGB at PGB's
3 offices.  Subject to the Court's order, we cannot
4 remove documents from those offices.
5          MR. HIRSCH:  And how about Pittra
6 documents?  Where are the Pittra documents?
7          MR. COVINO:  I think that to the extent
8 that we would have them, we would produce them.  I
9 will tell you we have not had a chance to go through
10 all the documents in the office at this point.
11          MR. HIRSCH:  Well, because the -- if I
12 recall correctly, the Bankruptcy Schedule and
13 Statement of Affairs in the question where are the
14 financial records of Pittra located, if I recall
15 correctly, and we can obviously check this, but I
16 believe the answer referred to your firm and/or
17 Mr. Kupperman, so.
18          MR. COVINO:  Okay, I don't know what it
19 referred to.
20          MR. HIRSCH:  Okay.  Well, before you
21 leave here, we'll establish that.
22          MR. COVINO:  That's fine.
23          MR. HIRSCH:  But the point is, where
24 are the Pittra documents and when are they being
25 produced?  Mr. Covino, where are the Pittra documents

1 and when are they being produced?
2          MR. COVINO:  I believe that there's
3 some Pittra documents located at the office at 6 South
4 Street.  When are they being produced?  When we get to
5 go through them and part of that may depend upon
6 whether we're still counsel for the company after
7 tomorrow.
8          MR. HIRSCH:  What's the status of the
9 E-mails?
10          MR. COVINO:  We have not looked at the
11 E-mails yet.
12          MR. HIRSCH:  So other than the
13 approximately half-inch of documents that you're
14 producing at this time on behalf of Mr. Kupperman
15 individually, there is no other production being made
16 at this time for Mr. Kupperman or Pittra.  And PGB,
17 the documents are at the offices.
18          MR. COVINO:  Yes.
19 BY MR. HIRSCH:
20    Q.    Mr. Kupperman, did Pittra borrow money
21 from Merrill Lynch Business Financial Services, Inc.?
22 A.    Same answer.
23    Q.    Did you sign documents in connection
24 with your extension of credit by Merrill Lynch
25 Business Financial Services, Inc., to Pittra?

1 A.   Same answer.
2    Q.   And did you do so in or about November
3 of 2002?
4 A.   Same answer.
5    Q.   Did you sign any documents in any
6 capacity which were provided to Merrill Lynch Business
7 Financial Services, Inc. --
8 A.   Same answer.
9    Q.   Let me finish the question.
10 A.   Sure.
11    Q.   -- at any time?
12 A.   Same answer.
13    Q.   Including and specifically did you
14 provide any -- did you sign any documents which you
15 provided to Merrill Lynch Business Financial Services,
16 Inc., in any of the following dates:  November of
17 2002?
18 A.   Same answer.
19    Q.   January of 2003?
20 A.   Same answer.
21    Q.   January of 2004?
22 A.   Same answer.
23    Q.   April of 2004?
24 A.   Same answer.
25    Q.   March of 2004?

1 A.   Same answer.
2    Q.   May of 2004?
3 A.   Same answer.
4    Q.   July of 2005?
5 A.   Same answer.
6    Q.   September of 2005?
7 A.   Same answer.
8    Q.   July of 2006?
9 A.   Same answer.
10    Q.   September of 2006?
11 A.   Same answer.
12    Q.   At any other time?
13 A.   Same answer.
14    Q.   Did you participate in providing any
15 false or fraudulent documents to Merrill Lynch
16 Business Financial Services, Inc.?
17 A.   Same answer.
18    Q.   Did you participate in providing false
19 or fraudulent financial statements to Merrill Lynch
20 Business Financial Services, Inc.?
21 A.   Same answer.
22    Q.   Did you participate in providing false
23 or fraudulent attorney opinion letters to Merrill
24 Lynch Business Financial Services, Inc.?
25 A.   Same answer.

1    Q.   Did you provide to Merrill Lynch
2 Business Financial Services, Inc., an unconditional
3 personal guaranty of obligations owed by Pittra?
4 A.   Same answer.
5    Q.   I'm showing you a document that is part
6 of Exhibit J to the Verified Complaint, which says at
7 the top, Unconditional Guaranty and, at the bottom,
8 date of May 28, 2004, and typed under signature line,
9 the name Arthur Kupperman, and I'm asking you if that
10 is your signature?
11 A.   Same answer.
12    Q.   Did Amper, Politziner & Mattia audit
13 the finances of Pittra for the year ended
14 September 30, 2004?
15 A.   Same answer.
16    Q.   Did they do so at any time?
17 A.   Same answer.
18    Q.   Did you provide personal financial
19 statements at any time to Merrill Lynch Business
20 Financial Services, Inc.?
21 A.   Same answer.
22    Q.   I'm going to show you a document that's
23 part of Exhibit P to the Verified Complaint.  It's a
24 personal financial statement with a handwritten date
25 on it of May 26, 2005.  And there is a signature at

1 the -- on page 3 and ask if that's your signature?
2 A.   Same answer.
3    Q.   Did Amper, Politziner & Mattia audit
4 the finances of Pittra for the year ended
5 September 30, 2005?
6 A.   Same answer.
7    Q.   Were assets of Pittra transferred to
8 PGB at any time, PGB International, L.L.C., at any
9 time?
10 A.   Same answer.
11    Q.   When did that occur?
12 A.   Same answer.
13    Q.   Did you sign the bankruptcy petition of
14 Pittra that was filed in or about February of 2006?
15 A.   Same answer.
16    Q.   Did Pittra conduct business following
17 approximate August or September of 2003?
18 A.   Same answer.
19    Q.   Where is the money that Pittra borrowed
20 from Merrill Lynch Business Financial Services, Inc.?
21 A.   Same answer.
22    Q.   Did you cause the money that Pittra
23 borrowed from Merrill Lynch Business Financial
24 Services, Inc., to be moved out of the United States
25 of America?

1 A.   Same answer.
2    Q.    Where did you cause it to be moved?
3 A.   Same answer.
4    Q.    Did you cause any of your personal --
5 strike that.
6         Did you cause any assets of Pittra to
7 be moved out of the United States of America at any
8 time?
9 A.   Same answer.
10   Q.    Did you cause any assets of PGB to be
11 moved out of the United States of America at any time?
12 A.   Same answer.
13   Q.    On how many occasions since November of
14 2002 have you traveled outside the United States of
15 America?
16 A.   Same answer.
17   Q.    Do you own or do you have any interest
18 whatsoever in any real property outside the United
19 States of America?
20 A.   Same answer.
21   Q.    Do you have any interest whatsoever in
22 any assets outside the United States of America?
23 A.   Same answer.
24   Q.    Do you have control over or the ability
25 in any way to cause the disposition of any assets

1 located outside the United States of America?
2 A.   Same answer.
3    Q.    Why were the assets of Pittra
4 transferred to PGB in or about some time in 2003?
5 A.   Same answer.
6    Q.    At the time of that transfer, were any
7 funds placed in the -- in any attorney trust account?
8 A.   Same answer.
9    Q.    Were PGB funds or Pittra funds placed
10 in any attorney trust account at any time after June
11 of 2003?
12 A.   Same answer.
13   Q.    Did you direct that wire transfers be
14 made from an account at Budd Larner into Pittra's
15 account with Merrill Lynch Business Financial
16 Services, Inc., at any time?
17 A.   Same answer.
18   Q.    Is Budd Larner your personal attorneys?
19 A.   Same answer.
20   Q.    Was Budd Larner at any time Pittra's
21 attorneys?
22 A.   Same answer.
23   Q.    Was Budd Larner at any time PGB's
24 attorneys?
25 A.   Same answer.

1    Q.    Where are the Pittra business records?
2 A.   Same answer.
3    Q.    Were you ever convicted of a crime?
4 A.   Same answer.
5    Q.    When?
6 A.   Same answer.
7    Q.    What was the crime?
8 A.   Same answer.
9    Q.    What was your sentence?
10 A.   Same answer.
11   Q.    Are you related to Michael Rosenbaum?
12 A.   Same answer.
13   Q.    What is GB International, Inc.?
14 A.   Same answer.
15   Q.    Are any of the records of PGB
16 fraudulent?
17 A.   Same answer.
18   Q.    Are any of the assets of PGB -- I just
19 don't remember if I asked this so I apologize --
20 transferred outside the United States?
21       MR. COVINO:  You did ask.
22 A.   Same answer.
23   Q.    Who is Paulette Krelman?
24 A.   Same answer.
25   Q.    Do you live with Paulette Krelman?

1 A.   Same answer.
2    Q.    How long have you lived with Paulette
3 Krelman?
4 A.   Same answer.
5    Q.    Is Paulette Krelman aware of the frauds
6 you've committed in relation to PGB and Pittra?
7 A.   Same answer.
8    Q.    Did she participate in those frauds?
9 A.   Same answer.
10       MR. COVINO:  I'm going to object to the
11 form of the question to the extent you're using the
12 word "frauds."  I think fraud's a legal conclusion.
13       MR. HIRSCH:  Yeah.
14       MR. COVINO:  I'm just objecting to the
15 form of the question.  That's all.
16       MR. HIRSCH:  Okay.  I'm going to --
17 I'll re-ask the questions.
18   Q.    Did Paulette Krelman participate in
19 presentation of false or fraudulent or forged
20 documents to Merrill Lynch Business Financial
21 Services, Inc.?
22       MR. COVINO:  Object to the use of the
23 word "fraudulent."
24   Q.    Did Paulette Krelman participate in the
25 presentation of false and/or forged documents to

1 Merrill Lynch Business Financial Services, Inc.?
2 A.    Same answer.
3          MR. HIRSCH:  Can I have a moment with
4 Mr. August.
5          (There is a recess.)
6          MR. HIRSCH:  Subject to anything that
7 might occur to me --
8          MR. COVINO:  You're moving on to John.
9          MR. HIRSCH:  Well, I'm going to get the
10 stipulations -- the declaration says I'm going to get
11 the same answer to anything else that I might ask, so.
12          MR. COVINO:  Correct.
13          MR. HIRSCH:  Why should I waste
14 everybody's time?
15          MR. COVINO:  That was the point of
16 signing the statement.
17          MR. HIRSCH:  I satisfied myself that
18 he's not going to answer anything.  I took my shot and
19 he didn't change his mind one way.
20          MR. PAPALIA:  No.
21          MR. COVINO:  It's all you, John.
22          MR. AUGUST:  Theresa, can you mark
23 these Kupperman-2 through 5.
24          (Kupperman-2 through 5 are marked for
25 identification.)

1 CROSS-EXAMINATION BY MR. AUGUST:
2    Q.    Mr. Kupperman my name is John August.
3 I represent J.P. Morgan Chase Bank NA.  I just want to
4 put on the record, this isn't a question, but since
5 the declaration does cover any deposition in this
6 action and I'm also deemed to have asked everything
7 that I could ask in this deposition, that being said,
8 I'm going to ask a few questions.
9          Mr. Kupperman, are you aware that PGB
10 International L.L.C. borrowed money from J.P. Morgan
11 Chase Bank NA?
12 A.    Same response.
13    Q.    I'm going to show you what's been
14 marked as Kupperman-2.  Can you take a look and tell
15 me if you recognize that document?
16 A.    Same response.
17    Q.    On the next to last page of that
18 document, there is a signature.  Can you tell me if
19 that's your signature?
20 A.    Same response.
21    Q.    I'm going to show you what has been
22 marked as Kupperman No. 3.  Can you take a look and
23 tell me if you recognize that document?
24 A.    Same response.
25    Q.    On the next to last page of that

1 document, there is a signature.  Can you tell me if
2 that is your signature?
3 A.    Same response.
4          MR. HIRSCH:  For the record, "same
5 response" means the same as "same answer"?
6          THE WITNESS:  Yes, I'm sorry.
7          MR. COVINO:  He's asserting his Fifth
8 Amendment right.
9          MR. HIRSCH:  It refers back to that
10 statement that he was reading.
11          MR. COVINO:  Correct.
12          MR. HIRSCH:  Okay.
13 BY MR. AUGUST:
14    Q.    Mr. Kupperman, did you provide any
15 false or fraudulent documents to J.P. Morgan Chase
16 Bank in connection with this loan to PGB?
17          MR. COVINO:  Object to the form of the
18 question.
19    Q.    You can answer.
20 A.    Same response.  Same answer.
21    Q.    Did you provide false or fraudulent
22 borrowing base certificates to J.P. Morgan Chase Bank
23 in connection with this loan to PGB?
24 A.    Same response.
25          MR. COVINO:  Object to the form of the

1 question.
2          MR. AUGUST:  Okay, it's noted.  Then
3 you can answer.
4 A.    Same response.
5    Q.    I'm going to show you what's been
6 marked as Kupperman No. 4.  Can you take a look at
7 that and tell me if you recognize that document?
8 A.    Same response.
9    Q.    On page 3 of that document, there is a
10 signature line that has typed under it the name Arthur
11 Kupperman.  Can you tell me if that is your signature
12 above that typed name?
13 A.    Same response.
14    Q.    If you could just show the witness the
15 document again, if you could turn to page 2 of that
16 document, please.  Page 2 indicates that, as of
17 August 31, 2006, PGB had total net accounts receivable
18 of $8,067,945.59.  Were they the actual receivables of
19 PGB as of August 31, 2006?
20 A.    Same response.
21    Q.    Did you falsify the amount of the
22 receivables on this borrowing base certificate?
23 A.    Same response.
24    Q.    Did Mr. -- do Mr. Browne or Ms. Krelman
25 know that you falsified the amount of receivables on

1 this borrowing base certificate?

2      MR. HIRSCH: Objection to the form of

3 the question.

4      MR. PAPALIA: Object to the form of the

5 question.

6      MR. HIRSCH: I'm going to explain -- if

7 you want, I'll explain my objection. My objection is

8 that that assumes that Mr. Kupperman did the

9 falsification and did so on his own.

10      MR. AUGUST: All right. Let me

11 rephrase the question.

12      MR. HIRSCH: And I think Mr. Papalia

13 had a different objection. I think his objection was

14 that he had the two people, so it was compound.

15      MR. PAPALIA: It was just also -- that

16 wasn't really the only objection.

17      MR. AUGUST: Let me rephrase the

18 question.

19 BY MR. AUGUST:

20   Q.   Again, looking at the amount of total

21 net accounts receivable on page 2 of Kupperman-3 -- or

22 is that Kupperman-4?

23      MR. COVINO: Four.

24   Q.   You know what? Strike that question.

25      If I showed you all of the borrowing

1 base certificates that were provided to Chase in

2 connection with the PGB loan and asked the same

3 questions, would your answers be the same?

