HERRICK, FEINSTEIN LLP
Paul H. Schafhauser (PS - 1337)
John M. August (JA - 6451)
One Gateway Center
Newark, New Jersey  07102
(973) 274-2000
Attorneys for Defendant JPMorgan Chase Bank, N.A.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARTHUR KUPPERMAN, E. ROSS BROWNE, PAULETTE KRELMAN, PGB INTERNATIONAL, LLC, and JPMORGAN CHASE BANK, N.A., <br><br> Defendants, <br><br> and <br><br> JOHN DOES (1-10) and ABC CORPORATIONS (1-10), <br><br> Additionally Defendants <br> on the Crossclaim. | <u>CIVIL ACTION</u> <br><br> Civil Action No. 06-4802 (DMC) <br><br> **ANSWER, COUNTERCLAIM AND CROSSCLAIM OF JPMORGAN CHASE BANK, N.A.** |

Defendant JPMorgan Chase Bank, N.A. ("Chase"), by way of answer to the Verified Complaint and Amendment to Verified Complaint (collectively, the "Complaint") of plaintiff Merrill Lynch Business Financial Services, Inc ("MLBFS" or "Plaintiff"), states as follows:

### <u>Jurisdiction and Venue</u>

1.        Chase admits the allegations contained in paragraph 1 of the Complaint.

2.      Chase admits the allegations contained in paragraph 2 of the Complaint.

**The Parties**

3.      Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 3 of the Complaint, and therefore leaves Plaintiff to its proofs.

4.      Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 4 of the Complaint, and therefore leaves Plaintiff to its proofs.

5.      The allegations contained in paragraph 5 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 5 of the Complaint, and therefore leaves Plaintiff to its proofs.

6.      Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 6 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit, upon information and belief, that defendant Arthur Kupperman ("Kupperman") resides at 43 Hampshire Drive, Mendham, New Jersey and is a member and the Manager of defendant PGB International LLC ("PGB").

7.      Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 7 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit, upon information and belief, that defendant Paulette Krelman ("Krelman") resides at 43 Hampshire Drive, Mendham, New Jersey and is a member of PGB.

8.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 8 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit, upon information and belief, that defendant E. Ross Browne ("Browne") resides at 27 Waterford Drive, Montville, New Jersey and is a member of PGB.

9.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 9 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit, upon information and belief, that PGB is a New Jersey Limited Liability Company with places of business at 123 Madison Avenue, Madison, New Jersey and/or 6 South Street, Morristown, New Jersey, and that the members of PGB are Kupperman, Krelman and Browne.

9B.    Chase admits the allegations of paragraph 9B of the Complaint.

10.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 10 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit, upon information and belief, that PGB is engaged in the business of importing, exporting and trading in food ingredients.

**MLBFS' Loans to PITTRA**

11.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 11 of the Complaint, and therefore leaves Plaintiff to its proofs.

12.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 12 of the Complaint, and therefore leaves Plaintiff to its proofs.

3

13.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 13 of the Complaint, and therefore leaves Plaintiff to its proofs.

14.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 14 of the Complaint, and therefore leaves Plaintiff to its proofs.

15.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 15 of the Complaint, and therefore leaves Plaintiff to its proofs.

16.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 16 of the Complaint, and therefore leaves Plaintiff to its proofs.

17.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 17 of the Complaint, and therefore leaves Plaintiff to its proofs.

18.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 18 of the Complaint, and therefore leaves Plaintiff to its proofs.

19.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 19 of the Complaint, and therefore leaves Plaintiff to its proofs.

20.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 20 of the Complaint, and therefore leaves Plaintiff to its proofs.

21.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 21 of the Complaint, and therefore leaves Plaintiff to its proofs.

22.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 22 of the Complaint, and therefore leaves Plaintiff to its proofs.

23.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 23 of the Complaint, and therefore leaves Plaintiff to its proofs.

24.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 24 of the Complaint, and therefore leaves Plaintiff to its proofs.

25.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 25 of the Complaint, and therefore leaves Plaintiff to its proofs.

26.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 26 of the Complaint, and therefore leaves Plaintiff to its proofs.

27.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 27 of the Complaint, and therefore leaves Plaintiff to its proofs.

28.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 28 of the Complaint, and therefore leaves Plaintiff to its proofs.

29.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 29 of the Complaint, and therefore leaves Plaintiff to its proofs.

