# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ARTHUR KUPPERMAN, E. ROSS BROWNE, PAULETTE KRELMAN, PGB INTERNATIONAL, LLC, and JPMORGAN CHASE BANK, N.A.,<br><br>　　　　Defendants,<br><br>and<br><br>JOHN DOES (1-10) and ABC CORPORATIONS (1-10),<br><br>　　　　Additionally Defendants<br>　　　　on the Crossclaim. | <u>CIVIL ACTION</u><br><br>Civil Action No. 06-4802 (DMC) |

---

**BRIEF IN SUPPORT OF CROSS-MOTION OF DEFENDANT JPMORGAN CHASE BANK, N.A. FOR PARTIAL SUMMARY JUDGMENT AND RELATED RELIEF**

---

　　　　　　　　　　　　　　　　　　HERRICK, FEINSTEIN LLP
　　　　　　　　　　　　　　　　　　One Gateway Center
　　　　　　　　　　　　　　　　　　Newark, New Jersey 07102
　　　　　　　　　　　　　　　　　　(973) 274-2000
　　　　　　　　　　　　　　　　　　Attorneys for Defendant JPMorgan Chase
　　　　　　　　　　　　　　　　　　Bank, N.A.

On the Brief:
　　　Paul H. Schafhauser (PS - 1337)
　　　John M. August (JA - 6451)

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ............................................................................................................3

LEGAL ARGUMENT ....................................................................................................................4

POINT I         CHASE HOLDS A FIRST PRIORITY SECURITY INTEREST WITH RESPECT TO PGB'S ASSETS AND, ACCORDINGLY, CHASE IS ENTITLED TO JUDGMENT ON ITS COUNTERCLAIM .............................4

POINT II        THE WRITS OF ATTACHMENT ENTERED IN THIS ACTION ARE FOR THE BENEFIT OF ANY JUDGMENT ENTERED IN THIS ACTION AND, ACCORDINGLY, CHASE AND MLBFS SHOULD COLLECT ANY SUCH JUDGMENTS PRO RATA FROM ANY REMAINING ATTACHED ASSETS .............................................................4

POINT III       CHASE IS ENTITLED TO SUMMARY JUDGMENT ON THE FIRST COUNT OF THE CROSSCLAIM AGAINST PGB, BROWNE AND KRELMAN .........................................................................................................6

POINT IV       CHASE IS ENTITLED TO SUMMARY JUDGMENT ON THE TENTH COUNT OF THE CROSSCLAIM AGAINST PGB, KUPPERMAN, BROWNE AND KRELMAN .......................................................................8

POINT V        THIS COURT SHOULD CERTIFY THE JUDGMENT AS FINAL .............13

CONCLUSION ............................................................................................................................15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AT&T Credit Corp. v. Transglobal Telecom Alliance, Inc.*, 966 F.Supp. 299
    (D.N.J. 1997) .......................................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 7

*Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195 (3rd Cir. 2006) ............... 13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................. 6

*Curtis-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980) ..................................... 13

*In re Edmond*, 934 F.2d 1304 (4th Cir. 1991) .................................................................... 8

*Jersey Central Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103 (3rd Cir.
    1985), cert. den., 475 U.S. 1013 (1986) ............................................................... 7

*LaSalle Bank Lake View v. Seguban*, 937 F.Supp. 1309 (N.D. Ill. 1996) ......... 9, 10, 11, 12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................ 6

*S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187 (3rd Cir. 1994) ............................................. 8

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ......................................................... 8

*Smith v. Berg*, 247 F.3d 532 (3rd Cir. 2001) ...................................................................... 9

*United States v. Jacobs*, 117 F.3d 82 (2nd Cir. 1997) ..................................................... 11

*United States v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990) .......................................... 8

### STATE CASES

*Chemical Bank v. Geronimo Automobile Parts Corp.*, 225 A.D.2d 461, 639
    N.Y.S.2d 340 (N.Y. App. Div. 1st Dep't 1996) .................................................... 7

*City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 681 N.Y.S.2d 251
    (N.Y. App. Div. 1st Dep't 1998) ........................................................................... 7

*Russell v. Fred G. Pohl Co.*, 7 N.J. 32 (1951) ................................................................... 5

*Wolfson v. Bonello*, 270 N.J.Super. 274 (App. Div. 1993) ................................................ 5

