HERRICK, FEINSTEIN LLP
Paul H. Schafhauser (PS - 1337)
John M. August (JA - 6451)
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000
Attorneys for Defendant JPMorgan Chase Bank, N.A.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARTHUR KUPPERMAN, E. ROSS BROWNE, PAULETTE KRELMAN, PGB INTERNATIONAL, LLC, and JPMORGAN CHASE BANK, N.A., <br><br> Defendants, <br><br> and <br><br> JOHN DOES (1-10) and ABC CORPORATIONS (1-10), <br><br> Additionally Defendants on the Crossclaim. | <u>CIVIL ACTION</u> <br><br> Civil Action No. 06-4802 (DMC) <br><br><br> **STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF CROSS-MOTION OF DEFENDANT JPMORGAN CHASE BANK, N.A FOR PARTIAL SUMMARY JUDGMENT AND RELATED RELIEF** |

Defendant JPMorgan Chase Bank, N.A. ("Chase"), by and through its attorneys, Herrick, Feinstein LLP, hereby submits that the following facts are not subject to a good faith dispute:

1. Chase is a financial institution as defined in title 18 of the United States Code. See declaration of Wayne E. Olson, dated November 27, 2006 (the "Olson Decl."), at ¶ 1.

2. Chase made a loan to PGB International, LLC ("PGB") with a principal availability of $3,000,000.00 (the "Loan") pursuant to the terms and conditions contained in an Advised Line of Credit Note, dated March 16, 2006 (the "Note"). The Note renewed and extended prior loans to PGB going back to October 2004. See Olson Decl. at ¶ 2.

3. In the Note, PGB waived any defense that it may have to the payment or performance of the liabilities evidenced by the Note. See Olson Decl. at ¶ 3.

4. The Note, together with all of PGB's other obligations to Chase, was and remains secured by the collateral described in a certain Security Agreement dated October 8, 2004 (the "Security Agreement", and together with the Note and related documents, the "Loan Documents"). See Olson Decl. at ¶ 4.

5. Arthur Kupperman ("Kupperman") executed the Note and Security Agreement as the Managing Member of PGB. See Olson Decl. at ¶ 4.

6. The Security Agreement gave Chase a first priority security interest in all of the assets of PGB. See Olson Decl. at ¶ 4.

7. On or about October 20, 2004, Chase duly filed Uniform Commercial Code Financing Statement 1 (#22632197) to perfect its security interest in PGB's assets. See Olson Decl. at ¶ 5.

8. A UCC search completed on October 30, 2006 has confirmed that there is no other financing statement filed against PGB's assets. See Olson Decl. at ¶ 5.

9. The certificate of formation provides that PGB is a New Jersey limited liability company and the operating agreement provides that Kupperman, E. Ross Browne ("Browne") and Paulette Krelman ("Krelman") are the members and officers of PGB. See Olson Decl. at ¶ 6.

10. PGB's books and records establish that it imports goods from overseas into New Jersey and then distributes those goods to customers throughout the United States. See Olson Decl. at ¶ 7.

11. The Loan is guarantied by Browne and Krelman, severally, each of whom executed and delivered to Chase an absolute and unconditional guaranty (each a "Guaranty", and collectively, the "Guaranties") on or about October 8, 2004. See Olson Decl. at ¶ 8.

12. Browne's and Krelman's signatures on the Guaranties are notarized. See Olson Decl. at ¶ 8.

13. The Guaranties are guaranties of payment and, accordingly, both Browne and Krelman are obligated for the full amount due to Chase from PGB. See Olson Decl. at ¶ 9.

14. The Guaranties provide, *inter alia*, that Browne and Krelman absolutely and unconditionally guaranty the payment of all liabilities of PGB to Chase, and waive the right to assert defenses, set-offs and counterclaims in any litigation relating to the Guaranties or the Loan. See Olson Decl. at ¶ 10.

