IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC., | |
|---|---|
| Plaintiff, | |
| vs. | 06 Civ. 4802 (DMC) |
| ARTHUR KUPPERMAN; E. ROSS BROWNE; PAULETTE KRELMAN, PGB INTERNATIONAL, LLC; and JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | |
| Defendants. | |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE FOURTH COUNT OF THE VERIFIED COMPLAINT AND FOR CERTIFICATION OF JUDGMENT AS FINAL.**

BRESSLER, AMERY & ROSS
A Professional Corporation
P. O. Box 1980
Morristown, New Jersey 07962
325 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 514-1200
Attorneys for Plaintiff

On the Brief:
    George R. Hirsch, Esq. (GH 8284)
    Michael J. Connolly, Esq. (MC 7610)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I   SUMMARY JUDGMENT IS APPROPRIATE. ............................................................ 2

II   THERE IS NO GENUINE DISPUTE AS TO THE AMOUNT DUE. ............................ 3

III   THERE IS NO GENUINE ISSUE REGARDING LIABILITY UNDER THE
     GUARANTIES. ........................................................................................................ 5

IV  THE JUDGMENT SHOULD BE CERTIFIED AS FINAL. ........................................... 8

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................2

*Lunderstadt v. Colafella*, 885 F.2d 66 (3d Cir. 1994) ....................................................2

*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1988) ..............................................................................................2, 7

*Merrill Lynch Business Financial Services, Inc. v. Plesco*, 859 F.Supp. 818
   (E.D. Pa. 1994) ............................................................................................................8

*Trap Rock Industries, Inc. v. Local 825, Int'l Union of Operating Eng'rs*,
   982 F.2d 884 (3d Cir. 1992) .......................................................................................2

### State Cases

*Jewish Ctr. of Sussex County. v. Whale*, 86 N.J. 619 (1981) ......................................7

*Judson v. Peoples Bnk. & Trust Co.*, 25 N.J. 17 (1957) ...............................................7

*Pioneer Nat'l Title Ins. Co. v. Lucas*, 155 N.J.Super. 332 (App. Div.), *aff'd*,
   78 N.J. 320 (1978) ......................................................................................................7

### Federal Rules

Fed. R. Civ. P. Rule 56(f) ..................................................................................................2

## INTRODUCTION

Merrill Lynch Business Financial Services Inc. ("MLBFS") established in its moving papers that summary judgment is appropriate because:

(i) Defendants Kupperman, Krelman, and Browne, each personally, absolutely, and unconditionally guaranteed to MLBFS the repayment of any indebtedness and at any time owed by PITTRA G.B International, Inc. ("PITTRA"). See (MLBFS Rule 56.1 Statement at ¶¶ 2, 3, 4, 9);

(ii) PITTRA owed money to MLBFS. See MLBFS Rule 56.1 Statement at ¶¶ 1, 10, 11; and

(iii) The sums are immediately due and payable. See (MLBFS Rule 56.1 Statement at ¶¶ 7 and 8).

Defendants have disputed none of these material facts. Defendants have presented no evidence whatsoever denying their execution of the guaranties, denying the borrowing by PITTRA, or raising a genuine issue as to their liability under the guaranties.

# ARGUMENT

## I

## SUMMARY JUDGMENT IS APPROPRIATE.

In opposing a motion for summary judgment, the non-moving party must "set forth **specific** facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). The opposition must be based on personal knowledge and set forth facts "as would be admissible." Id. The non-moving party cannot rely upon allegations, generalities or vague statements. Trap Rock Industries, Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884 at 890 (3d Cir. 1992).

To defeat summary judgment, an issue of fact must be "genuine," and the party opposing the motion must show that there is more than "metaphysical doubt." Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 586 (1988). "[T]he mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the [non moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 252 (1986).

Defendants have failed to satisfy this standard.

Furthermore, a request that the District Court exercise its discretion to deny or delay summary judgment pursuant to Fed. R. Civ. P. Rule 56(f) requires that the non-moving party specify what information is sought <u>and</u> how it would preclude summary judgment. Lunderstadt v. Colafella, 885 F.2d 66 at 71 (3d Cir. 1994) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir. 1988)). Defendants also have failed to meet this requirement.

## II

## THERE IS NO GENUINE DISPUTE AS TO THE AMOUNT DUE.

The loan documents annexed to the Verified Complaint detail the lending obligations and the manner in which late fees, interest, and other charges are to be calculated. The Verified Complaint further provides the total amount owed, broken down by the amounts owed under the WCMA Agreement and the Term Loan. The Declaration of Catherine L. Briick submitted with the motion papers recites the amounts owed, by loan, for principal, accrued interest and late charges. The Declaration of Catherine L. Briick submitted herewith attaches a history of the loans from inception. There is nothing left to "discover." Defendants have failed to repay the indebtedness owed to them and the amount due is a sum certain.

