UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMPRESAS LOURDES, S.A.,<br><br>Plaintiff,<br><br>vs.<br><br>ARTHUR KUPPERMAN, E. ROSS BROWNE, PAULETTE KRELMAN and PGB INTERNATIONAL, LLC,<br><br>Defendants. | Case No. 06-5014 (DMC) |

## BRIEF ON BEHALF OF E. ROSS BROWNE IN OPPOSITION TO THE CROSS-MOTION OF JPMORGAN CHASE, N.A. FOR PARTIAL SUMMARY JUDGMENT AND RELATED RELIEF

**SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC**
Vincent F. Papalia (VP1418)
Mark A. Roney (MR1931)
One Gateway Center-13th Floor
Newark, New Jersey 07012
Telephone: (973) 622-3333
Facsimile (973) 622-3349
Counsel for E. Ross Browne

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ................................................................... 1

COUNTER STATEMENT OF UNDISPUTED FACTS
AND PROCEDURAL HISTORY ................................................................. 2

LEGAL ARGUMENT .................................................................................. 4

POINT I ......................................................................................................... 4

BROWNE DID NOT EXECUTE THE GUARANTY
AND IS NOT LIABLE THEREON ............................................................ 4

POINT II ...................................................................................................... 14

THERE IS NO BASIS FOR SUMMARY JUDGMENT
AGAINST BROWNE ON THE RICO CLAIM ....................................... 14

POINT III .................................................................................................... 20

PLAINTIFF HAS NOT MET ITS BURDEN IN SHOWING
THAT CERTIFICATION OF JUDGMENT AS FINAL ON
THE GUARANTY AND RICO COUNT IS WARRANTED ................. 20

CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Apple Computer Sec. Litigation*, 886 F.2d 1109 (9th Cir.1989).......... 20

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ................................................. 20

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) .................................................... 9

*Boyle v. Governor's Veterans Outreach and Assistance Center*, 925
    F.2d 71 (3rd Cir. 1991).............................................................................. 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................ 5

*FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282 (D. Minn. 1985) ............. 12

*Gerardi v. Pelullo*, 16 F.3d 1363 (3rd Cir. 1994)......................................... 21

*LaSalle Bank Lake View v. Seguban*, 937 F. Supp. 1309 (N.D. Ill.
    1996) ................................................................................................... 18, 19

*Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475
    U.S. 574 (1984)......................................................................................... 5

*S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187 (3rd Cir. 1994). 9, 10, 12, 16, 17

*Smith*, 247 F.3d at 538 ................................................................................. 18

*Smith v. Berg,* , 247 F.3d 552 (3rd Cir. 2001) ............................................. 17

*Sussex Drug Products v. Kanasco, Ltd.*, 920 F.2d 1150 (3rd Cir.
    1990) ...................................................................................................... 22

*Young Silk Woo v. Glantz*, 99 F.R.D. 651 (D.R.I. 1983)............................... 12

## STATE CASES

*State by Commissioner of Transport v. Council in Division of
    Resource Development of Department of Conservation and
    Economic Development*, 60 N.J. 199, 287 A.2d 713 (1972)...................... 9

## FEDERAL STATUTES

18 U.S.C. 1962(c) ............................................................................ 18

28 U.S.C.A. §1291 ................................................................. 21, 22, 23

## RULES

Fed. R. Civ. Pro. 54(b) .............................................................. 4, 21

## PRELIMINARY STATEMENT

JPMorgan Chase Bank, N.A.'s ("Chase") case against defendant E. Ross Browne ("Browne") is based almost entirely upon Mr. Browne's alleged guaranty (the "Guaranty") of a $3 million loan from Chase (the "Chase Loan") to PGB International LLC ("PGB"). However, as will be shown below, Mr. Browne did not sign the Guaranty. Accordingly, Chase's summary judgment motion on the Guaranty must fail.

The rest of Chase's case against Browne revolves around the alleged fraudulent activities of a third party, Arthur Kupperman, in connection with the Chase Loan. No Affidavit or other evidence presented by Chase indicates that Mr. Browne was in any way involved in those activities. As a result, the balance of Chase's partial summary judgment motion should also be denied.

