# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ARTHUR KUPPERMAN, E. ROSS BROWNE, PAULETTE KRELMAN, PGB INTERNATIONAL, LLC, and JPMORGAN CHASE BANK, N.A.,<br><br>    Defendants,<br><br>and<br><br>JOHN DOES (1-10) and ABC CORPORATIONS (1-10),<br><br>    Additionally Defendants<br>    on the Crossclaim. | CIVIL ACTION<br><br>Civil Action No. 06-4802 (DMC) |

---

**REPLY BRIEF IN FURTHER SUPPORT OF CROSS-MOTION OF DEFENDANT JPMORGAN CHASE BANK, N.A. FOR PARTIAL SUMMARY JUDGMENT AND RELATED RELIEF**

---

HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, New Jersey  07102
(973) 274-2000
Attorneys for Defendant JPMorgan Chase
Bank, N.A.

On the Brief:
        Paul H. Schafhauser (PS - 1337)
        John M. August (JA - 6451)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

LEGAL ARGUMENT.........................................................................................................3

    POINT I ...................................................................................................................3

        CHASE IS ENTITLED TO SUMMARY JUDGMENT ON THE FIRST
        COUNT OF THE CROSSCLAIM AGAINST PGB AND BROWNE .................3

            A.    PGB concedes its liability to Chase .................................................4

            B.    Browne has not submitted any affidavit denying that he
                 executed the Guaranty......................................................................4

            C.    Browne's invocation of the Fifth Amendment in response
                 to direct questions about his guaranty gives rise to an adverse
                 inference and precludes him from now submitting an "expert"
                 affidavit opposing summary judgment. ...........................................5

            D.    The Lesnevich Certification is an inadmissible net opinion
                 which does not justify denial of the Cross-Motion for summary
                 judgment against Browne. ................................................................7

            E.    The acknowledgment on the Guaranty is not defective..................9

             F.    There is no genuine dispute as to the amount due to Chase. .........10

    POINT II ...............................................................................................................10

        CHASE IS ENTITLED TO SUMMARY JUDGMENT ON THE TENTH
        COUNT OF THE CROSSCLAIM AGAINST PGB, KUPPERMAN AND
        BROWNE ...........................................................................................................10

    POINT III...............................................................................................................15

        THIS COURT SHOULD CERTIFY THE JUDGMENT AS FINAL...................15

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................4

*Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195 (3rd Cir. 2006)...................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................3

*Curtis-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980) .................................15

*In re Edmond*, 934 F.2d 1304 (4th Cir. 1991) ..............................................................5

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3rd Cir. 1990) ..................13

*LaSalle Bank Lake View v. Seguban*, 937 F.Supp. 1309 (N.D. Ill. 1996) ..................11, 13, 14, 15

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...........3

*Rogers v. United States*, 340 U.S. 367 (1951) ...............................................................6

*S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187 (3rd Cir. 1994) .......................................5

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ..................................................10

*Smith v. Berg*, 247 F.3d 532 (3rd Cir. 2001)............................................................11, 13

*United States v. Jacobs*, 117 F.3d 82 (2nd Cir. 1997) .................................................12

*United States v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990) ......................................5

*U.S. v. Local 560, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Amer.*, 581 F.Supp. 279 (D.N.J. 1984), aff'd, 780 F.2d 267 (3 rd Cir. 1985), cert den., 476 U.S. 1140 (1986)................................................................................................11

## STATE CASES

*Dawson v. Bunker Hill Plaza Associate*, 289 N.J. Super. 309 (App. Div. 1996) ...........8

*Jimenez v. GNOC Corp.*, 286 N.J.Super. 533 (App. Div.), certif. denied, 145 N.J. 374 (1996)................................................................................................................7, 8

*Johnson v. Salem Corp.*, 97 N.J. 78 (1984) ..................................................................7

ii

*Levine v. Bornstein*, 13 Misc.2d 161, 174 N.Y.S.2d 574 (Sup. Ct. 1958), <u>aff'd</u> 7 A.D.2d 995, 183 N.Y.S.2d 868 (2d Dep't 1959)......................................................................6

*New Brunswick Cellular v. Board of Adj.*, 160 N.J. 1 (1999).........................................8

*State by Commissioner of Transport v. Council in The Division of Resource Development of the Department of Conservation and Economic Development*, 60 N.J. 199 (1972)...................6

*Thermo Contracting Corp. v. Bank of N.J.*, 69 N.J. 352 (1986)......................................6

