# HERRICK

NEW YORK
NEWARK
PRINCETON

PAUL H. SCHAFHAUSER
PARTNER
Direct Tel:   973.274.2098
Direct Fax:  973.274.6414

Email:  pschafhauser@herrick.com

July 23, 2007

Via Electronic Delivery and Federal Express

Honorable Dennis M. Cavanaugh, U.S.D.J.
United States District Court
   for the District of New Jersey
Martin Luther King, Jr. Federal
   Building and Courthouse
50 Walnut Street
Newark, New Jersey 07101-0999

> Re: Merrill Lynch Business Financial Services, Inc.
>     vs. Arthur Kupperman, et al.
>     Civil Action No. 06 Civ. 4802 (DMC)

Dear Judge Cavanaugh:

This firm represents defendant JPMorgan Chase Bank, N.A. ("Chase") in connection with the above-referenced matter. On Chase's behalf, we respectfully submit this letter brief, as well as the accompanying Declaration of John M. August dated July 23, 2007 (the "August Declaration"), in opposition to the application of defendant Arthur Kupperman ("Kupperman") for the return of his passport (the "Application"). For the reasons set forth herein, we respectfully submit that the Court should deny the Application in all respects.

## PRELIMINARY STATEMENT

In connection with the Application, Kupperman submitted a declaration under penalty of perjury testifying to matters at issue in the referenced case (the "Declaration"). In his Declaration, Kupperman testifies that he needs his passport in order to travel overseas to purportedly perform his duties as president of IFIG USA, Inc. ("IFIG"). Moreover, Kupperman

HERRICK, FEINSTEIN LLP
A New York limited
liability partnership
including New York
professional corporations

ONE GATEWAY CENTER, NEWARK, NJ 07102 • TEL 973.274.2000 • FAX 973.274.2500 • www.herrick.com

claims that (i) he is not a flight risk, (ii) all of his assets are subject to this Court's Writs of Attachment so Chase is protected, and (iii) Chase has conducted discovery and has been unable to locate any of his assets outside the United States. The facts, however, are to the contrary.

Kupperman is as much, if not more, of a flight risk today as he was when this Court ordered the surrender of his passport in the first instance. Nothing has changed that would warrant a different result now. Further, Kupperman invoked his Fifth Amendment privilege against self-incrimination (the "Privilege") and has refused to provide discovery; thus, Kupperman's allegations regarding discovery are, to say the least, misguided. Moreover, the evidence that Chase has been able to locate from other sources indicates that the assets of IFIG, the company on behalf of which Kupperman wants to go overseas, were fraudulently transferred from defendant PGB International, LLC ("PGB") in violation of this Court's Orders and Writs of Attachment.

There were ample reasons for the Court to direct that Kupperman's passport be withheld in the first instance -- and those same reasons continue to apply now. There are, however, even more reasons to withhold Kupperman's passport at the present time, because Kupperman has evidently violated the Court's Orders and Writs of Attachment and invoked his Fifth Amendment privilege against self-incrimination when asked anything about this matter. Thus, the Court should deny the Application in all respects. Moreover, as Kupperman has waived the Privilege, the Court should direct that Kupperman's deposition be conducted promptly, and Kupperman clearly should remain in this jurisdiction for that purpose.

## ARGUMENT

Kupperman claims to have no assets, has been accused of massive fraud, and has asserted his Fifth Amendment privilege against self-incrimination when asked anything about this matter. Moreover, the evidence indicates that Kupperman is violating this Court's Orders and Writs of Attachment. Under such circumstances, there is absolutely no reason why Kupperman should be given his passport so that he can flee this jurisdiction. In fact, there is every reason to continue to withhold Kupperman's passport.

**A.  Kupperman Was, and Remains, a Substantial Flight Risk.**

This Court previously determined that Kupperman was a substantial flight risk, which is precisely why the Court directed that Kupperman surrender his passport. Nothing has occurred since then which would make Kupperman any less of a flight risk. To the contrary, Kupperman is as much, if not more, of a flight risk today as he was when the Court ordered the surrender of his passport.

