NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ARTHUR KUPPERMAN; E. ROSS BROWNE; PAULETTE KRELMAN, PGB INTERNATIONAL, LLC; and JP MORGAN CHASE BANK, N.A., *et al*., : <br> : <br> Defendants. : | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 06 - 4802 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon motion by Merrill Lynch Business Financial Services ("MLBFS" or "Plaintiff") for partial summary judgment and for certification of judgment as final, motion by JP Morgan Chase ("Chase") for partial summary judgment and other related relief, and by cross-motion to dismiss by Defendant Arthur Kupperman ("Kupperman") and Defendant PGB International ("PGB"). After carefully considering the submissions and oral arguments of the parties, and for the following reasons, the motion by MLBFS for summary judgment as to Count Four of its Complaint is **granted.** The motion by MLBFS that the judgment be certified as final is **denied**. The motion by Chase for summary judgment as to Count One of its Complaint is **granted**. The motion by Chase for summary judgment as to Count Ten of its Complaint is **denied**. The motion by Chase for certification of judgment as final is **denied.** The motion by PGB/Kupperman to dismiss the Complaint of MLBFS is **denied.**

**BACKGROUND**

MLBFS and Chase allege numerous instances of fraud in connection with multi-million dollar loans provided to Defendants Kupperman, PGB, E. Ross Browne ("Browne") and Paulette Krelman ("Krelman").[1] MLBFS and Chase allege that Kupperman, Browne and Krelman, (collectively, the "Guarantors") as Guarantors of the now bankrupt PITTRA G.B. International, Inc. ("PITTRA"), presented MLBFS and Chase with forged opinion letters purporting to be from a reputable New Jersey law firm, fake audit letters and financial statements, internal reports that were entirely false and fake bank account balances in order to induce further loans from MLBFS and Chase. In addition, MLBFS and Chase assert that the Guarantors created and controlled a parallel limited liability company, Defendant PGB, which the Guarantors used to drain the assets of PITTRA.

This Court issued writs of attachment against the Guarantors real estate in New Jersey and other assets on October 6, 2006. MLBFS and Chase have filed separate motions for partial summary judgment and Chase seeks a declaration that it holds a first priority security interest with respect to those assets. However, with the consent of MLBFS, Chase has agreed to stay the priority issue until after the within motions for partial summary judgment are decided.

**SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a party's motion for summary judgment may be granted where the pleadings, supporting papers, affidavits and admissions on file, when viewed with all inferences in favor of the non-moving party, demonstrate that there is no issue of material fact and that the movant is entitled to judgment as a mater of law. FED R. CIV. P. 56; see also Todaro v. Bowman, 872 F.2d 43, 46 (3d Cir. 1989).

---

[1] Defendant Paulette Krelman has filed for bankruptcy, which stays the actions as against her.

Particularly, "summary judgment may be granted if the movant shows that there exists no genuine issue of material fact that would permit a reasonable jury to find for the non-moving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988), cert. den. 488 U.S. 87 (1988). An issue is "genuine" if a reasonable jury could possibly hold in a non-movant's favor with regard to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A fact is material if it influences the outcome under the governing law. Id. at 248.

The party seeking summary judgment always bears the initial burden of production, i.e., of making a *prima facie* case that it is entitled to summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This may be done by demonstrating that the non-moving party has not produced evidence relating to an essential element of an issue for which it bears the burden of proof at trial. Celotex Corp., 477 U.S. at 322-23. Once this showing is made, the burden shifts to the non-moving party, who must demonstrate facts supporting each element for which it bears the burden of proof as well as establish the existence of genuine issues of material fact. Id. at 324. At the summary judgment stage, however, the Court may not weigh the evidence or make credibility findings, which is the work of the fact finder. Petruzzi's IGA v. Darling-Del., 998 F.2d 1224, 1230 (3d Cir. 1993).

In opposing summary judgment, the non-moving party may not "rest upon mere allegations, general denials, or . . . vague statements." Quiroga v. Hasbrow, Inc., 934 F.2d 497, 500 (3d Cir. 1990). In other words, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**PGB AND KUPPERMAN'S MOTION TO DISMISS MLBFS'S COMPLAINT**

PGB and Kupperman assert that MLBFS cannot maintain an action in New Jersey

because New Jersey law provides that:

> [n]o foreign corporation transacting business in this State without a certificate of authority shall maintain any action or proceeding in any court of this State until such corporation shall have obtained a certificate of authority.

N.J.S.A. 14A:13-11(1).

At the onset of this action, MLBFS no longer had a valid certificate of authority to conduct business in the state of New Jersey. PGB and Kupperman submit a corporate status report indicating that MLBFS had its certificate of authority revoked for failure to file annual returns for two consecutive years.