4 A.   Same response.

5   Q.   I'm going to show you what's been

6 marked as Kupperman-5. Can you take a look at that

7 document and tell me if you recognize it?

8 A.   Same response.

9   Q.   Did you provide that document to J.P.

10 Morgan Chase Bank in connection with the loan to PGB?

11 A.   Same response.

12   Q.   Can you turn to page 2 of that

13 document, please. And in the column for as of

14 September 2005, there's an amount of accounts

15 receivable set forth of $9,346,248. Were they the

16 accounts receivable of PGB as of September 30, 2005?

17 A.   Same response.

18   Q.   Are there currently goods that PGB has

19 prepaid for that are either on the water or sitting at

20 the dock waiting to be picked up?

21 A.   Same response.

22   Q.   Are you an authorized signatory for

23 PGB?

24 A.   Same response.

25      MR. AUGUST: I have no further

1 questions.

2      MR. HIRSCH: I just want to go back a

3 second.

4

5 REDIRECT EXAMINATION BY MR. HIRSCH:

6   Q.   Mr. Kupperman, did you participate in

7 providing to Merrill Lynch Business Financial

8 Services, Inc., borrowing base certificates on behalf

9 of Pittra?

10 A.   Same response.

11   Q.   Were the borrowing base certificates

12 that you participated in providing on behalf of Pittra

13 to Merrill Lynch Business Financial Services, Inc.,

14 false?

15 A.   Same response.

16   Q.   Would your response be the same as to

17 if I showed you all of the borrowing base

18 certificates?

19 A.   Same response.

20      MR. HIRSCH: I have nothing further.

21      MR. COVINO: Thank you.

22      (The deposition was concluded at

23 11:30 a.m.)

24

25

1      C E R T I F I C A T E

2

3

4      I, THERESA GARRITY, a Certified Shorthand

5 Reporter of the State of New Jersey, do hereby state

6 that prior to the examination of the witness was sworn

7 by me to testify the truth, the whole truth and

8 nothing but the truth.

9      I DO FURTHER CERTIFY that the foregoing is a

10 true and accurate transcript of the testimony as taken

11 stenographically by and before me at the time, place

12 and on the date hereinbefore set forth.

13      I DO FURTHER CERTIFY that I am neither of

14 counsel nor attorney for any party in this action and

15 that I am not interested in the event nor outcome of

16 this litigation.

17

18

19

20

21

22

23

     Notary Public of the State of New Jersey

24      LICENSE NO. XIO1129

25

7 (Pages 22 to 25)

**A**

**ability** 14:24
**account** 15:7,10,14
  15:15
**Accountant's** 3:14
**accounts** 21:17 22:21
  23:14,16
**accurate** 25:10
**action** 19:6 25:14
**actual** 21:18
**advice** 5:4 6:15
**Affairs** 8:13
**agree** 7:22
**agreement** 3:12 4:12
  7:13
**Amendment** 5:4,10
  5:20 6:16 20:8
**America** 13:25 14:7
  14:11,15,19,22 15:1
**AMERY** 1:17 2:2
**amount** 21:21,25
  22:20 23:14
**Amper** 12:12 13:3
**and/or** 8:16 17:25
**answer** 6:15,19,21
  7:1,4,7 8:16 9:22
  10:1,4,8,12,18,20
  10:22,24 11:1,3,5,7
  11:9,11,13,17,21,25
  12:4,11,15,17,21
  13:2,6,10,12,15,18
  13:21 14:1,3,9,12
  14:16,20,23 15:2,5
  15:8,12,17,19,22,25
  16:2,4,6,8,10,12,14
  16:17,22,24 17:1,4
  17:7,9 18:2,11,18
  20:5,19,20 21:3
**answers** 23:3
**apologize** 16:19
**applies** 6:7,8
**approximate** 13:17
**approximately** 9:13
**April** 10:23
**argue** 5:10
**argued** 5:17
**arguments** 5:22
**arrange** 7:19

**ARRANGED** 1:22
**Arthur** 1:6,8 2:13 3:3
  12:9 21:10
**asked** 4:12 5:19 7:12
  16:19 19:6 23:2
**asking** 12:9
**assert** 6:16
**asserting** 20:7
**assets** 13:7 14:6,10
  14:22,25 15:3 16:18
**assume** 7:20
**assumes** 22:8
**attorney** 11:23 15:7
  15:10 25:14
**attorneys** 2:5,9,13,17
  15:18,21,24
**audit** 12:12 13:3
**August** 2:6 3:4 7:22
  13:17 18:4,22 19:1
  19:2 20:13 21:2,17
  21:19 22:10,17,19
  23:25
**authorized** 7:2 23:22
**aware** 17:5 19:9
**a.m** 1:19 24:23

**B**

**B** 1:14 3:8
**back** 20:9 24:2
**balance** 3:14
**Bank** 2:9 19:3,11
  20:16,22 23:10
**bankruptcy** 8:12
  13:13
**base** 3:13 20:22 21:22
  22:1 23:1 24:8,11
  24:17
**based** 5:9
**behalf** 7:3,25 8:2
  9:14 24:8,12
**believe** 8:16 9:2
**borrow** 9:20
**borrowed** 13:19,23
  19:10
**borrowing** 3:13
  20:22 21:22 22:1,25
  24:8,11,17
**bottom** 12:7
**BRESSLER** 1:17 2:2

**bring** 7:5
**Browne** 1:8 2:17 4:12
  21:24
**Budd** 2:10 15:14,18
  15:20,23
**business** 1:3 9:21,25
  10:6,15 11:16,20,24
  12:2,19 13:16,20,23
  15:15 16:1 17:20
  18:1 24:7,13

**C**

**C** 2:1 25:1,1
**can't** 5:17 6:1
**capacity** 10:6
**case** 1:2 5:11
**cause** 13:22 14:2,4,6
  14:10,25
**Center** 2:7,15
**certificate** 21:22 22:1
**certificates** 20:22
  23:1 24:8,11,18
**Certified** 1:15 25:4
**CERTIFY** 25:9,13
**chance** 8:9
**change** 5:5 18:19
**Chase** 2:9 7:20 19:3
  19:11 20:15,22 23:1
  23:10
**check** 8:15
**CIV** 1:2
**clear** 6:8
**client** 5:3
**Columbia** 1:17 2:3
**column** 23:13
**commencing** 1:19
**committed** 17:6
**company** 1:23 9:6
**Complaint** 12:6,23
**compound** 22:14
**concluded** 24:22
**conclusion** 17:12
**conduct** 13:16
**confidentiality** 7:13
**connection** 9:23
  20:16,23 23:2,10
**containing** 3:14
**control** 14:24
**convicted** 16:3

**copying** 7:19
**correct** 4:9,15,16,19
  5:24 6:3,23 18:12
  20:11
**correctly** 8:12,15
**counsel** 5:4 6:15 7:20
  9:6 25:14
**COURT** 1:1
**Court's** 8:3
**cover** 19:5
**Covino** 2:10 4:9,10
  4:16,21 5:1,13,24
  6:3,10,20 7:8,10,11
  7:20,24 8:7,18,22
  8:25 9:2,10,18
  16:21 17:10,14,22
  18:8,12,15,21 20:7
  20:11,17,25 22:23
  24:21
**credit** 9:24
**crime** 16:3,7
**CROSS** 3:2
**CROSS-EXAMIN...**
  19:1
**currently** 23:18

**D**

**D** 3:1
**date** 12:8,24 25:12
**dates** 10:16
**decide** 5:5
**declaration** 3:10 4:14
  5:15 18:10 19:5
**decline** 6:15
**deemed** 5:18,18 19:6
**Defendant** 2:9
**Defendants** 1:10
**depend** 9:5
**deposition** 1:5 4:5,6,9
  19:5,7 24:22
**DESCRIPTION** 3:9
**designated** 4:8
**didn't** 6:1 18:19
**different** 4:17 22:13
**direct** 3:2 6:12 15:13
**disposition** 14:25
**DISTRICT** 1:1,1
**DMC** 1:2
**dock** 23:20

**document** 12:5,22
19:15,18,23 20:1
21:7,9,15,16 23:7,9
23:13
**documents** 7:6,8,14
8:2,4,6,6,10,24,25
9:3,13,17,23 10:5
10:14 11:15 17:20
17:25 20:15
**don't** 5:16 8:18 16:19
**Drive** 4:1
**duly** 4:2

**E**

**E** 1:8,14,14 2:1,1,17
3:1,8 4:1 25:1,1
**either** 23:19
**Email** 2:17
**ended** 12:13 13:4
**ESQ** 2:2,6,10,15
**ESQS** 1:17
**essentially** 5:15
**establish** 8:21
**event** 25:15
**everybody's** 18:14
**examination** 6:12
24:5 25:6
**exchange** 6:4
**Exhibit** 12:6,23
**explain** 22:6,7
**extension** 9:24
**extent** 5:7 8:7 17:11
**E-mail** 2:4,8,12
**E-mails** 9:9,11

**F**

**F** 1:14 2:11,15 25:1
**Fair** 5:13
**false** 11:15,18,22
17:19,25 20:15,21
24:14
**falsification** 22:9
**falsified** 21:25
**falsify** 21:21
**Fax** 1:25
**February** 13:14
**FEINSTEIN** 2:6
**Fifth** 5:3,9,20 6:16
20:7

**filed** 13:14
**finances** 12:13 13:4
**financial** 1:4 8:14
9:21,25 10:7,15
11:16,19,20,24 12:2
12:18,20,24 13:20
13:23 15:15 17:20
18:1 24:7,13
**fine** 8:22
**finish** 10:9
**firm** 8:16
**first** 4:2
**floor** 2:15
**Florham** 1:18,24 2:3
**following** 10:16
13:16
**follows** 4:3
**foregoing** 25:9
**forged** 17:19,25
**form** 17:11,15 20:17
20:25 22:2,4
**forth** 23:15 25:12
**Four** 22:23
**frauds** 17:5,8,12
**fraudulent** 11:15,19
11:23 16:16 17:19
17:23 20:15,21
**fraud's** 17:12
**funds** 15:7,9,9
**further** 23:25 24:20
25:9,13

**G**

**GARRITY** 1:15 25:4
**Gateway** 2:7,15
**GB** 16:13
**GEORGE** 2:2
**ghirsch@bressler....**
2:4
**go** 8:9 9:5 24:2
**going** 12:22 17:10,16
18:9,10,18 19:8,13
19:21 21:5 22:6
23:5
**GOLDSTEIN** 2:14
**goods** 23:18
**guaranty** 12:3,7

**H**

**H** 3:8 4:1
**half-inch** 9:13
**Hampshire** 4:1
**handwritten** 12:24
**hereinbefore** 25:12
**HERRICK** 2:6
**he's** 5:3,20 6:21
18:18 20:7
**Hills** 2:11
**Hirsch** 2:2 3:4 4:5,11
4:19,22 5:12,14,25
6:4,12,18,23 7:9,17
8:5,11,20,23 9:8,12
9:19 17:13,16 18:3
18:6,9,13,17 20:4,9
20:12 22:2,6,12
24:2,5,20
**hold** 6:13

**I**

**IDENT** 3:9
**identical** 4:14,18
**identification** 4:25
18:25
**implication** 5:8
**Including** 10:13
**income** 3:15
**indicates** 21:16
**individually** 2:13 4:6
6:9 9:15
**inference** 5:9
**inferences** 5:22
**insurance** 7:14
**interest** 6:14 14:17
14:21
**interested** 25:15
**International** 1:9
2:13 4:7 13:8 16:13
19:10
**invoking** 5:20
**isn't** 19:4
**it's** 4:17 5:4,15,18,18
5:20 6:7 12:23
18:21 21:2
**I'll** 17:17 22:7
**I'm** 12:5,9,22 17:10
17:14,16 18:9,10
19:6,8,13,21 20:6
21:5 22:6 23:5

**I've** 5:16,19

**J**

**J** 12:6
**January** 10:19,21
**jaugust@herrick.c...**
2:8
**Jersey** 1:1,16,18,23
1:24 2:3,7,11,16 4:2
25:5,23
**John** 2:6,11 18:8,21
19:2
**July** 11:4,8
**June** 15:10
**J.P** 2:9 19:3,10 20:15
20:22 23:9

**K**

**K** 4:1
**Kennedy** 2:11
**know** 8:18 21:25
22:24
**Krelman** 1:8 16:23
16:25 17:3,5,18,24
21:24
**Kupperman** 1:6,8
2:13 3:3 4:6,7,14
6:7,8,13 7:5,25 8:17
9:14,16,20 12:9
19:2,9,22 20:14
21:6,11 22:8 24:6
**Kupperman's** 7:15
**Kupperman-1** 3:10
4:23,24
**Kupperman-2** 3:11
18:23,24 19:14
**Kupperman-3** 3:12
22:21
**Kupperman-4** 3:13
22:22
**Kupperman-5** 3:14
23:6

**L**

**Larner** 2:10 15:14,18
15:20,23
**law** 4:3
**leave** 8:21
**legal** 17:12

letter 8:1
letters 11:23
LICENSE 25:24
line 12:8 21:10
litigation 25:16
live 16:25
lived 17:2
LLC 1:9
loan 20:16,23 23:2,10
located 8:14 9:3 15:1
long 17:2
look 7:16,18 19:14,22
21:6 23:6
looked 9:10
looking 22:20
Lynch 1:3 9:21,24
10:6,15 11:15,19,24
12:1,19 13:20,23
15:15 17:20 18:1
24:7,13
L.L.C 2:14 4:7 13:8
19:10
L.L.P 2:6

**M**

M 2:6 4:1
March 10:25
mark 4:13 18:22
marked 4:22,24
18:24 19:14,22 21:6
23:6
Mattia 12:12 13:3
mcovino@budd-la...
2:12
means 20:5
Mendham 4:2
Merrill 1:3 9:21,24
10:6,15 11:15,19,23
12:1,19 13:20,23
15:15 17:20 18:1
24:7,13
Michael 2:10 16:11
mind 18:19
moment 18:3
money 9:20 13:19,22
19:10
Morgan 2:9 19:3,10
20:15,22 23:10
mortgage 7:14

moved 13:24 14:2,7
14:11
moving 18:8

**N**

N 2:1 3:1 4:1
name 4:17 12:9 19:2
21:10,12
negative 5:9
neither 25:13
net 21:17 22:21
New 1:1,16,18,24 2:3
2:7,11,16 4:2 25:5
25:23
Newark 2:7,16
Notary 1:16 25:23
note 3:11
noted 21:2
Notice 1:19
November 10:2,16
14:13