30.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 30 of the Complaint, and therefore leaves Plaintiff to its proofs.

31.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 31 of the Complaint, and therefore leaves Plaintiff to its proofs.

32.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 32 of the Complaint, and therefore leaves Plaintiff to its proofs.

**The Fraud**

33.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 33 of the Complaint, and therefore leaves Plaintiff to its proofs.

34.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 34 of the Complaint, and therefore leaves Plaintiff to its proofs.

35.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 35 of the Complaint, and therefore leaves Plaintiff to its proofs.

36.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 36 of the Complaint, and therefore leaves Plaintiff to its proofs.

37.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 37 of the Complaint, and therefore leaves Plaintiff to its proofs.

38.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 38 of the Complaint, and therefore leaves Plaintiff to its proofs.

39.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 39 of the Complaint, and therefore leaves Plaintiff to its proofs.

40.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 40 of the Complaint, and therefore leaves Plaintiff to its proofs.

41.   Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 41 of the Complaint, and therefore leaves Plaintiff to its proofs.

42.   Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 42 of the Complaint, and therefore leaves Plaintiff to its proofs.

43.   Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 43 of the Complaint, and therefore leaves Plaintiff to its proofs.

44.   Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 44 of the Complaint, and therefore leaves Plaintiff to its proofs.

45.   Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 45 of the Complaint, and therefore leaves Plaintiff to its proofs.

46.   Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 46 of the Complaint, and therefore leaves Plaintiff to its proofs.

47.   Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 47 of the Complaint, and therefore leaves Plaintiff to its proofs.

48.    Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 48 of the Complaint, and therefore leaves Plaintiff to its proofs.

## FIRST COUNT
### (Attachment Against Kupperman, Krelman And Browne)

49.    Chase repeats each and every response to the allegations contained in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

50.    The allegations contained in paragraph 50 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 50 of the Complaint, and therefore leaves Plaintiff to its proofs.

51.    The allegations contained in paragraph 51 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 51 of the Complaint, and therefore leaves Plaintiff to its proofs.

52.    The allegations contained in paragraph 52 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 52 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit that: (i) Browne is a member of PGB and, upon information and belief, Browne has an interest in real property located at 27 Waterford Drive, Montville, New Jersey; (ii) Krelman is a member of PGB and, upon information and belief, has an interest in real property located at 43 Hampshire Drive, Mendham, New Jersey; and (iii) Kupperman is a member of PGB.

9

53.     The allegations contained in paragraph 53 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 53 of the Complaint, and therefore leaves Plaintiff to its proofs.

## SECOND COUNT
### (Fraud Against All Defendants)

54.     Chase repeats each and every response to the allegations contained in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

55.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 55 of the Complaint, and therefore leaves Plaintiff to its proofs.

56.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 56 of the Complaint, and therefore leaves Plaintiff to its proofs.

57.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 57 of the Complaint, and therefore leaves Plaintiff to its proofs.

58.     The allegations contained in paragraph 58 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 58 of the Complaint, and therefore leaves Plaintiff to its proofs.

## THIRD COUNT
### (Restraint On Transfer Of Assets Against All Defendants)

59.     Chase repeats each and every response to the allegations contained in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

60.     The allegations contained in paragraph 60 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 60 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit that Kupperman, Krelman and Browne, as members of PGB, engaged in fraudulent and deceptive conduct in the operation of PGB.

61.     The allegations contained in paragraph 61 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 61 of the Complaint, and therefore leaves Plaintiff to its proofs.

62.     The allegations contained in paragraph 62 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 62 of the Complaint, and therefore leaves Plaintiff to its proofs.

63.     The allegations contained in paragraph 63 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase admits the allegations contained in paragraph 63 of the Complaint.

64.     The allegations contained in paragraph 64 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase admits the allegations contained in paragraph 64 of the Complaint.

11

## FOURTH COUNT
**(Breach of Contract Against Defendants Kupperman, Krelman and Browne)**

65.     Chase repeats each and every response to the allegations contained in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

66.     The allegations contained in paragraph 66 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 66 of the Complaint, and therefore leaves Plaintiff to its proofs.

## FIFTH COUNT
**(Alter Ego Against PGB)**

67.     Chase repeats each and every response to the allegations contained in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

68.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 68 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit that PGB did engage in some activities which generated, among other things, receivables and inventory upon which Chase has a first priority security interest.