## FEDERAL STATUTES

18 U.S.C. § 20 ...........................................................................................................................10

18 U.S.C. § 1344 ....................................................................................................................9, 10

18 U.S.C. § 1961 ................................................................................................................1, 9, 10

28 U.S.C. § 1962 ..........................................................................................................................9

## STATE STATUTES

N.J.S.A. 2A:26-1..........................................................................................................................5

N.J.S.A. 2A:26-8..........................................................................................................................5

## FEDERAL RULES

Fed. R. Civ. Proc. 56................................................................................................................4, 6

Fed. R. Civ. Proc. 54...........................................................................................................1, 3, 13

**PRELIMINARY STATEMENT**

Defendant JPMorgan Chase Bank, N.A. ("Chase") respectfully submits this Memorandum of Law in support of its Cross-Motion for Partial Summary Judgment and Related Relief (the "Cross-Motion") as follows:

(i) declaring and adjudging that Chase holds a first priority security interest with respect to all assets of defendant PGB International, LLC ("PGB"), entering judgment on Chase's counterclaim (the "Counterclaim") against plaintiff Merrill Lynch Business Financial Services Inc. ("MLBFS"), and directing any person or entity owing money to PGB to pay such money directly to Chase;

(ii) declaring and adjudging that the writs of attachment entered in this action are for the benefit of both Chase and MLBFS and, on any judgment entered in this action, Chase is entitled to recover on a first priority basis against PGB and ratably with MLBFS from any remaining assets;

(iii) entering judgment against PGB, as well as defendants E. Ross Browne ("Browne") and Paulette Krelman ("Krelman"), on the First Count of Chase's crossclaim (the "Crossclaim") for all sums due and owing from PGB, Browne and Krelman to Chase;

(iv) entering judgment against PGB, Browne, Krelman and Arthur Kupperman ("Kupperman") on the Tenth Count of the Crossclaim for treble damages, plus interest, cost and attorneys' fees, pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.; and

(v) certifying such judgment as final pursuant to Federal Rule of Civil Procedure 54(b).

As the Court is aware, this case involves loans that PGB fraudulently obtained from Chase, and that PGB's predecessor-in-interest, PITTRA G.B. International, Inc. ("PITTRA"), fraudulently obtained from MLBFS. PGB's principals, Kupperman, Browne and Krelman, used PGB and PITTRA to submit financial statements and other documents that intentionally overstated PGB's and PITTRA's assets in order to defraud Chase and MLBFS out of millions of dollars. On October 5, 2006, MLBFS, upon learning of the fraud, filed a Verified Complaint (the "Complaint") and Order to Show Cause seeking writs of attachment. On October 6, 2006, this Court entered the Order to Show Cause ("OTSC"), providing for writs of

attachment. On November 8, 2006, at the hearing on the OTSC, this Court extended the writs of attachment pending a trial in this action.

As soon as Chase received notice of this proceeding, it appeared through counsel at a hearing on October 13, 2006 in support of the writs of attachment. MLBFS subsequently amended its Complaint to add Chase as a defendant. On November 8, 2006, Chase filed its answer, counterclaim and crossclaim, which included a count for attachment against PGB, Kupperman, Browne and Krelman. Moreover, by the Counterclaim, Chase sought a declaration that it holds a first priority security interest with respect to all of PGB's assets, such that Chase's interest has priority over any interest assertedly held by MLBFS with respect to such assets.

Chase, in fact, holds a duly perfected first priority interest with respect to PGB's assets (UCC Financing Statement #22632197, filed October 20, 2004). As a matter of undisputed fact and settled law, Chase is also entitled to an attachment against all assets of PGB, Kupperman, Browne and Krelman. By its motion for summary judgment (the "Motion"), MLBFS seeks to have any judgment it obtains certified as final so it may begin collecting against any attached assets. Accordingly, Chase now respectfully cross-moves for a declaration that (i) it holds a first priority security interest with respect to PGB's assets; and (ii) the writs of attachment entered this action are for the benefit of both Chase and MLBFS and, hence, Chase is entitled to recover on a first priority basis against PGB and ratably with MLBFS from any remaining assets.