15. Each Guaranty provides that the guarantor shall, with or without notice or demand, reimburse Chase for all expenses incurred in connection with any liabilities of PGB or the collection thereof, including reasonable attorneys' fees. See Olson Decl. at ¶ 10.

16. Each Guaranty contains a merger clause providing that it sets forth the entire understanding of the parties, and Browne and Krelman each acknowledge that no other agreements, conditions, promises, understandings, representations or warranties exist in regard to the Guaranties except as set forth therein. See Olson Decl. at ¶ 10.

17. Each Guaranty provides that it may only be modified in writing signed by an authorized officer of Chase. See Olson Decl. at ¶ 10.

18. In connection with the Loan and in accordance with the Guaranties, Browne and Krelman also provided annual personal financial statements to Chase. See Olson Decl. at ¶ 11.

19. Browne and Krelman signed these personal financial statements in order to attest to their accuracy. See Olson Decl. at ¶ 11.

20. In connection with the Loan and in accordance with the Loan Documents, PGB provided annual financial statements to Chase as follows: (i) an Independent Auditors' Report from Amper, Politziner & Mattia P.A., dated December 17, 2003; (ii) an Accountants' Review Report from Sy Helderman & Company, dated January 6, 2005; and (iii) an Accountants' Review Report from Sy Helderman & Company, dated December 21, 2005. See Olson Decl. at ¶ 12.

21. PGB also provided interim financial statements, including a balance sheet for PGB, dated June 30, 2006. See Olson Decl. at ¶ 13.

22. This June 30, 2006 balance sheet showed total assets of $12,387,967.00, which included accounts receivable of $9,621,813.00. See Olson Decl. at ¶ 13.

23. PGB also provided monthly borrowing base certificates evidencing PGB's outstanding accounts receivable. See Olson Decl. at ¶ 14.

24. Kupperman signed these monthly borrowing base certificates in order to attest to their accuracy. See Olson Decl. at ¶ 14.

25. Over the past year, these borrowing base certificates showed an average amount of accounts receivable of between $8 million and $9 million. See Olson Decl. at ¶ 14.

26. On or about September 15, 2006, Kupperman provided a borrowing base certificate representing that as of August 31, 2006, PGB had accounts receivable of not less than

4

$8,067,945.59, of which $4,681,975.53 were current and $3,207,331.24 were between 31 and 60 days past due. See Olson Decl. at ¶ 15.

27. Based upon the representations set forth in the documents provided to Chase, including the annual and interim financial statements and the borrowing base certificates, Chase made periodic advances on the Loan. See Olson Decl. at ¶ 16.

28. At or about the time that plaintiff Merrill Lynch Business Financial Services Inc. ("MLBFS") filed its Complaint and this Court issued an Order to Show Cause (the "OTSC"), Chase first learned of the existence of PITTRA G.B. International Inc. ("PITTRA") and the alleged fraud perpetrated by Kupperman, Browne and Krelman against MLBFS and other creditors of PITTRA. See Olson Decl. at ¶ 17.

29. Immediately upon learning of the alleged fraud, Chase sent auditors (the "Auditors") to PGB's offices to verify the financial information that Kupperman, Browne and Krelman had been providing to Chase. See Olson Decl. at ¶ 18.

30. A preliminary examination of PGB's books and records revealed that instead of having more than $8,000,000.00 of accounts receivable, as PBG and Kupperman had represented in the borrowing base certificate for the month ended August 31, 2006, PGB actually had less than $1,700,000.00 in current accounts receivable. See Olson Decl. at ¶ 19.

31. Chase subsequently learned that all of the monthly borrowing base certificates and financial statements provided by PGB are likely materially inaccurate and fraudulent. Among other things, the Auditors have advised that it appears that PGB's actual account receivables are likely no greater than $1,678,896.80, at least in part because PGB substantially overstated receivables by reporting the full sale amount on commission transactions, rather than reporting only PGB's commissions. See Olson Decl. at ¶ 20.