Defendant Krelman claims that "plaintiff has failed to append the loan documents or account statements to support the amounts or calculations included therein." Krelman Brf. at 2. However, the loan documents substantiating the amount due are appended to the Verified Complaint. Defendant Krelman has had the full set of these documents in her possession from the outset of this case. Moreover, as a signatory on the documents, Krelman presumably had possession of these documents from the inception of the lending relationship.

Similarly, Krelman's invocation of Rule 56(f) stating that she has "sought discovery" is disingenuous. The discovery "request" was first made orally on November 22, 2006 and then in writing on November 27, 2006 ---- the day Krelman filed her

opposition papers claiming that "discovery" was not provided.[1]  Moreover, the accounting detail requested by Krelman is included in the accompanying Declaration of Ms. Briick.  Additionally, Krelman's eleventh-hour request to inspect the original loan documents (rather than the copies she has held for some time) is baseless.  Ms. Krelman has never denied executing the loan documents, and she should know whether or not she did.

Defendant Browne claims that MLBFS's figures are "inconsistent."  Defendant Browne asserts that in paragraph thirty-two of the Verified Complaint, MLBFS claims that the outstanding principal totals $3,980,400.59 on the WCMA Loan and $158,746.19 on the term loan.  See Browne Brf. at 8.  Browne is incorrect.  Paragraph thirty-two of the Verified Complaint states the total amounts owed under each loan --- not the amounts owed solely for principal.  Ms. Briick's Declaration breaks down the amounts owed by principal, interest and late fees.  Thus, Mr. Browne's claimed "inconsistency" does not even exist.[2]

Equally non-existent is any admissible evidence challenging MLBFS's calculations of a sum certain.  None of the Defendants has submitted any proofs that MLBFS has miscalculated the amounts owed or failed to account for a payment made.  Nor have Defendants claimed that PITTRA did not receive all of the funds in issue from MLBFS.  Instead, all of the Guarantors have invoked the privilege against self-incrimination, and none of them has offered a scintilla of evidence to create a factual issue as to the amount due.

---

[1] The November 27, 2006 letter references an oral request for documents being made on November 22, 2006 ---- the day before Thanksgiving and the last business day immediately prior to the filing of Krelman's opposition papers.
[2] In her latest Declaration, Ms. Briick explains that the total owed increased after the filing of the Verified Complaint due to the accrual of additional interest and late fees.

## III

## THERE IS NO GENUINE ISSUE REGARDING LIABILITY UNDER THE GUARANTIES.

The language of the Guaranties is clear and unequivocal. The Guarantors are unconditionally liable for all sums now or at any time hereafter due from PITTRA. Each of the Guarantors repeatedly acknowledged the extent of PITTRA's indebtedness, and each of the Guarantors repeatedly signed documents requesting that MLBFS increase its lending to PITTRA. For example, Defendant Browne concedes forwarding financial statements to MLBFS in connection with two of PITTRA's loan increases, including the last increase in 2005. See Browne Brf. at 6.

Notwithstanding his unconditional obligations to MLBFS, Defendant Browne contends that he is not liable because he "disclosed" in a financial statement that he was working for Defendant PGB International, LLC rather than PITTRA. Defendant Browne suggests that by making such a disclosure, MLBFS should have "investigated" PITTRA, and that he is immune from liability due to a "failure to mitigate damages." See Browne Brf. at pp. 6-7. Defendants Krelman and Kupperman also mention mitigation of damages in their papers without articulating how or why such a defense could apply.

Defendant Browne's argument fails for several reasons.

First, Browne unequivocally warranted in 2004 and 2005 that "neither customer nor any of said Guarantors have any defense to payment of any amounts owing, or any right of counterclaim for any reason, under the Loan Documents." Verified Complaint at Exhibits "D" and "M." The Guaranties also contain clear language that the liability of the

Guarantors will not be "affected or impaired" by changes in the situation. Browne fails to demonstrate any factual or legal basis why his Guaranties should be disregarded.

Second, MLBFS increased PITTRA's lending facility <u>at the urging of Browne</u> (and Kupperman and Krelman). Browne (along with Krelman and Kupperman) supplied financial statements in 2004 and 2005 in support of PITTRA's requests to increase its borrowing.

Third, on each occasion, each of the Guarantors remained officers and directors of PITTRA and operated PGB (as PITTRA's successor) out of the same premises. Whether Browne was employed by PITTRA or PGB is of no moment.[3]

Fourth, Browne personally "approved" PITTRA's requests for additional funding. <u>See</u> Verified Complaint at Exhibits "D" and "M."

Fifth, on each occasion, Browne (along with Krelman and Kupperman) acknowledged:

- that "the below-named Guarantors hereby consent to the foregoing modifications to the Loan Documents (<u>e.g.</u> lending increases), and hereby agree that the 'Obligations' under their respective Unconditional Guaranty . . . shall extend to and include the Obligations of Customer under the Loan Documents, as amended hereby," and

- that "each of the warranties of Customer in the Loan Documents are true and correct as of the date hereof and shall be deemed remade as of the date hereof."