Finally, even if partial summary judgment were granted, Rule 54(b) certification would be inappropriate and unnecessary at this early stage of the proceedings because of: (i) the duplicative nature of Chase's remaining claims; (ii) the extensive restraints already in place on Browne's assets; and (iii) the priority dispute between Chase and plaintiff Merrill Lynch Business Financial Services, Inc. ("Merrill") against the same Defendants and the same property. In short, there is no need or basis to certify any judgment as

final at this early stage of the proceedings, which could result in unnecessary duplication of effort and the inefficient use of the limited resources of the Courts and the parties.

## COUNTER STATEMENT OF UNDISPUTED FACTS AND PROCEDURAL HISTORY

According to its Crossclaim against Browne, Chase initially extended credit to PGB in October 2004 and extended and renewed PGB's credit most recently on March 16, 2006. See Chase's Answer to the Verified Complaint, Counterclaim and Crossclaim, at Crossclaim ¶3. The Chase Loan was collateralized by a security agreement dated October 8, 2004. See Chase Crossclaim at ¶4. The Chase Cross-Claim further indicates that the Chase Note and related PGB loan documents were executed on its belief by Kupperman only, allegedly as the Managing Member of PGB. Id. at ¶8.

Chase alleges that in connection with the Chase Loan, Browne and Paulette Krelman ("Krelman") executed and delivered to Chase unconditional guaranties of payment on or about October 8, 2004 (the "Guaranty" and collectively the "Guaranties") Id. at ¶9. Browne did not, however, execute the Guaranty. see Certification of Gus Lesnevich at ¶7, and is therefore not liable thereon.

Chase asserts that at the time it extended the Chase Loan to PGB in October of 2004, it had no knowledge of the existence of PITTRA G.B.

International, Inc. ("PITTRA"). PITTRA is the entity which Chase (and Merrill) allege fraudulently conveyed its assets to PGB. Id. at ¶18.

On October 6, 2006, Merrill filed a Verified Complaint and moved *ex parte* for an Order to Show Cause why temporary restraints (the "Restraints") and writs of attachment (the "Writs") should not be issued against Defendants PGB, Browne, Krelman and Kupperman (collectively, "Defendants"). On October 20, 2006, Merrill amended its Verified Complaint to include Chase as a defendant in order to resolve the priority dispute between them as to PGB's assets, and any competing claims to the assets of the individual defendants. According to Chase, it was only after Merrill filed its Verified Complaint that Chase investigated the financial data and information provided to it by PGB, through Kupperman, and determined that the information was inaccurate. Id. at ¶¶20 - 24.

On October 23, 2006, defendants Browne, Kupperman and Krelman appeared at the offices of Merrill's counsel for depositions. At their respective depositions, these Defendants asserted their Fifth Amendment privilege against incriminating themselves and signed respective declarations indicating same.

On November 1, 2006, Merrill filed a motion seeking partial summary judgment its Guaranty counts against the individual defendants and

certification of any such judgment as final pursuant to Fed. R. Civ. Pro. 54(b). On November 8, 2006, Chase filed an Answer, Counterclaim and Crossclaim asserting, among other claims, that Chase's interests in the assets of Defendants had priority over Merrill and the Browne was liable to Chase under the Guaranty and the federal RICO statute.

On November 28, 2006, Chase filed its opposition to Merrill's motion for partial summary judgment concerning the priority issues and this cross-motion against the individual defendants seeking summary judgment against all parties based on: (i) an alleged breach of the Guaranties, and (ii) Chase's RICO claims. Chase also seeks summary judgment against Merrill on the ground that Chase's claims to PGB's assets has priority over Merrill's claims to the same assets. Browne filed his answer to Merrill's Verified Complaint on November 21, 2006 and to Chase's crossclaim on December 13, 2006. Merrill filed an answer to Chase's counterclaim on December 13, 2006 disputing Chase's priority interest Defendants' property and assets.