## FEDERAL STATUTES

18 U.S.C. § 1344.................................................................................................12

18 U.S.C. § 1961..............................................................................................1, 11

18 U.S.C. § 20 ...................................................................................................12

28 U.S.C. § 1291................................................................................................16

## FEDERAL RULES

Federal Rule of Civil Procedure 54 ....................................................................1, 15

Federal Rule of Civil Procedure 56 ......................................................................3

## PRELIMINARY STATEMENT

Defendant JPMorgan Chase Bank, N.A. ("Chase") respectfully submits this Memorandum of Law in further support of its Cross-Motion for Partial Summary Judgment and Related Relief (the "Cross-Motion"), and in reply to the opposition papers filed on behalf of defendants PGB International, LLC ("PGB"), Arthur Kupperman ("Kupperman") and E. Ross Browne ("Browne"), respectively. By its pending Cross-Motion, Chase seeks: (i) the entry of judgment against PGB and Browne on the First Count of Chase's crossclaim (the "Crossclaim") for breach of contract, as well as a directive that any person or entity owing money to PGB pay such money directly to Chase; (ii) the entry of judgment against PGB, Browne and Kupperman on the Tenth Count of the Crossclaim for treble damages, plus interest, cost and attorneys' fees, pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.; and (iii) certification of such judgments as final pursuant to Federal Rule of Civil Procedure 54(b).[1]

In opposition to the request for summary judgment on the First Count of the Crossclaim for breach of contract, PGB argues that Chase has failed to prove damages because the amount requested purportedly does not include recent collections. PGB, however, does **not** oppose Chase's request for judgment on liability, nor does PGB oppose Chase's motion for an order directing its account debtors to pay such money directly to Chase. For his part, Browne argues that the signature on his Guaranty is not authentic and that the acknowledgment of the

---

[1]     By its Cross-Motion, Chase also sought the entry of judgment against defendant Paulette Krelman ("Krelman"). Krelman submitted opposition to the Cross-Motion in late December 2006. On January 4, 2007, however, Krelman's counsel advised that Krelman had filed a Chapter 7 petition in the United States Bankruptcy Court for the District of New Jersey. Accordingly, in light of the apparent applicability of the automatic stay provisions of the Bankruptcy Code with respect to Krelman, Chase will not now respond to Krelman's arguments. Suffice it for present purposes to note that Chase reserves all rights and remedies with respect to Krelman.
       By its Cross-Motion, Chase also sought the entry of judgment on its Counterclaim against Merrill Lynch Business Financial Services Inc. ("MLBFS"). Chase, however, has agreed to adjourn this portion of the Cross-Motion.

Guaranty is defective. None of these arguments, however, justifies denial of Chase's request for summary judgment on the First Count of the Crossclaim.

Contrary to PGB's specious assertion, there is no genuine issue of material fact as to Chase's damages. All amounts have been properly credited and, of course, any amounts received subsequent to the entry of judgment will likewise be properly credited, just as with any such judgment. Moreover, any remaining question as to the amount of damages is put to rest by the accompanying Supplemental Declaration of Wayne E. Olson ("Supp. Olson Dec."), which details the amount due and owing net of any and all collections to date.

Browne's unsubstantiated arguments regarding the authenticity of his signature miss the mark entirely. First, Browne has not submitted any affidavit or other competent evidence wherein he denies having executed the Guaranty. Second, Browne admittedly sent financial statements to Chase in connection with the Guaranty and, accordingly, Browne ratified the Guaranty even if it was not properly executed. Third, Browne's invocation of his Fifth Amendment privilege in response to direct questions about the Guaranty precludes him from submitting an affidavit by some so-called "expert" which seeks to cast doubt on the authenticity of his signature. Fourth, the Certification of Gus R. Lesnevich (the "Lesnevich Cert.") is not a qualified expert opinion in any event and, even were it considered as such, it is an inadmissible net opinion containing a bare conclusion unsupported by facts or analysis. Finally, Browne's assertion that the acknowledgement is "defective" is factually unsupported and, in fact, wholly without merit.