First, there is a strong possibility that Kupperman has hidden overseas millions of dollars which are missing from a loan that Chase made to PGB, as well as millions more which are missing from a loan made by Merrill Lynch Business Financial Services, Inc. ("MLBFS") to PITTRA GB, Inc. ("PITTRA"). With his overseas travels and contacts in the import-export business, Kupperman had the perfect opportunity to hide assets. Moreover, no explanation has been provided as to where these assets might have otherwise disappeared.

Second, Kupperman faces potential criminal exposure in connection with the operation of PGB and/or PITTRA. From the outset of this case, Kupperman invoked the Privilege and

Honorable Dennis M. Cavanaugh, U.S.D.J.
July 23, 2007
Page 4

refused to provide discovery because of a possible criminal investigation of PGB and/or PITTRA by the United States Attorney's Office. Document number 33 in the docket in this case is a declaration by Kupperman in which he invokes the Privilege and refuses to provide any discovery.[1] Clearly, this potential criminal exposure also makes Kupperman a flight risk. Neither of these facts has changed from the beginning of this case; if anything, Kupperman's apparent activities with IFIG has only increased his potential exposure, as the evidence indicates that Kupperman has thereby violated this Court's Orders and Writs of Attachment.

Simply put, Kupperman was, and remains, a substantial flight risk. For this reason alone, the Court should deny the Application.

**B.    Millions of Dollars are Missing.**

As the Court is aware, MLBFS loaned PITTRA millions of dollars, and Chase loaned PGB millions more. The Court allowed limited discovery for the purpose of reviewing PGB's books and records to determine the nature of its assets. Alas, this limited discovery revealed that millions of dollars have vanished. In the face of an inexplicable and inexcusable disappearance of millions of dollars, Kupperman now asserts that he should be given his passport because Chase has taken extensive discovery and has failed to learn of any substantial assets overseas. This argument, however, is flawed for a variety of reasons.

Kupperman's assertion that Chase has taken extensive discovery is misleading, at best. Kupperman, in fact, invoked the Privilege and refused to provide discovery. Accordingly, Chase has been forced to rely largely on non-party subpoenas to attempt to learn what Kupperman did

---

[1] Kupperman subsequently produced limited documentation regarding his personal finances, none of which appear to be relevant to the issues in dispute in this case.

Honorable Dennis M. Cavanaugh, U.S.D.J.
July 23, 2007
Page 5

with the millions of dollars that PGB borrowed and has been unable to account for since then.[2] That Chase has thus far been unsuccessful in locating any assets overseas does not mean, as Kupperman suggests, that there are none.

The fact that millions of dollars have vanished on Kupperman's watch and have not yet been found by Chase (or, for that matter, anyone else) militates **against** the Application -- not in favor of it. Thus, the Court should deny the Application for this reason, too.

C. **Kupperman has Waived the Privilege and, Thus, the Court Should Require Kupperman To Remain Here for His Deposition.**

By filing a Declaration containing statements related to matters at issue in this case, Kupperman has waived the Privilege. See In re Edmond, 934 F.2d 1304, 1308-09 (4th Cir 1991); Nutramax Laboratories, Inc. v. Twin Laboratories, Inc, et al., 32 F.Supp. 2d 331, 334 (D.Md. 1999). The Third Circuit has recognized the potential for exploitation when a party first invokes and then later waives the Fifth Amendment privilege. S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 190 (3rd Cir. 1994). The Fifth Amendment privilege cannot be used as a shield to oppose discovery while discarding it for the purpose of making statements to support a motion. In re Edmond, 934 F.2d at 1308; Graystone Nash, 25 F.3d at 191. Where a party invokes the Privilege and subsequently file an affidavit in support of a motion, courts either strike the affidavit or, if it is early enough in the case such that the other parties will not be prejudiced, give the party the opportunity to waive the Privilege and testify at deposition. In re Edmond, 934 F.2d at 1309 (affirming striking of affidavit and denial of motion where movant invoked the Privilege and

---

[2] It appears that Kupperman was the person directing the activities of PGB. From almost the beginning of this case, defendants Krelman (as to whom this action is stayed by a pending bankruptcy case) and Browne, despite being officers and directors of PGB, denied even a rudimentary knowledge of the operations of PGB, and both pointed to Kupperman as the person who directed all of PGB's activities.

refused to testify); Nutramax, 32 F.Supp. 2d at 338 (finding that officer of corporation waived his Privilege by filing affidavits in support of motion, and ordering the officer to appear for deposition). Accordingly, the Court should either strike the Declaration and deny the Application, or reserve decision and compel Kupperman to testify at deposition.