However, MLBFS did submit a Tax Clearance Certificate/Reinstatement Certification dated January 26th, 2007, to this Court. The submission indicates payment of al state taxes by MLBFS:

> [t]his is to certify that all State taxes, fees, penalties and interest levied upon or assessed against Merrill Lynch Business Financial Ser[vices] . . . by the State of New Jersey, under Title 54 of the Revised Statutes and all acts amendatory thereof, or antecedent or supplementary thereto, have been paid or provided for.

*See* State of New Jersey Department of the Treasury Certificate No. B-054041-R.

Although the Certificate was received after commencement of this action, this Court notes that MLBFS did everything required to obtain a Certificate of Authority prior to commencing this action. As detailed in the Declaration of Eric R. Billings, MLBFS became aware in April of 2006 that its Certificate of Authority had been revoked because it had not filed certain annual reports. MLBFS took corrective action and brought its annual report filings current by July of 2006. MLBFS began the steps necessary to be re-authorized to conduct

business in New Jersey on October 4, 2006, prior to commencing this action.

This Court is satisfied that MLBFS has taken the proper steps and proved that it has been re-authorized to conduct business and maintain this suit in the State of New Jersey pursuant to N.J.S.A. 14A:13-11(1). Defendant PGB and Kupperman's motion to dismiss is, therefore, denied.

**MLBFS'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

On November 1, 2006, MLBFS filed a motion for partial summary judgment on Count Four of its Verified Complaint and for certification of judgment as final. Count Four of the Complaint is for breach of contract against the Guarantors for default of their contractual obligations to MLBFS pursuant to the terms of their Unconditional Guaranties of any and all sums owed by PITTRA to MLBFS.

Between November 2002, and May 2004, PITTRA borrowed from MLBFS as much as $4,250,000. First, MLBFS extended to PITTRA a $2,250,000 line of credit. Then, in January of 2003, the line was increased to $2,750,000. In January of 2004, the loan was increased to $3,250,000. In May of 2004, the lending increased to $4,250,000. MLBFS asserts that the principles of PITTRA, Defendants Kupperman, Browne and Krelman, personally and unconditionally guaranteed repayment according to the terms of their Unconditional Guaranties.. PITTRA is in default and the loans have not been repaid.

MLBFS argues that there exist no genuine issues of material fact that the Guarantors and PGB are in breach of the loan agreement between them. In support of this argument, MLBFS asserts that the Guarantors unconditionally guaranteed to MLBFS the repayment of any and all

sums due from PITTRA, that PITTRA borrowed the money from MLBFS and that, although demand has been made, neither PITTRA nor the Guarantors have paid the money back and that, as a result, the Guarantors are in default of their obligations.

Given the undisputed failure of PITTRA and the Guarantors to repay their loans, MLBFS argues that it is entitled to summary judgment on the Fourth Count of the Verified Complaint for breach of contract. *See* AT&T Credit Corp. v. Transglobal Telecom Alliance, Inc., 966 F.Supp. 299 (D.N.J. 1997) (entering summary judgment on a guaranty upon finding a breach of performance and clear terms of guaranty).

PGB, Browne and Kupperman oppose summary judgment because they assert issues exist with regard to the authenticity of documents, and whether MLBFS performed its due diligence before entering into the loan agreements and guarantees. The Guarantors argue that, without any discovery taking place, Plaintiff's motion is premature because facts may be uncovered showing a lack of due diligence and failure to follow commercially reasonable practices in extending and maintaining the loans and advances and to mitigate its damages. *See* McDonald v. Mianecki, 79 N.J. 275, 299 (1975).

Specifically, Defendant Browne explains that he disclosed to MLBFS in writing that his employer was PGB, and not PITTRA, as early as the initial renewal and advance under the January 2004 loan increase. Browne argues that this disclosure should have placed MLBFS on notice that from January, 2004, he no longer worked for PITTRA. Browne argues that MLBFS's possible failure to adhere to the duty of due care and to mitigate damages precludes summary judgment.

In order to defeat a motion for summary judgment one must do more than "simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The Guarantors argument that discovery may uncover deficiencies in the due diligence exercised by MLBFS is insufficient to overcome their burden to produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Guarantors offer no such evidence.