**O**

O 1:14
object 17:10,22 20:17
20:25 22:4
objecting 17:14
objection 22:2,7,7,13
22:13,16
obligations 12:3
obviously 5:3,7,11
6:21 8:15
occasions 14:13
occur 13:11 18:7
October 1:18
office 8:10 9:3
offices 1:17 8:3,4
9:17
Okay 5:12 7:17 8:18
8:20 17:16 20:12
21:2
operation 6:24
opinion 11:23
order 8:3
outcome 25:15
outside 14:14,18,22
15:1 16:20
owed 12:3

**P**

P 2:1,1 4:1,1 12:23
page 3:9 13:1 19:17
19:25 21:9,15,16
22:21 23:12
Papalia 2:15 5:2 7:12
18:20 22:4,12,15
Park 1:18,24 2:3
Parkway 2:11
part 9:5 12:5,23
participate 6:24
11:14,18,22 17:8,18
17:24 24:6
participated 24:12
party 25:14
Paulette 1:8 16:23,25
17:2,5,18,24
people 22:14
personal 12:3,18,24
14:4 15:18
personally 7:25
petition 13:13
PGB 1:9 2:13 3:14
4:6 6:9,14,25 7:3
8:2 9:16 13:8,8
14:10 15:4,9 16:15
16:18 17:6 19:9
20:16,23 21:17,19
23:2,10,16,18,23
PGB's 4:7 8:2 15:23
picked 23:20
Pittra 8:5,6,14,24,25
9:3,16,20,25 12:3
12:13 13:4,7,14,16
13:19,22 14:6 15:3
15:9 16:1 17:6 24:9
24:12
Pittra's 15:14,20
place 25:11
placed 15:7,9
Plaintiff 1:5 2:5
please 21:16 23:13
point 5:5 8:10,23
18:15
policies 7:14
Politziner 12:12 13:3
position 5:17
prepaid 23:19

prepared 7:15
presentation 17:19
17:25
preserved 5:23 6:1
prior 25:6
privilege 5:20
problem 7:17,21
produce 7:6,15 8:8
produced 7:24 8:25
9:1,4
producing 8:1 9:14
production 9:15
Promissory 3:11
property 14:18
provide 10:14 12:1
12:18 20:14,21 23:9
provided 10:6,15
23:1
providing 11:14,18
11:22 24:7,12
Public 1:16 25:23
purpose 5:14,15
purposes 4:8
pursuant 1:19
put 19:4
P.C 2:2,10

**Q**

question 5:18 6:2,16
8:13 10:9 17:11,15
19:4 20:18 21:1
22:3,5,11,18,24
questions 5:21 17:17
19:8 23:3 24:1

**R**

R 1:14 2:1,2 4:1,1,1
25:1
reading 20:10
real 14:18
really 22:16
recall 8:12,14
receivable 21:17
22:21 23:15,16
receivables 21:18,22
21:25
recess 18:5
recognize 19:15,23
21:7 23:7

29

record 19:4 20:4
records 8:14 16:1,15
REDIRECT 3:2 24:5
reference 4:13
referred 8:16,19
referring 6:21
refers 20:9
regard 4:12 5:2
reiterate 5:2
related 16:11
relation 17:6
remember 16:19
remove 8:4
rephrase 22:11,17
Report 3:14
Reporter 1:15 25:5
REPORTING 1:22
　1:23
represent 19:3
representative 4:8
reserve 5:6,10
response 5:21 19:12
　19:16,20,24 20:3,5
　20:20,24 21:4,8,13
　21:20,23 23:4,8,11
　23:17,21,24 24:10
　24:15,16,19
returns 7:15
Review 3:14
re-ask 17:17
right 5:1 20:8 22:10
rights 5:6,10,22 6:17
Road 1:23
Rosenbaum 16:11
Ross 1:8,17 2:2,17

S

S 2:1 3:8
SAIBER 2:14
satisfied 18:17
SATZ 2:14
save 5:16
saver 6:5
saying 6:20
says 12:6 18:10
Schedule 8:12
SCHLESINGER
　2:14
second 24:3

section 4:13
Security 3:12
sentence 16:9
September 11:6,10
　12:14 13:5,17 23:14
　23:16
Services 1:4,22 9:21
　9:25 10:7,15 11:16
　11:20,24 12:2,20
　13:20,24 15:16
　17:21 18:1 24:8,13
set 23:15 25:12
sheets 3:15
Short 2:11
Shorthand 1:15 25:4
shot 18:18
show 12:22 19:13,21
　21:5,14 23:5
showed 22:25 24:17
showing 12:5
sign 4:19 9:23 10:5
　10:14 13:13
signatory 23:22
signature 12:8,10,25
　13:1 19:18,19 20:1
　20:2 21:10,11
signing 18:16
similar 4:11 7:11
sitting 23:19
situation 7:21
sorry 20:6
South 9:3
speak 7:3
specific 6:2
specifically 10:13
state 1:16 25:5,5,23
stated 5:16
statement 6:22 8:13
　12:24 18:16 20:10
statements 3:15
　11:19 12:19
States 1:1 13:24 14:7
　14:11,14,19,22 15:1
　16:20
status 9:8
stenographically
　25:11
stipulate 6:18
stipulation 7:18,23

stipulations 18:10
Street 9:4
strike 6:6 14:5 22:24
Subject 8:3 18:6
Suite 1:23
Summary 3:13
Sure 10:10
sworn 4:3 25:6

T

T 3:8 4:1 25:1,1
take 5:17 7:18 19:14
　19:22 21:6 23:6
taken 25:10
tax 7:15
TEL 1:24
tell 8:9 19:14,18,23
　20:1 21:7,11 23:7
testified 4:3
testify 25:7
testimony 25:10
Thank 24:21
that's 4:16 5:1 6:5
　8:22 12:22 13:1
　17:15 19:19
Theresa 1:15 18:22
　25:4
there's 5:8 9:2 23:14
think 8:7 17:12 22:12
　22:13
time 5:16,22 6:5,16
　9:14,16 10:11 11:12
　12:16,19 13:8,9
　14:8,11 15:4,6,10
　15:16,20,23 18:14
　25:11
today 5:4 7:6,13
told 8:1
tomorrow 9:7
top 12:7
total 21:17 22:20
transcript 25:10
transfer 15:6
transferred 13:7 15:4
　16:20
transfers 15:13
traveled 14:14
true 25:10
trust 15:7,10

truth 25:7,7,8
turn 21:15 23:12
Turnpike 1:18 2:3
two 22:14
typed 12:8 21:10,12

U

U 4:1,1
unconditional 12:2,7
understand 5:6
understands 6:6
United 1:1 13:24 14:7
　14:11,14,18,22 15:1
　16:20
use 17:22

V

Verified 12:6,23
VERITEXT/NEW
　1:23
vfp@saiber.com 2:17
VINCENT 2:15
Vreeland 1:23
vs 1:6

W

waiting 23:20
want 5:2 19:3 22:7
　24:2
wasn't 22:16
waste 18:13
water 23:19
way 14:25 18:19
week 8:2
we'll 8:21
we're 7:14 9:6
whatsoever 14:18,21
what's 9:8 19:13 21:5
　23:5
wire 15:13
wish 5:16
witness 3:2 20:6
　21:14 25:6
word 17:12,23
wrote 8:1

X

X 3:1,8
XIO1129 25:24

**Y**

**Yeah** 17:13
**year** 12:13 13:4
**you're** 7:2 9:13 17:11
  18:8
**you've** 17:6

**$**

**$8,067,945.59** 21:18
**$9,346,248** 23:15

**0**

**06** 1:2
**07078** 2:11
**07102** 2:7
**07102-5311** 2:16
**07932** 1:24 2:3
**07945** 4:2

**1**

**10:45** 1:19
**11:30** 24:23
**13th** 2:15
**150** 2:11
**18** 3:11,12,13,15
**19** 3:4

**2**

**2** 21:15,16 22:21
  23:12
**2002** 10:3,17 14:14
**2003** 10:19 13:17
  15:4,11
**2004** 10:21,23,25
  11:2 12:8,14
**2005** 11:4,6 12:25
  13:5 23:14,16
**2006** 1:18 11:8,10
  13:14 21:17,19
**23** 1:18
**24** 3:4
**25B** 1:23
**26** 12:25
**274-2529** 2:8
**28** 12:8

**3**

**3** 13:1 19:22 21:9
**30** 12:14 13:5 23:16

**301** 1:23
**31** 21:17,19
**325** 1:17 2:3
**379-4800** 2:12

**4**

**4** 3:10 21:6
**410-1313** 1:25
**410-4040** 1:24
**43** 4:1
**4802** 1:2

**5**

**5** 18:23,24
**514-1200** 2:4

**6**

**6** 3:4 9:3
**622-3333** 2:16

**9**

**973** 1:24,25 2:4,8,12
  2:16

# EXHIBIT "C"

1  UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF NEW JERSEY
2  CASE NO. 06 CIV. 4802 (DMC)

3  - - - - - - - - - -
   MERRILL LYNCH BUSINESS          :
4  FINANCIAL SERVICES, INC.,       :
                                   :
5          Plaintiff,              :   DEPOSITION OF:
                                   :
6                                  :   PAULETTE KRELMAN
       -vs-                        :
7                                  :
                                   :
8  ARTHUR KUPPERMAN, E. ROSS       :
   BROWNE, PAULETTE KRELMAN        :
9  and PGB INTERNATIONAL LLC,      :
                                   :
10         Defendants              :
   - - - - - - - - - - - -

11

12

13

14  B E F O R E :

15    THERESA GARRITY, a Certified Shorthand Reporter and

16  Notary Public of the State of New Jersey at the

17  offices of BRESSLER, AMERY & ROSS, ESQS, 325 Columbia

18  Turnpike, Florham Park, New Jersey, on October 23, 2006,

19  commencing at 6 p.m., pursuant to Notice.

20

21

22      REPORTING SERVICES ARRANGED THROUGH

23    VERITEXT/NEW JERSEY REPORTING COMPANY
            25B Vreeland Road, Suite 301
24      Florham Park, New Jersey   07932
           TEL:  No. (973) 410-4040
25           Fax:  (973) 410-1313

**2**

1 A P P E A R A N C E S :
2 BRESSLER, AMERY & ROSS, P.C.
   BY: GEORGE R. HIRSCH, ESQ.
3 325 Columbia Turnpike
   Florham Park, New Jersey 07932
4 (973) 514-1200
   E-mail: ghirsch@bressler.com
5 Attorneys for Plaintiff
6 HERRICK, FEINSTEIN, L.L.P.
   BY: JOHN M. AUGUST, ESQ.
7 One Gateway Center
   Newark, New Jersey 07102
8 (973) 274-2529
   E-mail: jaugust@herrick.com
9 Attorneys for Defendant J.P. Morgan Chase Bank
10 BUDD LARNER, P.C.
   BY: MARCY A. GILROY, ESQ.
11 150 John F. Kennedy Parkway
   Short Hills, New Jersey 07078
12 (973) 379-4800
   E-mail: mgilroy@budd-larner.com
13 Attorneys for PGB International and Arthur
   Kupperman individually
14
   POST, POLAK, GOODSELL, MAC NEILL & STRAUCHLER, P.A.
15 BY: FREDERICK B. POLAK, ESQ.
   425 Eagle Rock Avenue
16 Roseland, New Jersey 07068
   (973) 228-9900
17 E-mail: FBP@ppgms.com
   Attorneys for Paulette Krelman
18
   SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, L.L.C.
19 BY: NO APPEARANCE
   One Gateway Center, 13th floor
20 Newark, New Jersey 07102-5311
   (973) 622-3333
21 Attorneys for E. Ross Browne
22
23
24
25

**3**

1            I N D E X
2 WITNESS            DIRECT CROSS
3 PAULETTE KRELMAN
4   By Mr. Hirsch      4
    By Mr. August      31
5
6
7
8        E X H I B I T S
9 IDENT.       DESCRIPTION            PAGE
10 Krelman-1   Declaration              4
11 Krelman-2   Asset Purchase Agreement    23
12 Krelman-3   10/8/04 Guaranty          30
13 Krelman-4   2/06 Krelman personal
              financial statement       30
14
   Krelman-5   3/05 Krelman personal
15            financial statement       30
16 Krelman-6   Krelman balance sheet      30
17
18
19
20
21
22
23
24
25

**4**

1 P A U L E T T E   K R E L M A N, 43 Hampshire Drive,
2 Mendham, New Jersey, having been first duly sworn
3 according to law, testified as follows:
4        (Krelman-1 is marked for identification.)
5        MR. HIRSCH:  Just a couple of
6 housekeeping matters, immediately before we went on
7 the record, Ms. Krelman signed a declaration similar
8 with one difference to the declaration signed by
9 Mr. Kupperman and Mr. Browne, the difference being
10 that this one says, "At this deposition, October 23,
11 2006," in paragraph 1, instead of "At any deposition
12 in this case," in paragraph 1.  And I just want on the
13 record for counsel, Mr. Polak, to acknowledge that, in
14 fact, his client did sign this declaration.
15        MR. POLAK:  My client did sign the
16 declaration.  We have not yet filed an answer in this
17 case.  We have not yet had an opportunity to conduct
18 any discovery.  We have not seen any documents.  It's
19 been represented that this is a matter which has been
20 referred to federal law enforcement authorities and,
21 under the circumstances, as I represented to you,
22 Mr. Hirsch, I have instructed my client to take the
23 Fifth Amendment at this deposition.
24        MR. HIRSCH:  Okay.  We understand that.
25 And as I explained to you, when we talked a few

**5**

1 minutes ago and we put on the record in the other
2 depositions today, the purpose of this declaration is
3 to -- it's a practical time-saving mechanism so that
4 we don't need to -- we don't have to propound every
5 conceivable question and we're not prejudiced by that
6 so you can't take the position, well you never asked
7 that question at the deposition and, at the same time,
8 it otherwise preserves everyone's rights and that's
9 why we do it this way and why I think you agreed
10 because you saw the wisdom in it.
11        MR. POLAK:  I do.  That is the wisdom
12 in proceeding in this matter at this deposition.
13        MR. HIRSCH:  Yeah, given all of the
14 circumstances.
15
16 DIRECT EXAMINATION BY MR. HIRSCH:
17   Q.   Ms. Krelman, it's traditional at a
18 deposition for the attorney asking the questions to
19 explain a little bit.  So I'm going to do that.
20 Unless you or your attorney want the long firm, I'm
21 going to give you the short form.  My name is George
22 Hirsch.  I represent Merrill Lynch Business Financial
23 Services, Inc.  I may refer to them as Merrill Lynch,
24 but that's who they are.
25        To my left is Theresa, who is a

2 (Pages 2 to 5)

**6**

1 certified shorthand reporter. She is going to create
2 a stenographic record, which will be a transcript of
3 these proceedings. A smile, laughter, cynicism,
4 sarcasm -- well, cynicism might, but sarcasm, tones of
5 voice are not going to be reflected in the transcript.
6 So you have to be careful that communication is purely
7 by word. Only the words are going to appear in the
8 transcript. Secondly, if you have -- you know,
9 there's some soda and water here if you want. If you
10 need to use the bathroom, let us know. The object is
11 not to make you physically uncomfortable. And you
12 know, the purpose here is to elicit your -- to get
13 your version of the facts in this case.
14　　　　MR. HIRSCH: You need me to add
15 anything to that?
16　　　　MR. POLAK: Yeah, I'm not sure that at
17 this early stage in the deposition it's possible to
18 have that kind of discussion or query regarding her
19 personal knowledge of the case, but we'll address that
20 at a later point in time.
21　　　　MR. HIRSCH: I don't agree with what
22 you just said, but it doesn't matter. I want to know
23 if you needed me to anything add anything to what I
24 said.
25　　　　MR. POLAK: Oh, I don't think so, no.