69.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 69 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit that PGB did engage in some activities which generated, among other things, receivables and inventory upon which Chase has a first priority security interest.

70.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 70 of the Complaint, and therefore

leaves Plaintiff to its proofs, except to admit that PGB did engage in some activities which generated, among other things, receivables and inventory upon which Chase has a first priority security interest.

71.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 71 of the Complaint, and therefore leaves Plaintiff to its proofs.

72.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 72 of the Complaint, and therefore leaves Plaintiff to its proofs.

73.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 73 of the Complaint, and therefore leaves Plaintiff to its proofs.

74.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 74 of the Complaint, and therefore leaves Plaintiff to its proofs.

75.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 75 of the Complaint, and therefore leaves Plaintiff to its proofs.

76.     The allegations contained in paragraph 76 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 76 of the Complaint, and therefore leaves Plaintiff to its proofs.

## SIXTH COUNT
### (Attachment Against PGB)

77.     Chase repeats each and every response to the allegations contained in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

78.     The allegations contained in paragraph 78 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 78 of the Complaint, and therefore leaves Plaintiff to its proofs, except to admit that a writ of attachment should issue against all assets of PGB.

## SEVENTH COUNT
### (Foreclosure Of Security Interest Against PGB)

79.     Chase repeats each and every response to the allegations contained in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

80.     Chase denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 80 of the Complaint, and therefore leaves Plaintiff to its proofs.

81.     The allegations contained in paragraph 81 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies the allegations of paragraph 81 of the Complaint.

82.     The allegations contained in paragraph 82 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies the allegations of paragraph 82 of the Complaint.

83.    The allegations contained in paragraph 83 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies the allegations of paragraph 83 of the Complaint.

84.    The allegations contained in paragraph 84 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Chase denies the allegations of paragraph 84 of the Complaint.

WHEREFORE, Chase demands judgment as follows:

a.    Dismissing the Complaint as against Chase and/or denying the relief sought by Plaintiff insofar as Plaintiff seeks relief against Chase and/or with respect to any claims, liens, interest and/or collateral of Chase;

b.    Declaring and adjudging that Chase's claims, liens and/or interests with respect to the assets of PGB have priority over and are superior to any claim, lien and/or interest assertedly held by Plaintiff with respect to same;

c.    Granting legal fees and costs;

d.    Granting such further relief as this court may deem just and equitable.

## AFFIRMATIVE DEFENSES

1.    Plaintiff's claims fail to state a cause of action upon which relief may be granted against Chase.

2.    Plaintiff's claims are barred insofar as Plaintiff seeks to foreclose on property as to which Chase has a prior and/or superior lien and/or interest.

3.    Chase has a first lien and security interest as to any property, real or personal, of PGB.

4.    Plaintiff's claims against Chase, if any, are barred by the applicable provisions of the Uniform Commercial Code.

5.     Plaintiff's claims against Chase, if any, are barred by waiver, estoppel and/or laches.

WHEREFORE, Chase demands judgment as follows:

a.     Dismissing the Complaint as against Chase and/or denying the relief sought by Plaintiff insofar as Plaintiff seeks relief against Chase and/or with respect to any claims, liens, interest and/or collateral of Chase;

b.     Declaring and adjudging that Chase's claims, liens and/or interests with respect to the assets of PGB have priority over and are superior to any claim, lien and/or interest assertedly held by Plaintiff with respect to same;

c.     Granting legal fees and costs;

d.     Granting such further relief as this court may deem just and equitable.

## COUNTERCLAIM AND CROSSCLAIM

JPMorgan Chase Bank, N.A. (previously and hereinafter referred to as "Chase"), having a principal place of business at its main office at 1111 Polaris Parkway, Columbus, Ohio, 43240, states as follows by way of counterclaim against Plaintiff and crossclaim against PGB, Kupperman, Krelman, Browne, John Does (1-10) and ABC Corporations (1-10):

### Additional Defendants on Crossclaim

1.     John Does (1-10) are individuals whose identity is unknown and who participated, aided and/or assisted in the activities of PGB, Kupperman, Krelman and Browne set forth herein, and/or who were the recipients of fraudulent transfers as set forth herein. John Does (1-10) are joined as additional defendants on the crossclaim pursuant to F.R.C.P. 13(h).