Chase also cross-moves for summary judgment on its breach of contract claim against PGB, Browne and Krelman. Like the priority issue, Chase's breach of contract claim is straightforward and devoid of any genuine factual dispute. Chase made a loan to PGB in October 2004. This loan was periodically renewed and extended. In order to induce Chase to

make the loan, Browne and Krelman each absolutely and unconditionally guarantied to Chase the payment of all sums due from PGB. PGB is in default of the loan and Browne and Krelman are each in default of their respective guaranties. As of November 27, 2006, there was due and owing to Chase a total of $2,691,664.75, plus interest, legal fees, costs and expenses of collection. These undisputed facts entitle Chase to summary judgment against PGB, Browne and Krelman on the First Count of the Crossclaim.

Moreover, the undisputed facts also demonstrate that Chase is entitled to judgment as a matter of law on its RICO claim. The undisputed facts demonstrate that Kupperman, Browne and Krelman, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly invested in, or maintained an interest in, or participated in an enterprise the activities of which affected interstate or foreign commerce, and that Chase was injured by the RICO violation. Accordingly, the Court should grant summary judgment in favor of Chase on the Tenth Count of the Crossclaim, too. Finally, Chase respectfully requests that this Court certify any judgment issued as final pursuant to Federal Rule of Civil Procedure 54(b).

There are no genuine issues of material fact regarding Chase's right to relief. Chase is entitled to judgment as a matter of law. Accordingly, the Court should grant the Cross-Motion in all respects.

## STATEMENT OF FACTS

The facts set forth in the accompanying declarations of Wayne E. Olson and John M. August are incorporated herein by reference.

# LEGAL ARGUMENT

## POINT I

### CHASE HOLDS A FIRST PRIORITY SECURITY INTEREST WITH RESPECT TO PGB'S ASSETS AND, ACCORDINGLY, CHASE IS ENTITLED TO JUDGMENT ON ITS COUNTERCLAIM

Chase holds a first priority security interest with respect to PGB's assets. Chase and PGB entered into a certain Security Agreement dated October 8, 2004 giving Chase a first priority security interest in all of the assets of PGB. On or about October 20, 2004, Chase duly filed Uniform Commercial Code Financing Statement 1 (#22632197) to perfect its security interest in PGB's assets. Moreover, a UCC search completed on October 30, 2006 has confirmed that there is no other financing statement filed against PGB's assets. See Declaration of Wayne Olson dated November 27, 2006 ("Olson Decl."), ¶ 5. There is no basis for MLBFS to assert any security interest with respect to PGB's assets that might have priority over or parity with Chase's duly-perfected first priority security interest. Thus, Chase is entitled to the entry of summary judgment on its Counterclaim. See Fed. R. Civ. Proc. 56(c). Moreover, because Chase holds a first priority security interest in any assets of PGB, the Court should direct any person or entity owing money to PGB to pay such money directly to Chase.

## POINT II

### THE WRITS OF ATTACHMENT ENTERED IN THIS ACTION ARE FOR THE BENEFIT OF ANY JUDGMENT ENTERED IN THIS ACTION AND, ACCORDINGLY, CHASE AND MLBFS SHOULD COLLECT ANY SUCH JUDGMENTS PRO RATA FROM ANY REMAINING ATTACHED ASSETS

As set forth in Point I, supra, Chase holds a first priority security interest in any assets of PGB. With respect to any remaining attached assets, the lien priority of any judgments that may be entered in this action is to be determined in accordance with New Jersey law. The United States Code, at 28 U.S.C. § 1962, provides, in relevant part:

> Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time.

28 U.S.C. § 1962.  Thus, any judgments entered in favor of Chase and MLBFS in this matter shall have priority in accordance with New Jersey law.

The relevant New Jersey law regarding lien priority in this action is the attachment statute, N.J.S.A. 2A:26-1 to -16.  Attachment is an extraordinary remedy and the attachment statute is the sole source the remedy.  See Russell v. Fred G. Pohl Co., 7 N.J. 32, 41 (1951); Wolfson v. Bonello, 270 N.J. Super. 274, 290 (App. Div. 1993).  "Attachment is a statutory proceeding, . . . and on well-settled principles the statute is not to be enlarged beyond the plain meaning and understanding of its terms."  Russell, 7 N.J. at 41.