32. The Auditors have also advised of various other irregularities and discrepancies regarding PGB's financial condition and the representations that had been made to Chase regarding such financial condition. See Olson Decl. at ¶ 20.

33. The Independent Auditors' Report for PGB from Amper, Politziner & Mattia P.A. to PGB's Board of Directors, dated December 17, 2003, which was provided to Chase, contains the exact same numbers for the year 2003 as an Independent Auditors' Report for PITTRA from Amper, Politziner & Mattia P.A. to PITTRA's Board of Directors, dated December 22, 2004, which was provided to MLBFS, and is likely fraudulent. See Olson Decl. at ¶ 21.

34. Moreover, PGB and Kupperman have interfered with Chase's investigation of PGB. The Auditors have advised that, among other things: (i) despite their requests, they were provided only with payable vendor names, and not with contact information (i.e., address, phone, etc.); (ii) they were provided with few, if any, original invoices, bills of lading, or purchase orders which they had requested to verify receivables; and (iii) PGB provided documents for only approximately one-quarter of the transactions for which vendor invoices and backup information had been requested and most of the sample invoices provided were copies, rather than originals. See Olson Decl. at ¶ 22.

35. In addition, the Auditors have advised that their task was substantially impeded by PGB and its attorneys, who refused to give the Auditors unfettered access to PGB's books and records. Instead, the practice of PGB, Kupperman and PGB's attorneys was to caucus privately after each request and then to provide only those documents which PGB and Kupperman chose to selectively produce. See Olson Decl. at ¶ 22.

36. PGB defaulted on its obligations to Chase under the Note and Security Agreement. See Olson Decl. at ¶ 23.

37. By letter dated October 16, 2006 (the "Default Notice"), Chase notified PGB, Browne and Krelman that: (i) PGB had defaulted on its obligations to Chase under the Loan Documents; and (ii) the Loan is accelerated. See Olson Decl. at ¶ 24.

38. As a result, PGB, Browne and Krelman are obliged to pay immediately, among other things, the principal amount due and owing on the Loan, interest at the default rate of Chase's prime rate plus 3.0%, and reasonable costs and expenses of every kind incurred, including reasonable attorneys' fees and costs. See Olson Decl. at ¶ 25.

39. As of November 27, 2006, the total amount due and owing on the Loan totaled $2,691,664.75, plus the costs and expenses of collection. See Olson Decl. at ¶ 26.

40. October 23, 2006, Kupperman, as representative of PGB and individually, Browne and Krelman appeared at the offices of counsel for Merrill Lynch Business Financial Services Inc. ("MLBFS") for a deposition pursuant to a Notice to Take Depositions issued pursuant to this Court's Order to Show Cause. See declaration of John M. August, dated November 27, 2006 (the "August Decl."), at ¶ 2.

41. At their respective depositions, Kupperman, as representative of PGB and individually, Browne and Krelman all invoked their Fifth Amendment privilege against self-incrimination and refused to answer any questions. See August Decl. at ¶ 3.

42. Each of Kupperman, Browne and Krelman further signed a declaration confirming that they would invoke their Fifth Amendment privilege and refuse to answer all possible questions. See August Decl. at ¶ 4.

43. During his deposition, Browne was shown a copy of his Guaranty and was asked if it was his signature that appeared on the Guaranty. Browne invoked his Fifth Amendment privilege against self-incrimination and refused to answer. See August Decl. at ¶ 5.

44. During her deposition, Krelman was shown a copy of her Guaranty and was asked if it was her that signature appeared on the Guaranty. Krelman invoked her Fifth Amendment privilege against self-incrimination and refused to answer. See August Decl. at ¶ 5.

HERRICK, FEINSTEIN LLP
Attorneys for JPMorgan Chase Bank, N.A.


By:  /s/ John M. August
    John M. August

Dated: November 27, 2006

HF 3448795v.1 #04055/0002