<u>See</u> Verified Complaint at Exhibits "M" and "D."

---

[3] Browne fails to explain why a change in his employer, standing alone, would place a lender on notice of any type of misconduct. This is especially true here, where Browne simultaneously assured MLBFS that it had no reason to withhold additional lending.

Thus, on each occasion Browne suggests that he should be excused because he put MLBFS on notice that his employer was PGB, he simultaneously: (1) requested additional funding <u>as an officer of PITTRA</u>; (2) assured MLBFS that all of PITTRA's representations and warranties remained true and correct; and (3) promised that he would personally repay the additional lending. The fact that Browne repeatedly asked, accepted, and promised to repay additional funds eliminates any possibility that Browne can immunize himself through a mitigation of damages claim. Browne fails to offer any legal authority suggesting how a mitigation defense could be applicable under these circumstances. "One who perpetrates a fraud may not urge that his victim should have been more circumspect or astute." <u>Judson v. Peoples Bnk. & Trust Co.</u>, 25 N.J. 17, 27 (1957); <u>accord</u> <u>Jewish Ctr. of Sussex County. v. Whale</u>, 86 N.J. 619, 626, n. 1 (1981); <u>Pioneer Nat'l Title Ins. Co. v. Lucas</u>, 155 N.J.Super. 332, 342 (App. Div.), <u>aff'd</u>, 78 N.J. 320 (1978).

Defendants Kupperman and Krelman also suggest that perhaps there could be some sort of defense similar to mitigation that might be discovered in the future. <u>Kupperman Brf.</u> at 4; <u>Krelman Brf.</u> at 2. However, Kupperman and Krelman fail to articulate any facts whatsoever that would provide a defense to the Unconditional Guaranties. Such "metaphysical doubt" is insufficient to avoid summary judgment. <u>Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 at 586 (1986).

Like Browne, Kupperman and Krelman imply that MLBFS should not have loaned additional funds <u>notwithstanding the fact that the Guarantors affirmatively requested additional credit and represented that PITTRA was in full compliance with its obligations to MLBFS</u>. Indeed, Defendants went to great lengths to camouflage their fraud, such

7

as, among other things, submitting bogus auditor reports and forged opinion letters for an attorney. Simply put, the fact that Defendants were able to trick MLBFS into lending PITTRA more money does not mean that they do not have to repay the additional advances.[4]

IV

THE JUDGMENT SHOULD BE CERTIFIED AS FINAL.

Defendants raise a hodgepodge of arguments as to why the partial summary judgment should not be certified as final. None of the arguments withstands scrutiny.

The fact that Chase and MLBFS may disagree as to the priority of their claims to **Defendant PGB's assets** does not mean that a judgment as to the liability of **the Guarantors** should not be certified as final. Chase and MLBFS are working to resolve their issues, and any priority question is an issue between Chase and MLBFS which has nothing to do with the Guarantors.

Defendants' contention that the attachments and restraints "protect" MLBFS is inaccurate. MLBFS is entitled to be repaid the indebtedness guaranteed by the Guarantors. The imposition of attachments and restraints is not repayment. Further, some of the attached assets remain subject to competing claims, and no showing has been made that the total value of the assets attached exceeds the indebtedness owed to MLBFS. Similarly, interest and late fees continue to accrue on the full amount of the

---

[4] Krelman's citation to Merrill Lynch Business Financial Services, Inc. v. Plesco, 859 F.Supp. 818, 826-828 (E.D. Pa. 1994) is misplaced. In that case, guarantors claimed that the lender affirmatively disposed of a borrower's collateral in a deficient manner and that had the lender disposed of the collateral properly, the indebtedness would have been fully repaid. Id. at 821-822. In this case, there is no claim that MLBFS improperly disposed of collateral. Indeed, in this case, it is alleged ---- and never denied ---- that the Guarantors themselves secreted PITTRA's assets from MLBFS.

indebtedness.  Until collection commences, MLBFS's already doubtful chance for full repayment diminishes each day.  Moreover, with a judgment, MLBFS will hold stronger rights to proceed to recover fraudulent transfers and to domesticate the judgment in other jurisdictions (including, if necessary other countries).  A judgment may also provide greater protection to MLBFS in the event of a bankruptcy filing by any of the Defendants.

Defendants also attempt to portray the claims on the Guaranty as intertwined with, or dependent upon the claims premised upon fraud.  Defendants are incorrect.  The proofs required to recover on the Guaranty claim are completely separate and distinct from the claims for fraud.  The Guarantors are liable because they guaranteed repayment of the loans to PITTRA, and MLBFS is entitled to recover judgment on the Guaranty claim <u>regardless</u> of whether a particular guarantor engaged in fraudulent activity.

## CONCLUSION

Accordingly, MLBFS respectfully submits that this Court should grant the motion for summary judgment and certify the judgment as final.

Respectfully submitted,

BRESSLER, AMERY & ROSS, P.C.
Attorneys for Plaintiff

By: _____
George R. Hirsch

Dated: December 4, 2006