## LEGAL ARGUMENT

## POINT I

## BROWNE DID NOT EXECUTE THE GUARANTY AND IS NOT LIABLE THEREON

Chase's motion for summary judgment on the Guaranty against Browne must be denied because he did not execute that Guaranty. As is

indicated in the accompanying certification of Gus Lesnevich, an expert in the field of forensic document examination, the signature on the Guaranty is not that of Browne. As a result, he cannot be found liable to Chase under the Guaranty. Furthermore, serious questions exist as to the validity of the acknowledgement of the alleged signatures on the Guaranties -- questions which necessitate further discovery and similarly preclude the grant of summary judgment.

## A.    The Summary Judgment Standard

In order to prevail on a motion for summary judgment, the moving party must demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Boyle v. Governor's Veterans Outreach and Assistance Center, 925 F.2d 71, 75 (3rd Cir. 1991). In reviewing a motion for summary judgment "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 587 (1984)(citation omitted). Accordingly, summary judgment is proper only when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

**B.** **Browne Did Not Sign the Guaranty**

There is clearly a question of material fact as to the execution by Browne of the Guaranty. In conclusory terms, Chase asserts that Browne executed the Guaranty, with no documentation or testimony in support of its position other than the Guaranty itself. In opposition, Browne has produced the accompanying Certification of Gus Lesnevich, an expert in the field of forensic document examination (the "Lesnevich Cert."), who opines that, based on his initial review and analysis, the signature on the Guaranty is not that of Browne. See Lesnevich Cert. at ¶7.

Further, even without expert testimony, a comparison of Mr. Browne's alleged signature on the Guaranty with his signature on documents produced in this litigation reveals substantial and obvious differences between those signatures that would by themselves preclude summary judgment. See Certification of Mark A. Roney (the "Roney Cert.") submitted herewith. Accordingly, Chase's motion should be denied.

**C.** **Material Questions of Fact Also Exist
As to the Acknowledgement of the Guaranties**

There are also separate questions of fact as to the execution and delivery of the Guaranties which provide independent grounds for the denial of summary judgment. In this regard, it appears that Chase's claim that the Guaranties are authentic rests on the dubious acknowledgment of a New

Jersey notary public on those documents, which by their terms were executed in New York, New York. But that is only where the questions begin.

A cursory review of both the Guaranties reveals serious discrepancies in the execution of those documents. The Guaranties indicate on their face that they were executed in New York, New York; however, the New Jersey notary who acknowledged the Guaranties did so in Morris County, New Jersey. See Certification of Wayne E. Olsen, dated November 27, 2006, at ¶8, Exhibit D (the "Olsen Cert.").

Further, a review of the acknowledgment page of Krelman's Guaranty indicates that the same notary also acknowledged two other signatures on documents related to the Chase Loan, both of which have been crossed out. See Olsen Cert. at ¶8, Exhibit D. Interestingly, one of these stricken acknowledgements (on the Krelman Guaranty) is for Kupperman's signature on a document, presumably a guaranty, executed on behalf of an unnamed partnership, but no such document has been produced or is alleged to have been required by Chase. Id. at Exhibit D.

Finally, a comparison of the acknowledgment pages of the Krelman Guaranty and the Browne Guaranty reveals another inconsistency. On the acknowledgment of the Krelman Guaranty, Browne is identified as "Edward

R. Browne." In contrast, on the alleged Browne Guaranty, he is correctly identified as "E. Ross Browne." Id. The striking of the two acknowledgements on the Krelman Guaranty and the different names used for Browne on those two documents give rise to various material factual questions as to the circumstances surrounding the alleged execution and acknowledgement of the Guaranties, and their validity.

**D.    Browne's Invocation of his Fifth Amendment Privilege does not Prohibit his Submission of Affidavits in Support of his Defense or Establish an Adverse Inference Against Browne Absent Additional, Competent Evidence**

Despite Chase's arguments to the contrary, Browne's invocation of his privilege against self-incrimination under the Fifth Amendment of the United States Constitution does not act as an absolute bar to Browne submitting personal affidavits to rebut evidence presented by Chase in these proceedings. Federal case law -- indeed the very case Chase cites in support of its position to bar any affidavits by Browne -- stands for a completely opposite position. Indeed, in the cases cited by Chase, the party asserting the Fifth was precluded from later submitting a contesting affidavit only after the proceedings had been going on for years and/or were ready for trial. In sharp contrast, this case is barely two months old. Even more importantly, in this case, Browne has timely submitted competent independent evidence -- in the form of the Lesnevich Cert. -- that directly

puts into question the validity of Browne's signature on the Guaranty. Thus, summary judgment would be inapplicable even if Browne's testimony were barred (which it should not be).