In opposition to the request for judgment on the Tenth Count on the Crossclaim, PGB, Kupperman and Browne argue that Chase has not submitted sufficient evidence to support its RICO claim. Given the mountain of evidence demonstrating their defendants' fraud,

however, any such assertion would be laughable were this matter not so serious and the damage incurred by Chase not so enormous. The evidence submitted by Chase establishes that Kupperman and Browne directly or indirectly invested in, or maintained an interest in, or participated in the activities of PGB, which activities affected interstate or foreign commerce. Neither Kupperman nor Browne deny this. It also cannot be disputed that PGB committed at least two acts of bank fraud (a racketeering activity)[2], and that Kupperman and Browne facilitated these acts (as well as other fraudulent activity by PGB's predecessor-in-interest, PITTRA G.B. International, Inc. ("PITTRA")). These facts are far more than sufficient to support a judgment against PGB, Kupperman and Browne on Chase's RICO claim.

For these reasons, as more fully set forth below, there are no genuine issues of material fact regarding Chase's right to relief. Accordingly, the Court should grant the Cross-Motion in all respects.

## LEGAL ARGUMENT

## POINT I

### CHASE IS ENTITLED TO SUMMARY JUDGMENT ON THE FIRST COUNT OF THE CROSSCLAIM AGAINST PGB AND BROWNE

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). The movant must demonstrate the absence of a genuine issue of material fact and, once it has done so, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Once the moving party has satisfied its initial

---

2      The Affidavit of Wayne P. Tessler, attached to the accompanying Supplemental Declaration of John M. August, provides further proof of bank fraud because it establishes that a purported Independent Auditors' Report from Amper, Politziner & Mattia P.A., dated December 17, 2003, which was provided to Chase by PGB, is a forgery.

burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

In the instant matter, the following facts indisputably entitle Chase to the entry of summary judgment on the First Count of the Crossclaim against PGB and Browne: (i) PGB borrowed money from Chase; (ii) Browne absolutely and unconditionally guarantied to Chase the payment of all sums due from PGB; (iii) PGB and Browne are in default of their obligations to Chase; and (iv) Chase has suffered damages. In light of these indisputable facts and settled law, the Court should grant summary judgment in Chase's favor on the First Count of the Crossclaim.

**A.    PGB concedes its liability to Chase.  Moreover, PGB  does not contest Chase's right to obtain monies directly from PGB's account debtors.**

PGB does not oppose Chase's request for summary judgment on liability against PGB on the First Count of the Crossclaim.  Moreover, PGB does not oppose Chase's motion for an order directing PGB's account debtors to pay such money directly to Chase.  Accordingly, the Court should grant such relief in favor of Chase and against PGB as unopposed.

**B.    Browne has not submitted any affidavit denying that he executed the Guaranty.**

Try though he does to create "fact issues" in his opposition papers, Browne has not submitted any affidavit or other competent evidence denying that he executed the Guaranty. Thus, it must be deemed uncontested that Browne did, in fact, execute the Guaranty that Chase has presented to the Court bearing Browne's signature.  Accordingly, the Court should grant summary judgment in favor of Chase and against Browne (as well as against PGB) on Count One of the Crossclaim.

**C.     Browne's invocation of the Fifth Amendment in response to direct questions about his guaranty gives rise to an adverse inference and precludes him from now submitting an "expert" affidavit opposing summary judgment.**

In an effort to stave off the entry of summary judgment against him in a matter in which he refused to testify at his deposition lest he incriminate himself, Browne argues that the signatures on his Guaranty is not "authentic." Browne's invocation of the Fifth Amendment, however, gives rise to an adverse inference and precludes them from now submitting affidavits opposing summary judgment. See S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 191 (3rd Cir. 1994); In re Edmond, 934 F.2d 1304, 1308-09 (4th Cir. 1991); United States v. Parcels of Land, 903 F.2d 36, 43 (1st Cir. 1990). Indeed, Browne has continued to invoke the Fifth Amendment, both in his answer to the Crossclaims and in his response to Chase's statement of undisputed material facts. Thus, as noted above, Browne has not denied that he executed the Guaranty.

Chase has presented Browne's Guaranty to the Court, and the signature on the Guaranty is notarized. See Declaration of Wayne E. Olson dated November 27, 2006 ("Olson Decl."), Exhibit D thereto. The Third Circuit has held that, although the invocation of the Fifth Amendment in a civil proceeding does not *in itself* support an adverse decision, such silence in connection with other evidence against the defendant can support such a result. See S.E.C. v. Graystone Nash, Inc., 25 F.3d at 191. Browne agrees that this is the proper standard. See Browne's brief in opposition, at pg. 13. Here, the "other evidence" against Browne is his Guaranty.