Having at all previous times in this case asserted the Privilege, Kupperman should not now be heard to submit self-serving testimony for purposes of obtaining his passport to allow him to flee this jurisdiction. Instead, as Kupperman has waived the Privilege, the Court should require Kupperman to remain here so that his deposition can be conducted promptly.

**D.    The Limited Evidence Obtained to Date Indicates that Kupperman has Violated the Court's Orders and Writs of Attachment.**

The limited evidence that Chase has been able to locate from sources other than the individual defendants in this case -- all of whom have invoked the Privilege -- indicates that the assets of IFIG, the company on behalf of which Kupperman wants to go overseas, were fraudulently transferred from PGB in violation of this Court's Order to Show Cause entered on October 6, 2006 and the Writs of Attachment.

IFIG operates out of PGB's offices. On or about November 7, 2006, John M. August of this firm filed a declaration, at docket number 68, providing, upon information and belief, that PGB was assigning its accounts receivable to IFIG in violation of this Court's Writs of Attachment. (A copy of this declaration is attached to the August Declaration as Exhibit A.) Chase subsequently learned that PGB assigned its open contract with VIP Foods USA to IFIG, and re-invoiced VIP for $46,400.00 that was original due to PGB, both in violation of this

Court's orders and the Writs of Attachment. (A copy of a letter to VIP Foods USA detailing these transactions is attached to the August Declaration as Exhibit B.)

On or about February 2, 2007, after learning of IFIG and the potential fraudulent transfers from PGB in violation of this Court's Orders, Chase sent a subpoena to IFIG requesting, among other things, all documents related to communications between IFIG and customers or clients of PGB. (A copy of the subpoena is attached to the August Declaration as Exhibit C.) In response, IFIG (who is being represented by the same counsel as represents PGB in this case) produced documents related to its incorporation, a customs bond and certain bank statements. **IFIG, however, did not produce any documents related to communications between IFIG and customers or clients of PGB, although clearly those documents exist, as evidenced by Exhibit B to the August Declaration.**[3]

Significantly, the bank statements that were produced show wire transfers into IFIG from PGB, after this Court issued the Writs of Attachment, of not less than $20,000.00, and wire transfers out to Kupperman of not less than this amount. See August Declaration, at ¶ 6. Accordingly, it appears that in addition to the fraudulent transfers from PGB, Kupperman was using IFIG to funnel PGB's assets to Kupperman in violation of this Court's Orders and Writs of Attachment.

Before Kupperman travels overseas on IFIG's business, Chase should be given the opportunity to further investigate the extent of the fraudulent transfers from PGB to IFIG. Certainly, a party who violates this Court's Orders and Writs of Attachment, all while invoking

---

[3] Chase respectfully reserves all rights and remedies with respect to IFIG, as well as with respect to all persons who may have facilitated one or more violations of this Court's Orders and Writs of Attachment, while failing to produce material documents in response to a duly-served subpoena upon IFIG.

HERRICK

Honorable Dennis M. Cavanaugh, U.S.D.J.
July 23, 2007
Page 8

the Privilege when asked about his activities, can hardly expect this Court to trust him with an application for a return of a passport so that he can go overseas, perhaps never to return.

## CONCLUSION

For all of the reasons set forth above, Chase respectfully submits that the Court should deny the Application in all respects. Moreover, the Court should declare that Kupperman has waived the Privilege in connection with this case and, thus, direct Kupperman to promptly appear for his deposition.

Respectfully submitted,

/s/ Paul H. Schafhauser
Paul H. Schafhauser

cc: A. Michael Covino, Esq. (via e-filing)
Frederick B. Polak, Esq. (via e-filing)
Vincent F. Papalia, Esq. (via e-filing)
George R. Hirsch, Esq. (via e-filing)