The undisputed facts remain that the Guarantors guaranteed payment and are in breach of that guarantee. *See* The Guarantors do not dispute that they signed the Guarantees and are, therefore, responsible as Guarantors of the loans. The language of the Guarantees is clear and unequivocal. The Guarantors are unconditionally liable for all sums now or at anytime hereafter due from PITTRA. Each of the Guarantors repeatedly acknowledged the extent of PITTRA's indebtedness and each of the Guarantors repeatedly signed documents requesting that MLBFS increase its lending to PITTRA. Verified Complaint at Exhs. "D" and "M" (hereinafter, the "Guarantee(s)".

The Guarantors unequivocally warranted in 2004 and 2005 that "neither customer nor any of said Guarantors have any defense to payment of any amounts owing or any right of counterclaim for any reason under the Loan Documents." Id. The Guarantees also contain clear language that the liability of the Guarantors will not be "affected or impaired" by changes in the situation:

> the below-named Guarantors hereby consent to the foregoing modifications to the Loan Documents (*e.g.* lending increases), and hereby agree that the "Obligations" under their respective Unconditional Guaranty . . . shall extend to and include the Obligations of Customer under the Loan Documents, as amended hereby,"

* * *

> each of the warranties of Customer in the Loan Documents are true
> and correct as of the date hereof and shall be deemed remade as of
> the date hereof.

<u>See</u> Guarantees.

Thus, the Guarantors suggest that they should be excused because MLBFS was somehow on notice that Browne's employer had changed from PITTRA to PGB, which should have alerted MLBFS that something was wrong. At the very same time, however, Browne and the other Guarantors requested additional funding as officers of PITTRA, assured MLBFS that all of PITTRA's representations and warranties remained true and correct, and promised that they would personally guaranty the additional lending. Merrill Lynch and Chase have alleged fraud with particularity in their submissions to this Court. "One that perpetuates a fraud may not urge that his victim should have been more circumspect or astute." <u>Judson v. Peoples Bnk. & Trust Co.</u>, 25 N.J. 17, 27 (1957).

At the inception of the loan and at each renewal, the Guarantors remained officers and directors of PITTRA and operated PGB (as PITTRA's successor) out of the same premises. Browne fails to explain why a change in his employer, standing alone, would place a lender on notice of any type of misconduct. Especially when, at the same time, Browne assured MLBFS that it had no reason to withhold additional lending.

This Court is satisfied that there exists no genuine dispute as to the material facts in question. As such, MLBFS's motion for summary judgment is granted as to Count Four of its Verified Complaint for breach of contract against Defendants Kupperman and Browne.

**MLBFS'S MOTION TO CERTIFY JUDGMENT AS FINAL**

MLBFS requests that this Court certify judgment as final pursuant to Fed. R. Civ. Pro. 54(b). Rule 54(b) requires a District Court to initially determine whether a decision on the contract count would be deemed "final" pursuant to 28 U.S.C. § 1291, and then balance the equities by considering various factors that inform the Rule 54(b) decision.

The strong federal policy against piecemeal litigation and appeals is one of longstanding validity and continuing vitality. *See* Gerardi v. Pelullo, F.3d 1363, 1368 (3d Cir. 1994). Rule 54(b) is designed to limit the potentially harsh effects this policy can create in certain limited circumstances. In making a Rule 54(b) determination, the Third Circuit has found a District Court should consider the following factors:

> 1) the relationship between the adjudicated and non-adjudicated claims; 2) the possibility that the need for review might be mooted by future developments; 3) the possibility that the reviewing court might be obliged to consider the same issue a second time; 4) the presence or absence of a claim or counterclaim that could result in set-off against the judgment sought to be made final; and 50 miscellaneous factors, such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*See* In re: G-1 Holdings, Inc., 2005 WL 3370020 at p. 3 (D.N.J. 2005).

The burden is on the party seeking final certification to convince the court that its case is the "infrequent, harsh case meriting a favorable exercise of discretion . . ." to certify a judgment as final under Rule 54(b). *See* Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 365 (3d Cir. 1975). In reviewing a 54(b) motion, a District Court must balance various competing factors present in the case to "determine if it is in the interest of sound judicial administration and

public policy to certify the judgment as final . . ." Id.

This Court finds that the judgment on MLBFS's contract claim should not be certified as final. The Writs and Restraints previously issued by this Court as against the Guarantors' assets will prevent harm during the pendency of this action because Plaintiff has successfully restrained the Guarantors' assets.

Certifying any judgment as final on the contract count would complicate the competing claims that have been asserted by Chase against the same parties and property. *See* Chase Counterclaim at ¶¶35-37. Before a determination is made on the priority issue, no judgment should be certified as final. Allowing one party to proceed before the other is likely to result in delay, confusion and duplication of efforts. This Court finds that the posture of this case militates against the exercise of this Court's discretion to certify any judgment as a final judgment pursuant to Rule 54(b). MLBFS's motion for certification is, therefore, denied.