**7**

1　　　Q.　There was a document request that
2 accompanied the Notice to Take Depositions and what
3 I'd like to know, Ms. Krelman, are you producing
4 any documents in response to that request?
5　　　　MR. POLAK: Before she responds, let me
6 indicate to --
7　　　　MR. HIRSCH: If you want to do it,
8 Counsel.
9　　　　MR. POLAK: You and I had a
10 conversation. It was a very brief one on Friday after
11 a series of E-mails. I called you to indicate that
12 Ms. Krelman would be coming this evening. I was in a
13 deposition all day and during that conversation, I
14 indicated to you that it was my expectation that
15 Ms. Krelman would be producing certain documents, but
16 I have not yet had time, especially given the fact I
17 was in a deposition all day today to review what
18 documents will be produced, but I expect to be in a
19 position this week to give you some documents.
20　　　　MR. HIRSCH: Okay; but as we sit here
21 at this moment, there's no production. Is that
22 correct?
23　　　　MR. POLAK: There's no production at
24 this moment, no. I also add that I offered to make
25 Ms. Krelman available for deposition, rather than

**8**

1 tonight, on Wednesday or Thursday of this week, I
2 believe, those are the times I gave you. I would
3 expect that by then I would be in a position to give
4 you certain documents. You had indicated that you
5 wanted the deposition to be completed today and I
6 tried to accommodate you.
7　　　　MR. HIRSCH: Will she be answering
8 questions in a different manner on Wednesday or
9 Thursday?
10　　　　MR. POLAK: No.
11　　　　MR. HIRSCH: Okay. And with regard to
12 the documents you will be producing, will you be
13 producing any Pittra documents?
14　　　　MR. POLAK: I believe that I
15 represented to you, subject to further verification,
16 that my client is not in possession of any Pittra
17 business documents.
18　　　　MR. HIRSCH: How about PGB business
19 documents?
20　　　　MR. POLAK: The same. I think I
21 represented that to you last week, also.
22　　　　MR. HIRSCH: Okay. So any documents
23 she'll be producing will be personal to her?
24　　　　MR. POLAK: That's correct, and I
25 believe that your document demand appended to the

**9**

1 deposition notice asked for categories of documents
2 which were either business or personal in nature.
3　　　　MR. HIRSCH: We asked for both, not you
4 pick.
5　　　　MR. POLAK: That's correct.
6　　　　MR. HIRSCH: Thank you.
7　　　　MR. POLAK: I should have said and/or.
8　　　　MR. HIRSCH: Actually, there's an
9 instruction that deals with that I think, but. Well,
10 I guess I'll see what you're producing when you
11 produce it.
12 BY MR. HIRSCH:
13　　　Q.　Ms. Krelman, do you --
14　　　　MR. POLAK: I'm sorry to interrupt,
15 Mr. Hirsch, but to the extent that we produce
16 documents, will it be under -- with an understanding
17 of confidentiality?
18　　　　MR. HIRSCH: Mr. Papalia requested on
19 behalf of Mr. Browne and we agreed that it would be
20 the parties and counsel, the parties, and their
21 professionals and people -- the people that you need
22 for the case and that we're going -- there was a
23 question mark with regard to the trustee that was
24 subject to further discussion, although, I think, you
25 know, he's entitled to it on, you know, on some basis

1 probably, and Mr. Papalia was going to prepare a
2 proposed confidentiality stipulation and we were going
3 to mark the documents confidential subject to whatever
4 rights people have, but at least that means within
5 this action people could use the documents.
6     MR. POLAK: Okay. Thank you.
7     MR. HIRSCH: Although, I don't know why
8 they couldn't use them -- it doesn't say limited to
9 this action. I don't recall it saying that, just
10 limited to this group. So I don't know -- if you go
11 in bankruptcy courts, you can probably use them, too,
12 but it's not like I can go down and knock on her
13 neighbor's door and say, hey, neighbor, guess what?
14 Look what I got on Paulette Krelman. Here's some
15 personal documents you'll be interested or call up the
16 National Inquirer. Off the record.
17     (There was an off-the-record
18 discussion.)
19 BY MR. HIRSCH:
20   Q.   Ms. Krelman, are you a U.S. citizen?
21 A.   Yes.
22   Q.   And are you a citizen of any other
23 country?
24     MR. POLAK: From now on, just read
25 this.

1 A.   On the advice of counsel, I decline to answer
2 on Fifth Amendment grounds.
3   Q.   And from now on, you can just say "same
4 answer" and we'll assume that. Do you now or did you
5 at any time hold an interest as a shareholder in
6 Pittra GB International, Inc.?
7 A.   Same.
8   Q.   Are you now or were you at any time an
9 officer of Pittra?
10 A.   Same.
11   Q.   Are you now or were you ever a director
12 of Pittra?
13 A.   Same.
14   Q.   Do you now or did you at any time hold
15 an interest in PGB International, L.L.C.?
16 A.   Same.
17   Q.   Are you an officer of PGB
18 International, L.L.C., or were you at any time?
19 A.   Same.
20   Q.   Are you an employee of PGB
21 International, L.L.C., or were you at any time?
22 A.   Same.
23   Q.   Are you aware that Merrill Lynch
24 Business Financial Services, Inc., lent money to
25 Pittra?

1 A.   Same.
2   Q.   In connection with Pittra's borrowings
3 from Merrill Lynch Business Financial Services, Inc.,
4 did you at any time in any capacity execute any
5 documents?
6 A.   Same.
7   Q.   Did you sign any unconditional guaranty
8 or guaranties of the obligations of Pittra in favor of
9 Merrill Lynch Business Financial Services, Inc.?
10 A.   Same.
11   Q.   I'm going to show you a document which
12 was marked -- well, it wasn't marked, but it's part of
13 Exhibit B to the Verified Complaint. And it says at
14 the top Unconditional Guaranty and, at the bottom, it
15 says dated as of November 19, 2002, and then there's
16 typewritten in bold caps Paulette Krelman, signature
17 under the word guarantor. I'm going to ask you if
18 that is your signature?
19     MR. POLAK: Same.
20 A.   Same.
21   Q.   Did you participate in providing a
22 false or forged or otherwise -- well, strike that.
23     Did you participate in providing false
24 or forged financial statements to Merrill Lynch
25 Business Financial Services, Inc., on behalf of

1 Pittra?
2     MR. POLAK: Objection to form. You can
3 answer.
4     MR. HIRSCH: What's the objection to
5 form?
6     MR. POLAK: I think that's a question
7 of law whether something is forged or false.
8     MR. HIRSCH: Whether it's false.
9     MR. POLAK: Or forged.
10     MR. HIRSCH: Fine.
11   Q.   Did you participate in preparing or
12 presenting Pittra financial statements of any kind to
13 Merrill Lynch Business Financial Services, Inc.?
14 A.   Same.
15   Q.   Were those financial statements true
16 and correct in all respects?
17 A.   Same.
18   Q.   Were there any statements made in any
19 of the financial statements or other materials which
20 Pittra provided to Merrill Lynch -- I'll strike
21 myself. Strike that, start over.
22     Were there any statements in any
23 documents, whether financial statements or otherwise,
24 provided on behalf of Pittra to Merrill Lynch which
25 statements were not true and correct in all respects?

4 (Pages 10 to 13)

1 A. Same.

2 Q. Were you aware that there were
3 documents presented to Merrill Lynch which were not
4 true and correct in all respects?

5 A. Same.

6 Q. Did you participate in providing those
7 documents to Merrill Lynch?

8 A. Same.

9 Q. Did you participate in providing to
10 Merrill Lynch financial statements on the letterhead
11 of Amper, Politziner & Mattia?

12 A. Same.

13 Q. Had Amper, Politziner & Mattia, in
14 fact, prepared those financial statements?

15 A. Same.

16 Q. Did you participate in providing any
17 attorney opinion letters to Merrill Lynch?

18 A. Same.

19 Q. Did you participate in providing to
20 Merrill Lynch or were you aware of -- strike that.

21 Were you aware that -- were you aware
22 that financial statements -- financial statements were
23 provided to Merrill Lynch that were not true and
24 correct in all respects?  I'm referring to Pittra
25 financial statements.

1 A. Same.

2 Q. Were you aware that attorney opinion
3 letters provided to Merrill Lynch on behalf of Pittra
4 had not been prepared by the attorney whom they
5 purported to be prepared by?

6 A. Same.

7 Q. Did you provide personal financial
8 statements to Merrill Lynch in connection with Merrill
9 Lynch's loans to Pittra and your guaranties of those
10 loans?

11 A. Same.

12 Q. Did Pittra transfer its assets to PGB?

13 A. Same.

14 Q. Did you participate in the transfer of
15 Pittra's assets to PGB?

16 A. Same.

17 Q. At the time you did so, what efforts
18 did you undertake to make sure that the obligation
19 Pittra owed to Merrill Lynch had been satisfied?

20 MR. POLAK: Objection to form.

21 MR. HIRSCH: What's the objection to
22 form?

23 MR. POLAK: You said at the time that
24 you did so.

25 MR. HIRSCH: Yeah.  She didn't deny it.

1 MR. POLAK: She did not answer on the
2 basis of the Fifth.

3 MR. HIRSCH: She didn't deny it;
4 therefore, the inference is that she did it and I'm
5 asking the question based on that.

6 MR. POLAK: All right.

7 MR. HIRSCH: Read her back the
8 question, please.

9 (The following question was read back:
10 "QUESTION: At the time you did so,
11 what efforts did you undertake to make sure that the
12 obligation Pittra owed to Merrill Lynch had been
13 satisfied?")

14 A. Can I ask a question.

15 MR. POLAK: My client asked for the
16 opportunity to speak to me.

17 MR. HIRSCH: And your understanding of
18 the applicable rules and case law interpreting the
19 applicable rules is that that's appropriate for you to
20 confer with her at this time or not?

21 MR. POLAK: I was asking you for the
22 opportunity.

23 MR. HIRSCH: I'm asking you what your
24 interpretation of the law is.

25 MR. POLAK: Whatever the -- the witness

1 has answered the question.  There is no question
2 pending.

3 MR. HIRSCH: The witness has answered
4 the last question that was read back to her?  No.  You
5 objected to it.

6 MR. POLAK: Right, but she answered
7 same.  I thought she said it.

8 MR. HIRSCH: Well, let's be clear.  Did
9 she?

10 THE COURT REPORTER: I didn't get it.

11 MR. HIRSCH: Read the witness back the
12 question.  The witness will answer the question.  And
13 then, if the witness wants to talk to you, while I
14 don't think I have to agree that it's okay, it's okay.

15 MR. POLAK: Given that the witness has
16 answered every question the same, I would ask --

17 MR. HIRSCH: I want an answer to this
18 question.

19 MR. POLAK: Can I at least finish.

20 MR. HIRSCH: Yeah.

21 MR. POLAK: Given the witness has
22 answered every question exactly the same, I'd ask for
23 the courtesy of allowing her to ask me what it is she
24 may be confused about at this point.

25 MR. HIRSCH: After she answers the

18

1 pending question.
2        MR. POLAK: You're indicating that she
3 has to answer the question first and then she can
4 speak with me.
5        MR. HIRSCH: Yes, and if, after she
6 speaks with you, she feels that she no longer wishes
7 to -- I'm assuming she's going to answer the same way,
8 that she wishes to change her answer and not invoke
9 the privilege and provide a different answer, I don't
10 object to that.
11        MR. POLAK: All right. With respect to
12 the instruction that normally is provided if a witness
13 doesn't answer a question, could it be rephrased, if
14 she has any confusion with respect to that, I assume
15 that if she were to articulate that now, you would
16 rephrase the question?
17        MR. HIRSCH: Sure. I don't want a
18 witness to answer a question that the witness, in
19 earnest, doesn't understand. So could you read the
20 question back to the witness, please, and the witness
21 can answer. And if you want to step out for a minute,
22 I'm okay with that.
23        THE WITNESS: One second.
24        MR. POLAK: Mr. Hirsch has indicated
25 that with respect to your request to me to speak with

19

1 me for a second, he is not prepared to allow you to do
2 that until after you have answered the question if you
3 understand the question as asked. If you don't
4 understand it, so let him know. As -- with regard to
5 any question and he'll attempt to rephrase it.
6        THE WITNESS: All right. I --
7        MR. POLAK: That's it, okay.
8        MR. HIRSCH: Let me suggest this. The
9 court reporter will read you back the question.
10 Answer the question. If you talk to Mr. Polak and if
11 Mr. Polak comes back and says, she answered the
12 question, but she felt confused about the question,
13 her confusion is X, I'll try to resolve the confusion.
14        THE WITNESS: Okay.
15        MR. HIRSCH: Is that --
16        MR. POLAK: That's fine. Well, it's
17 not fine. I prefer to meet with her now, but.
18        (The following question was read back:
19        "QUESTION: At the time you did so,
20 what efforts did you undertake to make sure that the
21 obligation Pittra owed to Merrill Lynch had been
22 satisfied?")
23 A.   Same.
24        MR. HIRSCH: Did you want to take a
25 minute?