2.     ABC Corporations (1-10) are legal entities whose identity is unknown and that participated, aided and/or assisted in the activities of PGB, Kupperman, Krelman and Browne set forth herein, and/or that were the recipients of fraudulent transfers as set forth herein. ABC Corporations (1-10) are joined as additional defendants on the crossclaim pursuant to F.R.C.P. 13(h).

**Factual Background**

A.        **The Loan**

3.        Chase made a loan to PGB with a principal availability of $3,000,000.00 (the "Loan") pursuant to the terms and conditions contained in a $3,000,000 Advised Line of Credit Note dated March 16, 2006 (the "Note").  As of October 16, 2006, the principal amount due and owing on the Loan totaled $3,000,000.00, and accrued and unpaid interest totaled $34,293.49.

4.        This indebtedness, together with all of PGB's other obligations to Chase now or hereafter existing or arising under the Note or otherwise, was and remains secured by the collateral described in a certain Security Agreement dated October 8, 2004 (the "Security Agreement").

5.        The Security Agreement gave Chase a first priority security interest in all of the assets of PGB, as follows:

> All personal property and fixtures whether now or hereafter existing or now owned or hereafter acquired and wherever located, including without limitation all present and future accounts receivable and all other accounts of any kind, chattel paper, commercial tort claims, deposit accounts at any depositary, documents, inventory, equipment and all other goods of any kind, instruments, securities, security entitlements, securities accounts and all other investment property of any kind, letter-of-credit rights, money, cash and cash equivalents, patents, patent applications, trademarks, trademark applications, trade names, copyrights, copyright applications, rights to sue and recover for past infringements of patents, trademarks and copyrights, computer programs, computer software, engineering drawings, service marks, customer lists, goodwill, payment intangibles, software and all other general intangibles of any kind, all additions, accessions, replacements, repairs, additions or substitutions to and all computer programs embedded in any of the foregoing (including computer programming instructions), all supporting obligations of every nature for any of the foregoing, all licenses, permits, agreements of any kind or nature pertaining to the operation or possession or use or the authority to operate, possess or use (by any person or entity) any of the foregoing, all books, records, files, documents and recorded data of any kind or nature,

including any writings, plans specifications and schematics, together with all processes (including computer programming instructions) recording or otherwise related to any of the foregoing, all insurance claims or other claims (including tort claims) against third parties for loss, damage, or destruction of or wrongful conduct with respect to any of the foregoing and any and all proceeds of any of the foregoing.

6.      On or about October 20, 2004, Chase duly filed Uniform Commercial Code Financing Statement 1 (#22632197) to perfect its security interest in PGB's assets.

7.      A UCC search completed on October 30, 2006 has confirmed that Chase has a first priority security interest in PGB's assets.  Indeed, Chase has the only filed security interest against PGB's assets.

8.      Kupperman executed the Note and Security Agreement as a Member of PGB.

9.      The Loan is guaranteed by Browne and Krelman, severally, each of whom executed and delivered to Chase a guaranty (respectively the "Browne Guaranty" and the "Krelman Guaranty", and collectively, the "Guaranties") on or about October 8, 2004.  The Guaranties are guaranties of payment and, accordingly, both Browne and Krelman are obligated for the full amount of the Obligations.

10.      Browne and Krelman each provided a personal financial statement at the time they executed the Guaranties.  Chase relied on the accuracy and truthfulness of the representations made on the statements provided by Browne and Krelman in connection with the Guaranties and in making a loan to PGB.

11.      Upon information and belief, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) were all actively involved with the daily operations of PGB.

12.     In connection with the Loan and in accordance with the Note, Security Agreement and related documents (collectively, the "Loan Documents"), PGB provided annual financial statements to Chase as follows: (i) an Independent Auditors' Report from Amper, Politziner & Mattia P.A., dated December 17, 2003; (ii) an Accountants' Review Report from Sy Helderman & Company, dated January 6, 2005; and (iii) an Accountants' Review Report from Sy Helderman & Company, dated December 21, 2005.

13.     PGB also provided interim financial statements, including a balance sheet for PGB, dated June 30, 2006.   This June 30, 2006 balance sheet showed total assets of $12,387,967.00, which included accounts receivable of $9,621,813.00.

14.     PGB also provided monthly borrowing base certificates evidencing PGB's outstanding accounts receivable.  Kupperman signed these monthly borrowing base certificates in order to attest to their accuracy.