The purpose of the attachment statute is to preserve a defendant's assets for the benefit of any judgment that may be entered in a pending action.  The lien priority of any such judgment relates back to the filing of the writ of attachment. See Wolfson, 270 N.J. Super at 288-89. The statute is a remedial law for the protection of creditors and claimants. See N.J.S.A. 2A:26-1.  "Attachment is an extraordinary remedy *in rem* for the collection of an ordinary debt by seizure of the property of the debtor."  Russell, 7 N.J. 39.  The statute provides that the writ is for the benefit of **any** judgment which may be entered in an action, as follows:

> The attachment shall bind the attached good and chattels, rights and credits, moneys and effects of defendant attached from the time of its execution.  The attached property, unless released, shall, during the pendency of the action, remain as security for **any** judgment which may be entered in the action.

N.J.S.A. 2A:26-8 (emphasis added).  Thus, insofar as Chase and MLBFS both seek the entry of judgments against Kupperman, Browne and Krelman, the writs of attachment entered by this

Court should benefit both Chase and MLBFS and both should collect any judgments that may be entered in this action pro rata from the attached assets.[1]

In accordance with the plain language of the attachment statute, the attached assets remain as security for any judgment which may be entered in the action. Accordingly, Chase respectfully requests that this Court enter an order declaring that (i) Chase holds a first priority security interest with respect to PGB's assets; and (ii) the writs of attachment as against the remaining assets entered in this action benefit both Chase and MLBFS and, hence, both Chase and MLBFS shall collect on any judgment entered in this action on a ratable basis from any such remaining attached assets.

**POINT III**

**CHASE IS ENTITLED TO SUMMARY JUDGMENT ON THE FIRST COUNT OF THE CROSSCLAIM AGAINST PGB, BROWNE AND KRELMAN**

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). The movant must demonstrate the absence of a genuine issue of material fact and, once it has done so, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence

---

[1] The Court may hear the argument that MLBFS is entitled to priority with respect to the attached assets, merely because MLBFS happened to first apply for relief from this Court. There is no basis to give any such priority to MLBFS. To be sure, MLBFS learned of the fraud in the case first and, upon doing so, moved for writs of attachment; however, the circumstances that led to MLBFS' loss were engineered years ago and came to light in connection with PITTRA's bankruptcy filing, while the circumstances that led to Chase's loss were more recent. Nonetheless, as soon as Chase learned of this action, it too appeared through counsel to support the Court's issuance of the writs. Shortly thereafter, Chase filed crossclaims which included a count for attachment. Both Chase and MLBFS have been harmed by defendants' actions in this case and both have acted diligently to protect their rights. In this circumstance, there is no basis to provide MLBFS priority in the attached assets simply because it happened to learn of the fraud first.

supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).  See also, Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3rd Cir. 1985), cert. den., 475 U.S. 1013 (1986) (the non-moving party must produce specific facts showing that there is a genuine issue for trial; a "genuine issue means that the evidence must create a fair doubt, and wholly speculative assertions will not suffice").

In the instant matter, the following facts are undisputed: (i) PGB borrowed money from Chase; (ii) Browne and Krelman each absolutely and unconditionally guarantied to Chase the payment of all sums due from PGB; (iii) PGB, Browne and Krelman are in default of their obligations to Chase; and (iv) Chase has suffered damages. See Olson Decl., ¶¶ 2, 8, 24-26. These facts entitle Chase to summary judgment against PGB on the First Count of the Crossclaim. Summary judgment is appropriate where the facts show a valid contract, breach of that contract and damages. See AT&T Credit Corp. v. Transglobal Telecom Alliance, Inc., 966 F.Supp. 299, 302 (D.N.J. 1997).  New York law is in accord and entitles Chase to summary judgment against Browne and Krelman on the guaranties (the guaranties are governed by New York law).  See City of New York v. Clarose Cinema Corp., 256 A.D.2d 69, 71, 681 N.Y.S.2d 251, 253 (N.Y. App. Div. 1st Dep't 1998) ("On a motion for summary judgment to enforce a written guaranty, all the creditor need prove is an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty."); Chemical Bank v. Geronimo Auto Parts Corp., 225 A.D.2d 461, 461-62, 639 N.Y.S.2d 340, 341 (N.Y. App. Div. 1st Dep't 1996).  Accordingly, Chase respectfully requests that this Court enter summary judgment against PGB, Browne and Krelman on the First Count of the Crossclaim.