Further, while it may be permissible, in the appropriate circumstances, for a trier of fact to draw adverse inferences from a party's invocation of the Fifth Amendment privilege in a civil proceeding, the inference may be drawn **only** if there is other evidence supporting an adverse finding; the invocation of the privilege alone cannot constitute evidence of guilt. See Baxter v. Palmigiano, 425 U.S. 308, 316-320 (1976)(emphasis added); See also S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 191 (3rd Cir. 1994) (relied upon by Chase). The proper application of inferences by a trier of fact has been described by the New Jersey Supreme Court as permissive rather than mandatory. Further "[i]t does not shift the burden of proof, and usually will not relieve the party holding that burden from the obligation of producing some evidence to support his claim. The inference has its role in the evaluation of the evidence the respective parties adduce." State by Commissioner of Transp. v. Council in Division of Resource Development of Dept. of Conservation and Economic Development, 60 N.J. 199, 202, 287 A.2d 713, 715 (1972)(emphasis added).

As discussed below, the proper course of action in determining whether to permit evidence after a party invokes its Fifth Amendment rights is to determine whether the opposing party was prejudiced, and if so, what type of discovery sanction is proportionally appropriate. Here, although no contrary affidavit has yet been submitted by Browne, there is absolutely no prejudice to Chase in simply requiring it to prove an essential element of its case, i.e., that Browne executed the Guaranty on which Chase now seeks a $3 million judgment. That is especially true where, as here, the case is in its earliest stages and Browne has produced independent evidence that he did not execute the Guaranty.

Chase cites the Third Circuit case of S.E.C. v. Graystone Nash, Inc., 25 F.3d at 191, for the general proposition that the invocation of the Fifth Amendment privilege gives "rise to an adverse inference and precludes [Browne] from now submitting an affidavit opposing summary judgment." See Chase's Brief at p 8. However, this reference to Graystone is overly broad and at best incomplete, as it does not acknowledge that the Third Circuit overturned the District Court's decision to strike the defendants' affidavits and found that the plaintiff in that case was not prejudiced by the waiver of the privilege when the defendant submitted an affidavit in response to a summary judgment motion. Id. at 193-194.

The case in <u>Graystone</u> involved proceedings against a brokerage and six of its corporate officers for the disgorgement of fees as the result of securities fraud. <u>See</u> <u>Graystone</u> at 189. Two of the officers were deposed and generally invoked their Fifth Amendment rights to questions posed by the S.E.C. <u>Id</u>. Thereafter, the S.E.C. filed a motion for an order of preclusion as to the defendants' right to produce evidence and for summary judgment. <u>Id</u>. In response to the motions, the defendants submitted opposing affidavits. <u>Id</u>. The District Court granted the preclusion motion and, as a result, entered judgment against them.

In overturning the preclusion order and the entry of summary judgment, the Third Circuit stated its survey of the case law on the privilege issue "makes it apparent that the effects that an invocation of the privilege against self-incrimination will have in a civil suit depends to a large extent on the circumstances of the particular litigation." <u>Id</u>. at 192. Indeed, in reviewing the case law, the Third Circuit indicated that the sanctions of dismissal or entry of judgment based upon a valid invocation of the privilege during discovery is improper. <u>Id</u>. at 191. The Court also indicated that "a complete bar to presenting any evidence, from any source, that would in all practical effect amount to the entry of an adverse judgment, would be an inappropriate sanction." <u>See</u> <u>Graystone</u> at 191. The Third Circuit went on

to state:

> "[a] trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side."

Id. at 192.