Browne's citation to case law for the proposition that a party that first invokes, and subsequently waives, the First Amendment privilege should be allowed to submit evidence in opposition to summary judgment if the adverse party is not prejudiced, is not applicable

where, as here, Browne continues to assert his Fifth Amendment privilege.[3]  Browne's silence,

along with a Guaranty that bears his signature and is notarized, is sufficient to support the entry

of summary judgment against him.

Additionally, Browne does not dispute that he submitted yearly financial

statements to Chase.  This fact demonstrates that his Guaranty is authentic, notwithstanding his

unverified arguments to the contrary.  When responding to Chase's statement of undisputed

material facts, Browne denies that he signed the Guaranty.  See Browne's Response to Chase's

Statement of Undisputed Facts, at ¶ 11.  Browne, however, does **not** deny that he signed the

yearly financial statements that he provided to Chase.  Rather, Browne invokes his Fifth

Amendment privilege regarding his signature and disputes that the statements were provided "in

accordance with" the Guaranty.  Id. at ¶'s 18, 19.[4]

The yearly financial statements that Browne admittedly provided to Chase

constituted a ratification of his Guaranty.  See Thermo Contracting Corp. v. Bank of N.J., 69 N.J.

352, 362 (1976).   Browne's claim that he did not provide these statements in accordance with

the Guaranty is disingenuous.  Why would Browne provide yearly financial statements if, in fact,

he did not sign the Guaranty and/or ratify the Guaranty?  The fact that Browne submitted yearly

---

3       Browne also cites to State by Commissioner of Transp. v. Council in The Division of Resource
Development of the Dep't of Conservation and Economic Development, 60 N.J. 199 (1972), in support of his
argument that the adverse inference arising from his invocation of the Fifth Amendment does not preclude him from
submitting testimony.  This case does not stand for this proposition.  Indeed, this case is not a Fifth Amendment case
and is not applicable to the issues in the Cross-Motion.
4       A witness cannot select opportune moments to invoke his Fifth Amendment privilege, while speaking on
other matters when the witness wishes to advance his own interests by doing so.  See Rogers v. United States, 340
U.S. 367, 371, 71 S.Ct. 438, 441, 95 L.Ed. 344 (1951) ("To uphold a claim of privilege in this case would open the
way to distortion of facts by permitting a witness to select any stopping place in the testimony"); see also Levine v.
Bornstein, 13 Misc. 2d. 161, 164, 174 N.Y.S.2d 574, 577 (Sup. Ct. 1958) ("It does not follow that the protection of
the privilege should be expanded to shield a plaintiff who with one hand seeks affirmative relief in court and with
the other refuses to answer otherwise pertinent and proper questions which may have a bearing upon his right to
maintain his action.  To uphold this inconsistent position would enable the plaintiff to use the privilege as an
instrument of attack."), aff'd 7 A.D.2d 995, 183 N.Y.S.2d 868 (2d Dep't 1959).  Thus, the Court should conclude
that Browne either (i) has waived his Fifth Amendment privilege by denying the execution of the Guaranty; or (ii) is
precluded by denying the execution of the Guaranty in light of his invocation of his Fifth Amendment privilege in
connection with the transmittal of financial statements to Chase pursuant to the Guaranty.

financial statements to Chase without question thus further demonstrates that his Guaranty is authentic. Browne holds the key to any other explanation for the submission of the financial statements and has chosen to remain silent. As such, Browne is indisputably liable pursuant to the Guaranty.

For this reason, too, the Court should grant summary judgment in Chase's favor on Count One of the Crossclaim.

**D.     The Lesnevich Certification is an inadmissible net opinion which does not justify denial of the Cross-Motion for summary judgment against Browne.**

Instead of submitting any affidavit of his own, Browne has submitted the Lesnevich Cert. for the purpose of attempting to establish that his signature on the Guaranty is not authentic. A review of the Lesnevich Cert., however, reveals that it is not an opinion at all. Moreover, even if considered an opinion, the Lesnevich Cert. is an inadmissible net opinion which does not justify the denial of the Cross-Motion for summary judgment.

In his Certification, Mr. Lesnevich purports to offer his "current belief and opinion" -- albeit with the significant caveat that **his review and analysis is not yet complete**. This leaves open the possibility that his ultimate opinion may be different and, as such, the Lesnevich Cert. is not really an opinion at all. Rather, the Lesnevich Cert. is a clever attempt to defeat summary judgment by suggesting that an expert opinion may be forthcoming at some date in the future when Mr. Lesnevich might "complete" his analysis, but without conclusively opining on **anything**.