**CHASE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

As soon as Chase received notice that Merrill Lynch filed its Verified Complaint, Chase appeared through counsel at a hearing on October 13, 2006, in support of the writs of attachment against the Guarantors' property and assets. MLBFS subsequently amended its Complaint to add Chase as a Defendant. On November 8, 2006, Chase filed its answer, counterclaim and cross claim.

Chase submits that, as of November 27, 2006, PGB, Kupperman, Browne and Krelman owed it the sum of $2,691.664.74, plus interest, legal fees, costs and expenses of collection after a series of loans made by Chase to the Guarantors. *See* Olson Declaration ("Olson Decl.") ¶ 26.

Chase asserts that PGB obtained loans from Chase by submitting financial statements and other documents that intentionally overstated PGB's and PITTRA's assets in order to defraud Chase and MLBFS out of millions of dollars.

Chase cross-moves for summary judgment on its breach of contract claim against the Guarantors and PGB. Chase also cross-moves for summary judgment as a matter of law on its RICO claim.

Count One - Breach of Contract

Paralleling the arguments made by MLBFS above, Chase asserts that the Guarantors borrowed money from Chase, that the Guarantors guaranteed to Chase the payment of all sums due from PGB, the Guarantors are in default of their obligation to Chase and that Chase has suffered damages. Chase argues that these facts are undisputed and entitle Chase to summary judgment on its breach of contract claim.

*Defendants PGB/Kupperman*

In opposition to the request for summary judgment on the First Count of the cross claim for breach of contract, PGB argues that Chase failed to prove damages because the amount requested purportedly does not include recent collections. PGB, however, fails to oppose Chase's request for judgment on liability. PGB does not oppose Chase's request for summary judgment on liability against PGB on the First Count of the cross claim.

*Defendant Browne*

Browne claims that he did not sign the Guaranty that Chase asserts Browne signed as an inducement for money loaned. In support of this contention, Browne submits the Certification of

Gus Lesnevich ("Lesnevich Cert."), a purported expert in the field of forensic document examination. Lesnevich concludes that the signature on the Guaranty is not that of Browne. *See* Lesnevich Cert. at ¶7. Browne suggests that this is a question of material fact and, therefore, precludes summary judgment.

However, Browne does not dispute that he submitted yearly financial statements to Chase pursuant to the terms of the Guarantee. Why, Chase argues, would Browne submit financial statements to Chase, per the terms of the Guarantee, if Browne did not think he had some obligation to do so under the Guarantee? Chase argues that submitting the yearly financial statements constitutes evidence that Browne did, in fact, behave as though he was obligated to Chase. In addition, by submitting the yearly financial statements, Browne ratified the agreement, notwithstanding whether or not Browne signed the Guarantee. *See* Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 362 (1976).

Furthermore, Chase asserts that Mr. Browne's signature on the Guaranty was acknowledged. A certificate of acknowledgment "shall be and constitute *prima facie* evidence of the due execution of such instrument by such party." N.J.S.A. 2A:82-17. Thus, a signature's acknowledgment gives rise to a "strong presumption" of its authenticity and this strong presumption can only be overcome by clear and convincing evidence. *See* Dencer v. Erb, 142 N.J. Eq. 422, 426 (Ch. 1948) ("A certificate of acknowledgment made by a duly authorized officer is regarded as *prima facie* evidence that the person therein named executed the instrument to which it is attached as his voluntary act and deed").

On February 21, 2007, the parties conducted the deposition of Alex Musat, the notary

who acknowledged Mr. Browne's signature. During the deposition, Musat testified that he is an employee of Wachovia, which is across the street from the offices of Defendant PGB and that he became a notary because the bank required him to do so as one of its loan officers. *See* Deposition Transcript of Alex Musat dated February 20, 2007 ("Musat Dep.") at 9:4 - 13:25. Musat testified that he only acknowledges documents at the bank for bank customers, that he always checks the identification of the person whose signature he is acknowledging, and that the documents to be acknowledged must be, and always are, signed in his presence. *See* Musat Dep. at 14:2-15:3; 20:3-16.

In light of Musat's acknowledgment of the Guaranty and his sworn confirmation that the acknowledgment is genuine, there is a strong presumption as to the validity of Mr. Browne's signature. *See* Dencer, 142 N.J. Eq. at 426. Mr. Browne has not submitted any affidavit or other testimony in which he has denied the execution of the Guaranty. Moreover, Mr. Browne, through his Rule 56.1 responses, has admitted forwarding personal financial statements to Chase in connection with the loan. Mr. Browne has not suggested any reason why he would have repeatedly forwarded his personal financial statements to Chase if he had not been aware of his personal guaranty and his obligation to Chase thereunder.