20

1        (There is a recess.)
2        MR. HIRSCH: The only thing I want to
3 say about the confusion issue, and now that you've
4 conferred with your client, I don't -- I would
5 appreciate if your -- anything you say now isn't sort
6 of testimony on her behalf. Okay?
7        MR. POLAK: I'm not going to offer
8 anything. I'm not going to say anything. We
9 straightened out.
10        MR. HIRSCH: You straightened out?
11        MR. POLAK: Yes. So we can proceed.
12        MR. HIRSCH: So the answer stands.
13        MR. POLAK: Yes, it does, subject to my
14 objection that I placed on the record. I think this
15 was the question I objected to.
16        MR. HIRSCH: Yes. I understood your
17 objection.
18 BY MR. HIRSCH:
19    Q.   Did Pittra stop doing business some
20 time in 2003?
21 A.   Same.
22    Q.   Why did Pittra continue to provide
23 financial information and other documents to Merrill
24 Lynch?
25 A.   Same.

21

1    Q.   Why, after Pittra stopped doing
2 business, did Pittra continue to provide an -- strike
3 that.
4        Why, after Pittra -- why after 2003 did
5 Pittra continue to enter into agreements with Merrill
6 Lynch and, in fact, borrow more money?
7 A.   Same.
8    Q.   Where did the money that Pittra
9 borrowed from Merrill Lynch go?
10 A.   Same.
11    Q.   Do you know where the money that Pittra
12 borrowed from Merrill Lynch went?
13 A.   Same.
14    Q.   Do you know if the money that Pittra
15 borrowed from Merrill Lynch is still in the United
16 States?
17 A.   Same.
18    Q.   Did you -- do you have knowledge of any
19 transfers of funds or other assets of Pittra out of
20 the United States?
21 A.   Same.
22    Q.   Did you participate in any such
23 transfers?
24 A.   Same.
25    Q.   Did you sign documents in connection

6 (Pages 18 to 21)

1 with Pittra's borrowings from Merrill Lynch in any
2 capacity?
3 A.   Same.
4      Q.   Did you do so during 2003?
5 A.   Same.
6      Q.   Did you do so during 2002?
7 A.   Same.
8      Q.   Did you do so during 2004?
9 A.   Same.
10     Q.   Did you do so during 2005?
11 A.   Same.
12     Q.   Did you do so during 2006?
13 A.   Same.
14     Q.   Were any assets of PGB transferred
15 outside the United States?
16 A.   Same.
17     Q.   And that includes funds, any funds of
18 PGB transferred outside the United States?
19 A.   Same.
20     Q.   Did you participate in such transfers?
21 A.   Same.
22     Q.   Where are the assets of PGB?
23 A.   Same.
24     Q.   Where are the records of Pittra?
25 A.   Same.

1 of PGB?
2 A.   Same.
3      Q.   There's some -- on the first page,
4 there's some language crossed off and some initials
5 next to it.
6 A.   Same.
7      Q.   I didn't ask a question yet.
8 A.   Sorry.
9      Q.   Are any of those initials yours?
10 A.   Same.
11     Q.   Why did Budd Larner wire funds to the
12 Pittra account at Merrill Lynch in December and
13 January -- December 2005 and January 2006?
14 A.   Same.
15     Q.   Who instructed Budd Larner to do that?
16 A.   Same.
17     Q.   Did you?
18 A.   Same.
19     Q.   Were you aware of it?
20 A.   Same.
21     Q.   Did Budd Larner ever represent you
22 individually?
23 A.   Same.
24     Q.   Did Budd Larner ever represent Pittra?
25 A.   Same.

1      MR. HIRSCH:  Off the record a minute.
2      (There was an off-the-record
3 discussion.)
4      MR. HIRSCH:  Can I have this marked as
5 Krelman-2.
6      (Krelman-2 is marked for
7 identification.)
8 BY MR. HIRSCH:
9      Q.   Let me show you a document which I've
10 had marked as Krelman-2 which is entitled Asset
11 Purchase Agreement, dated -- looks to be dated
12 June 5, 2003.  And several places, including page 14
13 thereof appears to have your signature as a member of
14 PGB International, L.L.C., on behalf of PGB.  Is that
15 your signature?
16 A.   Same.
17      MR. POLAK:  May I take a look at it for
18 a second.
19      MR. HIRSCH:  Yeah.
20     Q.   And on the last page, is that your
21 signature?
22 A.   Same.
23     Q.   Who prepared this document?
24 A.   Same.
25     Q.   Who negotiated this document on behalf

1      MR. HIRSCH:  Mr. Polak, based on the
2 declaration, I take it that I can ask away and I'm
3 going to get the same answer.  Is that correct?
4      MR. POLAK:  That's correct.
5      MR. HIRSCH:  So the purpose of the
6 declaration is that, when I reach this juncture, I can
7 say that to you and you can't come back and say, well,
8 you never asked that question.  So, for practical
9 purposes, I'm finished.
10      MR. POLAK:  As long as the question's
11 germane to the proceedings, that's correct.
12      MR. HIRSCH:  I believe Mr. August may
13 have some questions.
14      MR. POLAK:  Before Mr. August asks
15 questions, Mr. August and I spoke prior to the onset
16 of this deposition and I expressed a view to him after
17 he indicated to me that he intended to ask questions
18 that I did not believe that he had the right to do so;
19 but that in the interest of not cluttering the record,
20 delaying matters, that I would permit him to ask the
21 questions without prejudice to my right to contend
22 that none of the questions that he asks are
23 appropriately asked at this proceeding; and in doing
24 so, I rely upon the Order to Show Cause with Temporary
25 Restraints and Other Relief issued by Judge Cavanaugh

7 (Pages 22 to 25)

**26**

1 and the fact that I do not believe that that order was
2 issued at a time when his client was a party to the
3 case. It's my understanding that his client was made
4 party to the case either --
5        MR. HIRSCH: Friday.
6        MR. POLAK: Friday or today, but, in
7 any event, it's a defendant, not a plaintiff and I do
8 not read the articles to afford or give to
9 Mr. August's client the right to ask the questions.
10      MR. HIRSCH: I just want to put
11 something on the record on this. You weren't here
12 this morning when I explained the circumstances of
13 adding -- Mr. August had advised -- well, first of
14 all, I had been concerned for some time about the fact
15 that we were taking the position that PGB assets that
16 we had a first right to, ahead of creditors of PGB,
17 including secured creditor without having named the
18 secured creditor, so that they were kind of a party
19 that sort of ought to be in the -- that's a legal --
20 that's a term of art, "sort of ought to be" in the
21 case; and Mr. August had advised me that he intended
22 to move to intervene, asked me if I would consent. I
23 thought about it and since they should be in the case,
24 I should have named them, I thought it would save
25 everybody a whole lot of trouble in motion practice

**27**

1 and the Court and I would name them because I'm
2 seeking relief that affects them. So I filed an
3 amendment on Friday adding on that limited aspect,
4 adding Mr. August's client.
5      The other thing I want to point out is
6 that, at one of the hearings, I remember Mr. Covino
7 asking the Court if the expedited discovery would be
8 mutual. And the Court said yes. And I interpreted
9 that to mean that any party to the case would have the
10 right to pursue discovery. So to the extent that
11 those two factors in any way affect the issue you guys
12 have between you, I just want my understanding of the
13 situation and I don't object to any party to the case
14 asking questions of the -- your client.
15      MR. POLAK: That's quite magnanimous of
16 you, Mr. Hirsch, under the circumstances.
17      MR. HIRSCH: That's why we get along so
18 well.
19      MR. POLAK: Let me ad not that your
20 comments in any way change the scope of my objection.
21 It may very well be there was some sort of colloquy
22 between Mr. Covino and the judge on that issue. I
23 don't recall it. I'm not saying it didn't occur.
24      MR. HIRSCH: Okay.
25      MR. POLAK: But, certainly, it was at a

**28**

1 time and place where Mr. August's client was not yet a
2 party to this case.
3      MR. HIRSCH: That would be true since
4 there's been no hearing. That was filed after the
5 close of business on Friday and there have been no --
6 been no hearing since then.
7      MR. POLAK: So all that being said,
8 Mr. August, as I've indicated on the record and I
9 indicated to you prior to the start of this
10 deposition, please go ahead and ask your questions.
11 Of course, it's based on my objection without
12 prejudice to Ms. Krelman.
13      MR. AUGUST: I also want to make a
14 statement on the record regarding this. When the
15 Order to Show Cause was signed, as is pointed out, my
16 client J.P. Morgan Chase Bank NA was not a party.
17 They are now. The Order to Show Cause provides for
18 expedited discovery in advance of any hearing on
19 October 31. My client has the same interest in
20 expedited discovery as Merrill Lynch does, and since
21 we are here now, and it makes more sense to go ahead
22 and allow me to ask questions of the deponent rather
23 than schedule a new deposition between now and
24 October 31, 2006, especially considering that any
25 rescheduled deposition between those times, your

**29**

1 client would, I'm imagining, still take their Fifth
2 Amendment privilege. Also, I do acknowledge,
3 Mr. Polak, that we did speak and you said you were
4 going to put an objection on the record, which I'm
5 agreeing to and I'm going forward on that basis
6 because, frankly, we can't reach a judge at 6:46 p.m.
7 If it was earlier in the day, I would call a judge to
8 resolve this issue at this time. But since we can't,
9 I will go forward recognizing you do have an objection
10 on the record.
11      MR. POLAK: I think, Mr. August, you
12 understand the circumstances which bring us here at
13 6:46 as opposed to earlier in the day. I had a
14 previously scheduled deposition that is in connection
15 with a matter that I have to be in court on Friday. I
16 was in deposition the whole day. I did offer, as you
17 may know from exchange of E-mails between Mr. Hirsch
18 and myself, to make Ms. Krelman available I believe on
19 Wednesday and/or Thursday when it would have been
20 during the day and we could have had that
21 communication with the Court.
22      Mr. Hirsch indicated that he would
23 prefer that this deposition be completed today. And
24 so I offered to make Ms. Krelman available at the
25 earliest possible time today, which following my

8 (Pages 26 to 29)

**30**

1 completion of deposition at quarter past four leads us
2 to appear in Mr. Hirsch's office some time after 5:30
3 today.
4          MR. HIRSCH: Let me say that you've
5 both been absolute gentlemen in all regards in this
6 case and I appreciate it.
7          MR. AUGUST: Let me just say I do
8 realize that and my prior comment wasn't meant to
9 suggest that you were doing anything improper. It was
10 just to say that, you know, I'm going forward with an
11 objection because we can't reach a judge at this hour.
12 I didn't mean to suggest anything nefarious.
13          MR. POLAK: Mr. August, I didn't take
14 it as such. I just felt the record should be
15 complete.
16          MR. AUGUST: Could you mark these as
17 Krelman-3 through 7.
18          (Krelman-3 through 6 are marked for
19 identification.)
20          MR. POLAK: I want to add one other
21 thing. To the extent that this proceeding is
22 occurring today it is my understanding was based on a
23 complaint, Verified Complaint, that had attached to it
24 a number of documents. And I think it may very well
25 be now that we are dealing with documents that may not

**31**

1 have been appended to the complaint. It may not be
2 known to me which, I think under the circumstances,
3 would serve as another reason why I've advised my
4 client as such.
5          MR. AUGUST: Okay.
6          MR. HIRSCH: He's okay and my silence
7 anyway and probably my okay means we heard you and we
8 understand your position. That's what it means for me
9 that I'm not -- you know, they're his documents.
10          MR. POLAK: I understand.
11          MR. HIRSCH: That's how I interpret his
12 okay.
13          MR. AUGUST: I would agree with that.
14
15 CROSS-EXAMINATION BY MR. AUGUST:
16     Q.     Ms. Krelman, my name is John August. I
17 represent J.P. Morgan Chase Bank NA. I'm going to ask
18 you a few questions today. I'm going to limit my
19 questions because the declaration you signed is
20 effective for this deposition. So to the extent
21 you're going to invoke your Fifth Amendment privilege,
22 I'll be deemed to have asked any conceivable question
23 I should ask. So for the sake of time, I'm going to
24 limit my questioning.
25          Are you aware that PGB International,

**32**

1 L.L.C., borrowed money from J.P. Morgan Chase Bank?
2     A.     Same. Or do I have --
3          MR. POLAK: No, same.
4     Q.     Did you participate in providing any
5 documentation to J.P. Morgan Chase Bank in connection
6 with that loan?
7     A.     Same.
8     Q.     Was any documentation that you provided
9 true and correct in all respects?
10     A.     Same.
11     Q.     I'm going to show you what has been
12 marked --
13          MR. POLAK: Just one second.
14          MR. HIRSCH: I'm going to object to the
15 form of that question.
16          MR. POLAK: I was going to.
17          MR. AUGUST: And the objection?
18          MR. HIRSCH: You said, was any document
19 you provided true and correct in all respects? And I
20 think you wanted to say was all of it true and correct
21 in all respects? Slightly different meaning, which,
22 given the answer, doesn't matter, but, you know,
23 probably should get it right.
24     Q.     Were all the documents you provided to
25 J.P. Morgan Chase Bank in connection with the loan

**33**

1 from PGB true and correct in all respects?
2          MR. POLAK: Objection to form.
3          MR. AUGUST: And what's your objection?
4          MR. POLAK: I don't think it's been
5 established that she provided any documents to Chase.
6          MR. AUGUST: Well, as George pointed
7 out earlier, she didn't deny that she provided any
8 documents. So the inference is that she did provide
9 some documents in connection with the loan.
10          MR. POLAK: We can agree to disagree.
11     A.     Same.
12     Q.     I'm going to show you what's been
13 marked as Krelman-3. This is a guaranty dated
14 October 8, 2004. Can you take a look at that and tell
15 me if you recognize that document?
16     A.     Same.
17     Q.     There is a signature on the next to
18 last page of that document, page No. 3. Can you tell
19 me if that's your signature?
20     A.     Same.
21     Q.     I'm going to show you what's been
22 marked as Krelman-4, which is a personal financial
23 statement dated February 2006. Will you, please, take
24 a look at that and tell me if you recognize that
25 document.