15.     On or about September 15, 2006, Kupperman provided a borrowing base certificate representing that as of August 31, 2006, PGB had accounts receivable of not less than $8,067,945.59, of which $4,681,975.53 were current and $3,207,331.24 were between 31 and 60 days past due.

16.     In connection with the Loan and in accordance with the Loan Documents, Browne and Krelman also provided annual personal financial statements to Chase.  Browne and Krelman signed these personal financial statements in order to attest to their accuracy.

**B.**          **The Fraud**

17.     On October 6, 2006, the Court issued an Order to Show Cause (the "OTSC") providing for the issuance of writs of attachment on the assets of PGB, Kupperman, Browne and Krelman based on Plaintiff's allegations of fraud.

18.     On or about the time that the Complaint was filed, Chase first learned of the existence of PITTRA G.B. International Inc. ("PITTRA") and the alleged fraud perpetrated by Kupperman, Browne and Krelman against Plaintiff and the other creditors of PITTRA.

19.     In accordance with the writ of attachment relating to PGB's assets, PGB's accounts at Chase have been frozen.

20.     Immediately upon learning of the alleged fraud, Chase sent auditors (the "Auditors") to PGB's offices to verify the financial information that Kupperman, Browne and Krelman had been providing to Chase.  The Court explicitly authorized this access and directed PGB, Kupperman, Browne and Krelman to cooperate with Chase in this verification.

21.     A preliminary examination of PGB's books and records revealed that instead of having more than $8,000,000.00 of accounts receivable, as PBG and Kupperman had represented in the borrowing base certificate for the month ended August 31, 2006, PGB actually had less than $1,700,000.00 in current accounts receivable.

22.     Chase subsequently learned that all of the monthly borrowing base certificates and financial statements provided by PGB are likely materially inaccurate and fraudulent.

23.     Among other things, the Auditors have advised that it appears that PGB's actual account receivables are likely no greater than $1,678,896.80, at least in part because PGB substantially overstated receivables by reporting the full sale amount on commission transactions, rather than reporting only PGB's commissions.  The Auditors have also advised of various other irregularities and discrepancies regarding PGB's financial condition and the representations that had been made to Chase regarding such financial condition.

24.     The Independent Auditors' Report for PGB from Amper, Politziner &
Mattia P.A. to PGB's Board of Directors, dated December 17, 2003, which was provided to
Chase, contains the exact same numbers for the year 2003 as an Independent Auditors' Report
for PITTRA from Amper, Politziner & Mattia P.A. to PITTRA's Board of Directors, dated
December 22, 2004, which was provided to Plaintiff (this December 22, 2004 report is attached
as Exhibit N to the Complaint).

25.     Upon information and belief, both of these Independent Auditors' Reports
were prepared by Kupperman, not Amper, Politziner & Mattia P.A.., and Kupperman simply
changed the business name depending on the recipient of the report.

26.     Upon further information and belief, the Accountants' Review Reports
from Sy Helderman & Company which were provided to Chase, dated January 6, 2005 and
December 21, 2005, were prepared by Kupperman, not Sy Helderman & Company.

27.     Moreover, PGB and Kupperman have interfered with Chase's
investigation of PGB.  The Auditors have advised that, among other things: (i) despite their
requests, they were provided only with payable vendor names, and not with contact information
(i.e., address, phone, etc.); (ii) they were provided with few, if any, original invoices, bills of
lading, or purchase orders which they had requested to verify receivables; and (iii) PGB provided
documents for only approximately one-quarter of the transactions for which vendor invoices and
backup information had been requested and most of the sample invoices provided were copies,
rather than originals.  In addition, the Auditors have advised that their task was substantially
impeded by PGB and its attorneys, who refused to give the Auditors unfettered access to PGB's
books and records.  Instead, the practice of PGB, Kupperman and PGB's attorneys was to caucus

privately after each request and then to provide only those documents which PGB and Kupperman chose to selectively produce.

28.     Further, in direct violation of the Court's direction, from approximately Friday, October 20, 2006 through Thursday, October 26, 2006, Kupperman prohibited the Auditors from entering PGB's offices.

29.     PGB and its attorneys continued to prevent access to PGB's offices until, at a hearing on October 26, 2006, this Court directed PGB, through counsel, to provide continued access immediately.

30.     On October 23, 2006, Kupperman, as representative of PGB and individually, Browne and Krelman appeared at the offices of Plaintiff's counsel for a deposition pursuant to a Notice to Take Depositions issued pursuant to the OTSC.  The Notice to Take Depositions also required the defendants to produce documents at the offices of Plaintiff's counsel.