Summary judgment is especially appropriate here because Browne's and Krelman's invocation of the Fifth Amendment in response to direct questions about their respective guaranties gives rise to an adverse inference and precludes them from now submitting an affidavit opposing summary judgment. See S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 191 (3rd Cir. 1994); In re Edmond, 934 F.2d 1304, 1308-09 (4th Cir. 1991); United States v. Parcels of Land, 903 F.2d 36, 43 (1st Cir. 1990). The Third Circuit has held that, although the invocation of the Fifth Amendment in a civil proceeding does not *in itself* support an adverse decision, such silence in connection with other evidence against the defendant can support such a result. S.E.C. v. Graystone Nash, Inc., 25 F.3d at 191.

As of November 27, 2006, PGB, Browne and Krelman owed Chase the sum of $2,691,664.75, plus interest, legal fees, costs and expenses of collection. See Olson Decl., ¶ 26. Thus, the Court should enter judgment in this amount in favor of Chase and against PGB, Browne and Krelman on the First Count of the Crossclaim. Moreover, because Chase holds a first priority security interest in any assets of PGB as noted in Point I, supra, the Court should direct any person or entity owing money to PGB to pay such money directly to Chase.

## POINT IV

### CHASE IS ENTITLED TO SUMMARY JUDGMENT ON THE TENTH COUNT OF THE CROSSCLAIM AGAINST PGB, KUPPERMAN, BROWNE AND KRELMAN

The Tenth Count of the Crossclaim states a civil RICO claim. To establish a civil RICO claim, Chase must establish that (i) Kupperman, Browne and Krelman (the "RICO Defendants"); (ii) through the commission of two or more acts constituting a "pattern"; (iii) of "racketeering activity"; (iv) directly or indirectly invested in, or maintained an interest in, or participated in; (v) an "enterprise"; (vi) the activities of which affected interstate or foreign commerce; and (vii) Chase was injured by the RICO violation. See Sedima, S.P.R.L. v. Imrex

-8-

Co., 473 U.S. 479 (1985); Smith v. Berg, 247 F.3d 532 (3rd Cir. 2001); LaSalle Bank Lake View v. Seguban, 937 F. Supp. 1309, 1320 (N.D. Ill. 1996). "[O]ne who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate section 1962(c) even if the defendant did not personally agree to do, or to conspire with respect to, any particular element." Smith, 247 F.3d at 537-38. Thus, "[i]n accord with the general principles of criminal conspiracy law, a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Id. at 538.

In LaSalle Bank, supra, the district court granted summary judgment on a civil RICO claim where, as here, the racketeering activity was violation of the bank fraud statute, 18 U.S.C. § 1344, and where the defendants had invoked their Fifth Amendment privilege and refused to answer discovery. See LaSalle Bank, 937 F. Supp. at 1313. Accordingly, the district court's analysis of the issues in LaSalle Bank is instructive where, as here, the Court is faced with strikingly similar issues on this Cross-Motion.

The LaSalle Bank Court began its analysis by noting the effect of the defendants' exercise of their Fifth Amendment rights. Because they exercised their Fifth Amendment rights and refused to answer discovery, the defendants were precluded from submitting an affidavit to challenge the facts presented by the plaintiff. See LaSalle Bank, 937 F. Supp. at 1320. Similarly, in this case, the RICO Defendants are precluded from challenging the facts presented by Chase on its RICO claim. Id.

Turning to the merits, PGB is clearly an enterprise whose activities affect interstate and foreign commerce. The RICO statute defines enterprise to include corporation or other legal entity. See 18 U.S.C. § 1961(4). The Certificate of Formation submitted to Chase in

-9-

connection with the Loan provides that PGB is a New Jersey limited liability company. See Olson Decl., Exhibit C.  A limited liability company is a legal entity.  Accordingly, PGB is an "enterprise" within meaning of RICO.  Moreover, PGB's books and records establish that it imports goods from overseas into New Jersey, and then distributes those goods to customers throughout the United States.  See Olson Decl. at ¶ 7.