The Third Circuit cited approvingly two District Court cases in which a plaintiff's request for preclusion in connection with a summary judgment motion was denied. In FTC v. Kitco of Nevada, Inc., 612 F.Supp. 1282, 1291 (D. Minn. 1985), the trial judge admitted the defendant's testimony despite a previous invocation of the privilege because the FTC had received some information from the defendant and it was not unfairly surprised or prejudiced by the last minute waiver. See Graystone, 25 F.3d at 192. Similarly, in Young Silk Woo v. Glantz, 99 F.R.D. 651 (D.R.I. 1983), the trial court denied summary judgment shortly after the defendant invoked the privilege because it found the defendant may have been able to rebut the plaintiff's case without his own testimony and provided the defendant additional time to obtain discovery for the purposes of opposing the summary judgment motion. See Graystone, 25 F.3d at 192.

As a result, it is clear that Graystone does not stand for the broad

proposition that affidavits must always be stricken from the record and an adverse -- and conclusive -- inference drawn against the party invoking their Fifth Amendment privilege. Rather, the case stands for the premise that the appropriate sanction for the invocation of the privilege depends on the specific facts of each case, with a strong preference for avoiding the entry of judgment against a party solely based on the invocation of constitutional rights. In this case, an absolute bar of the possible future admission of testimony by Browne, either via affidavit, or through deposition or trial testimony is too severe a sanction to be imposed at this early stage of the proceedings.

As in the <u>Young</u> case, Chase moved for summary judgment almost immediately after entering this action,[1] and before any substantive discovery has taken place, other than the depositions of Defendants in October. Browne has had almost no opportunity to coordinate a defense against Chase's claims in this short period of time, and has served discovery, but received no response from Chase as of the filing of this opposition to Chase's cross-motion.[2] In the meantime, Browne has produced to both Chase and Merrill a significant amount of documentation regarding his

---

[1] Chase's Answer and Crossclaim was filed on November 8, 2006 and the within motion was filed on November 27, 2006 – 19 days later.

[2] Chase has requested a 30 day extension to respond to Browne's Request for Document Production served on December 4, 2006, which has been agreed to by Browne.

financial affairs and is cooperating with all discovery requests that do not impinge on his invocation of his Fifth Amendment privilege.

Additionally, third party discovery concerning the facts and circumstances surrounding the alleged execution <u>and</u> acknowledgement of the Guaranty is necessary. In addition to retaining a handwriting expert, Browne intends to vigorously pursue discovery from Chase and others (including the Notary) on this issue. Allowing this discovery to go forward before a summary judgment motion is decided will not only properly frame the facts and issues before this Court, but could moot the question as to preclusion of Browne's testimony, since further discovery will provide additional, independent proof that Browne did not execute the Guaranty.

In sum, Chase is not entitled to summary judgment against Browne on the Guaranty count, as there are many disputed material facts concerning the alleged execution of the Guaranty by Browne, and its acknowledgement. Chase's motion should be denied.

## POINT II

### THERE IS NO BASIS FOR SUMMARY JUDGMENT AGAINST BROWNE ON THE RICO CLAIM

Chase's Statement of Facts is completely devoid of any reference to Browne participating in, or conspiring to commit, any RICO activity. In fact, contrary to Chase's conclusory, unsworn allegations in its brief and

cross-claim that all Defendants were involved in the alleged fraud, Chase's Statement of Facts and Olsen Cert. refer <u>solely</u> to Kupperman in connection with any alleged wrongful acts concerning the Chase Loan.

Without any evidence to support Browne's alleged participation in, or conspiring to commit any wrongful RICO activity, his invocation of his Fifth Amendment privilege alone is plainly insufficient to satisfy Chase's heavy burden of proving RICO liability on a motion for summary judgment. Indeed, since Browne has submitted competent proof rebutting a key element underlying all of Chase 's claims -- <u>i.e.</u>, Browne's execution of the Guaranty -- summary judgment is also inappropriate on the RICO claims, which are based at least in part on that Guaranty.