In any event, New Jersey Rule of Evidence 703 requires that an expert's opinion be based upon facts and data. An expert's bare conclusion, unsupported by factual evidence or other data, is an inadmissible net opinion. See Johnson v. Salem Corp., 97 N.J. 78, 91 (1984); Jimenez v. GNOC Corp., 286 N.J. Super. 533, 540 (App. Div.), certif. denied, 145 N.J. 374

(1996).  In essence, the net opinion rule requires the expert to give the "whys" and "wherefores" of his opinion -- not just a mere conclusion.  See Jimenez, 286 N.J. Super. at 540.  See also New Brunswick Cellular v. Bd. of Adj., 160 N.J. 1, 16 (1999) (holding that opinion that presence of communications monopole would derail development, unsupported by any studies or data, was a net opinion).  The facts and data relied upon must allow the expert to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture.  See Dawson v. Bunker Hill Plaza Assoc., 289 N.J. Super. 309, 323 (App. Div. 1996).

The Lesnevich Cert. constitutes a mere guess or conjecture, unsupported by factual evidence or analysis.  Mr. Lesnevich does not explain which documents he examined, or the analysis he conducted, to arrive at his "conclusion."  He does not give the "whys" and "wherefores" but, instead, simply asserts that he compared Browne's signature on the Guaranty to certain unspecified documents and concluded preliminarily that the signature may not be authentic (albeit subject to further analysis).  As noted, the Lesnevich Cert. provides that the review and analysis is not complete, but does not explain what further review and analysis needs to be completed or how long such further review and analysis will take to complete.  Mr. Lesnevich has had well over a month to complete his analysis, yet he fails to explain why he could not arrive at a conclusion during that time.

For all of these reasons, the Lesnevich Cert. does not constitute competent evidence and, thus, cannot be the basis of a denial of summary judgment against Browne. Moreover, as Browne himself has failed to deny that he executed the Guaranty and, moreover, has ratified the Guaranty, the Court should enter summary judgment against Browne on his Guaranty for these reasons, too.

**E.** **The acknowledgment on the Guaranty is not defective.**

In a final attempt to avoid summary judgment on the First Count, Browne argues that the acknowledgement on his Guaranty is "facially defective" and renders the Guaranty unenforceable. This argument, however, is plainly without merit.

The acknowledgement on the Browne Guaranty provides that it was executed in Morris County, which is consistent with the Montville address under Browne's signature and the location of PGB's offices. Nowhere on the Guaranty does it provide that it was executed in New York (the date on the first page does not establish as much). For this transaction, the loan documents, including the Guaranty, were provided to the individual defendants, were signed out of Chase's presence, and were returned to Chase's branch in Morris County.

Browne's allegation of a defective acknowledgement highlights the reason for the adverse inference arising from his invocation of the Fifth Amendment privilege. Browne knows whether he executed the Guaranty and had it properly acknowledged. Instead of testifying to these facts, however, Browne chose to invoke his Fifth Amendment privilege. In response, Chase has come forward with evidence (the Guaranty) which, when combined with Browne's silence, justifies the entry of summary judgment for Chase. Now, while continuing to invoke the Fifth, Browne wants this Court to believe his allegations that he did not sign the Guaranty and to deny the Cross-Motion. Browne holds the key to any other explanations that may exist and has chosen to remain silent.

Contrary to Browne's assertion, there is nothing to suggest anything other than that the Guaranty was executed in Morris County prior to being returned to Chase. For this reason, too, the Court should grant summary judgment in favor of Chase and against PGB and Browne on the First Count of the Counterclaim.

**F.** **There is no genuine dispute as to the amount due to Chase.**

As noted, PGB does not contest its liability to Chase. Instead, PGB argues that Chase has failed to "prove damages." However, the Loan Documents and Default Notice attached as exhibits to the Olson Decl. detail PGB's obligations to Chase and the manner in which interest and fees are calculated. In accordance with these documents, the Olson Decl. set forth the amount due and owing to Chase, net of collections, as of November 27, 2006. See Olson Decl., ¶ 26. Moreover, the Supp. Olson Decl. sets forth the amount due and owing to Chase as of January 4, 2007 -- i.e., the sum of $2,676,277.60, plus interest from January 5, 2007, attorneys fees, costs and expenses of collection. See Supp. Olson Decl., at ¶ 6. As with any other judgment, any future collections will be credited against the judgment entered in this matter in favor of Chase. Thus, there is no genuine dispute as to the amount due to Chase, nor does this "issue" preclude the entry of summary judgment in favor of Chase.