Browne asks this Court to consider Lesnevich's report, which falls short of constituting clear and convincing evidence of the kind required to overcome the strong presumption that Browne's signature is authentic. Lesnevich offers an impermissible net opinion, without explaining the "whys and wherefores" of his alleged conclusion. *See* Jimenez v. GNOC Corp., 286 N.J. Super. 553, 540 (App. Div.), certif. denied, 145 N.J. 374 (1996). New Jersey Rule of

Evidence 703 requires that an expert's opinion be based upon facts and data.  An expert's bare conclusion, unsupported by factual evidence or other data, is an inadmissible net opinion.  *See* Johnson v. Salem Corp., 97 N.J. 78, 91 (1984).

The Lesnevich Cert. lacks an explanation as to which documents he examined, or the analysis he conducted to arrive at his conclusion.  He merely compares Browne's signature on the Guaranty to certain other unspecified documents and concludes preliminarily that the signature may not be authentic.  *See* Lesnevich Cert.  The Lesnevich Cert. also says that the review and analysis is not yet complete, but does not explain what further review and analysis needs to be completed or how long such further review and analysis will take to complete.  *See* Lesnevich Cert.  Lesnevich fails to explain why he has not arrived at a definitive conclusion.

This Court finds that the Lesnevich Cert. fails to constitute competent evidence of the kind sufficient to oppose Chase's motion for summary judgment as to Count One of its Complaint, much less, the clear and convincing evidence of the kind required to rebut the strong presumption that Mr. Browne's notarized signature is authentic.

The Lesnevich Cert. is insufficient to overcome the strong presumption that Browne's signature is authentic.  Therefore, this Court grants summary judgment against Browne as to Count One of Chase's complaint.

Count Ten - RICO

To establish a civil RICO claim, Chase must establish (i) that PGB, Kupperman and Browne; (ii) through the commission of two or more acts constituting a "pattern"; (iii) of "racketeering activity"; (iv) directly or indirectly invested in, or maintained an interest in, or

participated in; (v) an "enterprise"; (vi) the activities of which affected interstate or foreign commerce; and (vii) Chase was injured by the RICO violation. *See* Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).

To prove bank fraud against the Guarantors, Chase must show that they knowingly executed a scheme or artifice to (1) defraud a financial institution, or (2) obtain any of the monies, funds, credits, assets, securities, or other property from a financial institution by means of false or fraudulent pretenses, representation, or promises. *See* 18 U.S.C. § 1344.

Although Chase does submit the declaration of an auditor who investigated PGB's current accounts receivable, books and other records at PGB's location, the declaration says only that the information provided to Chase was "likely materially inaccurate." This equivocation is insufficient evidence to form the basis for summary judgment on the RICO count.

The situation here is different than that in LaSalle Bank Lake View v. Seguban, 937 F.Supp. 1309 (N.D. Ill. 1996) cited by Chase. In LaSalle, the District Court noted that there was a whole host of evidence of the defendants' wrongdoing. For example, there were affidavits submitted by third-parties stating that one of the defendants had admitted wrongdoing. Id. 937 F. Supp. at 1315.

Without coming forward with more evidence, Defendants are entitled to further discovery from the auditors. The possibility exists that the auditors are incorrect with regard to how they reached their conclusion and cross-examination coupled with expert testimony might well demonstrate this. Without more evidence of a fraud perpetrated by the Guarantors through PGB, this fact-sensitive inquiry is not properly determinable on summary judgment.

As such, Chase's motion for summary judgment as to Count Ten of its Complaint is denied.

**CHASE'S MOTION TO CERTIFY JUDGMENT AS FINAL**

This Court denies Chase's motion that judgment be certified as final for the same reasons given for the denial of the motion by MLBFS to certify judgment as final.

**CONCLUSION**

For the reasons stated, it is the finding of this Court that:

- the motion by MLBFS for summary judgment as to Count Four of its Complaint is **granted;** and

- the motion by MLBFS that judgment be certified as final is **denied**; and

- the motion by Chase for summary judgment as to Count One of its Complaint is **granted**, and

- the motion by Chase for summary judgment as to Count Ten of its Complaint is **denied**, and

- the motion by Chase that judgment be certified as final is **denied.**

An appropriate Order accompanies this Opinion.

                                          S/ Dennis M. Cavanaugh
                                          Dennis M. Cavanaugh, U.S.D.J.

Date: August  6 , 2007
Orig: Clerk
cc:   Counsel of Record
      The Honorable Mark Falk, U.S.M.J.
      File