1 A.   Same.
2    Q.    There is a signature on the last page
3 of that document.  Can you tell me if that's your
4 signature?
5 A.   Same.
6    Q.    I'm going to show you what's been
7 marked as Krelman-5.  It is a personal financial
8 statement dated March 2005.  Can you, please, take a
9 look at that and tell me if you recognize that
10 document.
11 A.   Same.
12         MR. POLAK:  Just a second.  Let me take
13 a look at it.
14 A.   Same.
15    Q.    There is a signature on the last page
16 of that document.  Can you tell me if that's your
17 signature?
18 A.   Same.
19    Q.    I'm going to show you what's been
20 marked as Krelman-6.  That is a balance sheet for
21 Paulette Krelman.  Can you tell me if you recognize
22 that document?
23 A.   Same.
24    Q.    That document lists an investment in
25 PGB International as one of your assets in the amount

1 of $1,416,000.  Can you tell me the basis of that
2 number?
3 A.   Same.
4    Q.    Does that number reflect the total
5 value of PGB or just the value of your interest in it?
6 A.   Same.
7         MR. AUGUST:  That's all the questions I
8 have.
9         MR. HIRSCH:  I have nothing else given
10 the declaration.
11         (The deposition was concluded at
12 6:56 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

1         C E R T I F I C A T E
2
3
4    I, THERESA GARRITY, a Certified Shorthand
5 Reporter of the State of New Jersey, do hereby state
6 that prior to the examination of the witness was sworn
7 by me to testify the truth, the whole truth and
8 nothing but the truth.
9    I DO FURTHER CERTIFY that the foregoing is a
10 true and accurate transcript of the testimony as taken
11 stenographically by and before me at the time, place
12 and on the date hereinbefore set forth.
13    I DO FURTHER CERTIFY that I am neither of
14 counsel nor attorney for any party in this action and
15 that I am not interested in the event nor outcome of
16 this litigation.
17
18
19
20
21
22
23
         Notary Public of the State of New Jersey
24       LICENSE NO.  XIO1129
25

**A**

absolute 30:5
accommodate 8:6
accompanied 7:2
account 24:12
accurate 36:10
acknowledge 4:13
  29:2
action 10:5,9 36:14
ad 27:19
add 6:14,23 7:24
  30:20
adding 26:13 27:3,4
address 6:19
advance 28:18
advice 11:1
advised 26:13,21
  31:3
affect 27:11
afford 26:8
ago 5:1
agree 6:21 17:14
  31:13 33:10
agreed 5:9 9:19
agreeing 29:5
Agreement 3:11
  23:11
agreements 21:5
ahead 26:16 28:10,21
allow 19:1 28:22
allowing 17:23
amendment 4:23
  11:2 27:3 29:2
  31:21
AMERY 1:17 2:2
amount 34:25
Amper 14:11,13
and/or 9:7 29:19
answer 4:16 11:1,4
  13:3 16:1 17:12,17
  18:3,7,8,9,13,18,21
  19:10 20:12 25:3
  32:22
answered 17:1,3,6,16
  17:22 19:2,11
answering 8:7
answers 17:25
anyway 31:7

appear 6:7 30:2
APPEARANCE 2:19
appears 23:13
appended 8:25 31:1
applicable 16:18,19
appreciate 20:5 30:6
appropriate 16:19
appropriately 25:23
ARRANGED 1:22
art 26:20
Arthur 1:8 2:13
articles 26:8
articulate 18:15
asked 5:6 9:1,3 16:15
  19:3 25:8,23 26:22
  31:22
asking 5:18 16:5,21
  16:23 27:7,14
asks 25:14,22
aspect 27:3
Asset 3:11 23:10
assets 15:12,15 21:19
  22:14,22 26:15
  34:25
assume 11:4 18:14
assuming 18:7
attached 30:23
attempt 19:5
attorney 5:18,20
  14:17 15:2,4 36:14
Attorneys 2:5,9,13
  2:17,21
August 2:6 3:4 25:12
  25:14,15 26:13,21
  28:8,13 29:11 30:7
  30:13,16 31:5,13,15
  31:16 32:17 33:3,6
  35:7
August's 26:9 27:4
  28:1
authorities 4:20
available 7:25 29:18
  29:24
Avenue 2:15
aware 11:23 14:2,20
  14:21,21 15:2 24:19
  31:25

**B**

B 1:14 2:15 3:8 12:13
back 16:7,9 17:4,11
  18:20 19:9,11,18
  25:7
balance 3:16 34:20
Bank 2:9 28:16 31:17
  32:1,5,25
bankruptcy 10:11
based 16:5 25:1
  28:11 30:22
basis 9:25 16:2 29:5
  35:1
bathroom 6:10
behalf 9:19 12:25
  13:24 15:3 20:6
  23:14,25
believe 8:2,14,25
  25:12,18 26:1 29:18
bit 5:19
bold 12:16
borrow 21:6
borrowed 21:9,12,15
  32:1
borrowings 12:2 22:1
bottom 12:14
BRESSLER 1:17 2:2
brief 7:10
bring 29:12
Browne 1:8 2:21 4:9
  9:19
Budd 2:10 24:11,15
  24:21,24
business 1:3 5:22
  8:17,18 9:2 11:24
  12:3,9,25 13:13
  20:19 21:2 28:5

**C**

C 2:1 36:1,1
call 10:15 29:7
called 7:11
can't 5:6 25:7 29:6,8
  30:11
capacity 12:4 22:2
caps 12:16
careful 6:6
case 1:2 4:12,17 6:13
  6:19 9:22 16:18
  26:3,4,21,23 27:9

27:13 28:2 30:6
categories 9:1
Cause 25:24 28:15,17
Cavanaugh 25:25
Center 2:7,19
certain 7:15 8:4
certainly 27:25
certified 1:15 6:1
  36:4
CERTIFY 36:9,13
change 18:8 27:20
Chase 2:9 28:16
  31:17 32:1,5,25
  33:5
circumstances 4:21
  5:14 26:12 27:16
  29:12 31:2
citizen 10:20,22
CIV 1:2
clear 17:8
client 4:14,15,22 8:16
  16:15 20:4 26:2,3,9
  27:4,14 28:1,16,19
  29:1 31:4
close 28:5
cluttering 25:19
colloquy 27:21
Columbia 1:17 2:3
come 25:7
comes 19:11
coming 7:12
commencing 1:19
comment 30:8
comments 27:20
communication 6:6
  29:21
COMPANY 1:23
complaint 12:13
  30:23,23 31:1
complete 30:15
completed 8:5 29:23
completion 30:1
conceivable 5:5
  31:22
concerned 26:14
concluded 35:11
conduct 4:17
confer 16:20
conferred 20:4

confidential 10:3
confidentiality 9:17
  10:2
confused 17:24 19:12
confusion 18:14
  19:13,13 20:3
connection 12:2 15:8
  21:25 29:14 32:5,25
  33:9
consent 26:22
considering 28:24
contend 25:21
continue 20:22 21:2,5
conversation 7:10,13
correct 7:22 8:24 9:5
  13:16,25 14:4,24
  25:3,4,11 32:9,19
  32:20 33:1
couldn't 10:8
counsel 4:13 7:8 9:20
  11:1 36:14
country 10:23
couple 4:5
course 28:11
court 1:1 17:10 19:9
  27:1,7,8 29:15,21
courtesy 17:23
courts 10:11
Covino 27:6,22
create 6:1
creditor 26:17,18
creditors 26:16
CROSS 3:2
crossed 24:4
CROSS-EXAMIN...
  31:15
cynicism 6:3,4

**D**

D 3:1
date 36:12
dated 12:15 23:11,11
  33:13,23 34:8
day 7:13,17 29:7,13
  29:16,20
dealing 30:25
deals 9:9
December 24:12,13
declaration 3:10 4:7

4:8,14,16 5:2 25:2,6
  31:19 35:10
decline 11:1
deemed 31:22
defendant 2:9 26:7
Defendants 1:10
delaying 25:20
demand 8:25
deny 15:25 16:3 33:7
deponent 28:22
deposition 1:5 4:10
  4:11,23 5:7,12,18
  6:17 7:13,17,25 8:5
  9:1 25:16 28:10,23
  28:25 29:14,16,23
  30:1 31:20 35:11
depositions 5:2 7:2
DESCRIPTION 3:9
didn't 15:25 16:3
  17:10 24:7 27:23
  30:12,13 33:7
difference 4:8,9
different 8:8 18:9
  32:21
DIRECT 3:2 5:16
director 11:11
disagree 33:10
discovery 4:18 27:7
  27:10 28:18,20
discussion 6:18 9:24
  10:18 23:3
DISTRICT 1:1,1
DMC 1:2
document 7:1 8:25
  12:11 23:9,23,25
  32:18 33:15,18,25
  34:3,10,16,22,24
documentation 32:5
  32:8
documents 4:18 7:4
  7:15,18,19 8:4,12
  8:13,17,19,22 9:1
  9:16 10:3,5,15 12:5
  12:23 14:3,7 20:23
  21:25 30:24,25 31:9
  32:24 33:5,8,9
doesn't 6:22 10:8
  18:13,19 32:22
doing 20:19 21:1

25:23 30:9
don't 5:4,4 6:21,25
  10:7,9,10 17:14
  18:9,17 19:3 20:4
  27:13,23 33:4
door 10:13
Drive 4:1
duly 4:2

**E**

E 1:8,14,14 2:1,1,21
  3:1,8 4:1,1,1 36:1,1
Eagle 2:15
earlier 29:7,13 33:7
earliest 29:25
early 6:17
earnest 18:19
effective 31:20
efforts 15:17 16:11
  19:20
either 9:2 26:4
elicit 6:12
employee 11:20
enforcement 4:20
enter 21:5
entitled 9:25 23:10
especially 7:16 28:24
ESQ 2:2,6,10,15
ESQS 1:17
established 33:5
evening 7:12
event 26:7 36:15
everybody 26:25
everyone's 5:8
exactly 17:22
examination 5:16
  36:6
exchange 29:17
execute 12:4
Exhibit 12:13
expect 7:18 8:3
expectation 7:14
expedited 27:7 28:18
  28:20
explain 5:19
explained 4:25 26:12
expressed 25:16
extent 9:15 27:10
  30:21 31:20

E-mail 2:4,8,12,17
E-mails 7:11 29:17

**F**

F 1:14 2:11 36:1
fact 4:14 7:16 14:14
  21:6 26:1,14
factors 27:11
facts 6:13
false 12:22,23 13:7,8
favor 12:8
Fax 1:25
FBP@ppgms.com
  2:17
February 33:23
federal 4:20
feels 18:6
FEINSTEIN 2:6
felt 19:12 30:14
Fifth 4:23 11:2 16:2
  29:1 31:21
filed 4:16 27:2 28:4
financial 1:4 3:13,15
  5:22 11:24 12:3,9
  12:24,25 13:12,13
  13:15,19,23 14:10
  14:14,22,22,25 15:7
  20:23 33:22 34:7
fine 13:10 19:16,17
finish 17:19
finished 25:9
firm 5:20
first 4:2 18:3 24:3
  26:13,16
floor 2:19
Florham 1:18,24 2:3
following 16:9 19:18
  29:25
follows 4:3
foregoing 36:9
forged 12:22,24 13:7
  13:9
form 5:21 13:2,5
  15:20,22 32:15 33:2
forth 36:12
forward 29:5,9 30:10
four 30:1
frankly 29:6
FREDERICK 2:15

**Friday** 7:10 26:5,6 27:3 28:5 29:15
**funds** 21:19 22:17,17 24:11
**further** 8:15 9:24 36:9,13

**G**

**GARRITY** 1:15 36:4
**Gateway** 2:7,19
**GB** 11:6
**gentlemen** 30:5
**George** 2:2 5:21 33:6
**germane** 25:11
**ghirsch@bressler....** 2:4
**GILROY** 2:10
**give** 5:21 7:19 8:3 26:8
**given** 5:13 7:16 17:15 17:21 32:22 35:9
**go** 10:10,12 21:9 28:10,21 29:9
**going** 5:19,21 6:1,5,7 9:22 10:1,2 12:11 12:17 18:7 20:7,8 25:3 29:4,5 30:10 31:17,18,21,23 32:11,14,16 33:12 33:21 34:6,19
**GOLDSTEIN** 2:18
**GOODSELL** 2:14
**grounds** 11:2
**group** 10:10
**guaranties** 12:8 15:9
**guarantor** 12:17
**guaranty** 3:12 12:7 12:14 33:13
**guess** 9:10 10:13
**guys** 27:11

**H**

**H** 3:8
**Hampshire** 4:1
**heard** 31:7
**hearing** 28:4,6,18
**hearings** 27:6
**hereinbefore** 36:12
**Here's** 10:14

**HERRICK** 2:6
**hey** 10:13
**he'll** 19:5
**he's** 9:25 31:6
**Hills** 2:11
**Hirsch** 2:2 3:4 4:5,22 4:24 5:13,16,22 6:14,21 7:7,20 8:7 8:11,18,22 9:3,6,8 9:12,15,18 10:7,19 13:4,8,10 15:21,25 16:3,7,17,23 17:3,8 17:11,17,20,25 18:5 18:17,24 19:8,15,24 20:2,10,12,16,18 23:1,4,8,19 25:1,5 25:12 26:5,10 27:16 27:17,24 28:3 29:17 29:22 30:4 31:6,11 32:14,18 35:9
**Hirsch's** 30:2
**hold** 11:5,14
**hour** 30:11
**housekeeping** 4:6

**I**

**IDENT** 3:9
**identification** 4:4 23:7 30:19
**imagining** 29:1
**immediately** 4:6
**improper** 30:9
**includes** 22:17
**including** 23:12 26:17
**indicate** 7:6,11
**indicated** 7:14 8:4 18:24 25:17 28:8,9 29:22
**indicating** 18:2
**individually** 2:13 24:22
**inference** 16:4 33:8
**information** 20:23
**initials** 24:4,9
**Inquirer** 10:16
**instructed** 4:22 24:15
**instruction** 9:9 18:12
**intended** 25:17 26:21

**interest** 11:5,15 25:19 28:19 35:5
**interested** 10:15 36:15
**International** 1:9 2:13 11:6,15,18,21 23:14 31:25 34:25
**interpret** 31:11
**interpretation** 16:24
**interpreted** 27:8
**interpreting** 16:18
**interrupt** 9:14
**intervene** 26:22
**investment** 34:24
**invoke** 18:8 31:21
**isn't** 20:5
**issue** 20:3 27:11,22 29:8
**issued** 25:25 26:2
**it's** 4:18 5:3,17 6:17 10:12 12:12 13:8 17:14,14 19:16 26:3 26:7 28:11 33:4
**I'd** 7:3 17:22
**I'll** 9:10 13:20 19:13 31:22
**I'm** 5:19,20 6:16 9:14 12:11,17 14:24 16:4 16:23 18:7,22 20:7 20:8 25:2,9 27:1,23 29:1,4,5 30:10 31:9 31:17,18,23 32:11 32:14 33:12,21 34:6 34:19
**I've** 23:9 28:8 31:3

**J**

**January** 24:13,13
**jaugust@herrick.c...** 2:8
**Jersey** 1:1,16,18,23 1:24 2:3,7,11,16,20 4:2 36:5,23
**John** 2:6,11 31:16
**judge** 25:25 27:22 29:6,7 30:11
**juncture** 25:6
**June** 23:12
**J.P** 2:9 28:16 31:17