31.     At their respective depositions, Kupperman, as representative of PGB and individually, Browne and Krelman all invoked their Fifth Amendment right against self incrimination and refused to answer any questions.  Each further signed a declaration confirming that they would invoke their Fifth Amendment privilege and refuse to answer all possible questions.     Moreover, PGB and Kupperman failed to produce any documents at Plaintiff's counsel's offices, as the Court had directed.

32.     Furthermore, in direct violation of the Court's orders and in order to circumvent the OTSC and the writs of attachment: (i) Kupperman, upon information and belief, opened a depository account at Bank of America and directed PGB's account debtors to deposit

receivables into this account; and (ii) PGB purported to assign its accounts receivable to a company known as Industrial Food Ingredients Group International.

33.    In these and other ways, PGB has defaulted on its obligations to Chase under the Note and Security Agreement.

34.    By letter dated October 16, 2006 (the "Default Notice"), Chase notified PGB, Browne and Krelman that: (i) PGB had defaulted on its obligations to Chase under the Note and Security Agreement; and (ii) the Loan is accelerated.  As a result, PGB, Browne and Krelman are obliged to pay immediately, among other things, the principal amount due and owing on the Loan, interest at the default rate of Chase's prime rate plus 3.0%, and reasonable costs and expenses of every kind incurred, including reasonable legal fees and costs.

<u>**COUNTERCLAIM**</u>

35.    Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

36.    Pursuant to its filed Uniform Commercial Code Financing Statement, Chase has a first priority security interest in all of PGB's assets.

37.    A UCC search completed on October 30, 2006 has confirmed that there is no other financing statement filed against PGB's assets.

WHEREFORE, Chase demands judgment against Plaintiff as follows:

a.    Declaring and adjudging that Chase's claims, liens and/or interests with respect to the assets of PGB have priority over and are superior to any claim, lien and/or interest assertedly held by Plaintiff with respect to same;

b.    Granting legal fees and costs; and

c.    Granting such further relief as this court may deem just and equitable.

## CROSSCLAIM

### FIRST COUNT
**(Breach of Contract against PGB, Browne and Krelman)**

38.    Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

39.    PGB breached the Loan Documents by, among other things: (i) providing documents to Chase containing false representations; and (ii) failing to repay the Loan in full after receipt of the Default Notice.

40.    Browne and Krelman breached the Guaranties by, among other things, failing to repay the Loan in full after receipt of the Default Notice.

41.    As a direct and proximate result, Chase has incurred, and continues to incur, damages and is entitled to the entry of judgment against PGB, Browne and Krelman, jointly and severally, in an amount to be determined at trial.

### SECOND COUNT
**(Breach of Covenant of Good
Faith and Fair Dealing)**

42.    Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

43.    PGB, Browne and Krelman were, and remain, under a duty of good faith and fair dealing with respect to the Loan Documents, the Guaranties and otherwise.

44.    PGB, Browne and Krelman, by the aforesaid actions, omissions and conduct, breached their duty of good faith and fair dealing.

45.    As a direct and proximate result, Chase has incurred, and continues to incur, damages and is entitled to the entry of judgment against PGB, Browne and Krelman, jointly and severally, in an amount to be determined at trial.

## THIRD COUNT
### (Fraud against PGB, Kupperman, Browne, Krelman,
### John Does (1-10) and ABC Corporations (1-10))

46.     Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

47.     PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), by their statements, acts, omissions and conduct as aforesaid, made false representations to Plaintiffs and others with respect to the Loan, PGB, PGB's financial condition, Browne's and Krelman's financial condition and matters relating to same.

48.     The aforesaid misrepresentations were gross, willful, wanton, intentional and reckless.

49.     PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), by their statements, acts, omissions and conduct, falsely represented to Chase that they intended to comply with their representations, warranties and agreements with Chase.

50.     PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), by their statements, acts, omissions and conduct, misrepresented and fraudulently concealed their present intentions, as well as facts material to the Loan, PGB, PGB's financial condition, Browne's and Krelman's financial condition and matters relating to same. PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) did so with the knowledge (a) that such statements, representations and/or omissions were false, misleading and material, and (b) that Chase would rely thereon.