Further, an Operating Agreement submitted to Chase in connection with the Loan provides that Kupperman, Browne and Krelman are the members and officers of PGB. See Olson Decl. at ¶ 6.  Participation in an enterprise within the meaning of RICO includes management level activity.  See LaSalle Bank, 937 F.Supp. at 1321.  Thus, Kupperman, Browne and Krelman directly or indirectly invested in, maintained an interest in, and participated in an enterprise within the meaning of RICO.  Accordingly, elements (i), (iv), (v) and (vi) above of Chase's RICO claim are established.  To be entitled to summary judgment, Chase must additionally show that the RICO Defendants committed two or more acts constituting a "pattern" of "racketeering activity" that injured Chase (i.e., the remaining elements of a civil RICO claim).

The United States Code defines racketeering activity to include financial institution or bank fraud under 18 U.S.C. § 1344.  Chase is a financial institution with the meaning of § 1344. See 18 U.S.C. § 20 (defining "financial institution"), and the Olson Decl. at ¶ 1.  Kupperman, Browne and Krelman committed bank fraud if they knowingly executed a scheme or artifice to (1) defraud a financial institution, or (2) obtain any of the monies, funds, credits, assets, securities, or other property from a financial institution by means of false or fraudulent pretenses, representations, or promises.  See 18 U.S.C. § 1344.

The bank fraud statute was enacted to protect the financial integrity of federally guaranteed financial institutions, and to assure a basis for the prosecution of those who victimize

these banks through fraudulent schemes. See United States v. Jacobs, 117 F.3d 82, 93 (2nd Cir. 1997). The statute was modeled on the mail and wire fraud statutes, and Congress indicated that it wanted the bank fraud statute to be interpreted as broadly as those statutes. Id. Clearly, Kupperman committed bank fraud when he submitted fraudulent financial statements and borrowing base certificates on PGB's behalf to obtain the Loan. In this regard, the Olson Declaration demonstrates that a preliminary examination of PGB's books and records revealed that instead of having more than $8,000,000.00 of accounts receivable, as Kupperman had represented in the borrowing base certificate he executed for the month ended August 31, 2006, PGB actually had less than $1,700,000.00 in current accounts receivable. Olson Decl. at ¶ 19.

Moreover, Browne and Krelman, who are officers of PGB, are assumed to have participated in this bank fraud by the adverse inference arising from their exercise of their Fifth Amendment privilege. Where, as here, it has been established that Browne and Krelman are both members and officers of PGB who participated in, and facilitated, the Loan by providing Guaranties and personal financial statements, the inference must be that they were also involved with providing false financial statements and borrowing base certificates. They hold the key to any other explanations that may exist and, instead of revealing any other explanation, have chosen to remain silent. See LaSalle Bank, 937 F.Supp. at 1320. Accordingly, Kupperman, Browne and Krelman are liable under RICO if they committed a "pattern" of bank fraud that injured Chase.

RICO defines a "pattern" as at least two acts within the last ten years. See LaSalle Bank, 937 F.Supp. at 1321. Courts consider the following factors to determine whether a "pattern" exists: (i) the number of acts; (ii) the length of time over which they were committed; (iii) the number of victims; (iv) the existence of separate schemes; and (v) the occurrence of

distinct injuries. Id. "Courts may find a pattern where there is only a single victim and a single scheme where there are repeated economic injuries." Id. In LaSalle Bank, the defendant bank teller was falsifying teller tickets in order to withdraw money. Id. The LaSalle Bank Court found that each teller ticket increased the amount of money taken and together constituted a "pattern" of racketeering activity. Id.

Here, PGB submitted fraudulent financial statements and borrowing base certificates to Chase in connection with periodic advances on the Loan over a two year period. Olson Decl. at ¶ 16. Chase suffered repeated economic injury with each advance on the Loan. Chase only permitted continuing advances because the borrowing base certificates and financial statements showed that Chase was adequately collateralized. This financial information showed average accounts receivable over the last year of between $8 million and $9 million. Olson Decl. at ¶ 14. Chase's ongoing investigation has established that these reports were fraudulent. Olson Decl. at ¶¶ 19-21. In addition, according to the undisputed facts submitted by MLBFS in support of its Motion, PGB executed a similar scheme to defraud MLBFS since at least November 2002. Thus, PGB's commission of repeated and regular acts of fraud over a four year period through two separate schemes that injured at least two victims (Chase and MLBFS), constitutes a "pattern" of racketeering activity.