### A. Chase Has Provided No Evidentiary Support For Browne's Involvement in RICO Activity

A thorough review of Chase's Statement of Facts and the Olsen Cert. reveals that there is simply no basis for Chase's unsupported and unsworn assertions that Browne was complicit in any RICO activity concerning the Chase Loan. The Statement of Facts and Olsen Cert. make no reference to Browne conspiring to provide, or actively participating in providing, any information to Chase other than his personal financial statements. <u>See</u> Statement of Facts at ¶18. Tellingly, Chase has made no allegations that the information provided in Browne's financial statements was false. Chase

does, however, indicate that information provided by PGB and Kupperman was allegedly false. Id. at ¶¶20-26 and 30-33. Again, Chase does not refer to Browne having participated in providing this information. Id. at ¶¶23-24. In fact, as discussed in Point II (B) below, Chase's sole basis for Browne's RICO liability is his invocation of his Fifth Amendment privilege. This is simply not enough.

Similarly, Chase's "support" for its Statement of Facts, the Olsen Cert., fails to identify any act by Browne in furtherance of the alleged RICO activity or to implicate his involvement therein. The Olsen Cert. identifies PGB and Kupperman as the only parties who provided Chase with information concerning PGB's financial condition. See Olsen Cert. at ¶¶12-15 and 19-21. Additionally, the Olsen Cert. is deficient because it impermissibly relies on the inadmissible hearsay statements of Chase's unidentified "Auditors," which in any event do not relate to Browne. Id. at ¶¶18-20. In fact, Chase cannot even state conclusively that the information provided by PGB and Kupperman is false, as the Olsen Cert. states only that the information is "likely materially inaccurate and fraudulent." Id. at 20 (emphasis added). These hearsay, qualified statements as to third parties are certainly insufficient to establish any RICO claims against Browne.

**B.** **Browne's Invocation of his Fifth Amendment Privilege
Does Not Establish Liability Under RICO**

Knowing that it cannot establish Browne's culpability under RICO based on any facts it can prove, Chase attempts to use Browne's assertion of his constitutional rights as substantive evidence of his involvement in RICO activity. Yet, Chase fails to provide this Court with <u>any</u> c ompetent or admissible evidence of his involvement in any such activity. <u>See</u> Point I(D), <u>supra</u>; <u>see</u> <u>also</u> <u>S.E.C. v. Graystone Nash, Inc.</u>, 25 F.3d at 191.

As is apparent from Chase's legal brief, a principal basis for the RICO charge is Kupperman's alleged act of bank fraud "when he submitted fraudulent financial statements and borrowing base certificates on PGB's behalf to obtain the [Chase Loan]." <u>See</u> Chase Brief at p. 11. There are no allegations in Chase's brief that Browne committed any such act. <u>See</u> Chase Brief at p. 11. To the contrary, Browne has presented competent evidence that he did not even execute or deliver any Guaranty to Chase, which is the linchpin of Chase's case against him. Without any Guaranty or other contractual relationship, the very foundation of Chase's RICO (and other) claims against Browne, falls by the wayside.

Since it has no evidence against him, Chase seeks to hold Browne "guilty by association." Here, Chase appropriately cites to <u>Smith v. Berg</u>,

247 F.3d 552 (3rd Cir. 2001), for the proposition that an individual can be held liable for conspiracy under the RICO statue, 18 U.S.C. 1962(c) if he "knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." See Smith, 247 F.3d at 538. However, Chase's only proof of Browne's asserted involvement in the alleged conspiracy, is that "Browne and Krelman, who are officers of PGB, are assumed to have participated in this bank fraud by the adverse inference arising from their exercise of their Fifth Amendment privilege." See Chase Brief at p. 11(emphasis added).

Thus, by its own admission, Chase is relying entirely on the invocation of the privilege and Browne's position as an officer of PGB to "assume" that he was involved in the alleged RICO conspiracy. There is no factual basis for that assumption. As a result, summary judgment against Browne should also be denied on the RICO count.

Further support for denial of summary judgment against Browne can be found in LaSalle Bank Lake View v. Seguban, 937 F.Supp. 1309 (N.D. Ill. 1996), the principal case Chase relies upon for its arguments to the contrary. LaSalle is not only factually distinct from the case at bar, but actually stands for the proposition that summary judgment should not be entered against Browne on the facts presented.