For all of these reasons, the Court should grant summary judgment in favor of Chase and against PGB and Browne on the First Count of the Counterclaim and direct that any person or entity owing money to PGB pay such money directly to Chase.

## POINT II

### CHASE IS ENTITLED TO SUMMARY JUDGMENT ON THE TENTH COUNT OF THE CROSSCLAIM AGAINST PGB, KUPPERMAN AND BROWNE

The Tenth Count of the Crossclaim states a civil RICO claim. To establish a civil RICO claim, Chase must establish that (i) PGB, Kupperman and Browne; (ii) through the commission of two or more acts constituting a "pattern"; (iii) of "racketeering activity"; (iv) directly or indirectly invested in, or maintained an interest in, or participated in; (v) an "enterprise"; (vi) the activities of which affected interstate or foreign commerce; and (vii) Chase was injured by the RICO violation. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985);

<u>Smith v. Berg</u>, 247 F.3d 532 (3rd Cir. 2001); <u>LaSalle Bank Lake View v. Seguban</u>, 937 F. Supp. 1309, 1320 (N.D. Ill. 1996). In opposition, however, PGB, Kupperman and Browne argue that Chase has not offered sufficient evidence to support its RICO claim.[5] To the contrary, Chase has presented ample evidence to support each element of its RICO claim.

Specifically, PGB is clearly an enterprise whose activities affect interstate and foreign commerce. The RICO statute defines enterprise to include corporation or other legal entity. <u>See</u> 18 U.S.C. § 1961(4). The Certificate of Formation submitted to Chase in connection with the Loan provides that PGB is a New Jersey limited liability company. <u>See</u> Olson Decl., Exhibit C. A limited liability company is a legal entity. Accordingly, PGB is an "enterprise" within meaning of RICO. Moreover, PGB's books and records establish that it imports goods from overseas into New Jersey, and then distributes those goods to customers throughout the United States. <u>See</u> Olson Decl. at ¶ 7.

Further, an Operating Agreement submitted to Chase in connection with the Loan provides that Kupperman and Browne are the members and officers of PGB. <u>See</u> Olson Decl. at ¶ 6. Participation in an enterprise within the meaning of RICO includes management level activity. <u>See</u> <u>LaSalle Bank</u>, 937 F.Supp. at 1321. Kupperman and Browne directly or indirectly invested in, maintained an interest in, and participated in an enterprise within the meaning of RICO. Accordingly, elements (i), (iv), (v) and (vi) above of Chase's RICO claim are established.

To be entitled to summary judgment, Chase must additionally show two or more

---

5       In opposition, PGB and Kupperman state without citation that Chase must prove its RICO claim with clear and convincing evidence. This is incorrect. The burden of proof on a civil RICO claim is preponderance of the evidence. <u>LaSalle Bank</u>, 937 F. Supp. at 1321; <u>U.S. v. Local 560, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Amer.</u>, 581 F.Supp. 279, 327 (D.N.J. 1984), <u>aff'd</u>, 780 F.2d 267 (3 rd Cir. 1985), <u>cert den.</u>, 476 U.S. 1140 (1986). Here, the preponderance of the evidence clearly supports Chase's RICO claim against PGB, Kupperman and Browne.

acts constituting a "pattern" of "racketeering activity" that injured Chase (i.e., the remaining elements of a civil RICO claim). The United States Code defines racketeering activity to include financial institution or bank fraud under 18 U.S.C. § 1344. Chase is a financial institution with the meaning of § 1344. See 18 U.S.C. § 20 (defining "financial institution"), and the Olson Decl. at ¶ 1. PGB, acting through Kupperman and Browne, committed bank fraud if it knowingly executed a scheme or artifice to (1) defraud a financial institution, or (2) obtain any of the monies, funds, credits, assets, securities, or other property from a financial institution by means of false or fraudulent pretenses, representations, or promises. See 18 U.S.C. § 1344. The bank fraud statute was modeled on the mail and wire fraud statutes, and Congress indicated that it wanted the bank fraud statute to be interpreted as broadly as those statutes. See United States v. Jacobs, 117 F.3d 82, 93 (2nd Cir. 1997).