32:1,5,25

**K**

**K** 4:1
**Kennedy** 2:11
**kind** 6:18 13:12 26:18
**knock** 10:12
**know** 6:8,10,12,22 7:3 9:25,25 10:7,10 19:4 21:11,14 29:17 30:10 31:9 32:22
**knowledge** 6:19 21:18
**known** 31:2
**Krelman** 1:6,8 2:17 3:3,13,14,16 4:7 5:17 7:3,12,15,25 9:13 10:14,20 12:16 28:12 29:18,24 31:16 34:21
**Krelman-1** 3:10 4:4
**Krelman-2** 3:11 23:5 23:6,10
**Krelman-3** 3:12 30:17,18 33:13
**Krelman-4** 3:13 33:22
**Krelman-5** 3:14 34:7
**Krelman-6** 3:16 34:20
**Kupperman** 1:8 2:13 4:9

**L**

**L** 4:1,1
**language** 24:4
**Larner** 2:10 24:11,15 24:21,24
**laughter** 6:3
**law** 4:3,20 13:7 16:18 16:24
**leads** 30:1
**left** 5:25
**legal** 26:19
**lent** 11:24
**letterhead** 14:10
**letters** 14:17 15:3
**let's** 17:8

**LICENSE** 36:24
**limit** 31:18,24
**limited** 10:8,10 27:3
**lists** 34:24
**litigation** 36:16
**little** 5:19
**LLC** 1:9
**loan** 32:6,25 33:9
**loans** 15:9,10
**long** 5:20 25:10
**longer** 18:6
**look** 10:14 23:17
　33:14,24 34:9,13
**looks** 23:11
**lot** 26:25
**Lynch** 1:3 5:22,23
　11:23 12:3,9,24
　13:13,20,24 14:3,7
　14:10,17,20,23 15:3
　15:8,19 16:12 19:21
　20:24 21:6,9,12,15
　22:1 24:12 28:20
**Lynch's** 15:9
**L.L.C** 2:18 11:15,18
　11:21 23:14 32:1
**L.L.P** 2:6

**M**

**M** 2:6 4:1
**MAC** 2:14
**magnanimous** 27:15
**manner** 8:8
**March** 34:8
**MARCY** 2:10
**mark** 9:23 10:3 30:16
**marked** 4:4 12:12,12
　23:4,6,10 30:18
　32:12 33:13,22 34:7
　34:20
**materials** 13:19
**matter** 4:19 5:12 6:22
　29:15 32:22
**matters** 4:6 25:20
**Mattia** 14:11,13
**mean** 27:9 30:12
**meaning** 32:21
**means** 10:4 31:7,8
**meant** 30:8
**mechanism** 5:3

**meet** 19:17
**member** 23:13
**Mendham** 4:2
**Merrill** 1:3 5:22,23
　11:23 12:3,9,24
　13:13,20,24 14:3,7
　14:10,17,20,23 15:3
　15:8,8,19 16:12
　19:21 20:23 21:5,9
　21:12,15 22:1 24:12
　28:20
**mgilroy@budd-lar...**
　2:12
**minute** 18:21 19:25
　23:1
**minutes** 5:1
**moment** 7:21,24
**money** 11:24 21:6,8
　21:11,14 32:1
**Morgan** 2:9 28:16
　31:17 32:1,5,25
**morning** 26:12
**motion** 26:25
**move** 26:22
**mutual** 27:8

**N**

**N** 2:1 3:1 4:1
**name** 5:21 27:1 31:16
**named** 26:17,24
**National** 10:16
**nature** 9:2
**need** 5:4 6:10,14 9:21
**needed** 6:23
**nefarious** 30:12
**negotiated** 23:25
**neighbor** 10:13
**neighbor's** 10:13
**NEILL** 2:14
**neither** 36:13
**never** 5:6 25:8
**new** 1:1,16,18,24 2:3
　2:7,11,16,20 4:2
　28:23 36:5,23
**Newark** 2:7,20
**normally** 18:12
**Notary** 1:16 36:23
**notice** 1:19 7:2 9:1
**November** 12:15

**number** 30:24 35:2,4

**O**

**O** 1:14
**object** 6:10 18:10
　27:13 32:14
**objected** 17:5 20:15
**objection** 13:2,4
　15:20,21 20:14,17
　27:20 28:11 29:4,9
　30:11 32:17 33:2,3
**obligation** 15:18
　16:12 19:21
**obligations** 12:8
**occur** 27:23
**occurring** 30:22
**October** 1:18 4:10
　28:19,24 33:14
**offer** 20:7 29:16
**offered** 7:24 29:24
**office** 30:2
**officer** 11:9,17
**offices** 1:17
**off-the-record** 10:17
　23:2
**Oh** 6:25
**okay** 4:24 7:20 8:11
　8:22 10:6 17:14,14
　18:22 19:7,14 20:6
　27:24 31:5,6,7,12
**onset** 25:15
**opinion** 14:17 15:2
**opportunity** 4:17
　16:16,22
**opposed** 29:13
**order** 25:24 26:1
　28:15,17
**ought** 26:19,20
**outcome** 36:15
**outside** 22:15,18
**owed** 15:19 16:12
　19:21

**P**

**P** 2:1,1 4:1
**page** 3:9 23:12,20
　24:3 33:18,18 34:2
　34:15
**Papalia** 9:18 10:1

**paragraph** 4:11,12
**Park** 1:18,24 2:3
**Parkway** 2:11
**part** 12:12
**participate** 12:21,23
　13:11 14:6,9,16,19
　15:14 21:22 22:20
　32:4
**parties** 9:20,20
**party** 26:2,4,18 27:9
　27:13 28:2,16 36:14
**Paulette** 1:6,8 2:17
　3:3 10:14 12:16
　34:21
**pending** 17:2 18:1
**people** 9:21,21 10:4,5
**permit** 25:20
**personal** 3:13,14 6:19
　8:23 9:2 10:15 15:7
　33:22 34:7
**PGB** 1:9 2:13 8:18
　11:15,17,20 15:12
　15:15 22:14,18,22
　23:14,14 24:1 26:15
　26:16 31:25 33:1
　34:25 35:5
**physically** 6:11
**pick** 9:4
**Pittra** 8:13,16 11:6,9
　11:12,25 12:8 13:1
　13:12,20,24 14:24
　15:3,9,12,19 16:12
　19:21 20:19,22 21:1
　21:2,4,5,8,11,14,19
　22:24 24:12,24
**Pittra's** 12:2 15:15
　22:1
**place** 28:1 36:11
**placed** 20:14
**places** 23:12
**plaintiff** 1:5 2:5 26:7
**please** 16:8 18:20
　28:10 33:23 34:8
**point** 6:20 17:24 27:5
**pointed** 28:15 33:6
**Polak** 2:14,15 4:13
　4:15 5:11 6:16,25
　7:5,9,23 8:10,14,20
　8:24 9:5,7,14 10:6

10:24 12:19 13:2,6
13:9 15:20,23 16:1
16:6,15,21,25 17:6
17:15,19,21 18:2,11
18:24 19:7,10,11,16
20:7,11,13 23:17
25:1,4,10,14 26:6
27:15,19,25 28:7
29:3,11 30:13,20
31:10 32:3,13,16
33:2,4,10 34:12
**Politziner** 14:11,13
**position** 5:6 7:19 8:3
26:15 31:8
**possession** 8:16
**possible** 6:17 29:25
**POST** 2:14
**practical** 5:3 25:8
**practice** 26:25
**prefer** 19:17 29:23
**prejudice** 25:21
28:12
**prejudiced** 5:5
**prepare** 10:1
**prepared** 14:14 15:4
15:5 19:1 23:23
**preparing** 13:11
**presented** 14:3
**presenting** 13:12
**preserves** 5:8
**previously** 29:14
**prior** 25:15 28:9 30:8
36:6
**privilege** 18:9 29:2
31:21
**probably** 10:1,11
31:7 32:23
**proceed** 20:11
**proceeding** 5:12
25:23 30:21
**proceedings** 6:3
25:11
**produce** 9:11,15
**produced** 7:18
**producing** 7:3,15
8:12,13,23 9:10
**production** 7:21,23
**professionals** 9:21
**proposed** 10:2

**propound** 5:4
**provide** 15:7 18:9
20:22 21:2 33:8
**provided** 13:20,24
14:23 15:3 18:12
32:8,19,24 33:5,7
**provides** 28:17
**providing** 12:21,23
14:6,9,16,19 32:4
**Public** 1:16 36:23
**Purchase** 3:11 23:11
**purely** 6:6
**purported** 15:5
**purpose** 5:2 6:12
25:5
**purposes** 25:9
**pursuant** 1:19
**pursue** 27:10
**put** 5:1 26:10 29:4
**P.A** 2:14
**P.C** 2:2,10
**p.m** 1:19 29:6 35:12

### Q

**quarter** 30:1
**query** 6:18
**question** 5:5,7 9:23
13:6 16:5,8,9,10,14
17:1,1,4,12,12,16
17:18,22 18:1,3,13
18:16,18,20 19:2,3
19:5,9,10,12,12,18
19:19 20:15 24:7
25:8 31:22 32:15
**questioning** 31:24
**questions** 5:18 8:8
25:13,15,17,21,22
26:9 27:14 28:10,22
31:18,19 35:7
**question's** 25:10
**quite** 27:15

### R

**R** 1:14 2:1,2 4:1 36:1
**reach** 25:6 29:6 30:11
**read** 10:24 16:7,9
17:4,11 18:19 19:9
19:18 26:8
**realize** 30:8

**reason** 31:3
**recall** 10:9 27:23
**recess** 20:1
**recognize** 33:15,24
34:9,21
**recognizing** 29:9
**record** 4:7,13 5:1 6:2
10:16 20:14 23:1
25:19 26:11 28:8,14
29:4,10 30:14
**records** 22:24
**refer** 5:23
**referred** 4:20
**referring** 14:24
**reflect** 35:4
**reflected** 6:5
**regard** 8:11 9:23 19:4
**regarding** 6:18 28:14
**regards** 30:5
**relief** 25:25 27:2
**rely** 25:24
**remember** 27:6
**rephrase** 18:16 19:5
**rephrased** 18:13
**reporter** 1:15 6:1
17:10 19:9 36:5
**REPORTING** 1:22
1:23
**represent** 5:22 24:21
24:24 31:17
**represented** 4:19,21
8:15,21
**request** 7:1,4 18:25
**requested** 9:18
**rescheduled** 28:25
**resolve** 19:13 29:8
**respect** 18:11,14,25
**respects** 13:16,25
14:4,24 32:9,19,21
33:1
**responds** 7:5
**response** 7:4
**Restraints** 25:25
**review** 7:17
**right** 16:6 17:6 18:11
19:6 25:18,21 26:9
26:16 27:10 32:23
**rights** 5:8 10:4
**Road** 1:23

**Rock** 2:15
**Roseland** 2:16
**Ross** 1:8,17 2:2,21
**rules** 16:18,19

### S

**S** 2:1 3:8
**SAIBER** 2:18
**sake** 31:23
**sarcasm** 6:4,4
**satisfied** 15:19 16:13
19:22
**SATZ** 2:18
**save** 26:24
**saw** 5:10
**saying** 10:9 27:23
**says** 4:10 12:13,15
19:11
**schedule** 28:23
**scheduled** 29:14
**SCHLESINGER**
2:18
**scope** 27:20
**second** 18:23 19:1
23:18 32:13 34:12
**Secondly** 6:8
**secured** 26:17,18
**see** 9:10
**seeking** 27:2
**seen** 4:18
**sense** 28:21
**series** 7:11
**serve** 31:3
**Services** 1:4,22 5:23
11:24 12:3,9,25
13:13
**set** 36:12
**shareholder** 11:5
**sheet** 3:16 34:20
**she'll** 8:23
**she's** 18:7
**short** 2:11 5:21
**shorthand** 1:15 6:1
36:4
**show** 12:11 23:9
25:24 28:15,17
32:11 33:12,21 34:6
34:19
**sign** 4:14,15 12:7

21:25
**signature** 12:16,18
  23:13,15,21 33:17
  33:19 34:2,4,15,17
**signed** 4:7,8 28:15
  31:19
**silence** 31:6
**similar** 4:7
**sit** 7:20
**situation** 27:13
**Slightly** 32:21
**smile** 6:3
**soda** 6:9
**sorry** 9:14 24:8
**sort** 20:5 26:19,20
  27:21
**speak** 16:16 18:4,25
  29:3
**speaks** 18:6
**spoke** 25:15
**stage** 6:17
**stands** 20:12
**start** 13:21 28:9
**state** 1:16 36:5,5,23
**statement** 3:13,15
  28:14 33:23 34:8
**statements** 12:24
  13:12,15,18,19,22
  13:23,25 14:10,14
  14:22,22,25 15:8
**States** 1:1 21:16,20
  22:15,18
**stenographic** 6:2
**stenographically**
  36:11
**step** 18:21
**stipulation** 10:2
**stop** 20:19
**stopped** 21:1
**straightened** 20:9,10
**STRAUCHLER** 2:14
**strike** 12:22 13:20,21
  14:20 21:2
**subject** 8:15 9:24
  10:3 20:13
**suggest** 19:8 30:9,12
**Suite** 1:23
**sure** 6:16 15:18 16:11
  18:17 19:20

**sworn** 4:2 36:6

_____
### T

**T** 3:8 4:1,1 36:1,1
**take** 4:22 5:6 7:2
  19:24 23:17 25:2
  29:1 30:13 33:14,23
  34:8,12
**taken** 36:10
**talk** 17:13 19:10
**talked** 4:25
**TEL** 1:24
**tell** 33:14,18,24 34:3
  34:9,16,21 35:1
**Temporary** 25:24
**term** 26:20
**testified** 4:3
**testify** 36:7
**testimony** 20:6 36:10
**Thank** 9:6 10:6
**that's** 5:8,24 8:24 9:5
  13:6 16:19 19:7,16
  25:4,11 26:19,20
  27:15,17 31:8,11
  33:19 34:3,16 35:7
**thereof** 23:13
**Theresa** 1:15 5:25
  36:4
**there's** 6:9 7:21,23
  9:8 12:15 24:3,4
  28:4
**they're** 31:9
**thing** 20:2 27:5 30:21
**think** 5:9 6:25 8:20
  9:9,24 13:6 17:14
  20:14 29:11 30:24
  31:2 32:20 33:4
**thought** 17:7 26:23
  26:24
**Thursday** 8:1,9
  29:19
**time** 5:7 6:20 7:16
  11:5,8,14,18,21
  12:4 15:17,23 16:10
  16:20 19:19 20:20
  26:2,14 28:1 29:8
  29:25 30:2 31:23
  36:11
**times** 8:2 28:25