51.     Chase reasonably, foreseeably and justifiably relied on the aforesaid misrepresentations and omissions. Those misrepresentations and omissions were material.

25

52.     As a direct and proximate result, Chase has incurred, and continues to incur, damages and is entitled to the entry of judgment against PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), jointly and severally, in an amount to be determined at trial, including an award of punitive damages.

## FOURTH COUNT
### (Foreclosure of Security Interest)

53.     Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

54.     Chase holds a first priority, fully perfected security interest in all of the assets of PGB and the proceeds thereof.

55.     PGB is in default of its obligations under the Loan Documents.

56.     By reason of PGB's default, Chase has the right to enforce its security interest against the assets of PGB.

## FIFTH COUNT
### (Fraudulent Conveyance)

57.     Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

58.     Upon information and belief, PGB has been, as is continuing to, transfer money out of its accounts and into the accounts of Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) and/or companies controlled by Kupperman, Browne Krelman, John Does (1-10) and ABC Corporations (1-10).

59.     Upon further information and belief, PGB has been, as is continuing to, transfer assets out of its name and into the name of Kupperman, Browne, Krelman, John Does

(1-10) and ABC Corporations (1-10) and/or companies controlled by Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10).

60.     PGB has been transferring money and assets with an intent to hinder, delay and defraud creditors of like Chase.

61.     PGB's continuing transfer of money and assets has rendered it insolvent as that term is defined in New Jersey's Uniform Fraudulent Transfer Act.

62.     PGB has received, and is receiving, less than reasonably equivalent value for the transfers it is making to Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) and/or companies controlled by Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10).

63.     PGB's continuing transfer of money and assets has left it with an unreasonably small capital with which to operate, and has rendered it unable to pay its debts as they become due, including its debt to Chase.

64.     As a direct and proximate result, Chase has incurred, and continues to incur, damages and is entitled to the entry of judgment against PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), jointly and severally, in an amount to be determined at trial, including an award of punitive damages.

### SIXTH COUNT
### (Unjust Enrichment)

65.     Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

66.     By reason of the foregoing, PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) have been enriched at the expense of Chase.

67.     If Chase does not recover the sums by which PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) have been enriched at its expense, PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) will be unjustly enriched.

68.     As a direct and proximate result, Chase has incurred, and continues to incur, damages and is entitled to the entry of judgment against PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), jointly and severally, in an amount to be determined at trial, including an award of punitive damages.

## SEVENTH COUNT
**(Piercing the Corporate Veil)**

69.     Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

70.     Kupperman, Browne and Krelman are the owners of PGB.

71.     Kupperman, Browne and Krelman have used PGB to commit fraud by, among other things: (i) making false representations in documents submitted to Chase in connection with the Loan; and (ii) transferring money and assets out of from PGB into the name of Kupperman, Browne and Krelman and/or companies controlled by Kupperman, Browne and Krelman.

72.     Upon information and belief, Kupperman, Browne and Krelman have failed to follow corporate formalities by, among other things: (i) transferring funds borrowed from Chase out of PGB's accounts for their personal use; and (ii) preparing false financial statements.

73.    Kupperman, Browne and Krelman's actions justify piercing PGB's corporate veil and holding Kupperman, Browne and Krelman jointly and severally liable with PGB for any and all relief granted herein.

## EIGHTH COUNT
### (Preliminary and Permanent Injunctive Relief)

74.    Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

75.    As a result of the aforesaid actions and inactions, Chase has been, and continues to be, irreparably harmed and damaged.

76.    Chase has no adequate remedy at law.

77.    By reason of the foregoing, Chase is entitled to preliminary and permanent injunctive relief restraining and enjoining PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) from: (a) transferring, encumbering, hypothecating or otherwise impairing their assets; (b) interfering with, harming or otherwise thwarting Chase's efforts to exercise its lawful rights.

78.    The harm to Chase if PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) are not restrained and enjoined outweighs the harm to PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) if such relief were granted.

## NINTH COUNT
### (Attachment)

79.    Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

80.     By reason of the foregoing, PGB, Browne and Krelman have fraudulently contracted their indebtedness to Chase within the meaning of N.J.S.A. 2A:15-42(d).

81.     There is a probability that final judgment will be rendered in favor of Chase and against PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10).

82.     PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) each have real and/or personal property within specific locations in the State of New Jersey that are subject to attachment.