Finally, it cannot be seriously questioned that Chase has suffered injury as a result of the RICO violation. PGB is insolvent and does not have sufficient collateral to repay the Loan. As of November 27, 2006, there was due and owing to Chase a total of $2,691,664.75, plus interest, legal fees, costs and expenses of collection. Accordingly, for all of these reasons, the Court should enter summary judgment in favor of Chase and against PGB, Kupperman, Browne and Krelman on the Tenth Count of the Crossclaim.

# **POINT V**

## **THIS COURT SHOULD CERTIFY THE JUDGMENT AS FINAL**

Federal Rule of Civil Procedure 54(b) provides that the Court may direct the entry of a final judgment as to one or more but fewer than all of the claims upon an express determination that there is no just reason for delay.  Whether to direct the entry of final judgment pursuant to Rule 54(b) is in the sound discretion of the district court.  See Curtis-Wright Corp. v. General Electric Co., 446 U.S. 1, 8 (1980); Berckeley Investment Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3rd Cir. 2006).  This determination involves two findings: (i) there has been an ultimate disposition on a cognizable claim for relief; and (ii) there is no just reason for delay.  Berckeley Investment Group, 455 F.3d at 202.  Here, the Cross-Motion seeks final judgment on a claim of breach of contract and violation of RICO, respectively.  Thus, the first prong is easily satisfied.  The remaining question, then, is whether there is "no just reason for delay."

To determine whether there is no just reason for delay, "a district court must take into account judicial administrative interests as well as the equities involved."  Curtis-Wright, 466 U.S. at 8.  The Third Circuit has identified the following factors courts should consider when making this determination:

> (1) the relationship between the adjudicated and unadjudicated claims;
>
> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;
>
> (3) the possibility that the reviewing court might be obligated to consider the same issue a second time;
>
> (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and
>
> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Berckeley Investment Group, 455 F.3d at 203.

Consideration of these factors in the instant matter militates in favor of directing the entry of final judgment in Chase's favor. The breach of contract claim at issue on this Cross-Motion as well as Chase's RICO claim are easily decided on the undisputed facts. If appealed, the reviewing court will not be obliged to consider these issues a second time. Resolution of these claims, moreover, may render some or all of Chase's remaining crossclaims moot and, at the very least, would simplify the resolution of other issues. Moreover, because PGB, Browne and Krelman waived the right to assert defenses, set-offs and counterclaims, there will not be any set-off against the judgment against them.

Finally, a variety of additional considerations and equities weigh heavily in favor of Chase. Allowing Chase to begin collection will reduce the exposure of PGB, Browne and Krelman, whose liability increases as interest continues to accrue on the Loan. Moreover, the claims at issue in this lawsuit arose from the misconduct of PGB, Kupperman, Browne and Krelman. Indeed, PGB, through its principals -- Kupperman, Browne and Krelman -- continues to interfere with Chase's efforts to investigate PGB's finances and liquidate its collateral. Certifying the judgment as final will facilitate these investigations and collections. Accordingly, for all of these reasons, Chase respectfully requests that this Court certify the judgment issued in connection with the Cross-Motion against PGB, Kupperman, Browne and Krelman as final.

In connection with this request, and to facilitate collection of PGB's receivables, Chase respectfully requests that the judgment issued in connection with this Cross-Motion provide that PGB's account debtors be ordered to pay any receivables directly to Chase. Chase, as a duly perfected secured lender, is permitted, pursuant to Uniform Commercial Code Sections 9-406(a) and 9-607(a)(1) and its Loan Documents, to liquidate its collateral, including collecting

-15-

PGB's receivables. Notwithstanding this well settled law, some account debtors are hesitant to pay Chase directly absent a court order. Accordingly, Chase respectfully requests that the judgment issued in connection with this Cross-Motion provide that PGB's account debtors be ordered to pay any receivables directly to Chase.

## **CONCLUSION**

For the reasons set forth herein, Chase respectfully requests that this Court grant the Cross-Motion in its entirety and, upon doing so, certify the ensuing judgment as final.

                                               HERRICK, FEINSTEIN LLP
                                               Attorneys for JPMorgan Chase Bank, N.A.

                                               By:____/s/ John M. August_____
                                                   John M. August

Dated:   November 27, 2006