In <u>LaSalle</u>, a former bank employee was alleged to have embezzled funds from the bank over a period of twelve years. <u>Id</u>. at 1313. The bank also claimed the former employee's husband was involved in a conspiracy to embezzle the funds because he knew, or should have known, that his family's wealth was not rationally related to their salaries. <u>Id</u>. at 1314. In proving the bank's case against the former employee, who had asserted the Fifth, the bank produced numerous affidavits of bank employees which included not only the former employee's confession to the underlying predicate RICO act, but also substantiated the amount of damage to the bank. <u>Id</u>. at 1314 -1319; 1321-1324.

However, on the conspiracy count <u>against the husband</u>, the court found that the mere evidence of the family's expenses insufficient to provide the basis for summary judgment. <u>Id</u>. at 1324-1325. The court noted that the only evidence adduced against the husband was his invocation of the Fifth Amendment privilege and the familial expenses. The court found those proofs insufficient to establish the husband's role in a RICO conspiracy on a summary judgment motion. <u>LaSalle</u>, 937 F.Supp at 1325.

Thus, in <u>LaSalle</u>, despite the apparently overwhelming evidence, including a confession by the former bank employee to the predicate RICO acts, the court refused to enter summary judgment against the husband based

solely on his invocation of his Fifth Amendment privilege and the assumption that he should have known of the wrongful acts. The same result should obtain here, where there is even <u>less</u> evidence of Browne's involvement in any illegal activities.

Chase has provided this Court with no facts to establish that Browne was involved in any way with any fraudulent actions or had the requisite knowledge of those actions have consented to or agreed to facilitate same.[3] As was the case with the husband in <u>LaSalle</u>, the issue of Browne's knowledge of the alleged fraud is a question to be presented to a jury, so it can properly make determinations of the weight and credibility of Chase's evidence. This fact-sensitive inquiry is not properly determinable on summary judgment.

## POINT III

### PLAINTIFF HAS NOT MET ITS BURDEN IN SHOWING THAT CERTIFICATION OF JUDGMENT AS FINAL ON THE GUARANTY AND RICO COUNT IS WARRANTED

As noted above, summary judgment is simply not appropriate here. However, if the court determines that Chase is entitled to summary judgment on the Guaranty or RICO counts, Chase's request to certify those judgments

---

[3] Generally, scienter is a fact-specific issue which should ordinarily be left to the trier of fact. <u>See</u> In re Apple Computer Sec. Litig., 886 F.2d 1109, 1113 (9th Cir.1989) (citations omitted) *citing* Basic, Inc. v. Levinson, 485 U.S. 224 (1988).

as final pursuant to Fed. R. Civ. Pro. 54(b) should be denied. The analysis under Rule 54(b) requires a District Court to initially determine whether a decision on the contract count would be deemed "final" pursuant to 28 U.S.C. §1291, and then balance the equities by considering various factors that inform the Rule 54(b) decision. See Gerardi v. Pelullo, 16 F.3d 1363, 1368 (3rd Cir. 1994).

## A. A Judgment on the Guaranty or RICO Counts is Not Final under 28 U.S.C. §1291

The Guaranty and RICO counts are factually intertwined with the remaining counts of those cross-claims, evidencing the fact Chase's claims are not really separate, but merely one claim based on various theories of recovery. Chase's RICO count is predicated on allegations that Browne participated in, or conspired with Kupperman, in committing a fraud related to the Chase Loan. These same facts are presumably the foundation upon which Chase asserts: (i) that Browne committed an act of fraud upon Chase (Third Count - Fraud); (ii) that Browne has personally benefited from the alleged fraud (Fifth Count – Fraudulent Conveyance; Sixth Count – Unjust Enrichment; and Seventh Count – Piercing the Corporate Veil); and, (iii) that Browne is liable to Chase under the Chase Loan documents (Second Count – Breach of Covenant of Good Faith and Fair Dealing. Since these remaining counts rely on the same set of underlying facts as the Guaranty

and RICO counts, any judgment on the Guaranty and RICO counts should not be considered final for purposes of 28 U.S.C. §1291.