Clearly, bank fraud was committed when fraudulent financial statements and borrowing base certificates were submitted on PGB's behalf to obtain the Loan. In this regard, the Olson Declaration demonstrates that a preliminary examination of PGB's books and records revealed that instead of having more than $8,000,000.00 of accounts receivable, as Kupperman had represented in the borrowing base certificate he executed for the month ended August 31, 2006, PGB actually had less than $1,700,000.00 in current accounts receivable. Olson Decl. at ¶ 19. Although this is competent admissible evidence, the defendants argue the statement that PGB had less than $1,700,000.00 in current accounts receivable is "hearsay." To put the matter to rest, the Declaration of Israel Rodriquez (the "Rodriquez Decl.") is submitted herewith to further demonstrate that PGB, upon Mr. Rodriquez' investigation, had less than $1,700,000.00 in current accounts receivable. Mr. Rodriquez, in fact, is one of the auditors that went to PGB's location to verify the financial information in its books and records. Thus, any assertion that

Chase has not submitted competent evidence on this point is patently frivolous.

Additionally, a purported Independent Auditors' Report from Amper, Politziner & Mattia P.A. dated December 17, 2003, which PGB provided to Chase, is a forgery. See Affidavit of Wayne P. Tessler, attached to the accompanying Supplemental Declaration of John M. August. This fraudulent financial statement establishes a further act of bank fraud which, combined with the fraudulent borrowing base certificate, constitutes a "pattern" of "racketeering activity." See LaSalle Bank, 937 F.Supp. at 1321 (RICO defines a "pattern" as at least two acts within the last ten years). Moreover, Ms. Krelman's sworn declaration that PGB submitted one or more allegedly forged guarantees to Chase further demonstrates bank fraud.

In the face of this mountain of evidence, Kupperman and Browne argue that there is "insufficient" evidence to establish that they individually committed bank fraud. In effect, each of them are arguing that, although PGB[6] clearly committed bank fraud, there is no evidence to implicate any of them individually. To be entitled to summary judgment on its RICO claim, however, Chase need **not** prove that Kupperman and Browne committed specific racketeering activity. As long as two or more acts of racketeering activity are established (which they clearly are), it is sufficient that Kupperman and Browne knowingly facilitated the RICO enterprise. Smith, 247 F.3d at 537-38. "[O]ne who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate section 1962(c) **even if the defendant did not personally agree to do, or to conspire with respect to, any particular element**." Id. (emphasis added). Thus, "[i]n accord with the general principles of criminal conspiracy law, a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Id.

---

6       Where, as here, a corporation or other legal entity such as PGB engages in racketeering activities and is the direct or indirect beneficiary of the pattern of racketeering activity, it can be both the liable "person" and the "enterprise." See Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 204 (3rd Cir. 1990).

**"[T]he agreement may be inferred from the circumstances."** <u>LaSalle Bank</u>, 937 F. Supp. at 1324 (emphasis added).

Kupperman is liable under this standard because he committed at least one of the acts of bank fraud when he executed the fraudulent borrowing base certificate for the month ended August 31, 2006 (as well as many other such certificates for prior months). His agreement to facilitate the scheme may be inferred from this circumstance. Similarly, Browne's agreement to facilitate the scheme can be inferred from his status as a member and officer of PGB who participated in, and facilitated, the Loan by providing a Guaranty and personal financial statements.

Browne argues that the Guaranty which he provided to Chase is a "forgery" (thus underscoring, not refuting, the existence of bank fraud in connection with the Loan). This, however, is not the end of the story, because Browne participated in the fraud perpetrated upon MLBFS and Chase and, as explained in the Cross-Motion papers, the scheme to commit bank fraud in this case involved the commission of repeated and regular acts of fraud over a four year period that injured at least two victims (Chase and MLBFS). Browne's agreement to facilitate this overall scheme, which involved defrauding both Chase and MLBFS, can be inferred from his providing financial statements to MLBFS to facilitate draws on the MLBFS loan in 2004 and 2005, *after* the transfer of assets from PITTRA to PGB. <u>See</u> Verified Complaint, ¶'s 20 and 26, and Exhibits F and P. In fact, Browne concedes that he provided these financial statements. Significantly, Browne was providing these financial statements to facilitate draws on the MLBFS loan to PITTRA at the same time he was a member and officer of PGB, which was providing fraudulent financial statements and borrowing base certificates to Chase. Browne's agreement to facilitate the scheme may be inferred from these circumstances. Browne holds the key to any

other explanations that may exist and, instead of revealing any other explanation, has chosen to remain silent. See LaSalle Bank, 937 F. Supp. at 1320.