**time-saving** 5:3
**today** 5:2 7:17 8:5
  26:6 29:23,25 30:3
  30:22 31:18
**tones** 6:4
**tonight** 8:1
**top** 12:14
**total** 35:4
**traditional** 5:17
**transcript** 6:2,5,8
  36:10
**transfer** 15:12,14
**transferred** 22:14,18
**transfers** 21:19,23
  22:20
**tried** 8:6
**trouble** 26:25
**true** 13:15,25 14:4,23
  28:3 32:9,19,20
  33:1 36:10
**trustee** 9:23
**truth** 36:7,7,8
**try** 19:13
**Turnpike** 1:18 2:3
**two** 27:11
**typewritten** 12:16

_____
### U

**U** 4:1
**uncomfortable** 6:11
**unconditional** 12:7
  12:14
**understand** 4:24
  18:19 19:3,4 29:12
  31:8,10
**understanding** 9:16
  16:17 26:3 27:12
  30:22
**understood** 20:16
**undertake** 15:18
  16:11 19:20
**United** 1:1 21:15,20
  22:15,18
**use** 6:10 10:5,8,11
**U.S** 10:20

_____
### V

**value** 35:5,5
**verification** 8:15

**Verified** 12:13 30:23
**VERITEXT/NEW**
  1:23
**version** 6:13
**view** 25:16
**voice** 6:5
**Vreeland** 1:23
**vs** 1:6

_____
### W

**want** 4:12 5:20 6:9,22
  7:7 17:17 18:17,21
  19:24 20:2 26:10
  27:5,12 28:13 30:20
**wanted** 8:5 32:20
**wants** 17:13
**wasn't** 12:12 30:8
**water** 6:9
**way** 5:9 18:7 27:11
  27:20
**Wednesday** 8:1,8
  29:19
**week** 7:19 8:1,21
**went** 4:6 21:12
**weren't** 26:11
**we'll** 6:19 11:4
**we're** 5:5 9:22
**what's** 13:4 15:21
  33:3,12,21 34:6,19
**wire** 24:11
**wisdom** 5:10,11
**wishes** 18:6,8
**witness** 3:2 16:25
  17:3,11,12,13,15,21
  18:12,18,18,20,20
  18:23 19:6,14 36:6
**word** 6:7 12:17
**words** 6:7

_____
### X

**X** 3:1,8 19:13
**XIO1129** 36:24

_____
### Y

**Yeah** 5:13 6:16 15:25
  17:20 23:19
**you'll** 10:15
**you're** 9:10 18:2
  31:21

**you've** 20:3 30:4

**$**

**$1,416,000** 35:1

**0**

**06** 1:2
**07068** 2:16
**07078** 2:11
**07102** 2:7
**07102-5311** 2:20
**07932** 1:24 2:3

**1**

**1** 4:11,12
**10/8/04** 3:12
**13th** 2:19
**14** 23:12
**150** 2:11
**19** 12:15

**2**

**2/06** 3:13
**2002** 12:15 22:6
**2003** 20:20 21:4 22:4
  23:12
**2004** 22:8 33:14
**2005** 22:10 24:13
  34:8
**2006** 1:18 4:11 22:12
  24:13 28:24 33:23
**228-9900** 2:16
**23** 1:18 3:11 4:10
**25B** 1:23
**274-2529** 2:8

**3**

**3** 33:18
**3/05** 3:14
**30** 3:12,13,15,16
**301** 1:23
**31** 3:4 28:19,24
**325** 1:17 2:3
**379-4800** 2:12

**4**

**4** 3:4,10
**410-1313** 1:25
**410-4040** 1:24
**425** 2:15

**43** 4:1
**4802** 1:2

**5**

**5** 23:12
**5:30** 30:2
**514-1200** 2:4

**6**

**6** 1:19 30:18
**6:46** 29:6,13
**6:56** 35:12
**622-3333** 2:20

**7**

**7** 30:17

**8**

**8** 33:14

**9**

**973** 1:24,25 2:4,8,12
  2:16,20

# EXHIBIT "D"

George R. Hirsch (GH 8284)
BRESSLER, AMERY & ROSS, P.C.
P.O. Box 1980
Morristown, New Jersey 07962
325 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 514-1200
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ARTHUR KUPPERMAN, E. ROSS BROWNE, PAULETTE KRELMAN and PGB INTERNATIONAL, LLC,<br><br>Defendant. | Civil Action No: 06 Civ. 4802 (DMC)<br><br>**NOTICE TO TAKE DEPOSITIONS** |

To:   Budd Larner
      150 John F. Kennedy Parkway
      Short Hills, New Jersey 07078-7734
      Attorneys for Defendants
       Arthur Kupperman and PGB International, LLC

      Saiber Schlesinger Satz & Goldstein, LLC
      One Gateway Center
      13th Floor
      Newark, New Jersey 07102-5311
      Attorneys for Defendant
       E. Ross Browne

      Post, Polak, Goodsell, MacNeill, & Strauchler, P.A.
      425 Eagle Rock Avenue, Suite 200
      Roseland, New Jersey 07068
      Attorneys for Defendant
       Paulette Krelman

Counsel:

**PLEASE TAKE NOTICE** that, pursuant to the Federal Rules of Civil Procedure and the Court's October 6, 2006 Order To Show Cause, commencing at **9:00 A.M.** on **Monday October 23, 2006** and continuing from day to day thereafter until completed, the undersigned attorneys for Plaintiff will take the testimony by deposition upon oral examinations, of the following, whom you are requested to please produce at the times set forth below:

A.    Paulette Krelman -- 9:00 a.m.

B.    E. Ross Browne – commencing immediately following the completion of the deposition of Paulette Krelman.

C.    PGB International, LLC (by a person designated by such entity pursuant to Federal Rule of Civil Procedure 30(b)(6)) – commencing immediately upon the completion of the deposition of E. Ross Browne.

D.    Arthur Kupperman – commencing immediately upon the completion of the deposition of PGB International, LLC.

**PLEASE TAKE FURTHER NOTICE** that each of the witnesses is requested to bring to the deposition the documents designated on Schedule "A" attached.

Respectfully,

BRESSLER, AMERY & ROSS, P.C.
Attorney for Plaintiff

By: _____
George R. Hirsch

Dated:  October 16, 2006

CC: John M. August, Esq.
Herrick, Feinstein LLP
One Gateway Center
Newark, NJ  07102
Attorneys for J.P. Morgan
 Chase Bank

John P. Gleason, Esq.
Gleason & Koatz, LLP
230 Park Avenue
New York, New York 10169
Attorney for Empresas Lourdes, S.A.

James A. Scarpone, Esq.
 Scarpone Staiano & Savage
 744 Broad Street, Suite 1901
 Newark, NJ 07102
Attorney for Chapter 7 Trustee
 of the Bankruptcy Estate of PITTRA G.B. International, Inc.

**SCHEDULE "A"**

**DEFINITIONS AND INSTRUCTIONS**

A.     Wherever appropriate in this request, the singular form of the word shall be interpreted as plural and vice versa.

B.     "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request any information which might otherwise be construed to be outside their scope.

C.     Wherever appropriate in this request, the masculine form of a word shall be interpreted as feminine and vice versa.

D.     The term "person" means any natural person, corporation, firm, partnership or other legal entity.

E.     The term "information" shall be expansively construed and shall include, but not be limited to, facts, data, opinion, images, impressions, concepts and formulae.

F.     The term "document" is to be synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes any tangible thing from or on which information can be obtained, translated, inscribed or memorialized in any way, by any means, regardless of technology or form.  A draft or non-identical copy is a separate document within the meaning of the term "document."

G.     A document "relating to" any given matter means any document that constitutes, contains, discusses, embodies, reflects, identifies, states, refers to, confirms, or is in any way probative to that matter, either positively or negatively.

H.     "Between" means sent to or received from.

I.    The term "communication" includes every exchange of information by any means, whether oral, written, electronic or otherwise and includes cc:'s and any enclosures.

J.    If objection is made to any of the following requests, or if all documents responsive to a request are not produced, state the specific ground therefore and produce all documents responsive to the request as to which there is not an objection. If any requested document is withheld under a claim of privilege or the work-product doctrine, fully identify each withheld document by author, date, title and subject matter, and state the name and employment position of each person who has received and read the document, or who knows or who has been informed of the contents thereof, in whole or in part, and state in details the ground upon which it is withheld.

K.    If a requested document has ceased to exist, specify for each such document: (a) the type of document; (b) the information contained therein; (c) the date upon which such document ceased to exist; (d) the circumstances under which such document ceased to exist; and (e) identify each person having knowledge of the document's contents.

L.    This request shall be deemed continuing so as to require further and supplemental production if you discover, create or come into possession, custody or control of additional responsive documents from the time of the original production to the time of final judgment in this action.

M.    As used herein, capitalized terms have the same meaning as used in the Verified Complaint.

N.    As used herein:

(i) "Subjects" mean

    a.    PITTRA G.B. International, Inc.;

    b.    PGB International, LLC;

    c.    Paulette Krelman;

    d.    Arthur Kupperman;

    e.    E. Ross Browne;

    f.    any other entity in which Krelman, Kupperman, or Browne have an interest or had an interest since January 1, 2002.

(ii) "Accounts" mean any type of financial account (including but not limited to checking, savings, securities, money market, credit line or other account in the name of any subject (individually, jointly, with any person in fiduciary capacity) or with regard to which any subject had signatory rights or authority;

(iii) "PITTRA" means PITTRA G.B. International, Inc.; and

(iv) "PGB" means PGB International, Inc.

## DOCUMENTS TO BRING TO DEPOSITION

1.    Copies of all pages of all passports held since January 1, 2000.

2.    All documents relating to PITTRA.

3.    All personal and business bank statements and cancelled checks since January 1, 2003.

4.    All personal and business credit card statements since January 1, 2002.

5.    All personal and business telephone (including cellular) records since January 1, 2002.

6.    All account statements for any accounts of any of the Subjects from January 1, 2002 to the date hereof.

7.    All documents relating to PGB.

8.    Documents relating to communications with any person or entity regarding any Account.

9.    Documents relating to communications with any of the following relating to PITTRA from January 1, 2002 to the date hereof.

      (a)    Budd Larner or Becker Meisel (please note that the attorney for the PITTRA bankruptcy Trustee, James Scarpone, Esq., will confirm waiver of PITTRA's attorney client privilege as to both firms);

      (b)    PGB;

      (c)    Merrill Lynch Business Financial Services Inc., or any affiliate, parent, subsidiary, or related entity including but not limited to Merrill Lynch Pierce Fenner & Smith; or

(d) J.P. Morgan Chase Bank, or any affiliate, parent, subsidiary or related entity.

10. Judgments of conviction, indictments, complaints, arrest warrants and all other documents relating to any federal or state criminal prosecutions, investigations, indictments and/or convictions of any of the Subjects at any time.

11. Petitions, supporting schedules, orders and dispositions for all bankruptcy filings by any of the Subjects and/or business entities owned or controlled by any of the Subjects at any time.

12. All documents, including but not limited to, receipts, checks, wire transfer confirmations, cash withdrawals and correspondence that reflect payments by any of the Subjects to any attorneys for legal services, relating to PITTRA or PGB, including but not limited to payments to Budd Larner from June 1, 2003 through the present, and copies of all billing statements for such services.

13. Documents relating to communications with any accountants, including the Amper firm, from January 1, 2002 to the present.

14. Documents relating to the location of any assets of any of the Subjects.

15. All business and financial records of PITTRA.

16. All business and financial records of PGB.

17. Your personal laptop computer and any external hard drives.

18. All business diaries and calendars since January 1, 2002.

19. Federal and State tax returns and all schedules for 2002, 2003, 2004 and 2005.

20.     All promissory notes, mortgages, guarantees, loan repayment schedules, and other supporting loan documents from all personal and business loans in which any of the Subjects have been borrowers or guarantors since January 1, 2000.

21.     All insurance policies, appraisals, valuations, title certificates, and other documents relating to any real or personal property in which any of Kupperman, Krelman, or Browne held any interest since January 1, 2000.

22.     Copies of any and all deeds or other records reflecting the past or current ownership of any interest real property in the United States since or abroad by any of the Subjects.

23.     Copies of all leases for office or residential space or automobiles by any of the Subjects since January 1, 2000.

24.     All documents relating to the formation of PGB.

25.     All documents relating to any litigation or arbitration in which any of the Subjects was a party at any time from January 1, 2002 to the date hereof.

26.     All documents relating to the transfer of assets from PITTRA to PGB.

27.     All documents relating to the receipt by PITTRA of the $300,000.00 referred to in Section 2(b) of the June 5, 2003 Asset Purchase Agreement between PGB and PITTRA.

28.     All documents relating to the use or disposition by PITTRA of the $300,000.00 referred to in Section 2(b) of the June 5, 2003 Asset Purchase Agreement between PGB and PITTRA.

29.     All documents relating to the value of the assets of PITTRA (including appraisals, valuations, financial statements, receivables agings, etc.) as of each of the

following dates: January 1, 2002; June 5, 2002; September 1, 2002; January 1, 2003; June 1, 2003; January 1, 2004; March 31, 2004; June 30, 2004; January 1, 2005; June 1, 2005; December 1, 2005; January 1, 2006; February 1, 2006; June 30, 2006; and September 1, 2006.

30. All documents relating to the value of the assets of PGB (including appraisals, valuations, financial statements, receivables agings, etc.) as of each of the following dates: January 1, 2002; June 5, 2002; September 1, 2002; January 1, 2003; June 1, 2003; January 1, 2004; March 31, 2004; June 30, 2004; January 1, 2005; June 1, 2005; December 1, 2005; January 1, 2006; February 1, 2006; June 30, 2006; and September 1, 2006.

31. All documents relating to contracts or agreements between any of the Subjects.

32. All documents relating to any property transferred by any Subjects since January 1, 2002 other than in the ordinary course of business.

33. All frequent flier statements for any of the Subjects for any airline since January 1, 3003.

34. All documents identifying or relating to any trust in which any Subject is or was, for their own behalf, or for the benefit of a third-party, a beneficiary, trustee, grantor, grantee, administrator, executor or otherwise holds or held an interest or involvement.

35. All documents identifying any and all accounts for any trust identified in response to demand 34 above, including account statements, checks, instruments and other documents of any nature regarding any and all subjects.