83.     By reason of the foregoing, writs of attachment should issue attaching for the benefit of Chase against all assets of PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), including but not limited to all real and/or personal property within the State of New Jersey.

**TENTH COUNT**
**(RICO)**

84.     Chase repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Counterclaim and Crossclaim as if same were fully set forth herein.

85.     Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) are persons within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.

86.     PGB constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4) whose activities affect interstate and foreign commerce.

87.     Chase is a financial institution with the meaning of 18 U.S.C. § 1344.

88.     Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), acting jointly and in concert, devised and intended to devise a scheme or artifice to

defraud and for obtaining money and property by means of false or fraudulent pretenses, representations, or promises as set forth above, and for the purpose of executing such scheme or artifice or attempting to do so, transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing and in furtherance of said schemes or artifices to defraud in violation of 18 U.S.C. § 1343. These communications included, among others, financial statements and monthly borrowing base certificates faxed to Chase.

89.    Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10), acting jointly and in concert, knowingly executed and attempted to execute a scheme or artifice to defraud a financial institution and to obtain the money, funds, credits, assets, securities and other property owned by a financial institution, by means of false or fraudulent pretenses, representations and promises in violation of 18 U.S.C. § 1344.

90.    The aforesaid activities constitute a pattern of racketeering activity with the meaning of 18 U.S.C. § 1961(1) and (5), which pattern includes, but is not limited to the predicate acts of wire fraud (18 U.S.C. § 1343) and bank fraud (18 U.S.C. § 1344).

91.    The multiple predicates set forth above are continuing to the present and such acts together constitute a continuous and related pattern of racketeering activity with the meaning of 18 U.S.C. § 1961(5).

92.    Kupperman, Brown and Krelman participated as principals in, and derived income and profits from, this pattern of racketeering activity.  Kupperman, Browne and Krelman used and invested the income and profits derived, directly and indirectly, in the operation of PGB in violation of 18 U.S.C. § 1962(a).

93.   Kupperman, Browne and Krelman acquired and maintained, directly and indirectly, an interest in and control of PGB through the aforesaid pattern of racketeering activity in violation of 18 U.S.C. § 1962(b).

94.   Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) conducted and participated in, directly and indirectly, the conduct of PGB's affairs through the aforesaid pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

95.   The unlawful acts and practices of Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) also constitute violations of 18 U.S.C. § 1962(d) insofar as Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) agreed and thereby conspired to commit the above violations of 18 U.S.C. § 1962(a), (b) and (c). Each of Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) has committed overt acts in furtherance of the conspiracy, as set forth herein, and assented to the commission of the other's overt acts, with knowledge that such acts were in furtherance of their pattern of racketeering activity.

96.   As a direct result of the violations of 18 U.S.C. § 1962 by Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations' (1-10), Chase has been injured in its business or property.

97.   Pursuant to 18 U.S.C. §1964(c), Chase is entitled to treble damages, plus interest, cost and attorneys' fees, by reason of the violations of 18 U.S.C. §1962 by Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations' (1-10).

WHEREFORE, Chase demands judgment against PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations' (1-10), jointly and severally, as follows:

a.   Awarding damages in the amount of all sums due under the Loan Documents, including principal, interest, default interest, fees, expenses, attorneys' fees and costs;

b.   Awarding treble damages pursuant to 18 U.S.C. §1964(c), together with interest, attorneys' fees and costs;

c.   Awarding punitive damages;

d.   Avoiding any and all transfers of money and/or assets from PGB to Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) and/or companies controlled by Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10);

e.   Piercing PGB's corporate veil and holding Kupperman, Browne and Krelman, individually, jointly and severally liable with PGB for any and all relief granted herein;

f.   Preliminarily and permanently restraining and enjoining PGB, Kupperman, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10) from transferring, encumbering, hypothecating or otherwise impairing their assets and/or interfering with, harming or otherwise thwarting Chase's efforts to exercise its lawful rights;

g.   Issuing writs of attachment for the benefit of Chase against all assets of PGB, Browne, Krelman, John Does (1-10) and ABC Corporations (1-10);

h.   Granting legal fees, interest, costs and disbursements; and

i.   Granting such other and further relief as this Court deems equitable and just.

HERRICK, FEINSTEIN LLP
Attorneys for JPMorgan Chase Bank, N.A.

By: _____
Paul H. Schafhauser

Dated:   November 8, 2006

HF 3431493v.3 #04055/0002 11/08/2006 11:18 AM

33