The situation in the present case is similar to that in Sussex Drug Products v. Kanasco, Ltd., 920 F.2d 1150 (3rd Cir. 1990). Like the plaintiff in Sussex, Chase's entire RICO case rests on its assertion of Browne's participation and/or complicity in the alleged fraud related to the initial issuance and the renewal of the Chase Loan. The foundation for liability on the remaining counts is identical to that of the Guaranty and RICO counts and is therefore not a "separate" claim but rather a separate theory for recovery based upon the same claim. See Sussex, 920 F.2d at 1154. Thus, the Guaranty and RICO counts are directly linked to -- rather than separate from -- the breach, fraud, priority and other counts. Further evidence of this direct link is found in the cross-claim's repetition of the same facts as common to all claims and the ad damnum clause, which seeks precisely the same damages, compensatory and punitive, and other relief as to all of the substantive counts. See Chase's Answer and Crossclaim at pp. 32-33. Certification is inappropriate in these circumstances.

**B.    The Court Should Exercise its Discretion Against Certification of Any Judgment on the Contract Count as Final**

A determination by the District Court that separate claims exist against a defendant which may be considered "final judgments" under Rule

54(b) and 28 U.S.C.A. §1291 does not complete the analysis as to certifying a judgment as final under Rule 54(b). The Court must still engage in a balancing of several factors to conclude that the judgment should be certified as final.

### 1. The Writs and Restraints Already in Place More Than Adequately Address any Solvency or Collectability Concerns

In reviewing the appropriate factors, the equities strongly favor Browne and a determination that a judgment on the Guaranty and/or RICO counts should not be certified as final. Most importantly, the broad Writs and Restraints issued by this Court remove any and all rationales for certifying a judgment as final based on economic or solvency considerations. In short, no harm will befall Chase during the pendency of the litigation of the remaining breach, fraud and priority claims, as Merrill, and derivatively Chase, have successfully restrained Browne's assets until the completion of this case.

### 2. The Facts Underlying the Guaranty and RICO claims are Intertwined with the Remaining Claims and Should be Resolved Together

As discussed in Point III(A) above, if Chase obtains judgment on either the Guaranty or RICO counts, the remaining counts in its Crossclaim are nothing more than varying theories of relief against Browne based on the

same facts. Chase's Second Count, Breach of Covenant of Good Faith and Fair Dealing, is factually dependent on Browne's liability on the Guaranty count. If there is no contractual (i.e., Guaranty) relationship between Browne and Chase, there can necessarily be no breach of the covenant of good faith and fair dealing. Similarly, Chase's additional remaining counts as to Browne -- the Third Count of Fraud, Fifth Count of Fraudulent Conveyance, Sixth Count of Unjust Enrichment and Seventh Count of Piercing the Corporate Veil -- all rely on Chase proving that Browne participated, or was complicit, in fraudulent activity to the detriment of Chase, just as required in the RICO count. Thus, granting certification as final on the Guaranty or RICO counts virtually assures that any appellate court will be obligated to review the same issues a second time.

## 3. The Conflicting Claims of Merrill and Chase Against the Same Parties and Property Should Preclude Certification

Finally, significant factual disputes exist between Chase and Merrill regarding the priority of their interests in the property of Defendants. Chase's attempt at classifying its competing claims to the Defendants property as purely legal is belied by the defenses raised by Merrill in its answer to Chase's counterclaim. There, Merrill asserts that Chase knew or should have known that PGB's assets were transferred, fraudulently or not, to PGB and are therefore subject to Merrill's prior security interest. This is

an inherently factual issue which cannot be resolved without further discovery.

In sum, certification of any judgment as final is inappropriate at this time as: (i) the remaining counts require the review and resolution of the same underlying facts as the Guaranty and RICO counts; (ii) the extensive Writs and Restraints already in place against Browne and the other defendants more than adequately protects Chase's ability to collect any damages; and, (iii) the priority claims involved disputed issues of material fact which must be resolved prior to allowing either Chase or Merrill to execute on the Defendants' property and assets. Chase's motion for certification pursuant Rule 54(b) should therefore be denied.

## CONCLUSION

For all these reasons, Chase's motion for partial summary judgment and Rule 54(b) certification should be denied.

Respectfully submitted,

SAIBER SCHLESINGER
SATZ & GOLDSTEIN, LLC
Attorneys for Defendant
E. Ross Browne

By: s/Vincent F. Papalia
      VINCENT F. PAPALIA

Dated: December 26, 2006