Finally, it cannot be seriously questioned that Chase has suffered injury as a result of the RICO violation. PGB is insolvent and does not have sufficient collateral to repay the Loan. As of January 4, 2007, there was due and owing to Chase a total of $2,676,380.43, plus interest from January 5, 2007, legal fees, costs and expenses of collection. See Supp. Olson Decl., at ¶ 6.[7] Accordingly, for all of these reasons, the Court should enter summary judgment in favor of Chase and against PGB, Kupperman and Browne on the Tenth Count of the Crossclaim.[8]

## POINT III

## THIS COURT SHOULD CERTIFY THE JUDGMENT AS FINAL

Federal Rule of Civil Procedure 54(b) provides that the Court may direct the entry of a final judgment as to one or more, but fewer than all of the claims, upon an express determination that there is no just reason for delay. Whether to direct the entry of final judgment pursuant to Rule 54(b) is in the sound discretion of the district court. See Curtis-Wright Corp. v. General Electric Co., 446 U.S. 1, 8 (1980); Berkeley Investment Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3rd Cir. 2006). This determination involves two findings: (i) there has been an ultimate disposition on a cognizable claim for relief; and (ii) there is no just reason for delay. Berkeley Investment Group, 455 F.3d at 202. Here, the Cross-Motion seeks final judgment on a claim of breach of contract and violation of RICO, respectively. Thus, the first prong is easily satisfied. As explained in Chase's moving papers, there is also no just reason for delay here.

---

7     Chase is also holding $51,787.00 from amounts collected but not yet applied as a provisional credit against the outstanding balance. See Supp. Olson Decl., at ¶ 6.

8     As noted above, Chase has been advised that Krelman has filed a bankruptcy petition and, accordingly, will not further address matters pertaining to Krelman on this Cross-Motion. Chase, however, reserves all rights and remedies with respect to Krelman.

Significantly, Kupperman and PGB do not oppose Chase's request for certification of the judgments.

Contrary to Browne's argument, summary judgment on the First Count (breach of contract) and Tenth Count (RICO) of the Crossclaim will constitute an ultimate disposition on cognizable claims for relief. Browne's citation to 28 U.S.C. § 1291 does not change this result. This section of the judicial code simply provides that courts of appeals have jurisdiction of appeals from final decisions of the district courts.

Browne's argument that certification should be denied because these claims are factually intertwined with Chase's other claims is also unavailing. As set forth in the Cross-Motion papers, resolution of these claims may render some or all of Chase's remaining crossclaims moot and, at the very least, will simplify the resolution of other issues.

Browne's argument that the writs of attachment protect Chase is also fatally flawed. Chase is entitled to be **repaid**, and the attachments are not repayment. Further, PGB, through its principals, including Kupperman and Browne, continues to interfere with Chase's efforts to investigate PGB's finances and liquidate its collateral. See, e.g., the Declaration of John M. August in support of plaintiff's OTSC, dated November 7, 2006, and filed at docket no. 68. Certifying the judgment as final will facilitate these investigations and collections; the attachments will not.

Finally, the fact that Chase and MLBFS may disagree as to the priority of their claims does not justify denial of certification of the judgments as final. PGB's, Kupperman's and Browne's liability to Chase is not related to Chase's priority position vis-à-vis MLBFS. Accordingly, there is no reason why the Court should not certify the judgment to be entered against PGB, Kupperman and Browne as final.

Finally, as noted above, the Court, upon entering judgment in favor of Chase, should direct that PGB's account debtors pay any receivables directly to Chase. Significantly, none of the defendants have opposed this request, nor is there any basis for PGB to continue to wrongfully divert monies that clearly should be paid to Chase on the Loan.

## CONCLUSION

For the reasons set forth above and in Chase's moving papers, Chase respectfully requests that this Court grant the Cross-Motion in its entirety and, upon doing so, certify the ensuing judgment as final.

HERRICK, FEINSTEIN LLP
Attorneys for JPMorgan Chase Bank, N.A.


By:   /s/ Paul H. Schafhauser
Paul H. Schafhauser (PS - 1337)
John M. August (JA - 6451)

Dated:   January 4, 2007