# EXHIBIT A

## Merrill Lynch                                              WCMA® LOAN AND SECURITY AGREEMENT

**WCMA LOAN AND SECURITY AGREEMENT NO. 871-07F72** ("Loan Agreement") dated as of November 19, 2002, between **PITTRA G.B. INTERNATIONAL, INC.,** a corporation organized and existing under the laws of the State of New Jersey having its principal office at 123 Madison Avenue, Madison, NJ 07940 ("Customer"), and **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.,** a corporation organized and existing under the laws of the State of Delaware having its principal office at 222 North LaSalle Street, Chicago, IL 60601 ("MLBFS").

Pursuant to that certain **WORKING CAPITAL MANAGEMENT® ACCOUNT AGREEMENT NO. 871-07F72** and the accompanying Program Description (as the same may be, or have been, amended, modified or supplemented, the "WCMA Agreement") between Customer and MLBFS' affiliate, **MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED** ("MLPF&S"), Customer opened, or shall prior to the Activation Date open, a Working Capital Management Account pursuant to the "WCMA Service" and the "WCMA Program" described in the WCMA Agreement and any documents incorporated therein. The WCMA Agreement is by this reference incorporated as a part hereof. In conjunction therewith and as part of the WCMA Program, Customer has requested that MLBFS provide, and subject to the terms and conditions herein set forth MLBFS has agreed to provide, a commercial line of credit for Customer.

Accordingly, and in consideration of the premises and of the mutual covenants of the parties hereto, Customer and MLBFS hereby agree as follows:

### Article I. DEFINITIONS

**1.1 Specific Terms.** In addition to terms defined elsewhere in this Loan Agreement, when used herein the following terms shall have the following meanings:

"**Activation Date**" shall mean the date upon which MLBFS shall cause the WCMA Line of Credit to be fully activated under MLPF&S' computer system as part of the WCMA Program.

"**Bankruptcy Event**" shall mean any of the following: (i) a proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, liquidation, winding up or receivership law or statute shall be commenced, filed or consented to by any Credit Party; or (ii) any such proceeding shall be filed against any Credit Party and shall not be dismissed or withdrawn within sixty (60) days after filing; or (iii) any Credit Party shall make a general assignment for the benefit of creditors; or (iv) any Credit Party shall generally fail to pay or admit in writing its inability to pay its debts as they become due; or (v) any Credit Party shall be adjudicated a bankrupt or insolvent; or (vi) any Credit Party shall take advantage of any other law or procedure for the relief of debtors or shall take any action for the purpose of or with a view towards effecting any of the foregoing; or (vii) a receiver, trustee, custodian, fiscal agent or similar official for any Credit Party or for any substantial part of any of their respective property or assets shall be sought by such Credit Party or appointed.

"**Business Day**" shall mean any day other than a Saturday, Sunday, federal holiday or other day on which the New York Stock Exchange is regularly closed.

"**Business Guarantor**" shall mean every Guarantor that is not a natural person.

"**Certificate of Compliance**" shall mean, as applicable, that duly executed certificate, substantially the same form as Exhibit B attached hereto to the extent such certificate shall be applicable, of the president, chief financial officer or chief executive officer of Customer, certifying as to the matters set forth in such certificate.

"**Collateral**" shall mean the WCMA Account, all Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts, Documents, Instruments, Investment Property and Financial Assets of Customer, howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with all parts thereof (including spare parts), all accessories and accessions thereto, all books and records (including computer records) directly related thereto, all proceeds thereof (including, without limitation, proceeds in the form of Accounts and insurance proceeds), and the additional collateral described in Section 3.6 (b) hereof.

"**Commitment Expiration Date**" shall mean December 19, 2002.

"**Credit Party**" and "**Credit Parties**" shall mean, individually or collectively, the Customer, all Guarantors and all Pledgors.

"**Default**" shall mean either an "Event of Default" as defined in Section 3.5 hereof, or an event which with the giving of notice, passage of time, or both, would constitute such an Event of Default.

"**Default Rate**" shall mean an annual interest rate equal to the lesser of: (i) two percentage points over the Interest Rate; or (ii) the highest interest rate allowed by applicable law.

"**Event of Loss**" shall mean the occurrence whereby any tangible Collateral is damaged beyond repair, lost, totally destroyed or confiscated.

"**Excess Interest**" shall mean any amount or rate of interest (including the Default Rate and, to the extent that they may be deemed to constitute interest, any prepayment fees, late charges and other fees and charges) payable, charged or received in connection with any of the Loan Documents which exceeds the maximum amount or rate of interest permitted under applicable law.

"GAAP" shall mean the generally accepted accounting principles in effect in the United States of America from time to time.

"General Funding Conditions" shall mean each of the following conditions to any WCMA Loan by MLBFS hereunder: (i) Customer shall have validly subscribed to and continued to maintain the WCMA Account with MLPF&S, and the WCMA Account shall then be reflected as an active "commercial" WCMA Account (i.e., one with line of credit capabilities) on MLPF&S' WCMA computer system; (ii) no Default or Event of Default shall have occurred and be continuing or would result from the making of any WCMA Loan hereunder by MLBFS; (iii) there shall not have occurred and be continuing any material adverse change in the business or financial condition of any Credit Party; (iv) all representations and warranties of all of the Credit Parties herein or in any of the Loan Documents shall then be true and correct in all material respects; (v) MLBFS shall have received this Loan Agreement and all of the other Loan Documents duly executed and filed or recorded where applicable, all of which shall be in form and substance satisfactory to MLBFS; (vi) MLBFS shall have received evidence satisfactory to it as to the ownership of the Collateral and the perfection and priority of MLBFS' liens and security interests thereon, as well as the ownership of and the perfection and priority of MLBFS' liens and security interests on any other collateral for the Obligations furnished pursuant to any of the Loan Documents; (vii) MLBFS shall have received evidence satisfactory to it of the insurance required hereby or by any of the Loan Documents; and (viii) any additional conditions specified in the "WCMA Line of Credit Approval" letter executed by MLBFS with respect to the transactions contemplated hereby shall have been met to the satisfaction of MLBFS.

"Guarantor" shall mean each Person obligated under a guaranty, endorsement or other undertaking by which such Person guarantees or assumes responsibility in any capacity for the payment or performance of any of the Obligations.

"Initial Maturity Date" shall mean the first date upon which the WCMA Line of Credit will expire (subject to renewal in accordance with the terms hereof); to wit: November 30, 2003.

"Individual Guarantor" shall mean each Guarantor who is a natural person.

"Interest Due Date" shall mean the first Business Day of each calendar month during the term hereof.

"Interest Rate" shall mean a variable per annum rate of interest equal to the sum of 3.15% plus the One-Month LIBOR. "One-Month LIBOR" shall mean, as of the date of any determination, the interest rate then most recently published in the "Money Rates" section of *The Wall Street Journal* as the one-month London Interbank Offered Rate. The Interest Rate will change as of the date of publication in *The Wall Street Journal* of a One-Month LIBOR that is different from that published on the preceding Business Day. If, more than one rate is published, then the highest of such rates. In the event that *The Wall Street Journal* shall, for any reason, fail or cease to publish the One-Month LIBOR, MLBFS will choose a reasonably comparable index or source to use as the basis for the Interest Rate.

"Line Fee" shall mean a fee of $16,875.00 payable periodically by Customer to MLBFS in accordance with the provisions of Section 2.2 hereof.

"Loan Documents" shall mean this Loan Agreement, any indenture, any guaranty of any of the Obligations and all other security and other instruments, assignments, certificates, certifications and agreements of any kind relating to any of the Obligations, whether obtained, authorized, authenticated, executed, sent or received concurrently with or subsequent to this Loan Agreement, or which evidence the creation, guaranty or collateralization of any of the Obligations or the granting or perfection of liens or security interests upon any Collateral or any other collateral for the Obligations, including any modifications, amendments or restatements of the foregoing.

"Location of Tangible Collateral" shall mean the address of Customer set forth at the beginning of this Loan Agreement, together with any other address or addresses set forth on an exhibit hereto as being a Location of Tangible Collateral.

"Maturity Date" shall mean the date of expiration of the WCMA Line of Credit.

"Maximum WCMA Line of Credit" shall mean, as of any date of determination thereof, an amount Equal to the lesser of: (A) $2,250,000.00, or (B) 80% of Customer's Accounts and Chattel Paper, as shown on its regular books and records (excluding Accounts over 90 days old, Accounts directly or indirectly due from any person or entity not domiciled in the United States, or from any shareholder, officer or employee of Customer or any affiliated entity).

"Obligations" shall mean all liabilities, indebtedness and other obligations of Customer to MLBFS, howsoever created, arising or evidenced, whether now existing or hereafter arising, whether direct or indirect, absolute or contingent, due or to become due, primary or secondary or joint or several, and, without limiting the generality of the foregoing, shall include principal, accrued interest (including without limitation interest accruing after the filing of any petition in bankruptcy), all advances made by or on behalf of MLBFS under the Loan Documents, collection and other costs and expenses incurred by or on behalf of MLBFS, whether incurred before or after judgment and all present and future liabilities, indebtedness and obligations of Customer under this Loan Agreement.

"Permitted Liens" shall mean with respect to the Collateral: (i) liens for current taxes not yet due and payable, other non-consensual liens arising in the ordinary course of business for sums not due, and, if MLBFS' rights to and interest in the Collateral are not materially and adversely affected thereby, any such liens for taxes or other non-consensual liens arising in the ordinary course of business being contested in good faith by appropriate proceedings; (ii) liens in favor of MLBFS; (iii) liens which will be discharged with the proceeds of the initial WCMA Loan; and (iv) any other liens expressly permitted in writing by MLBFS.

"Person" shall mean any natural person and any corporation, partnership (general, limited or otherwise), limited liability company, trust, association, joint venture, governmental body or agency or other entity having legal status of any kind.

"Pledgor" shall mean each Person who at any time provides collateral, or otherwise now or hereinafter agrees to grant MLBFS a security interest in any assets as security for Customer's Obligations.

-2-

"Renewal Year" shall mean and refer to the 12-month period immediately following the Initial Maturity Date and each 12-month period thereafter.

"WCMA Account" shall mean and refer to the Working Capital Management Account of Customer with MLPF&S identified as Account No. 871-07F72 and any successor Working Capital Management Account of Customer with MLPF&S.

"WCMA Line of Credit" shall mean a line of credit funded by MLBFS through the WCMA Account.

"WCMA Loan" shall mean each advance made by MLBFS pursuant to this Loan Agreement.

"WCMA Loan Balance" shall mean an amount equal to the aggregate unpaid principal amount of all WCMA Loans.

"UCC" shall mean the Uniform Commercial Code of Illinois as in effect in Illinois from time to time.

1.2 Other Terms. Except as otherwise defined herein: (i) all terms used in this Loan Agreement which are defined in the UCC shall have the meanings set forth in the UCC, and (ii) capitalized terms used herein which are defined in the WCMA Agreement (including, without limitation, "Money Accounts", "Minimum Money Accounts Balance", and "WCMA Directed Reserve Program") shall have the meanings set forth in the WCMA Agreement, and (iii) accounting terms not defined herein shall have the meaning ascribed to them in GAAP.

1.3 UCC Filing. Customer hereby authorizes MLBFS to file a record or records (as defined or otherwise specified under the UCC), including, without limitation, financing statements, in all jurisdictions and with all filing offices as MLBFS may determine, in its sole discretion, are necessary or advisable to perfect the security interest granted to MLBFS herein. Such financing statements may describe the Collateral in the same manner as described herein or may contain an indication or description of collateral that describes such property in any other manner as MLBFS may determine, in its sole discretion, is necessary, advisable or prudent to ensure the perfection of the security interest in the Collateral granted to the MLBFS herein.

ARTICLE II. THE WCMA LINE OF CREDIT

2.1 WCMA PROMISSORY NOTE. FOR VALUE RECEIVED, Customer hereby promises to pay to the order of MLBFS, at the times and in the manner set forth in this Loan Agreement, or in such other manner and at such place as MLBFS may hereafter designate in writing, the following: (a) on the Maturity Date, or if earlier, on the date of termination of the WCMA Line of Credit, the WCMA Loan Balance; (b) interest at the Interest Rate (or, if applicable, at the Default Rate) on the outstanding WCMA Loan Balance, from and including the date on which the initial WCMA Loan is made until the date of payment of all WCMA Loans in full; and (c) on demand, all other sums payable pursuant to this Loan Agreement, including, but not limited to, the periodic Line Fee. Except as otherwise expressly set forth herein, Customer hereby waives presentment, demand for payment, protest and notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and formalities in connection with this WCMA Promissory Note and this Loan Agreement.

2.2 WCMA LOANS

(a) Activation Date. Provided that: (i) the Commitment Expiration Date shall not then have occurred, and (ii) Customer shall have subscribed to the WCMA Program and its subscription to the WCMA Program shall then be in effect, the Activation Date shall occur on or promptly after the date, following the acceptance of this Loan Agreement by MLBFS at its office in Chicago, Illinois, upon which each of the General Funding Conditions shall have been met or satisfied to the reasonable satisfaction of MLBFS. No activation by MLBFS of the WCMA Line of Credit for a nominal amount shall be deemed evidence of the satisfaction of any of the conditions herein set forth, or a waiver of any of the terms or conditions hereof. Customer hereby authorizes MLBFS to pay out of and charge to Customer's WCMA Account on the Activation Date any and all amounts necessary to fully pay off any bank or other financial institution having a lien upon any of the Collateral other than a Permitted Lien.

(b) WCMA Loans. Subject to the terms and conditions hereof, during the period from and after the Activation Date to the first to occur of the Maturity Date or the date of termination of the WCMA Line of Credit pursuant to the terms hereof, and in addition to WCMA Loans automatically made to pay accrued interest, as hereafter provided: (i) MLBFS will make WCMA Loans to Customer in such amounts as Customer may from time to time request in accordance with the terms hereof, up to an aggregate outstanding amount not to exceed the Maximum WCMA Line of Credit, and (ii) Customer may repay any WCMA Loans in whole or in part at any time, and request a re-borrowing of amounts repaid on a revolving basis. Customer may request such WCMA Loans by use of WCMA Checks, FTS, Visa® charges, wire transfers, or such other means of access to the WCMA Line of Credit as may be permitted by MLBFS from time to time; it being understood that so long as the WCMA Line of Credit shall be in effect, any charge or debit to the WCMA Account which but for the WCMA Line of Credit would under the terms of the WCMA Agreement result in an overdraft, shall be deemed a request by Customer for a WCMA Loan.

(c) Conditions of WCMA Loans. Notwithstanding the foregoing, MLBFS shall not be obligated to make any WCMA Loan, and may without notice refuse to honor any such request by Customer, if at the time of receipt by MLBFS of Customer's request: (i) the making of such WCMA Loan would cause the Maximum WCMA Line of Credit to be exceeded; or (ii) the Maturity Date shall have occurred, or the WCMA Line of Credit shall have otherwise been terminated in accordance with the terms hereof; or (iii) Customer's subscription to the WCMA Program shall have been terminated; or (iv) an event shall have occurred and be continuing which shall have caused any of the General Funding Conditions to not then be met or satisfied to the reasonable satisfaction of MLBFS. The making by MLBFS of any WCMA Loan at a time when any one or more of said conditions shall not have been met shall not in any event be construed as a waiver of said condition or conditions or of any Default, and shall not prevent MLBFS at any time thereafter while any condition shall not have been met from refusing to honor any request by Customer for a WCMA Loan.

(d) Limitation of Liability. MLBFS shall not be responsible, and shall have no liability to Customer or any other party, for any delay or failure of MLBFS to honor any request of Customer for a WCMA Loan or any other act or omission of MLBFS, MLPF&S or any of their affiliates due to or resulting from any system failure, error or delay in posting or other clerical error, loss of power, fire, Act of God or other cause beyond the reasonable control of MLBFS, MLPF&S or any of their affiliates unless directly arising out of the willful wrongful act or active gross negligence of MLBFS. In no event shall MLBFS be liable

-3-

to Customer or any other party for any incidental or consequential damages arising from any act or omission by MLBFS, MLPF&S or any of their affiliates in connection with the WCMA Line of Credit or this Loan Agreement.

(e) **Interest.** (i) An amount equal to accrued interest on the daily WCMA Loan Balance shall be payable by Customer monthly on each Interest Due Date, commencing with the first Interest Due Date after the Activation Date. Unless otherwise hereafter directed in writing by MLBFS on or after the first to occur of the Maturity Date or the date of termination of the WCMA Line of Credit pursuant to the terms hereof, such interest will be automatically charged to the WCMA Account on the applicable Interest Due Date, and, to the extent not paid with free credit balances or proceeds of sales of any Money Accounts then in the WCMA Account, as hereafter provided, paid by a WCMA Loan and added to the WCMA Loan Balance. All interest shall be computed for the actual number of days elapsed on the basis of a year consisting of 360 days.

(ii) Upon the occurrence and during the continuance of any Default, but without limiting the rights and remedies otherwise available to MLBFS hereunder or waiving such Default, the interest payable by Customer hereunder shall at the option of MLBFS accrue and be payable at the Default Rate. The Default Rate, once implemented, shall continue to apply to the Obligations under this Loan Agreement and be payable by Customer until the date MLBFS gives written notice that such Default has been cured to the satisfaction of MLBFS.

(iii) Notwithstanding any provision to the contrary in any of the Loan Documents, no provision of any of the Loan Documents shall require the payment or permit the collection of Excess Interest. If any Excess Interest is provided for, or is adjudicated as being provided for, in any of the Loan Documents, then: (A) Customer shall not be obligated to pay any Excess Interest; and (B) any Excess Interest that MLBFS may have received hereunder or under any of the Loan Documents shall, at the option of MLBFS, be either applied as a credit against the then unpaid WCMA Loan Balance or refunded to the payor thereof.

(f) **Payments.** All payments required or permitted to be made pursuant to this Loan Agreement shall be made in lawful money of the United States. Unless otherwise directed by MLBFS, payments on account of the WCMA Loan Balance may be made by the delivery of checks (other than WCMA Checks), or by means of FTS or wire transfer of funds (other than funds from the WCMA Line of Credit) to MLPF&S for credit to Customer's WCMA Account. Notwithstanding anything in the WCMA Agreement to the contrary, Customer hereby irrevocably authorizes and directs MLPF&S to apply available free credit balances in the WCMA Account to the repayment of the WCMA Loan Balance prior to application for any other purpose. Payments to MLBFS from funds in the WCMA Account shall be deemed to be made by Customer upon the same basis and schedule as funds are made available for investment in the Money Accounts in accordance with the terms of the WCMA Agreement. All funds received by MLBFS from MLPF&S pursuant to the aforesaid authorization shall be applied by MLBFS to repayment of the WCMA Loan Balance. The acceptance by or on behalf of MLBFS of a check or other payment for a lesser amount than shall be due from Customer, regardless of any endorsement or statement thereon or transmitted therewith, shall not be deemed an accord and satisfaction or anything other than a payment on account, and MLBFS or anyone acting on behalf of MLBFS may accept such check or other payment without prejudice to the rights of MLBFS to recover the balance actually due or to pursue any other remedy under this Loan Agreement or applicable law for such balance. All checks accepted by or on behalf of MLBFS in connection with the WCMA Line of Credit are subject to final collection.

(g) **Irrevocable Instructions to MLPF&S.** In order to minimize the WCMA Loan Balance, Customer hereby irrevocably authorizes and directs MLPF&S, effective on the Activation Date and continuing thereafter so long as this Loan Agreement shall be in effect: (i) to immediately and prior to application for any other purpose pay to MLBFS to the extent of any WCMA Loan Balance or other amounts payable by Customer hereunder all available free credit balances from time to time in the WCMA Account; and (ii) if such available free credit balances are insufficient to pay the WCMA Loan Balance and such other amounts, and there are in the WCMA Account at any time any investments in Money Accounts (other than any investments constituting any Minimum Money Accounts Balance under the WCMA Directed Reserve Program), to immediately liquidate such investments and pay to MLBFS to the extent of any WCMA Loan Balance and such other amounts the available proceeds from the liquidation of any such Money Accounts.

(h) **Late Charge.** Any payment or deposit required to be made by Customer pursuant to the Loan Documents not paid or made within ten (10) days of the applicable due date shall be subject to a late charge in an amount equal to the lesser of: (a) 5% of the overdue amount, or (b) the maximum amount permitted by applicable law. Such late charge shall be payable on demand, or, without demand, may in the sole discretion of MLBFS be paid by a Subsequent WCMA Loan and added to the WCMA Loan Balance in the same manner as provided herein for accrued interest with respect to the WCMA Line of Credit.

(i) **Statements.** MLPF&S will include in each monthly statement it issues under the WCMA Program information with respect to WCMA Loans and the WCMA Loan Balance. Any questions that Customer may have with respect to such information should be directed to MLBFS; and any questions with respect to any other matter in such statements or about or affecting the WCMA Program should be directed to MLPF&S.

(j) **Use of WCMA Loan Proceeds.** The proceeds of each WCMA Loan initiated by Customer shall be used by Customer solely for working capital in the ordinary course of its business, or, with the prior written consent of MLBFS, for other lawful business purposes of Customer not prohibited hereby. Customer agrees that under no circumstances will the proceeds of any WCMA Loan be used: (i) for personal, family or household purposes of any person whatsoever, or (ii) to purchase, carry or trade in securities, or repay debt incurred to purchase, carry or trade in securities, whether in or in connection with the WCMA Account, another account of Customer with MLPF&S or an account of Customer at any other broker or dealer in securities, or (iii) unless otherwise consented to in writing by MLBFS, to pay any amount to Merrill Lynch and Co., Inc. or any of its subsidiaries, other than Merrill Lynch Bank USA, Merrill Lynch Bank & Trust Co. or any subsidiary of either of them (including MLBFS and Merrill Lynch Credit Corporation).

(k) **Renewal at Option of MLBFS; Right of Customer to Terminate.** MLBFS may at any time, in its sole discretion and at its sole option, renew the WCMA Line of Credit for one or more Renewal Years; it being understood, however, that no such renewal shall be effective unless set forth in a writing executed by a duly authorized representative of MLBFS and delivered to Customer. Unless any such renewal is accompanied by a proposed change in the terms of the WCMA Line of Credit (other than the extension of the Maturity Date), no such renewal shall require Customer's approval. Customer shall, however, have the

right to terminate the WCMA Line of Credit at any time upon written notice to MLBFS. Concurrently with any such termination, Customer shall pay to MLBFS the entire WCMA Loan Balance and all other Obligations.

(i) Line Fees. (i) In consideration of the extension of the WCMA Line of Credit by MLBFS to Customer during the period from the Activation Date to and including the last day of November, 2003 (the "Initial Line Period"), Customer has paid or shall pay the initial Line Fee to MLBFS. If the initial Line Fee has not heretofore been paid by Customer, Customer hereby authorizes MLBFS, at its option, to either cause the initial Line Fee to be paid on the Activation Date with a WCMA Loan, or invoice Customer for such initial Line Fee (in which event Customer shall pay said fee within 5 Business Days after receipt of such invoice). No delay in the Activation Date, howsoever caused, shall entitle Customer to any rebate or reduction in the Line Fee or to any extension of the Initial Maturity Date.

(ii) Customer shall pay to MLBFS an additional Line Fee for each 12-month period following the Initial Line Period to the Initial Maturity Date, and for each Renewal Year. In connection therewith, Customer hereby authorizes MLBFS, at its option, to either cause each such additional Line Fee to be paid with a WCMA Loan on or at any time after the first Business Day of such 12-month period or Renewal Year, as applicable, or invoiced to Customer at such time (in which event Customer shall pay such Line Fee within 5 Business Days after receipt of such invoice). Each Line Fee shall be deemed fully earned by MLBFS on the date payable by Customer, and no termination of the WCMA Line of Credit, howsoever caused, shall entitle Customer to any rebate or refund of any portion of such Line Fee; provided, however, that if Customer shall terminate the WCMA Line of Credit not later than 5 Business Days after the receipt by Customer of notice from MLBFS of a renewal of the WCMA Line of Credit, Customer shall be entitled to a refund of any Line Fee charged by MLBFS for the ensuing Renewal Year.

Article III. GENERAL PROVISIONS

### 3.1 REPRESENTATIONS AND WARRANTIES

Customer represents and warrants to MLBFS that:

(a)   **Organization and Existence.** Customer is a corporation, duly organized and validly existing in good standing under the laws of the State of New Jersey and is qualified to do business and in good standing in each other state where the nature of its business or the property owned by it make such qualification necessary.

(b)   **Execution, Delivery and Performance.** Each Credit Party has the requisite power and authority to enter into and perform the Loan Documents. The Customer holds all necessary permits, licenses, certificates of occupancy and other governmental authorizations and approvals required in order to own and operate the Customer's business. The execution, delivery and performance by Customer of this Loan Agreement and by each of the other Credit Parties of such of the other Loan Documents to which it is a party: (i) have been duly authorized by all requisite action, (ii) do not and will not violate or conflict with any law, order or other governmental requirement, or any of the agreements, instruments or documents which formed or govern any of the Credit Parties, and (iii) do not and will not breach or violate any of the provisions of, and will not result in a default by any of the Credit Parties under, any other agreement, instrument or document to which it is a party or is subject.

(c)   **Notices and Approvals.** Except as may have been given or obtained, no notice to or consent or approval of any governmental body or authority or other third party whatsoever (including, without limitation, any other creditor) is required in connection with the execution, delivery or performance by any Credit Party of such of this Loan Agreement and the Loan Documents to which it is a party.

(d)   **Enforceability.** The Loan Documents to which any Credit Party is a party are the respective legal, valid and binding obligations of such Credit Party, enforceable against it or them, as the case may be, in accordance with their respective terms, except as enforceability may be limited by bankruptcy and other similar laws affecting the rights of creditors generally or by general principles of equity.

(e)   **Collateral.** Except for priorities afforded to any Permitted Liens: (i) Customer has good and marketable title to the Collateral, (ii) none of the Collateral is subject to any lien, encumbrance or security interest, and (iii) upon the filing of all Uniform Commercial Code financing statements authenticated or otherwise authorized by Customer with respect to the Collateral in the appropriate jurisdiction(s) and/or the completion of any other action required by applicable law to perfect its liens and security interests, MLBFS will have valid and perfected first liens and security interests upon all of the Collateral.

(f)   **Financial Statements.** Except as expressly set forth in Customer's or any Business Guarantor's financial statements, all financial statements of Customer and each Business Guarantor furnished to MLBFS have been prepared in conformity with generally accepted accounting principles, consistently applied, are true and correct in all material respects, and fairly present the financial condition of it as at such dates and the results of its operations for the periods then ended (subject, in the case of interim unaudited financial statements, to normal year-end adjustments); and since the most recent date covered by such financial statements, there has been no material adverse change in any such financial condition or operation. All financial statements furnished to MLBFS of any Guarantor other than a Business Guarantor are true and correct in all material respects and fairly represent such Guarantor's financial condition as of the date of such financial statements, and since the most recent date of such financial statements, there has been no material adverse change in such financial condition.

(g)   **Litigation; Compliance With All Laws.** No litigation, arbitration, administrative or governmental proceedings are pending or, to the knowledge of Customer, threatened against any Credit Party, which would, if adversely determined, materially and adversely affect (i) such Credit Party's interest in the Collateral or the liens and security interests of MLBFS hereunder or under any of the Loan Documents, or (ii) the financial condition of any Credit Party or its continued operations. Each Credit Party is in compliance in all material respects with all laws, regulations, requirements and approvals applicable to such Credit Party.

-5-

(h)  **Tax Returns.** All federal, state and local tax returns, reports and statements required to be filed by any Credit Party have been filed with the appropriate governmental agencies and all taxes due and payable by any Credit Party have been timely paid (except to the extent that any such failure to file or pay will not materially and adversely affect (i) either the liens and security interests of MLBFS hereunder or under any of the Loan Documents, (ii) the financial condition of any Credit Party, or (iii) its continued operations).

(i)  **Collateral Location.** All of the tangible Collateral is located at a Location of Tangible Collateral.

(j)  **No Default.** No "Default" or "Event of Default" (each as defined in this Loan Agreement or any of the other Loan Documents) has occurred and is continuing.

(k)  **No Outside Broker.** Except for employees of MLBFS, MLPF&S or one of their affiliates, Customer has not in connection with the transactions contemplated hereby directly or indirectly engaged or dealt with, and was not introduced or referred to MLBFS by, any broker or other loan arranger.

Each of the foregoing representations and warranties: (i) has been and will be relied upon as an inducement to MLBFS to provide the WCMA Line of Credit, and (ii) is continuing and shall be deemed remade by Customer concurrently with each request for a WCMA Loan.

## 3.2 FINANCIAL AND OTHER INFORMATION

(a)  Customer shall furnish or cause to be furnished to MLBFS during the term of this Loan Agreement all of the following:

(i)  **Annual Financial Statements.** Within 120 days after the close of each fiscal year of Customer, a copy of the annual audited financial statements of Customer, including in reasonable detail, a balance sheet and statement of retained earnings as at the close of such fiscal year and statements of profit and loss and cash flow for such fiscal year;

(ii)  **Annual Certificate of Compliance.** Within 120 days after the close of each calendar year, a Certificate of Compliance, duly executed by the president, chief financial officer or chief executive officer of the Customer, in the form of Exhibit B attached hereto, or such other form as reasonably required by MLBFS from time to time;

(iii)  **Interim Financial Statements.** Within 45 days after the close of each fiscal quarter of Customer, a copy of the interim financial statements of Customer for such fiscal quarter (including in reasonable detail both a balance sheet as of the close of such fiscal period, and statement of profit and loss for the applicable fiscal period);

(iv)  **A/R Agings.** Within 15 days after the close of each fiscal month of Customer, a copy of the Accounts Receivable Aging of Customer as of the end of such fiscal month; and

(v)  **Other Information.** Such other information as MLBFS may from time to time reasonably request relating to Customer, any Credit Party or the Collateral.

(vi)  **General Agreements With Respect to Financial Information.** Customer agrees that except as otherwise specified herein or otherwise agreed to in writing by MLBFS: (i) all annual financial statements required to be furnished by Customer to MLBFS hereunder will be prepared by either the current independent accountants for Customer or other independent accountants reasonably acceptable to MLBFS, and (ii) all other financial information required to be furnished by Customer to MLBFS hereunder will be certified as correct in all material respects by the party who has prepared such information, and, in the case of internally prepared information with respect to Customer, certified as correct by its chief financial officer.

## 3.3 OTHER COVENANTS

Customer further covenants and agrees during the term of this Loan Agreement that:

(a)  **Financial Records; Inspection.** Each Credit Party (other than any Individual Guarantor) will: (i) maintain at its principal place of business complete and accurate books and records, and maintain all of its financial records in a manner consistent with the financial statements heretofore furnished to MLBFS, or prepared on such other basis as may be approved in writing by MLBFS; and (ii) permit MLBFS or its duly authorized representatives, upon reasonable notice and at reasonable times, to inspect its properties (both real and personal), operations, books and records.

(b)  **Taxes.** Each Credit Party will pay when due all of its respective taxes, assessments and other governmental charges, howsoever designated, and all other liabilities and obligations, except to the extent that any such failure to file or pay will not materially and adversely affect either the liens and security interests of MLBFS hereunder or under any of the Loan Documents, the financial condition of any Credit Party or its continued operations.

(c)  **Compliance With Laws and Agreements.** No Credit Party will violate (i) any law, regulation or other governmental requirement, any judgment or order of any court or governmental agency or authority; (ii) any agreement, instrument or document which is material to its operations or to the operation or use of any Collateral, in each case as contemplated by the Loan Documents; or (iii) any agreement, instrument or document to which it is a party or by which it is bound, if any such violation will materially and adversely affect either the liens and security interests of MLBFS hereunder or under any of the Loan Documents, the financial condition of any Credit Party, or its continued operations.

(d)  **No Use of Merrill Lynch Name.** No Credit Party will directly or indirectly publish, disclose or otherwise use in any advertising or promotional material, or press release or interview, the name, logo or any trademark of MLBFS, MLPF&S, Merrill Lynch and Co., Incorporated or any of their affiliates.

-6-

(e) **Notification By Customer.** Customer shall provide MLBFS with prompt written notification of: (i) any Default; (ii) any material adverse change in the business, financial condition or operations of any Credit Party; (iii) any information which indicates that any financial statements of any Credit Party fail in any material respect to present fairly the financial condition and results of operations purported to be presented in such statements; (iv) any threatened or pending litigation involving any Credit Party; (v) any casualty loss, attachment, lien, judicial process, encumbrance or claim affecting or involving $25,000 or more of any Collateral; and (vi) any change in Customer's outside accountants. Each notification by Customer pursuant hereto shall specify the event or information causing such notification, and, to the extent applicable, shall specify the steps being taken to rectify or remedy such event or information.

(f) **Entity Organization.** Each Credit Party which is an entity will (i) remain (A) validly existing and in good standing in the state of its organization and (B) qualified to do business and in good standing in each other state where the nature of its business or the property owned by it make such qualification necessary, and (ii) maintain all governmental permits, licenses and authorizations. Customer shall give MLBFS not less than 30 days prior written notice of any change in name (including any fictitious name) or chief executive office, place of business, or as applicable, the principal residence of any Credit Party.

(g) **Merger, Change in Business.** Except upon the prior written consent of MLBFS Customer shall not cause or permit any Credit Party to: (i) be a party to any merger or consolidation with, or purchase or otherwise acquire all or substantially all of the assets of, or any material stock, partnership, joint venture or other equity interest in, any Person, or sell, transfer or lease all or any substantial part of its assets; (ii) engage in any material business substantially different from its business in effect as of the date of application by Customer for credit from MLBFS, or cease operating any such material business; or (iii) cause or permit any other Person to assume or succeed to any material business or operations of such Credit Party.

(h) **Total Debt To Ebitda.** Customer's "Total Debt to EBITDA Ratio" shall not at any time exceed 4.0 to 1, defined and calculated as set forth in Exhibit B attached hereto.

(i) **Minimum Tangible Net Worth And Sub Debt.** The sum of (x) Customer's aggregate subordinated debt and (y) Customer's "Tangible Net Worth" shall at all times exceed $1,000,000.00, defined and calculated as set forth in Exhibit B attached hereto.

## 3.4 COLLATERAL

(a) **Pledge of Collateral.** To secure payment and performance of the Obligations, Customer hereby pledges, assigns, transfers and sets over to MLBFS, and grants to MLBFS first liens and security interests in and upon all of the Collateral, subject only to priorities afforded to Permitted Liens.

(b) **Liens.** Except upon the prior written consent of MLBFS, Customer shall not create or permit to exist any lien, encumbrance or security interest upon or with respect to any Collateral now owned or hereafter acquired other than Permitted Liens.

(c) **Performance of Obligations.** Customer shall perform all of its obligations owing on account of or with respect to the Collateral; it being understood that nothing herein, and no action or inaction by MLBFS, under this Loan Agreement or otherwise, shall be deemed an assumption by MLBFS of any of Customer's said obligations.

(d) **Sales and Collections.** Customer shall not sell, transfer or otherwise dispose of any Collateral, except that so long as no Event of Default shall have occurred and be continuing, Customer may in the ordinary course of its business: (i) sell any Inventory normally held by Customer for sale, (ii) use or consume any materials and supplies normally held by Customer for use or consumption, and (iii) collect all of its Accounts.

(e) **Account Schedules.** Upon the request of MLBFS, which may be made from time to time, Customer shall deliver to MLBFS, in addition to the other information required hereunder, a schedule identifying, for each Account and all Chattel Paper subject to MLBFS' security interests hereunder, each account debtor by name and address and amount, invoice or contract number and date of each invoice or contract. Customer shall furnish to MLBFS such additional information with respect to the Collateral, and amounts received by Customer as proceeds of any of the Collateral, as MLBFS may from time to time reasonably request.

(f) **Alterations and Maintenance.** Except upon the prior written consent of MLBFS, Customer shall not make or permit any material alterations to any tangible Collateral which might materially reduce or impair its market value or utility. Customer shall at all times (i) keep the tangible Collateral in good condition and repair, reasonable wear and tear excepted, (ii) protect the Collateral against loss, damage or destruction and (iii) pay or cause to be paid all obligations arising from the repair and maintenance of such Collateral, as well as all obligations with respect to any Location of Tangible Collateral (e.g., all obligations under any lease, mortgage or bailment agreement), except for any such obligations being contested by Customer in good faith by appropriate proceedings.

(g) **Location.** Except for movements required in the ordinary course of Customer's business, Customer shall give MLBFS 30 days' prior written notice of the placing at or movement of any tangible Collateral to any location other than a Location of Tangible Collateral. In no event shall Customer cause or permit any material tangible Collateral to be removed from the United States without the express prior written consent of MLBFS. Customer will keep its books and records at its principal office address specified in the first paragraph of this Loan Agreement. Customer will not change the address where books and records are kept, or change its name or taxpayer identification number. Customer will place a legend acceptable to MLBFS on all Chattel Paper that is Collateral in the possession or control of Customer from time to time indicating that MLBFS has a security interest therein.

(h) **Insurance.** Customer shall insure all of the tangible Collateral under a policy or policies of physical damage insurance for the full replacement value thereof against such perils as MLBFS shall reasonably require and also providing that losses will be payable to MLBFS as its interests may appear pursuant to a lender's or mortgagee's long form loss payable endorsement and containing such other provisions as may be reasonably required by MLBFS. Customer shall further provide and maintain a policy or policies of commercial general liability insurance naming MLBFS as an additional party insured. Customer and each Business Guarantor shall maintain such other insurance as may be required by law or is customarily maintained by companies in a similar business or otherwise reasonably required by MLBFS. All such insurance policies shall provide that MLBFS will receive not less than 10 days prior written notice of any

cancellation, and shall otherwise be in form and amount and with an insurer or insurers reasonably acceptable to MLBFS. Customer shall furnish MLBFS with a copy or certificate of each such policy or policies and, prior to any expiration or cancellation, each renewal or replacement thereof.

(i)  **Event of Loss.** Customer shall at its expense promptly repair all repairable damage to any tangible Collateral. In the event that there is an Event of Loss and the affected Collateral had a value prior to such Event of Loss of $25,000.00 or more, then, on or before the first to occur of (i) 90 days after the occurrence of such Event of Loss, or (ii) 10 Business Days after the date on which either Customer or MLBFS shall receive any proceeds of insurance on account of such Event of Loss, or any underwriter of insurance on such Collateral shall advise either Customer or MLBFS that it disclaims liability in respect of such Event of Loss, Customer shall, at Customer's option, either replace the Collateral subject to such Event of Loss with comparable Collateral free of all liens other than Permitted Liens (in which event Customer shall be entitled to utilize the proceeds of insurance on account of such Event of Loss for such purpose, and may retain any excess proceeds of such insurance), or permanently prepay the Obligations by an amount equal to the actual cash value of such Collateral as determined by either the insurance company's payment (plus any applicable deductible) or, in absence of insurance company payment, as reasonably determined by MLBFS; it being further understood that any such permanent prepayment shall cause an immediate permanent reduction in the Maximum WCMA Line of Credit in the amount of such prepayment and shall not reduce the amount of any future reductions in the Maximum WCMA Line of Credit that may be required hereunder. Notwithstanding the foregoing, if at the time of occurrence of such Event of Loss or any time thereafter prior to replacement or line reduction, as aforesaid, an Event of Default shall have occurred and be continuing hereunder, then MLBFS may at its sole option, exercisable at any time while such Event of Default shall be continuing, require Customer to either replace such Collateral or prepay the Obligations and reduce the Maximum WCMA Line of Credit, as aforesaid.

(j)  **Notice of Certain Events.** Customer shall give MLBFS immediate notice of any attachment, lien, judicial process, encumbrance or claim affecting or involving $25,000.00 or more of the Collateral.

(k)  **Indemnification.** Customer shall indemnify, defend and save MLBFS harmless from and against any and all claims, liabilities, losses, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) of any nature whatsoever which may be asserted against or incurred by MLBFS arising out of or in any manner occasioned by (i) the ownership, collection, possession, use or operation of any Collateral, or (ii) any failure by Customer to perform any of its obligations hereunder; excluding, however, from said indemnity any such claims, liabilities, etc. arising directly out of the willful wrongful act or active gross negligence of MLBFS. This indemnity shall survive the expiration or termination of this Loan Agreement as to all matters arising or accruing prior to such expiration or termination.

## 3.5 EVENTS OF DEFAULT

The occurrence of any of the following events shall constitute an "Event of Default" under this Loan Agreement:

(a)  **Exceeding the Maximum WCMA Line of Credit.** If the WCMA Loan Balance shall at any time exceed the Maximum WCMA Line of Credit and Customer shall fail to deposit sufficient funds into the WCMA Account to reduce the WCMA Loan Balance below the Maximum WCMA Line of Credit within five (5) Business Days after written notice thereof shall have been given by MLBFS to Customer.

(b)  **Other Failure to Pay.** Customer shall fail to pay to MLBFS or deposit into the WCMA Account when due any other amount owing or required to be paid or deposited by Customer under this Loan Agreement or any of the Loan Documents, or shall fail to pay when due any other Obligations, and any such failure shall continue for more than five (5) Business Days after written notice thereof shall have been given by MLBFS to Customer.

(c)  **Failure to Perform.** Any Credit Party shall default in the performance or observance of any covenant or agreement on its part to be performed or observed under any of the Loan Documents (not constituting an Event of Default under any other clause of this Section), and such default shall continue unremedied for ten (10) Business Days (i) after written notice thereof shall have been given by MLBFS to Customer, or (ii) from Customer's receipt of any notice or knowledge of such default from any other source.

(d)  **Breach of Warranty.** Any representation or warranty made by any Credit Party contained in this Loan Agreement or any of the Loan Documents shall at any time prove to have been incorrect in any material respect when made.

(e)  **Default Under Other ML Agreement.** A default or event of default by any Credit Party shall occur under the terms of any other agreement, instrument or document with or intended for the benefit of MLBFS, MLPF&S or any of their affiliates, and any required notice shall have been given and required passage of time shall have elapsed, or the WCMA Agreement shall be terminated for any reason.

(f)  **Bankruptcy Event.** Any Bankruptcy Event shall occur.

(g)  **Material Impairment.** Any event shall occur which shall reasonably cause MLBFS to in good faith believe that the prospect of full payment or performance by the Credit Parties of any of their respective liabilities or obligations under any of the Loan Documents has been materially impaired. The existence of such a material impairment shall be determined in a manner consistent with the intent of Section 1-208 of the UCC.

(h)  **Default Under Other Agreements.** Any event shall occur which results in any default of any material agreement involving any Credit Party or any agreement evidencing any indebtedness of any Credit Party of $100,000.00 or more.

(i)  **Collateral Impairment.** The loss, theft or destruction of any Collateral, the occurrence of any material deterioration or impairment of any Collateral or any material decline or depreciation in the value or market price thereof (whether actual or reasonably anticipated), which causes any Collateral, in the sole opinion of MLBFS, to become unsatisfactory as to value or character; or any levy, attachment, seizure or confiscation of the Collateral which is not released within ten (10) Business Days.

(j)      **Contested Obligation.** (i) Any of the Loan Documents shall for any reason cease to be, or are asserted by any Credit Party not to be a legal, valid and binding obligations of any Credit Party, enforceable in accordance with their terms; or (ii) the validity, perfection or priority of MLBFS' first lien and security interest on any of the Collateral is contested by any Person; or (iii) any Credit Party shall or shall attempt to repudiate, revoke, contest or dispute, in whole or in part, such Credit Party's obligations under any Loan Document.

(k)      **Judgments.** A judgment shall be entered against any Credit Party in excess of $25,000 and the judgment is not paid in full and discharged, or stayed and bonded to the satisfaction of MLBFS.

(l)      **Change in Control/Change in Management.** (i) Any direct or indirect sale, conveyance, assignment or other transfer of or grant of a security interest in any ownership interest of any Credit Party which results, or if any rights related thereto were exercised would result, in any change in the identity of the individuals or entities in control of any Credit Party; or (ii) the owner(s) of the controlling equity interest of any Credit Party on the date hereof shall cease to own and control such Credit Party; or (iii) the Person (or a replacement who is satisfactory to MLBFS in its sole discretion) who is the chief executive officer or holds such similar position, or any senior manager of such Credit Party on the date hereof shall for any reason cease to be the chief executive officer or senior manager of such Credit Party.

(m)      **Withdrawal, Death, etc.** The incapacity, death, withdrawal, dissolution, or the filing for dissolution of: (i) any Credit Party; or (ii) any controlling shareholder, partner, or member of any Credit Party.

**3.6 REMEDIES**

(a) **Remedies Upon Default.** Upon the occurrence and during the continuance of any Event of Default, MLBFS may at its sole option do any one or more or all of the following, at such time and in such order as MLBFS may in its sole discretion choose:

(i) **Termination.** MLBFS may without notice terminate the WCMA Line of Credit and all obligations to extend any credit to or for the benefit of Customer (it being understood, however, that upon the occurrence of any Bankruptcy Event all such obligations shall automatically terminate without any action on the part of MLBFS).

(ii) **Acceleration.** MLBFS may declare the principal of and interest on the WCMA Loan Balance, and all other Obligations to be forthwith due and payable, whereupon all such amounts shall be immediately due and payable, without presentment, demand for payment, protest and notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate or other notice or formality of any kind, all of which are hereby expressly waived; provided, however, that upon the occurrence of any Bankruptcy Event all such principal, interest and other Obligations shall automatically become due and payable without any action on the part of MLBFS.

(iii) **Exercise Other Rights.** MLBFS may exercise any or all of the remedies of a secured party under applicable law and in equity, including, but not limited to, the UCC, and any or all of its other rights and remedies under the Loan Documents.

(iv) **Possession.** MLBFS may require Customer to make the Collateral and the records pertaining to the Collateral available to MLBFS at a place designated by MLBFS which is reasonably convenient to Customer, or may take possession of the Collateral and the records pertaining to the Collateral without the use of any judicial process and without any prior notice to Customer.

(v) **Sale.** MLBFS may sell any or all of the Collateral at public or private sale upon such terms and conditions as MLBFS may reasonably deem proper, whether for cash, on credit, or for future delivery, in bulk or in lots. MLBFS may purchase any Collateral at any such sale free of Customer's right of redemption, if any, which Customer expressly waives to the extent not prohibited by applicable law. The net proceeds of any such public or private sale and all other amounts actually collected or received by MLBFS pursuant hereto, after deducting all costs and expenses incurred at any time in the collection of the Obligations and in the protection, collection and sale of the Collateral, will be applied to the payment of the Obligations, with any remaining proceeds paid to Customer or whoever else may be entitled thereto, and with Customer and each Guarantor remaining jointly and severally liable for any amount remaining unpaid after such application.

(vi) **Delivery of Cash, Checks, Etc.** MLBFS may require Customer to forthwith upon receipt, transmit and deliver to MLBFS in the form received, all cash, checks, drafts and other instruments for the payment of money (properly endorsed, where required, so that such items may be collected by MLBFS) which may be received by Customer at any time in full or partial payment of any Collateral, and require that Customer not commingle any such items which may be so received by Customer with any other of its funds or property but instead hold them separate and apart and in trust for MLBFS until delivery is made to MLBFS.

(vii) **Notification of Account Debtors.** MLBFS may notify any account debtor that its Account or Chattel Paper has been assigned to MLBFS and direct such account debtor to make payment directly to MLBFS of all amounts due or becoming due with respect to such Account or Chattel Paper; and MLBFS may enforce payment and collect, by legal proceedings or otherwise, such Account or Chattel Paper.

(viii) **Control of Collateral.** MLBFS may otherwise take control in any lawful manner of any cash or non-cash items of payment or proceeds of Collateral and of any rejected, returned, stopped in transit or repossessed goods included in the Collateral and endorse Customer's name on any item of payment on or proceeds of the Collateral.

(b) **Set-Off.** MLBFS shall have the further right upon the occurrence and during the continuance of an Event of Default to set-off, appropriate and apply toward payment of any of the Obligations, in such order of application as MLBFS may from time to time and at any time elect, any cash, credit, deposits, accounts, financial assets, investment property, securities and any other property of Customer which is in transit to or in the possession, custody or control

of MLBFS, MLPF&S or any agent, bailee, or affiliate of MLBFS or MLPF&S. Customer hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as Collateral and as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the UCC.

(c) **Power of Attorney.** Effective upon the occurrence and during the continuance of an Event of Default, Customer hereby irrevocably appoints MLBFS as its attorney-in-fact, with full power of substitution, in its place and stead and in its name or in the name of MLBFS, to from time to time in MLBFS' sole discretion take any action and to execute any instrument which MLBFS may deem necessary or advisable to accomplish the purposes of this Loan Agreement and the other Loan Documents, including, but not limited to, to receive, endorse and collect all checks, drafts and other instruments for the payment of money made payable to Customer included in the Collateral. The powers of attorney granted to MLBFS in this Loan Agreement are coupled with an interest and are irrevocable until the Obligations have been indefeasibly paid in full and fully satisfied and all obligations of MLBFS under this Loan Agreement have been terminated

(d) **Remedies are Severable and Cumulative.** All rights and remedies of MLBFS herein are severable and cumulative and in addition to all other rights and remedies available in the Loan Documents, at law or in equity, and any one or more of such rights and remedies may be exercised simultaneously or successively.

(e) **No Marshalling.** MLBFS shall be under no duty or obligation to (i) preserve, protect or marshall the Collateral; (ii) preserve or protect the rights of any Credit Party or any other Person claiming an interest in the Collateral; (iii) realize upon the Collateral in any particular order or manner, (iv) seek repayment of any Obligations from any particular source; (v) proceed or not proceed against any Credit Party pursuant to any guaranty or security agreement or against any Credit Party under the Loan Documents, with or without also realizing on the Collateral; (vi) permit any substitution or exchange of all or any part of the Collateral; or (vii) release any part of the Collateral from the Loan Agreement or any of the other Loan Documents, whether or not such substitution or release would leave MLBFS adequately secured.

(f) **Notices.** To the fullest extent permitted by applicable law, Customer hereby irrevocably waives and releases MLBFS of and from any and all liabilities and penalties for failure of MLBFS to comply with any statutory or other requirement imposed upon MLBFS relating to notices of sale, holding of sale or reporting of any sale, and Customer waives all rights of redemption or reinstatement from any such sale. Any notices required under applicable law shall be reasonably and properly given to Customer if given by any of the methods provided herein at least 5 Business Days prior to taking action. MLBFS shall have the right to postpone or adjourn any sale or other disposition of Collateral at any time without giving notice of any such postponed or adjourned date. In the event MLBFS seeks to take possession of any or all of the Collateral by court process, Customer further irrevocably waives to the fullest extent permitted by law any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession, and any demand for possession prior to the commencement of any suit or action.

**3.7 MISCELLANEOUS**

(a) **Non-Waiver.** No failure or delay on the part of MLBFS in exercising any right, power or remedy pursuant to this Loan Agreement or any of the other Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any such right, power or remedy shall preclude any other or further exercise thereof, or the exercise of any other right, power or remedy. Neither any waiver of any provision of any of the Loan Documents, nor any consent to any departure by Customer therefrom, shall be effective unless the same shall be in writing and signed by MLBFS. Any waiver of any provision of this Loan Agreement or any of the other Loan Documents and any consent to any departure by Customer from the terms of this Loan Agreement or any of the other Loan Documents shall be effective only in the specific instance and for the specific purpose for which given. Except as otherwise expressly provided herein, no notice to or demand on Customer shall in any case entitle Customer to any other or further notice or demand in similar or other circumstances.

(b) **Disclosure.** Customer hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Customer. In connection with said authorization, the parties recognize that in order to provide a WCMA Line of Credit certain information about Customer is required to be made available on a computer network accessible by certain affiliates of MLBFS, including MLPF&S. Customer further irrevocably authorizes MLBFS to contact, investigate, inquire and obtain consumer reports, references and other information on Customer from consumer reporting agencies and other credit reporting services, former or current creditors, and other persons and sources (including, without limitation, any Affiliate of MLBFS) and to provide to any references, consumer reporting agencies, credit reporting services, creditors and other persons and sources (including, without limitation, affiliates of MLBFS) all financial, credit and other information obtained by MLBFS relating to the Customer.

(c) **Communications.** Delivery of an agreement, instrument or other document may, at the discretion of MLBFS, be by electronic transmission. Except as required by law or otherwise provided herein or in a writing executed by the party to be bound, all notices demands, requests, accountings, listings, statements, advices or other communications to be given under the Loan Documents shall be in writing and shall be served either personally, by deposit with a reputable overnight courier with charges prepaid, or by deposit in the United States mail by certified mail, return receipt required. Notices may be addressed to Customer as set forth at its address shown in the preamble hereto, or to any office to which billing or account statements are sent; to MLBFS at its address shown in the preamble hereto, or at such other address designated in writing by MLBFS. Any such communication shall be deemed to have been given upon, in the case of personal delivery the date of delivery, one Business Day after deposit with an overnight courier, two (2) Business Days after deposit in the United States by certified mail (return receipt required), or receipt of electronic transmission (which shall be presumed to be three hours after the time of transmission unless an error message is received by the sender), except that any notice of change of address shall not be effective until actually received.

(d) **Fees, Expenses and Taxes.** Customer shall pay or reimburse MLBFS for: (i) all UCC, real property or other filing, recording, and search fees and expenses incurred by MLBFS in connection with the verification, perfection or preservation of MLBFS' rights hereunder or in any Collateral or any other

collateral for the Obligations; (ii) any and all stamp, transfer, mortgage, intangible, document, filing, recording and other taxes and fees payable or determined to be payable in connection with the borrowings hereunder or the execution, delivery, filing and/or recording of the Loan Documents and any other instruments or documents provided for herein or delivered or to be delivered hereunder or in connection herewith; and (iii) all fees and out-of-pocket expenses (including, attorneys' fees and legal expenses) incurred by MLBFS in connection with the preparation, execution, administration, collection, enforcement, protection, waiver or amendment of this Loan Agreement, the other Loan Documents and such other instruments or documents, and the rights and remedies of MLBFS thereunder and all other matters in connection therewith. Customer hereby authorizes MLBFS, at its option, to either cause any and all such fees, expenses and taxes to be paid with a WCMA Loan, or invoice Customer therefore (in which event Customer shall pay all such fees, expenses and taxes within 5 Business Days after receipt of such invoice). The obligations of Customer under this paragraph shall survive the expiration or termination of this Loan Agreement and the discharge of the other Obligations.

(e) **Right to Perform Obligations**. If Customer shall fail to do any act or thing which it has covenanted to do under any of the Loan Documents or any representation or warranty on the part of Customer contained in the Loan Documents shall be breached, MLBFS may, in its sole discretion, after 5 Business Days written notice is sent to Customer (or such lesser notice, including no notice, as is reasonable under the circumstances), do the same or cause it to be done or remedy any such breach, and may expend its funds for such purpose. Any and all reasonable amounts so expended by MLBFS shall be repayable to MLBFS by Customer upon demand, with interest at the Interest Rate during the period from and including the date funds are so expended by MLBFS to the date of repayment, and all such amounts shall be additional Obligations. The payment or performance by MLBFS of any of Customer's obligations hereunder shall not relieve Customer of said obligations or of the consequences of having failed to pay or perform the same, and shall not waive or be deemed a cure of any Default.

(f) **Further Assurances**. Customer agrees to do such further acts and things and to execute and deliver to MLBFS such additional agreements, instruments and documents as MLBFS may reasonably require or deem advisable to effectuate the purposes of the Loan Documents, to confirm the WCMA Loan Balance, or to establish, perfect and maintain MLBFS' security interests and liens upon the Collateral, including, but not limited to: (i) executing financing statements or amendments thereto when and as reasonably requested by MLBFS; and (ii) if in the reasonable judgment of MLBFS it is required by local law, causing the owners and/or mortgagees of the real property on which any Collateral may be located to execute and deliver to MLBFS waivers or subordinations reasonably satisfactory to MLBFS with respect to any rights in such Collateral.

(g) **Binding Effect**. This Loan Agreement and the Loan Documents shall be binding upon, and shall inure to the benefit of MLBFS, Customer and their respective successors and assigns. MLBFS reserves the right, at any time while the Obligations remain outstanding, to sell, assign, syndicate or otherwise transfer or dispose of any or all of MLBFS' rights and interests under the Loan Documents. MLBFS also reserves the right at any time to pool the WCMA Loan with one or more other loans originated by MLBFS or any other Person, and to securitize or offer interests in such pool on whatever terms and conditions MLBFS shall determine. Customer consents to MLBFS releasing financial and other information regarding Credit Parties, the Collateral and the WCMA Loan in connection with any such sale, pooling, securitization or other offering. Customer shall not assign any of its rights or delegate any of its obligations under this Loan Agreement or any of the Loan Documents without the prior written consent of MLBFS. Unless otherwise expressly agreed to in a writing signed by MLBFS, no such consent shall in any event relieve Customer of any of its obligations under this Loan Agreement or the Loan Documents.

(h) **Interpretation; Construction**. (i) Captions and section and paragraph headings in this Loan Agreement are inserted only as a matter of convenience, and shall not affect the interpretation hereof; (ii) no provision of this Loan Agreement shall be construed against a particular Person or in favor of another Person merely because of which Person (or its representative) drafted or supplied the wording for such provision; and (iii) where the context requires: (a) use of the singular or plural incorporates the other, and (b) pronouns and modifiers in the masculine, feminine or neuter gender shall be deemed to refer to or include the other genders.

(i) **Governing Law**. This Loan Agreement, and, unless otherwise expressly provided therein, each of the Loan Documents, shall be governed in all respects by the laws of the State of Illinois, not including its conflict of law provisions.

(j) **Severability of Provisions**. Whenever possible, each provision of this Loan Agreement and the other Loan Documents shall be interpreted in such manner as to be effective and valid under applicable law. Any provision of this Loan Agreement or any of the Loan Documents which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Loan Agreement and the Loan Documents or affecting the validity or enforceability of such provision in any other jurisdiction.

(k) **Term**. This Loan Agreement shall become effective on the date accepted by MLBFS at its office in Chicago, Illinois, and, subject to the terms hereof, shall continue in effect so long thereafter as the WCMA Line of Credit shall be in effect or there shall be any Obligations outstanding. Customer hereby waives notice of acceptance of this Loan Agreement by MLBFS.

(l) **Exhibits**. The exhibits to this Loan Agreement are hereby incorporated and made a part hereof and are an integral part of this Loan Agreement.

(m) **Counterparts**. This Loan Agreement may be executed in one or more counterparts which, when taken together, constitute one and the same agreement.

(n) **Jurisdiction; Waiver**. Customer acknowledges that this Loan Agreement is being accepted by MLBFS in partial consideration of MLBFS' right and option, in its sole discretion, to enforce this Loan Agreement and all of the Loan Documents in either the State of Illinois or in any other jurisdiction where Customer or any Collateral may be located. Customer irrevocably submits itself to jurisdiction in the State of Illinois and venue in any state or federal court in the County of Cook for such purposes, and Customer waives any and all rights to contest said jurisdiction and venue and the convenience of any such forum, and any and all rights to remove such action from state to federal court. Customer further waives any rights to commence any action against MLBFS in any jurisdiction except in the County of Cook and State of Illinois. Customer agrees that all such service of process shall be made by mail or messenger directed to it in the same manner as provided for notices to Customer in this Loan

Agreement and that service so made shall be deemed to be completed upon the earlier of actual receipt or three (3) days after the same shall have been posted to Customer or Customer's agent. Nothing contained herein shall affect the right of MLBFS to serve legal process in any other manner permitted by law or affect the right of MLBFS to bring any action or proceeding against Customer or its property in the courts of any other jurisdiction. Customer waives, to the extent permitted by law, any bond or surety or security upon such bond which might, but for this waiver, be required of MLBFS. Customer further waives the right to bring any non-compulsory counterclaims.

(o) Jury Waiver. MLBFS and Customer hereby each expressly waive any and all rights to a trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other party with respect to any matter relating to, arising out of or in any way connected with the WCMA Line of Credit, the Obligations, this Loan Agreement, any of the Loan Documents and/or any of the transactions which are the subject matter of this Loan Agreement.

(p) Integration. This Loan Agreement, together with the other Loan Documents, constitutes the entire understanding and represents the full and final agreement between the parties with respect to the subject matter hereof, and may not be contradicted by evidence of prior written agreements or prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements of the parties. Without limiting the foregoing, Customer acknowledges that: (i) no promise or commitment has been made to it by MLBFS, MLPF&S or any of their respective employees, agents or representatives to extend the availability of the WCMA Line of Credit or the Maturity Date, or to increase the Maximum WCMA Line of Credit, or to make any WCMA Loan on any terms other than as expressly set forth herein or to otherwise extend any other credit to Customer or any other party; (ii) no purported extension of the Maturity Date, increase in the Maximum WCMA Line of Credit or other extension or agreement to extend credit shall be valid or binding unless expressly set forth in a written instrument signed by MLBFS; and (iii) this Loan Agreement supersedes and replaces any and all proposals, letters of intent and approval and commitment letters from MLBFS to Customer, none of which shall be considered a Loan Document. No amendment or modification of any of the Loan Documents to which Customer is a party shall be effective unless in a writing signed by both MLBFS and Customer.

(q) Survival. All representations, warranties, agreements and covenants contained in the Loan Documents shall survive the signing and delivery of the Loan Documents, and all of the waivers made and indemnification obligations undertaken by Customer shall survive the termination, discharge or cancellation of the Loan Documents.

(r) Customer's Acknowledgments. The Customer acknowledges that the Customer: (i) has had ample opportunity to consult with counsel and such other parties as deemed advisable prior to signing and delivering this Loan Agreement and the other Loan Documents; (ii) understands the provisions of this Loan Agreement and the other Loan Documents, including all waivers contained therein; and (iii) signs and delivers this Loan Agreement and the other Loan Documents freely and voluntarily, without duress or coercion.

This Loan Agreement and the other Loan Documents are executed under seal and are intended to take effect as sealed instruments.

IN WITNESS WHEREOF, this Loan Agreement has been executed as of the day and year first above written.

PITTRA G.B. INTERNATIONAL, INC.

By: _____        _____        _____
       Signature (1)                      Signature (2)

       Arthur Kupperman              Paulette Krelman              E. Ross Browne
_____        _____
       Printed Name                      Printed Name

       President                      Secretary/Treasurer          Executive Vice President
_____        _____
       Title                            Title


Accepted at Chicago, Illinois:
MERRILL LYNCH BUSINESS FINANCIAL
SERVICES INC.

By: _____


-12-

**EXHIBIT A**

ATTACHED TO AND HEREBY MADE A PART OF WCMA LOAN AND SECURITY AGREEMENT NO. 871-07F72 BETWEEN MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. AND PITTRA G.B. INTERNATIONAL, INC.

Additional Locations of Tangible Collateral:

```
Diack Warehouse
110 Orchard Street
Hackensack, New Jersey


Industrial Cold Storage
1814 Industrial Avenue
Jacksonville, Florida


MCST Preferred Warehouse
145 Talmadge Road
Edison, New Jersey
```

**Merrill Lynch**                                    COMPLIANCE CERTIFICATE

To:  Merrill Lynch Business Financial Services Inc. ("MLBFS")
     222 North LaSalle Street
     17th Floor
     Chicago, IL 60601

The undersigned, on behalf of PITTRA G.B. INTERNATIONAL, INC. ("Customer"), hereby certifies to MLBFS that: (i) he/she is an officer authorized to execute and deliver this certificate on behalf of Customer, and is familiar with the business and financial condition of the Customer; (ii) the financial statements delivered with this Certificate fairly present in all material respects the results of operations and financial condition of Customer; and (iii) to the best of my knowledge and belief, after reasonable investigation, each of the following statements is true and correct as of the date hereof: (a) no Event of Default, or event which with the giving of notice, passage of time, or both, would constitute and Event of Default, has occurred or is continuing, (b) no material adverse change in the financial condition of Customer has occurred or is continuing, and (c) the attached annexations, which are hereby incorporated herein by reference, are accurate, true and correct, and do not fail to state any material fact known (or should have been known) to Customer which would, but for the lapse of time, make any such statement or calculation false in any respect.

**Date:** _____

_____
Signature

_____
Printed Name

_____
Title

**INSTRUCTIONS: IN ACCORDANCE WITH THE TERMS OF THE LOAN AGREEMENT (TO WHICH THIS ORIGINAL FORM OF COMPLIANCE CERTIFICATE IS ATTACHED AS EXHIBIT B), THIS COMPLIANCE CERTIFICATE AND THE ATTACHED ANNEXATIONS MUST BE COMPLETED BY YOU WITHIN 120 DAYS AFTER THE CLOSE OF EACH CALENDAR YEAR. MLBFS EXPECTS YOU TO MAKE COPIES OF THIS ORIGINAL FORM OF COMPLIANCE CERTIFICATE AND SEND THEM YEARLY TO MLBFS WITHOUT NOTIFICATION OR REMINDER. ADDITIONAL COPIES WILL BE PROVIDED TO YOU UPON REQUEST.**

**TOTAL DEBT TO EBITDA RATIO ANNEX**
**TO COMPLIANCE CERTIFICATE (Exhibit B to Loan Agreement)**

Customer's "Total Debt to EBITDA Ratio" shall at all times be less than 4.0 to 1. For purposes hereof, "Total Debt to EBITDA Ratio" shall mean the ratio of (a) all debt for borrowed money including all outstanding and unused availability under any revolving credit facility, and including debt to MLBFS, to (b) income before interest (including payments in the nature of interest under capital leases), taxes, depreciation, amortization, and other non-cash charges; all as set forth in Customer's regular Annual financial statements prepared in accordance with GAAP.

As of _____ (insert Annual end date):

(a) total debt for borrowed money                    $_____

Net after-tax income                                 $_____
taxes (+)            $_____
interest (+)                                          $_____
depreciation (+)     $_____
amortization (+)     $_____
other non-cash charges (+)                           $_____
(b) EBITDA (=)                                                              $_____

Total Debt to EBITDA Ratio (a/b)          _____ to 1.


In Compliance?    Yes / No

**MINIMUM TANGIBLE NET WORTH AND SUBORDINATED DEBT ANNEX
TO COMPLIANCE CERTIFICATE (Exhibit B to Loan Agreement)**

The sum of (x) Customer's aggregate subordinated debt and (y) Customer's "Tangible Net Worth," shall at all times exceed $1,000,000.00. For the purposes hereof, subordinated debt shall mean any debt of Customer for borrowed money which is subordinated in right of payment and is payable on terms and conditions junior to MLBFS. The term "Tangible Net Worth" shall mean Customer's net worth as shown on Customer's regular financial statements prepared in accordance with GAAP, but excluding an amount equal to: (i) any Intangible Assets, and (ii) any amounts now or hereafter directly or indirectly owing to Customer by officers, shareholders or affiliates of Customer. "Intangible Assets" shall mean the total amount of goodwill, patents, trade names, trade or service marks, copyrights, experimental expense, organization expense, unamortized debt discount and expense, the excess of cost of shares acquired over book value of related assets, and such other assets as are properly classified as "intangible assets" of the Customer determined in accordance with GAAP.

As of _____ (insert Annual end date):

Beginning Total Net Worth                               $_____

Distributions/advances/loans to
Shareholders, officers and affiliates (-)               $_____

Intangible Assets (-)   $_____

Subordinated Debt (+)                                   $_____

Tangible Net Worth and Subordinated Debt (=)                  $_____

In Compliance?    Yes / No

# Exhibit B

**Briick, Catherine (MLBFS-Chicago)**

From:       Arthur [akupperman@pittra.com]
Sent:       Tuesday, October 26, 2004 6:32 AM
To:         Vagelatos, Aaron (MLBFS - Chicago)
Subject:    A/R aging - 9/30/04



accounts receivable
  - Septembe...

Attached is the aging at September 30, 2004.


We anticipate receiving payment from Texas Fruit & Berry this week in
satisfaction of the judgment we hold against them.


Best regards
Arthur Kupperman
PITTRA G.B. International, Inc.
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax  973-401-9001

MLBFS 00957

Accounts receivable

PGB International LLC

September 30, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Able Sales | Puerto Rico | $30,732.50 | $30,732.50 | | | | | |
| Algood Foods Company | Kentucky | $24,196.40 | | $24,196.40 | | | | |
| All Juice Food & Beverage Corp. | North Carolina | $147,472.60 | $73,489.40 | $73,983.20 | | | | |
| Allen Canning | Louisiana | $81,281.20 | $81,281.20 | | | | | |
| Apple Valley/Old Orchard | Michigan | $271,304.82 | $136,432.42 | $134,872.40 | | | | |
| Arome Fleurs & Fruits | Canada | $2,076.00 | $2,076.00 | | | | | $2,076.00 |
| ATYB USA, Inc. | Ohio | $165,751.11 | $92,876.55 | $62,874.55 | | | | |
| Bakemark Industries | California | $11,064.22 | $11,064.22 | | | | | |
| Bell Marketing | Illinois | $39,302.76 | $24,190.42 | $15,112.34 | | | | |
| Carriage House Foods | New York | $191,621.64 | $102,867.43 | $88,794.21 | | | | |
| Cherry Growers | Michigan | $78,497.44 | $78,497.44 | | | | | |
| Citrofood Canada (Juices) | Canada | $24,874.24 | $24,874.24 | | | | | $24,874.24 |
| Clements Foods | Alabama | $81,442.70 | $60,678.40 | $20,764.30 | | | | |
| Continental Juices | Illinois | $8,965.53 | $8,965.53 | | | | | |
| Country Pure Foods | Connecticut | $252,978.50 | $128,763.90 | $124,215.60 | | | | |
| Del Monte Products | Pennsylvania | $289,339.91 | $147,432.55 | $141,907.35 | | | | |
| A. Dude & Sons | Florida | $40,778.43 | $40,778.43 | | | | | |
| Efco | New York | $35,081.80 | $10,098.40 | $24,983.40 | | | | |
| Fizzy Lizzy | New York | $3,735.30 | $2,487.10 | $1,248.20 | | | | |
| Florida Bottling Co. | Florida | $154,719.55 | $71,229.35 | $83,490.20 | | | | |
| Florida Bulk Sales | Florida | $76,341.27 | $76,341.27 | | | | | |
| Florida Distillers | Florida | $17,478.24 | $17,478.24 | | | | | |
| Givaudan Flavors | New Jersey | $32,669.20 | $32,669.20 | | | | | |

MLBFS 00958

Accounts receivable

PGB International LLC

September 30, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| GLCG Inc. | Michigan | $273,515.61 | $134,652.76 | $120,739.40 | $18,123.43 | | | |
| Golden Valley Foods | Vancouver, BC Canada | $185,767.99 | $102,567.23 | $83,190.46 | | | | $185,757.69 |
| Greenwood Associates | Illinois | $148,006.25 | $148,006.25 | | | | | |
| Gregory Packing | New Jersey | $373,456.67 | $180,763.44 | $192,673.23 | | | | |
| Henry & Henry, Inc | New York | $23,585.20 | $6,732.00 | $16,853.20 | | | | |
| H. J. Heinz of Canada Ltd. | Leamington, ON Canada | $267,028.64 | $90,789.32 | $176,239.32 | | | | $267,028.64 |
| H. R. Nicholson Co. | Maryland | $226,328.63 | $98,345.43 | $127,983.20 | | | | |
| Juice Products | Florida | $14,239.00 | $14,239.00 | | | | | |
| Knouse Foods Cooperative | Pennsylvania | $293,682.88 | $149,789.34 | $143,893.34 | | | | |
| Lakeside Food Sales, Inc. | Illinois | $127,572.38 | $73,888.38 | $53,684.00 | | | | |
| Langer Juice Co | California | $166,182.77 | $75,893.43 | $90,289.34 | | | | |
| Leahy Orchards | Canada | $7,601.60 | $7,601.60 | | | | | |
| Le'Nature's Inc. | Pennsylvania | $85,786.73 | $50,889.41 | $34,897.32 | | | | |
| Louis Dreyfus Citrus | Florida | $139,045.21 | $139,045.21 | | | | | |
| Majestic Foods | Illinois | $36,687.32 | $36,687.32 | | | | | |
| Maralon Import Agencies | Texas | $16,524.00 | $16,524.00 | | | | | |
| Mastertaste | Florida | $59,093.45 | $59,093.45 | | | | | |
| Mayer Brothers Apple Products | New York | $60,983.40 | $60,983.40 | | | | | |
| MIA Products | Pennsylvania | $5,425.22 | $5,425.22 | | | | | |
| The Minute Maid Company | Texas | $232,292.84 | $131,903.41 | $100,389.43 | | | | |
| Naumes | Washington | $91,370.71 | $34,589.43 | $56,781.28 | | | | |
| Nestle USA | California | $274,635.55 | $145,890.32 | $128,745.23 | | | | |
| Northland Cranberries | Wisconsin | $272,425.65 | $124,532.45 | $147,893.20 | | | | |

MLBFS 00959

Accounts receivable

PGB International LLC

September 30, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Organic Ingredients | Illinois | $29,698.50 | $29,698.50 | | | | | |
| Clement Pappas Co. | New Jersey | $364,406.00 | $183,412.58 | $180,993.42 | | | | |
| Portion-Pac | Ohio | $48,843.88 | $48,843.88 | | | | | |
| Riverside Foods | Wisconsin | $38,765.79 | $16,782.32 | $21,983.47 | | | | |
| Sethness-Greenleaf Inc. | Illinois | $44,095.74 | | $44,095.74 | | | | |
| E.D. Smith | Winona, ON Canada | $16,723.87 | | $16,723.87 | | | | $16,723.87 |
| Smucker Quality Beverages | Ohio | $79,345.89 | $79,345.89 | | | | | |
| International Suntrade Group Inc. | Toronto, ON Canada | $76,657.70 | $23,783.47 | $52,874.23 | | | | $76,657.70 |
| Switch Beverage Company | Pennsylvania | $104,875.07 | $80,094.56 | $24,780.51 | | | | |
| Texas Fruit & Berry | Texas | $18,745.70 | | | | $18,745.70 | Turned over to attorney | |
| Tropicana Products | Florida | $329,868.74 | $180,934.23 | $148,934.51 | | | | |
| Valley Processing | Washington | $77,891.23 | $77,891.23 | | | | | |
| Vitality Manufacturing | Canada | $31,240.00 | $31,240.00 | | | | | $31,240.00 |
| Totals | | $5,698,241.87 | $3,698,150.48 | $2,763,221.86 | $18,123.43 | $18,745.70 | | $606,356.14 |

| | |
|---|---|
| Less - foreign | -$606,356.14 |
| Less - over 90 days old | -$18,745.70 |
| Eligible receivables | $6,071,137.63 |
| Advance rate | 80.00% |
| Maximum loan | $4,856,910.26 |
| Credit facility | $3,750,000.00 |
| Term loan | $472,008.51 |
| Total | $4,222,008.51 |
| Excess (shortfall) | $634,901.75 |

MLBFS 00960

**Brück, Catherine (MLBFS-Chicago)**

| | |
|---|---|
| **From:** | Arthur Kupperman-PGB [akupperman@pgb-international.com] |
| **Sent:** | Wednesday, November 17, 2004 7:04 AM |
| **To:** | Vagelatos, Aaron (MLBFS - Chicago) |
| **Subject:** | Receivable aging |



accounts receivable
- October ...

   Aaron

Attached you will find the receivable aging as of October 31, 2004.

If you have any questions, please do not hesitate to let me know.


Best regards
Arthur Kupperman
PGB International LLC
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax  973-401-9001

Accounts receivable

PGB International LLC

October 31, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Able Sales | Puerto Rico | $61,466.00 | $61,466.00 | | | | | |
| Algood Foods Company | Kentucky | $25,720.89 | $25,720.89 | | | | | |
| All Juice Food & Beverage Corp. | North Carolina | $143,190.74 | $88,903.40 | $54,287.34 | | | | |
| Allen Canning | Louisiana | $77,459.10 | $77,459.10 | | | | | |
| Apple Valley/Old Orchard | Michigan | $286,383.75 | $178,490.30 | $107,893.45 | | | | |
| Aroma Fleurs & Fruits | Canada | $2,076.00 | | $2,076.00 | | | | $2,076.00 |
| ATYG USA, Inc. | Ohio | $135,021.89 | $100,893.43 | $34,128.46 | | | | |
| Bakemark Industries | California | $11,064.22 | | $11,064.22 | | | | |
| Bell Marketing | Illinois | $24,190.42 | | $24,190.42 | | | | |
| Carriage House Foods | New York | $213,578.43 | $110,691.00 | $102,887.43 | | | | |
| Cherry Growers | Michigan | $83,803.42 | $83,803.42 | | | | | |
| Citadel Canada (Juices) | Canada | $16,135.20 | $16,135.20 | | | | | $16,135.20 |
| Clements Foods | Alabama | $94,583.64 | $33,905.24 | $60,678.40 | | | | |
| Continental Juices | Illinois | $8,855.53 | | $8,855.53 | | | | |
| Country Pure Foods | Connecticut | $229,220.24 | $100,456.34 | $128,763.90 | | | | |
| Del Monte Products | Pennsylvania | $271,341.04 | $123,908.48 | $147,432.56 | | | | |
| A. Duda & Sons | Florida | $20,387.30 | | $20,387.30 | | | | |
| Elco | New York | $10,098.40 | | $10,098.40 | | | | |
| Florida Botting Co. | Florida | $134,125.67 | $62,896.32 | $71,229.35 | | | | |
| Florida Bulk Sales | Florida | $53,990.10 | $53,990.10 | | | | | |
| Florida Distillers | Florida | $17,478.24 | | $17,478.24 | | | | |
| Givaudan Flavors | New Jersey | $32,659.20 | | $32,659.20 | | | | |
| GLCC Inc. | Michigan | $263,681.27 | $129,028.49 | $134,652.78 | | | | |

MLBFS 00954

Accounts receivable

PGB International LLC

October 31, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Golden Valley Foods | Vancouver, BC Canada | $209,423.87 | $120,489.23 | $88,934.44 | | | | $209,423.87 |
| Greenwood Associates | Illinois | $148,006.25 | | $148,006.25 | | | | |
| Gregory Packing | New Jersey | $319,842.65 | $190,893.45 | $128,749.20 | | | | |
| Hemisphere Associated | New York | $1,032.00 | $1,032.00 | | | | | |
| Henry & Henry, Inc | New York | $6,732.00 | | $6,732.00 | | | | |
| H. J. Heinz of Canada Ltd. | Leamington, ON Canada | $171,163.65 | $80,374.33 | $90,789.32 | | | | $171,163.65 |
| H. R. Nicholson Co. | Maryland | $218,004.09 | $102,871.46 | $98,345.43 | $16,784.20 | | | |
| Juice Products | Florida | $28,908.34 | $28,908.34 | | | | | |
| JuicePac | Kentucky | $20,426.20 | $20,426.20 | | | | | |
| Knouse Foods Cooperative | Pennsylvania | $287,770.88 | $160,987.43 | $126,763.45 | | | | |
| Lakeside Food Sales, Inc. | Illinois | $147,376.70 | $73,688.32 | $73,688.38 | | | | |
| Langer Juice Co | California | $146,876.88 | $70,983.45 | $75,893.43 | | | | |
| Leahy Orchards | Canada | $7,601.60 | | $7,601.60 | | | | |
| Le'Nature's Inc. | Pennsylvania | $75,672.87 | $24,783.46 | $50,889.41 | | | | |
| Louis Dreyfus Citrus | Florida | $129,745.60 | $129,745.60 | | | | | |
| Majestic Foods | Illinois | $40,440.20 | $40,440.20 | | | | | |
| Marston Import Agencies | Texas | $16,524.00 | | $16,524.00 | | | | |
| Mastertaste | Florida | $60,541.50 | $60,541.50 | | | | | |
| Meyer Brothers Apple Produce | New York | $45,905.67 | $45,905.67 | | | | | |
| MIA Products | Pennsylvania | $5,426.22 | | $5,426.22 | | | | |
| The Minute Maid Company | Texas | $260,314.90 | $150,440.56 | $109,874.34 | | | | |
| Naumes | Washington | $94,928.96 | $60,339.83 | $34,589.43 | | | | |
| Nestle USA | California | $271,109.06 | $150,550.43 | $120,558.63 | | | | |

MLBFS 00955

Accounts receivable     PGB International LLC     October 31, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Northland Cranberries | Wisconsin | $225,021.90 | $100,468.45 | $124,532.45 | | | | |
| Organic Ingredients | Illinois | $29,696.60 | | $29,696.60 | | | | |
| Clement Pappas Co. | New Jersey | $346,225.90 | $178,342.56 | $167,883.34 | | | | |
| Portion-Pac | Ohio | $48,843.88 | | $48,843.88 | | | | |
| Riverside Foods | Wisconsin | $16,782.32 | | $16,782.32 | | | | |
| Smucker Quality Beverages | Ohio | $103,890.24 | $103,890.24 | | | | | |
| International Surfoods Group Inc. | Toronto, ON Canada | $23,783.47 | | $23,783.47 | | | | $23,783.47 |
| Switch Beverage Company | Pennsylvania | $177,259.80 | $100,239.34 | $76,915.28 | $105.00 | | | |
| Tropicana Products | Florida | $373,618.46 | $192,884.23 | $180,634.23 | | | | |
| Valley Processing | Washington | $60,676.32 | $60,676.32 | | | | | |
| Vitality Manufacturing | Canada | $31,240.00 | | $31,240.00 | | | | $31,240.00 |
| | | | | | | | | |
| Totals | | $6,387,846.20 | $3,917,877.04 | $2,853,078.96 | $16,888.20 | $0.00 | | $453,821.99 |
| | | | | | | | | |
| Less - foreign | | -$453,821.99 | | | | | | |
| Less - over 90 days old | | $0.00 | | | | | | |
| Eligible receivables | | $5,934,023.21 | | | | | | |
| Advance rate | | 80.00% | | | | | | |
| Maximum loan | | $4,747,218.57 | | | | | | |
| | | | | | | | | |
| Credit facility | | $3,725,698.00 | | | | | | |
| Term loan | | $466,965.00 | | | | | | |
| Total | | $4,192,621.00 | | | | | | |
| Excess (shortfall) | | $564,597.57 | | | | | | |

MLBFS 00956

**Brick, Catherine (MLBFS-Chicago)**

| | |
|---|---|
| **From:** | Arthur Kupperman-PGB [akupperman@pgb-international.com] |
| **Sent:** | Tuesday, December 14, 2004 6:04 AM |
| **To:** | Vagelatos, Aaron (MLBFS - Chicago) |
| **Subject:** | A/R aging - November 30 2004 |



accounts receivable
- November...
                    Aaron

Attached you will find the aging.


Best wishes for the holiday season.


Arthur Kupperman
PGB International LLC
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax  973-401-9001

MLBFS 00948

Accounts receivable

PGB International LLC

November 30, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| A. Duda Sons, Inc. | Florida | $43,160.14 | $43,160.14 | | | | | |
| Algood Foods Company | Kentucky | $57,470.40 | $57,470.40 | | | | | |
| All Juice Food & Beverage Corp. | North Carolina | $126,449.46 | $92,667.34 | $33,782.12 | | | | |
| Allen Canning | Louisiana | $62,398.45 | $62,398.45 | | | | | |
| Apple Valley/Old Orchard | Michigan | $271,084.98 | $182,990.42 | $88,094.56 | | | | |
| Arome Fleure & Fruits | Canada | $30,750.71 | $30,750.71 | | | | | $30,750.71 |
| ATYS USA, Inc. | Ohio | $168,823.55 | $67,930.12 | $100,893.43 | | | | |
| Betamark Industries | California | $11,084.22 | | | $11,084.22 | | | |
| Bell Marketing | Illinois | $27,732.32 | $27,732.32 | | | | | |
| Carriage House Foods | New York | $254,001.55 | $189,389.21 | $64,612.34 | | | | |
| Cherry Growers | Michigan | $16,070.40 | $16,070.40 | | | | | |
| Citadel Canada (Juices) | Canada | $49,044.54 | $32,909.34 | $16,135.20 | | | | $49,044.54 |
| Clements Foods | Alabama | $108,806.28 | $74,901.04 | $33,905.24 | | | | |
| Country Pure Foods | Connecticut | $227,805.40 | $127,349.06 | $100,456.34 | | | | |
| Del Monte Products | Pennsylvania | $222,843.04 | $98,734.58 | $123,908.46 | | | | |
| Dillman Farms | Indiana | $6,064.00 | $6,064.00 | | | | | |
| Florida Botting Co. | Florida | $141,541.55 | $78,645.23 | $62,896.32 | | | | |

MLBFS 00949

Accounts receivable     PGB International LLC     November 30, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Florida Bulk Sales | Florida | $49,087.54 | $49,087.54 | | | | | |
| Florida Distillers | Florida | $43,818.00 | $43,818.00 | | | | | |
| Givaudan Flavors | New Jersey | $32,659.20 | $32,659.20 | | | | | |
| GLCC Inc. | Michigan | $277,733.98 | $148,705.49 | $129,028.49 | | | | |
| Golden Valley Foods | Vancouver, BC Canada | $239,716.36 | $138,933.12 | $100,783.24 | | | | $239,716.36 |
| Greenwood Associates | Illinois | $41,841.92 | $41,841.92 | | | | | |
| Gregory Packing | New Jersey | $317,127.95 | $144,782.34 | $172,345.61 | | | | |
| Hemisphere Associated | New York | $3,456.00 | $3,456.00 | | | | | |
| Henry & Henry, Inc | New York | $9,906.00 | $9,906.00 | | | | | |
| H. J. Heinz of Canada Ltd. | Leamington, ON Canada | $140,461.67 | $60,087.34 | $80,374.33 | | | | $140,461.67 |
| H. R. Nicholson Co. | Maryland | $181,777.91 | $78,903.46 | $102,874.45 | | | | |
| Juice Products | Florida | $40,988.45 | $40,988.45 | | | | | |
| JuicePac | Kentucky | $20,428.20 | | $20,428.20 | | | | |
| Knouse Foods Cooperative | Pennsylvania | $326,151.75 | $190,278.41 | $135,873.34 | | | | |
| Lakeside Food Sales, Inc. | Illinois | $110,738.01 | $37,049.69 | $73,686.32 | | | | |
| Langer Juice Co | California | $103,181.79 | $32,198.34 | $70,983.45 | | | | |
| Le'Nature's Inc. | Pennsylvania | $44,595.58 | $19,812.10 | $24,783.48 | | | | |

MLBFS 00950

Accounts receivable

PGB International LLC

November 30, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Louis Dreyfus Citrus | Florida | $145,890.23 | $145,890.23 | | | | | |
| Majestic Foods | Illinois | $40,440.20 | | $40,440.20 | | | | |
| Marsion Import Agencies | Texas | $16,524.00 | | | $16,524.00 | | | |
| Mastertaste | Florida | $71,239.23 | $71,239.23 | | | | | |
| Mayer Brothers Apple Products | New York | $52,855.31 | $52,855.31 | | | | | |
| The Minute Maid Company | Texas | $301,523.87 | $168,734.62 | $132,789.25 | | | | |
| Naumes | Washington | $152,311.46 | $91,971.93 | $60,339.53 | | | | |
| Nesis USA | California | $322,801.90 | $172,351.47 | $150,550.43 | | | | |
| Northland Cranberries | Wisconsin | $167,838.76 | $67,349.31 | $100,489.45 | | | | |
| Out on a Limb | Maine | $2,280.00 | $2,280.00 | | | | | |
| Clement Pappas Co. | New Jersey | $380,126.04 | $201,783.48 | $178,342.56 | | | | |
| Portion-Pac | Ohio | $99,094.55 | $50,240.67 | | $48,843.88 | | | |
| Riverside Foods | Wisconsin | $20,093.23 | $20,093.23 | | | | | |
| S&P Marketing | Minnesota | $51,860.60 | $51,860.60 | | | | | |
| Smucker Quality Beverages | Ohio | $89,345.71 | $89,345.71 | | | | | |
| International Suntrade Group Inc. | Toronto, ON Canada | $32,007.10 | $32,007.10 | | | | | $32,007.10 |
| Switch Beverage Company | Pennsylvania | $220,462.79 | $120,223.45 | $100,239.34 | | | | |

**PGB International LLC**

November 30, 2004

Accounts receivable

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Tropicana Products | Florida | $381,140.78 | $184,906.17 | $176,234.61 | | | | |
| Valley Processing | Washington | $61,944.23 | $61,944.23 | | | | | |
| Yoders Cider Barn | Ohio | $5,445.00 | $5,445.00 | | | | | |
| Totals | | $6,413,056.27 | $3,851,333.87 | $2,476,272.30 | $76,452.10 | $0.00 | | $481,980.38 |
| Less - foreign | | -$481,980.38 | | | | | | |
| Less - over 90 days old | | $0.00 | | | | | | |
| Eligible receivables | | $5,921,077.89 | | | | | | |
| Advance rate | | 80.00% | | | | | | |
| Maximum loan | | $4,738,862.31 | | | | | | |
| Credit facility | | $3,711,647.66 | | | | | | |
| Term loan | | $443,066.24 | | | | | | |
| Total | | $4,154,713.90 | | | | | | |
| Excess (shortfall) | | $582,148.41 | | | | | | |

MLBFS 00952

**Briick, Catherine (MLBFS-Chicago)**

From:        Arthur [akupperman@pittra.com]
Sent:        Wednesday, January 19, 2005 7:41 AM
To:          Vagelatos, Aaron (MLBFS - Chicago)
Subject:     RE: Accounts receivable aging



accounts receivable
- December...
                    Sorry, I guess I did it again.

Sometimes the fingers just go too fast.


Best regards
Arthur Kupperman
PITTRA G.B. International, Inc.
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax   973-401-9001

MLBFS 00943

PITTRA G.B. International, Inc.

December 31, 2004

Accounts receivable

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Le*Nature's Inc. | Pennsylvania | $54,803.44 | $34,891.34 | $19,912.10 | | | | |
| Leahy Orchards | Canada | $7,844.00 | $7,844.00 | | | | | $7,844.00 |
| Louis Dreyfus Citrus | Florida | $167,341.49 | $167,341.49 | | | | | |
| Mastertaste | Florida | $100,381.13 | $100,381.13 | | | | | |
| MIA Products | Pennsylvania | $25,669.58 | $25,669.58 | | | | | |
| The Minute Maid Company | Texas | $291,021.50 | $152,117.83 | $138,903.67 | | | | |
| Mott's | Connecticut | $42,125.32 | $42,125.32 | | | | | |
| Naumes | Washington | $159,081.38 | $67,109.45 | $91,971.93 | | | | |
| Nestle USA | California | $307,767.46 | $163,874.19 | $143,893.28 | | | | |
| Northland Cranberries | Wisconsin | $68,135.81 | $20,789.30 | $67,349.51 | | | | |
| Out on a Limb | Maine | $2,280.00 | | $2,280.00 | | | | |
| Clement Pappas Co. | New Jersey | $360,647.03 | $187,348.36 | $173,298.67 | | | | |
| Pilgrim Foods/Old Dutch | New Hampshire | $72,039.80 | $72,039.60 | | | | | |
| Parfam-Pac | Ohio | $114,224.04 | $63,983.37 | $50,240.67 | | | | |
| Riverside Foods | Wisconsin | $41,960.34 | $41,960.34 | | | | | |
| S&P Marketing | Minnesota | $69,692.65 | $48,903.28 | $20,789.37 | | | | |
| Smucker Quality Beverages | Ohio | $63,901.23 | $63,901.23 | | | | | |
| International Sunrise Group Inc. | Toronto, ON Canada | $77,775.44 | $46,768.34 | $32,007.10 | | | | $77,775.44 |

MLBFS 00944

PITTRA G.B. International, Inc.

December 31, 2004

Accounts receivable

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| A. Dude Sons, Inc. | Florida | $58,941.48 | $25,781.34 | 43192.14 | | | | |
| Able Sales Co., Inc. | Puerto Rico | $24,991.20 | $24,991.20 | | | | | |
| Algood Foods Company | Kentucky | $91,910.41 | $68,129.09 | $23,781.32 | | | | |
| All Juice Food & Beverage Corp. | North Carolina | $126,154.70 | $81,063.34 | $45,091.36 | | | | |
| Allen Canning | Louisiana | $87,091.34 | $87,091.34 | | | | | |
| Apple Valley/Old Orchard | Michigan | $298,951.74 | $208,903.40 | $90,078.34 | | | | |
| Aroma Fleurs & Fruits | Canada | $30,750.71 | | $30,750.71 | | | | $30,750.71 |
| ATYS USA, Inc. | Ohio | $88,078.64 | $51,097.34 | $34,981.30 | | | | |
| Bakemark Industries | California | $18,734.00 | $18,734.00 | | | | | |
| Bell Marketing | Illinois | $22,904.30 | $22,904.30 | | | | | |
| Carriage House Foods | New York | $247,571.51 | $145,678.31 | $101,893.20 | | | | |
| Cherry Growers | Michigan | $34,080.34 | $34,080.34 | | | | | |
| Citadel Canada (Julcea) | Canada | $50,996.68 | $18,087.34 | $32,909.34 | | | | $50,996.68 |
| Clemens Foods | Alabama | $114,030.60 | $68,096.30 | $45,934.30 | | | | |
| Country Pure Foods | Connecticut | $229,242.39 | $101,893.33 | $127,349.06 | | | | |
| Del Monte Products | Pennsylvania | $207,082.79 | $108,348.23 | $98,734.56 | | | | |
| Dhivan Farms | Indiana | $144.00 | | $144.00 | | | | |
| Flazy Lizzy | New York | $4,827.00 | $4,827.00 | | | | | |

PITTRA G.B. International, Inc.

December 31, 2004

Accounts receivable

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Florida Bottling Co. | Florida | $169,538.35 | $90,893.12 | $78,645.23 | | | | |
| Florida Bulk Sales | Florida | $34,763.37 | $34,763.37 | | | | | |
| Florida Distillers | Florida | $87,628.00 | $43,818.00 | $43,818.00 | | | | |
| Ghaucian Flavors | New Jersey | $65,318.40 | $32,659.20 | $32,659.20 | | | | |
| GLCC Inc. | Michigan | $242,690.52 | $90,873.67 | $132,807.35 | $18,909.30 | | | |
| Golden Valley Foods | Vancouver, BC Canada | $261,227.16 | $162,897.38 | $98,329.78 | | | | $261,227.18 |
| Greenwood Associates | Illinois | $111,098.36 | $111,098.36 | | | | | |
| Gregory Packing | New Jersey | $297,653.40 | $152,871.06 | $144,782.34 | | | | |
| Hemisphere Associated | New York | $3,456.00 | | $3,456.00 | | | | |
| Henry & Henry, Inc | New York | $11,034.00 | $11,034.00 | | | | | |
| H. J. Heinz of Canada Ltd. | Leamington, ON Canada | $84,994.62 | $24,897.28 | $60,097.34 | | | | $84,994.62 |
| H. R. Nicholson Co. | Maryland | $171,998.23 | $93,094.78 | $78,903.45 | | | | |
| Ice Creamery | California | $7,275.16 | $7,275.16 | | | | | |
| Integrity Beverages | Minnesota | $16,209.36 | $16,209.36 | | | | | |
| Juice Products | Florida | $61,392.75 | $40,984.45 | $20,408.30 | | | | |
| JuicePlac | Kentucky | $39,097.34 | $39,097.34 | | | | | |
| Krouse Foods Cooperative | Pennsylvania | $364,207.09 | $192,108.73 | $172,098.36 | | | | |
| Lakeside Food Sales, Inc. | Illinois . | $85,030.92 | $48,991.23 | $37,046.69 | | | | |
| Langer Juice Co | California | $32,188.34 | | $32,188.34 | | | | |

Accounts receivable

PITTRA G.B. International, Inc.

December 31, 2004

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Supreme Manufacturing | New Jersey | $17,104.00 | $17,104.00 | | | | | |
| Switch Beverage Company | Pennsylvania | $211,096.79 | $90,873.34 | $120,223.45 | | | | |
| Tropicana Products | Florida | $322,069.12 | $172,390.78 | $149,678.34 | | | | |
| Valley Processing | Washington | $90,783.34 | $80,783.34 | | | | | |
| Vitality Foodservice of Canada | Canada | $31,396.00 | $31,396.00 | | | | | $31,396.00 |
| Yoders Cider Barn | Ohio | $35,205.00 | $29,760.00 | $5,445.00 | | | | |
| Totals | | $5,925,784.00 | $3,990,690.52 | $2,926,163.68 | $16,909.30 | $0.00 | | $544,976.51 |

Less - foreign   -$544,976.51
Less - over 90 days old   $0.00

Eligible receivables   $6,080,807.39

Advance rate   80.00%

Maximum loan   $4,864,645.91

Credit line   $3,748,349.21
Term loan   $429,177.35

Total   $4,177,726.56

Excess (Shortfall)   $686,919.35

MLBFS 00947

**Brück, Catherine (MLBFS-Chicago)**

From:          Arthur Kupperman-PGB [akupperman@pgb-international.com]
Sent:          Tuesday, February 22, 2005 6:26 AM
To:            Vagelatos, Aaron (MLBFS - Chicago)
Subject:       Accounts receivable - January 31, 2005



Accounts receivable
   - January ...

                    Aaron

Attached is the receivable listing at January 31, 2005.

After meeting with our accountants, I need to make a few minor adjustments
to the December 31, 2004 internal statement, which I hope to complete today.

They seem to have come up with a way to avoid the problem of the ratios.


Best regards
Arthur Kupperman
PGB International LLC
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax   973-401-9001

MLBFS 00928

PITTRA G.B. International, Inc.

January 31, 2005

Accounts receivable

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | Over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| A. Duda Sons, Inc. | Florida | $104,396.12 | $61,235.98 | $43,160.14 | | | | |
| Algood Foods Company | Kentucky | $70,910.20 | $36,781.30 | $34,128.90 | | | | |
| All Juice Food & Beverage Corp. | North Carolina | $150,110.54 | $59,017.20 | $91,093.34 | | | | |
| Allen Canning | Louisiana | $63,459.20 | $63,459.20 | | | | | |
| Apple Valley/Old Orchard | Michigan | $359,018.63 | $180,673.40 | $178,345.23 | | | | |
| ATYB USA, Inc. | Ohio | $79,886.73 | $62,204.34 | $16,782.38 | | | | |
| Basemark Industries | California | $28,634.56 | $28,634.56 | | | | | |
| Bell Marketing | Illinois | $22,904.30 | | $22,904.30 | | | | |
| Carriage House Foods | New York | $320,050.77 | $193,118.32 | $126,932.45 | | | | |
| Cherry Growers | Michigan | $52,389.12 | $52,389.12 | | | | | |
| Citrated Canada (Juices) | Canada | $18,087.34 | | $18,087.34 | | | | $18,087.34 |
| Clemens Foods | Alabama | $81,940.30 | $47,892.15 | $34,048.15 | | | | |
| Country Pure Foods | Connecticut | $229,214.11 | $127,300.78 | $101,903.33 | | | | |
| Del Monte Products | Pennsylvania | $198,022.57 | $110,893.23 | $87,129.34 | | | | |
| Florida Bottling Co. | Florida | $159,805.57 | $68,912.45 | $90,893.12 | | | | |
| Florida Bulk Sales | Florida | $21,781.34 | $21,781.34 | | | | | |
| Florida Distillers | Florida | $87,639.00 | $43,818.00 | $43,818.00 | | | | |

MLBFS 00929

Accounts receivable

PTTRA G.B. International, Inc.

January 31, 2005

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Givaudan Flavors | New Jersey | $32,659.20 | $32,659.20 | | | | | |
| GLCC Inc. | Michigan | $167,002.66 | $76,129.09 | $90,873.67 | | | | |
| Golden Valley Foods | Vancouver, BC Canada | $232,765.63 | $127,893.45 | $104,862.38 | | | | $232,765.63 |
| Greenwood Associates | Illinois | $47,891.20 | $47,891.20 | | | | | |
| Gregory Fleising | New Jersey | $281,774.51 | $128,903.45 | $152,871.06 | | | | |
| Henry & Henry, Inc | New York | $17,892.90 | $17,892.90 | | | | | |
| H. J. Heinz of Canada Ltd. | Leamington, ON Canada | $57,700.76 | $32,823.48 | $24,867.28 | | | | $57,700.76 |
| H. R. Nicholson Co. | Maryland | $185,105.59 | $73,781.90 | $93,094.76 | $18,228.01 | | | |
| Ice Creamery | California | $7,275.18 | | $7,275.16 | | | | |
| Integrity Beverages | Minnesota | $28,761.90 | $28,761.90 | | | | | |
| Juice Products | Florida | $53,765.46 | $32,782.34 | $20,983.12 | | | | |
| JulcePac | Kentucky | $39,087.34 | | $39,087.34 | | | | |
| Knouse Foods Cooperative | Pennsylvania | $369,721.87 | $203,339.97 | $166,381.90 | | | | |
| Lakeside Food Sales, Inc. | Illinois | $48,981.23 | | $48,981.23 | | | | |
| Langer Juice Co | California | $60,873.35 | $60,873.35 | | | | | |
| LaNature's Inc. | Pennsylvania | $53,995.50 | $20,094.66 | $34,591.34 | | | | |
| Leahy Orchards | Canada | $20,840.34 | $20,840.34 | | | | | $20,840.34 |
| Louis Dreyfus Citrus | Florida | $163,098.45 | $163,098.45 | | | | | |

MLBFS 00930

Accounts receivable

PITTRA Q.B. International, Inc.

January 31, 2005

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Maidstate | Florida | $50,663.36 | $50,663.36 | | | | | |
| M/A Products | Pennsylvania | $39,653.81 | $13,764.23 | $25,869.58 | | | | |
| The Minute Maid Company | Texas | $307,837.57 | $179,903.34 | $128,734.23 | | | | |
| Mott's | Connecticut | $42,125.32 | $42,125.32 | | | | | |
| Nestea | Washington | $98,202.90 | $31,093.45 | $67,109.45 | | | | |
| Nestle USA | California | $301,769.35 | $158,783.45 | $142,985.90 | | | | |
| Northland Cranberries | Wisconsin | $39,778.64 | $18,989.34 | $20,789.30 | | | | |
| Clement Pappas Co. | New Jersey | $319,671.57 | $172,889.23 | $146,782.34 | | | | |
| Pilgrim Foods/Old Dutch | New Hampshire | $73,291.59 | $48,901.23 | $24,390.36 | | | | |
| Portion-Pac | Ohio | $153,001.71 | $89,018.34 | $63,983.37 | | | | |
| Riverside Foods | Wisconsin | $41,960.34 | | $41,960.34 | | | | |
| S&P Marketing | Minnesota | $48,903.28 | | $48,903.28 | | | | |
| Smucker Quality Beverages | Ohio | $51,814.65 | $32,891.35 | $18,723.30 | | | | |
| International Bushtrade Group Inc. | Toronto, ON Canada | $74,552.79 | | $45,768.34 | | | | $74,552.79 |
| Supreme Manufacturing | New Jersey | $8,917.20 | $8,917.20 | | | | | |
| Switlon Beverage Company | Pennsylvanie | $179,747.95 | $67,891.30 | $90,873.34 | $20,983.31 | | | |
| Tropiana Products | Florida | $298,593.75 | $158,730.48 | $139,863.27 | | | | |

MLBFS 00931



PITTRA G.B. International, Inc.

January 31, 2005

**Accounts receivable**

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Valley Processing | Washington | $62,006.23 | $62,006.23 | | | | | |
| Vitality Foodservice of Canada | Canada | $31,398.00 | | $31,398.00 | | | | $31,398.00 |
| Yoder's Cider Barn | Ohio | $29,760.00 | | $29,760.00 | | | | |
| **Totals** | | $6,200,133.50 | $3,438,561.27 | $2,731,359.91 | $30,212.32 | $0.00 | | $435,455.06 |
| Less - foreign | | -$435,455.06 | | | | | | |
| Less - over 90 days old | | $0.00 | | | | | | |
| Eligible receivables | | $5,773,698.44 | | | | | | |
| Advance rate | | 80.00% | | | | | | |
| Maximum loan | | $4,618,958.75 | | | | | | |

| | | |
|---|---|---|
| Credit line | $3,714,460.02 | |
| Term loan | $415,288.46 | |
| Total | $4,129,748.48 | |
| Excess (Shortfall) | $489,210.27 | |

MLBFS 00932

**Briick, Catherine (MLBFS-Chicago)**

| | |
|---|---|
| **From:** | Arthur Kupperman-PGB [akupperman@pgb-international.com] |
| **Sent:** | Tuesday, February 22, 2005 10:18 AM |
| **To:** | Vagelatos, Aaron (MLBFS - Chicago) |
| **Subject:** | December 31 2004 statements |



December 31 2004
internal stat...        Sorry for the delay.


Let me know of any questions.


Best regards
Arthur Kupperman
PGB International LLC
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax  973-401-9001

MLBFS 00925

# PITTRA GB International, Inc.
## Balance Sheet
### December 31, 2004

| | | |
|---|--:|--:|
| Current assets: | | |
| Cash | $82,808 | |
| Accounts receivable | | |
| Direct sales | 6,625,784 | |
| Indirect sales | 408,782 | |
| Other accounts receivable | 302,127 | |
| Inventory | 632,127 | |
| Prepaid expenses | 12,109 | |
| | | |
| Total current assets | | $8,063,737 |
| | | |
| Equipment | | 52,905 |
| | | |
| Goodwill | | 500,000 |
| | | |
| Total assets | | $8,616,642 |
| | | |
| Current liabilities: | | |
| Due to Merrill Lynch-credit line | $3,748,549 | |
| Due to Merrill Lynch-term loan current | 166,667 | |
| Accounts payable | 1,218,613 | |
| Accrued expenses | 87,228 | |
| | | |
| Total current liabilities | | $5,221,057 |
| | | |
| Other liabilities: | | |
| Due to Merrill Lynch-term loan non-current | 429,177 | |
| Subordinated loans | 542,748 | |
| | | 971,925 |
| | | |
| Total liabilities | | 6,192,982 |
| | | |
| Stockholder equity | | |
| Capital stock | 15,000 | |
| Additional paid in capital | 2,039,185 | |
| Retained earnings | 369,475 | |
| | | |
| Total stockholder equity | | 2,423,660 |
| | | |
| Total liabilities and equity | | $8,616,642 |

MLBFS 00926

## PITTRA GB International, Inc.
### Statement of income
### For the three months ended December 31, 2004

| | | |
|---|---|---|
| Sales | | $11,359,902 |
| Cost of sales | | 10,692,958 |
| Gross profit | | 666,944 |
| Commission income: | | |
| Sales value | $1,301,602 | |
| Cost of sales | 1,242,470 | |
| Net commission income | | 59,132 |
| Operating income | | 726,076 |
| Selling, general, and administrative expenses | | 601,367 |
| Income before provision for taxes | | $124,709 |

MLBFS 00927

**Briick, Catherine (MLBFS-Chicago)**

| | |
|---|---|
| From: | Arthur [akupperman@pittra.com] |
| Sent: | Tuesday, March 15, 2005 3:13 PM |
| To: | Vagelatos, Aaron (MLBFS - Chicago) |
| Subject: | Accounts Receivable |



Accounts receivable
- February...        Aaron

Attached is the aging of accounts receivable at February 28, 2005.

If you have any questions, please do not hesitate to let me know.


Best regards
Arthur Kupperman
PITTRA G.B. International, Inc.
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax  973-401-9001

MLBFS 00920

PITTRA G.B. International, Inc.

February 26, 2005

Accounts receivable

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 89 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| A. Duda Sons, Inc. | Florida | $57,456.57 | $28,783.12 | $28,673.45 | | | | |
| Alpeod Foods Company | Kentucky | $78,345.23 | $78,345.23 | | | | | |
| All Juice Food & Beverage Corp. | North Carolina | $108,108.54 | $39,098.34 | $69,017.20 | | | | |
| Allen Canning | Louisiana | $72,890.34 | $72,890.34 | | | | | |
| Apple Valley/Old Orchard | Michigan | $304,617.71 | $167,834.34 | $136,783.37 | | | | |
| Arome Fleurs & Fruits | Canada | $4,347.00 | $4,347.00 | | | | | $4,347.00 |
| ATYB USA, Inc. | Ohio | $106,797.87 | $58,904.44 | $47,893.43 | | | | |
| Belsmark Industries | California | $26,934.58 | | $26,934.58 | | | | |
| Bell Marketing | Illinois | $10,288.34 | $10,288.34 | | | | | |
| C&G Julce Products, Inc. | Canada | $17,301.60 | $17,301.60 | | | | | $17,301.60 |
| Carriage House Foods | New York | $326,274.40 | $162,781.18 | $163,493.22 | | | | |
| Cherry Growers | Michigan | $82,980.34 | $82,980.34 | | | | | |
| Clements Foods | Alabama | $65,703.79 | $37,830.34 | $27,873.45 | | | | |
| Country Pure Foods | Connecticut | $228,126.57 | $88,812.34 | $127,320.78 | $12,893.45 | | | |
| Danisco | Florida | $27,964.00 | $27,964.00 | | | | | |
| Del Monte Products | Pennsylvania | $181,835.01 | $93,345.78 | $63,489.23 | | | | |
| Efco | New York | $19,622.60 | $19,622.60 | | | | | |

MLBFS 00921

**PITTPA G.B. International, Inc.**

February 28, 2005

**Accounts receivable**

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Ex-Cards | California | $33,328.25 | $33,328.25 | | | | | |
| Florida Bottling Co. | Florida | $117,676.68 | $48,784.23 | $68,912.45 | | | | |
| Florida Bulk Sales | Florida | $37,645.23 | $37,645.23 | | | | | |
| Florida Distileys | Florida | $44,061.00 | $44,061.00 | | | | | |
| Foremost Farms | Wisconsin | $42,765.38 | $42,765.38 | | | | | |
| GLCC Inc. | Michigan | $117,603.09 | $46,060.34 | $70,342.75 | $7,220.90 | | | |
| Golden Valley Foods | Vancouver, BC Canada | $211,636.21 | $113,288.34 | $98,348.87 | | | | $211,636.21 |
| Gregory Packing | New Jersey | $263,887.79 | $134,984.34 | $128,903.45 | | | | |
| Henry & Henry, Inc | New York | $56,636.13 | $38,743.23 | $17,892.90 | | | | |
| H. J. Heinz of Canada Ltd. | Leamington, ON Canada | $71,676.93 | $38,783.45 | $32,893.48 | | | | $71,676.93 |
| H. R. Nicholson Co. | Maryland | $161,977.57 | $83,094.45 | $58,723.12 | $20,160.00 | | | |
| Ice Creamery | California | $7,275.18 | | | $7,275.18 | | | |
| Integrity Beverages | Minnesota | $28,761.90 | | $28,761.90 | | | | |
| Juice Products | Florida | $66,253.68 | $40,904.45 | $25,349.23 | | | | |
| JuicePaz | Kentucky | $76,904.45 | $76,904.45 | | | | | |
| Knouse Foods Cooperative | Pennsylvania | $385,693.72 | $198,348.27 | $187,345.45 | | | | |
| Lakeside Food Sales, Inc. | Illinois | $36,868.69 | $36,868.69 | | | | | |
| Langer Juice Co | California | $40,904.34 | $40,904.34 | | | | | |

MLBFS 00922

Accounts receivable

PITTRA G.B. International, Inc.

February 28, 2005

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Le*Nature's Inc. | Pennsylvania | $65,097.83 | $36,783.23 | $22,694.30 | | | | |
| Leahy Orchards | Canada | $11,357.52 | $11,357.52 | | $5,300.10 | | | |
| Louis Dreyfus Citrus | Florida | $196,345.12 | $196,345.12 | | | | | $11,357.52 |
| Mastertaste | Florida | $49,894.45 | $49,894.45 | | | | | |
| MIA Products | Pennsylvania | $17,717.29 | $3,933.06 | $13,784.23 | | | | |
| The Minute Maid Company | Texas | $333,670.54 | $187,324.56 | $146,345.98 | | | | |
| Mott's | Connecticut | $63,497.45 | $63,497.45 | | | | | |
| Naumes | Washington | $31,093.45 | | $31,093.45 | | | | |
| Nestle USA | California | $291,273.24 | $153,438.90 | $127,834.34 | | | | |
| Northland Cranberries | Wisconsin | $47,592.68 | $28,903.34 | $18,689.34 | | | | |
| Clement Pappas Co. | New Jersey | $283,273.92 | $164,290.47 | $128,983.45 | | | | |
| Pilgrim Foods/Old Dutch | New Hampshire | $83,380.23 | $59,486.00 | $23,894.23 | | | | |
| Portion-Pac | Ohio | $119,133.44 | $56,239.10 | $62,894.34 | | | | |
| Smucker Quality Beverages | Ohio | $59,995.79 | $40,983.45 | $18,962.34 | | | | |
| International Suntrade Group Inc. | Toronto, ON Canada | $74,657.68 | $45,873.23 | $28,784.45 | | | | $74,657.68 |
| Sunny Delight Beverage | Pennsylvania | $82,592.08 | $82,592.08 | | | | | |
| Supreme Manufacturing | New Jersey | $7,104.00 | $7,104.00 | | | | | |

MLBFS 00923

PITTRA G.B. International, Inc.

February 28, 2005

Accounts receivable

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Switch Beverage Company | Pennsylvania | $116,674.63 | $48,963.33 | $67,691.30 | | | | |
| Tropicana Products | Florida | $296,666.67 | $169,093.33 | $127,573.34 | | | | |
| Valley Processing | Washington | $49,093.24 | $49,093.24 | | | | | |
| Vitality Foodservice of Canada | Canada | $32,809.10 | $32,809.10 | | | | | $32,809.10 |
| | | | | | | | | |
| Totals | | $5,627,842.56 | $3,545,678.53 | $2,229,214.40 | $37,949.63 | $0.00 | | $421,785.04 |
| Less - foreign | | -$421,785.04 | | | | | | |
| Less - over 90 days old | | $0.00 | | | | | | |
| Eligible receivables | | $5,406,057.52 | | | | | | |
| Advance rate | | 80.00% | | | | | | |
| Maximum loan | | $4,324,846.02 | | | | | | |
| Outstanding: | | | | | | | | |
| Credit line | | $3,749,460.00 | | | | | | |
| Term loan | | $401,399.00 | | | | | | |
| Term loan | | $4,150,859.00 | | | | | | |
| Excess | | $173,987.02 | | | | | | |

MLBFS 00924

**Briick, Catherine (MLBFS-Chicago)**

| | |
|---|---|
| From: | Arthur [akupperman@pittra.com] |
| Sent: | Monday, May 09, 2005 1:48 PM |
| To: | Vagelatos, Aaron (MLBFS - Chicago) |
| Subject: | March 31 2005 financial statement |



PITTRA GB March
31 2005.tif

Aaron -

Hope all is well.

Attached you will find the March 31, 2005 internal financial statement.

The April 31, 2005 accounts receivable schedule will be furnished in the next few days.

If you have any questions, please do not hesitate to let me know.

Best regards
Arthur Kupperman
PITTRA G.B. International, Inc.
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax  973-401-9001

MLBFS 00917

# PITTRA GB International, Inc.
## Balance Sheet
### March 31, 2005

| | | |
|---|---:|---:|
| Current assets: | | |
| Cash | $150,675 | |
| Accounts receivable | | |
| Direct sales | 5,977,141 | |
| Indirect sales | 276,387 | |
| Other accounts receivable | 263,408 | |
| Inventory | 981,298 | |
| Prepaid expenses | 30,904 | |
| | | |
| Total current assets | | $7,679,813 |
| | | |
| Equipment | | 52,905 |
| | | |
| Goodwill | | 500,000 |
| | | |
| Total assets | | $8,232,718 |
| | | |
| | | |
| Current liabilities: | | |
| Due to Merrill Lynch-credit line | $3,746,495 | |
| Due to Merrill Lynch-term loan current | 166,667 | |
| Accounts payable | 802,278 | |
| Accrued expenses | 20,705 | |
| | | |
| Total current liabilities | | $4,736,145 |
| | | |
| Other liabilities: | | |
| Due to Merrill Lynch-term loan non-current | 387,510 | |
| Subordinated loans | 542,748 | |
| | | 930,258 |
| | | |
| Total liabilities | | 5,666,403 |
| | | |
| Stockholder equity | | |
| Capital stock | 15,000 | |
| Additional paid in capital | 2,039,185 | |
| Retained earnings | 512,130 | |
| | | |
| Total stockholder equity | | 2,566,315 |
| | | |
| Total liabilities and equity | | $8,232,718 |

MLBFS 00918

## PITTRA GB International, Inc.
### Statement of income
### For the six months ended March 31, 2005

| | | |
|---|---|---|
| Sales | | $22,324,852 |
| Cost of sales | | 21,034,029 |
| Gross profit | | 1,290,823 |
| Commission income: | | |
| Sales value | $1,637,204 | |
| Cost of sales | 1,574,172 | |
| Net commission income | | 63,032 |
| Operating income | | 1,353,855 |
| Selling, general, and administrative expenses | | 1,086,491 |
| Income before provision for taxes | | $267,364 |

MLBFS 00919

**Briick, Catherine (Merrill Lynch Banks U.S.)**

| | |
|---|---|
| **From:** | Arthur [akupperman@pittra.com] |
| **Sent:** | Monday, May 09, 2005 1:48 PM |
| **To:** | Vagelatos, Aaron (MLBFS - Chicago) |
| **Subject:** | March 31 2005 financial statement |



PITTRA GB March
31 2005.tif (7...        Aaron -

Hope all is well.

Attached you will find the March 31, 2005 internal financial statement.

The April 31, 2005 accounts receivable schedule will be furnished in the
next few days.

If you have any questions, please do not hesitate to let me know.

Best regards
Arthur Kupperman
PITTRA G.B. International, Inc.
6 South Street      Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax  973-401-9001

1

**Briick, Catherine (MLBFS-Chicago)**

From:          Arthur Kupperman [akupperman@pgb-international.com]
Sent:          Thursday, May 12, 2005 9:37 AM
To:            Vagelatos, Aaron (MLBFS - Chicago)
Subject:       Accounts receivable - April 30



PITTRA accounts
receivable - A...

        Aaron

Attached you will find the accounts receivable aging as of April 30.

If you have any questions, please do not hesitate to let me know.


Best regards
Arthur Kupperman
PITTRA G.B. International Inc.
6 South Street    Suite 301
Morristown, NJ 07960 USA
Phone  973-401-9000
Fax  973-401-9001

MLBFS 00912

Accounts receivable

PITTRA G.B. International, Inc.

April 30, 2008

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| A. Duda Sons, Inc. | Florida | $22,829.00 | $22,829.00 | | | | | |
| Abbotford Growers | Canada | $62,396.40 | | | | | | $62,396.40 |
| Allgood Foods Company | Kentucky | $101,789.46 | $68,918.34 | $32,871.12 | | | | |
| All Juice Food & Beverage Corp. | North Carolina | $132,453.42 | $92,182.30 | $40,281.12 | | | | |
| Allen Canning | Louisiana | $125,087.62 | $90,897.32 | $34,190.30 | | | | |
| Apple Valley/Old Orchard | Michigan | $267,968.62 | $198,734.45 | $70,234.17 | | | | |
| ATYS USA, Inc. | Ohio | $55,513.90 | $38,902.10 | $16,611.80 | | | | |
| Belamark Industries | California | $12,903.46 | | $12,903.45 | | | | |
| Bel Marketing | Illinois | $47,430.53 | $32,904.30 | $14,526.23 | | | | |
| Beltere International Foods, Inc. | New York | $8,984.80 | $8,984.80 | | | | | |
| Carriage House Foods | New York | $302,271.88 | $170,289.34 | $131,982.54 | | | | |
| Cherry Growers | Michigan | $91,061.12 | $91,061.12 | | | | | |
| Citrusol | Canada | $34,718.40 | $34,718.40 | | | | | $34,718.40 |
| Clemens Foods | Alabama | $40,763.33 | | $40,763.33 | | | | |
| Country Pure Foods | Connecticut | $246,192.70 | $173,209.34 | $72,983.36 | | | | |
| Dentco | Florida | $29,162.96 | $29,162.96 | | | | | |
| Del Monte Products | Pennsylvania | $100,899.67 | | $97,919.23 | | | | |
| E & J Gallo | California | $115,518.45 | $115,518.45 | | | | | |

MLBFS 00913

**Accounts receivable**

**PITTRA G.B. International, Inc.**

April 30, 200

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Emerling International | New York | $12,266.84 | $12,266.84 | | | | | |
| Es-Corte | California | $27,988.84 | $14,660.59 | $13,328.28 | | | | |
| Fizzy Lizzy | New York | $5,973.00 | | $5,973.00 | | | | |
| Florida Bottling Co. | Florida | $96,579.47 | $72,389.24 | $24,190.23 | | | | |
| Florida Bulk Sales | Florida | $127,126.37 | $97,345.13 | $29,781.24 | | | | |
| Foremost Farms | Wisconsin | $43,476.96 | $18,575.86 | $24,901,12 | | | | |
| Fruit D'Or | Canada | $34,323.26 | | $34,323.26 | | | | $34,323.26 |
| GLCC Inc. | Michgan | $123,440.65 | $95,984.65 | $27,456.00 | | | | |
| Golden Valley Foods | Vancouver, BC Canada | $178,321.79 | $100,192.45 | $78,129.34 | | | | $178,321.79 |
| Gregory Packing | New Jersey | $274,365.23 | $183,491.89 | $90,873.34 | | | | |
| Hemisphere Associated | New York | $3,486.00 | | $3,486.00 | | | | |
| Henry & Henry, Inc | New York | $127,891.46 | $89,110.34 | $38,781.12 | | | | |
| H. J. Heinz of Canada Ltd. | Leamington, ON Canada | $48,924.65 | $10,012.20 | $38,912.45 | | | | $48,924.65 |
| H. R. Nicholson Co. | Maryland | $165,412.69 | $102,803.23 | $67,129.23 | $15,390.23 | | | |
| Ice Creamery | California | $7,275.16 | | | | $7,275.16 PACA client to collect | | |
| Integrity Beverages | Minnesota | $49,763.57 | $31,901.12 | $17,862.45 | | | | |
| Juice Products | Florida | $85,416.62 | $34,129.12 | $51,289.50 | | | | |
| JuicePlus | Kentucky | $151,278.46 | $90,178.16 | $61,100.30 | | | | |

MLBFS 00914

April 30, 2008

PITTRA O.B. International, Inc.

Accounts receivable

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Juice Tyme | Illinois | $102,090.36 | $102,090.36 | | | | | |
| Knouse Foods Cooperative | Pennsylvania | $386,160.42 | $205,819.12 | $180,341.30 | | | | |
| Lakeside Food Sales, Inc. | Illinois | $38,898.89 | $38,898.89 | | | | | |
| Langer Juice Co | California | $128,208.52 | $87,290.40 | $40,918.12 | | | | |
| La*Nature's Inc. | Pennsylvania | $117,368.62 | $80,916.12 | $36,450.60 | | | | |
| Louis Dreyfus Citrus | Florida | $208,190.23 | $208,190.23 | | | | | |
| Mastantasia | Florida | $68,190.13 | $68,190.13 | | | | | |
| MIA Products | Pennsylvania | $3,933.06 | | | $3,933.06 | | | |
| The Minute Maid Company | Texas | $408,166.63 | $240,919.40 | $167,247.23 | | | | |
| Mott's | Connecticut | $134,226.89 | $92,119.26 | $42,107.64 | | | | |
| Naumes | Washington | $87,693.54 | $37,691.20 | $50,002.34 | | | | |
| Nestle USA | California | $284,002.89 | $173,001.34 | $110,001.25 | | | | |
| Clement Pappas Co. | New Jersey | $304,807.68 | $163,980.34 | $140,827.34 | | | | |
| Pilgrim Foods/Old Dutch | New Hampshire | $39,199.34 | $39,199.34 | | | | | |
| Portion-Pac | Ohio | $24,785.24 | $24,785.24 | | | | | |
| Smucker Quality Beverages | Ohio | $55,572.46 | $39,783.34 | $15,789.12 | | | | |
| International Sunrise Group Inc. | Toronto, ON Canada | $50,740.48 | $48,009.20 | $31,831.28 | | | | $50,740.48 |
| Sunny Delight Beverages | Pennsylvania | $70.55 | | | $70.55 | | | |

MLBFS 00915

Accounts receivable

PITTRA G.B. International, Inc.

April 30, 2005

| Customer | City and State | Total | Current | 30 - 59 | 60 - 89 | over 90 | Comments | Foreign |
|---|---|---|---|---|---|---|---|---|
| Supreme Manufacturing | New Jersey | $24,117.29 | $24,117.29 | | | | | |
| Switch Beverage Company | Pennsylvania | $161,309.53 | $90,034.23 | $61,275.30 | | | | |
| Treplona Produce | Florida | $341,166.62 | $220,783.34 | $120,383.18 | | | | |
| Turner Head | California | $43,224.00 | $43,224.00 | | | | | |
| Valley Processing | Washington | $71,229.40 | $71,229.40 | | | | | |
| Yoder Foods | Ohio | $3,912.00 | $3,912.00 | | | | | |
| | | | | | | | | |
| Totals | | $4,874,320.93 | $4,396,784.74 | $2,160,887.17 | $119,393.84 | $7,275.18 | | $437,394.97 |
| | | | | | | | | |
| Less - foreign | | -$437,394.97 | | | | | | |
| Less - over 90 days old | | -$7,275.18 | | | | | | |
| | | | | | | | | |
| Eligible receivables | | $4,129,650.78 | | | | | | |
| | | | | | | | | |
| Advance rate | | 80.00% | | | | | | |
| | | | | | | | | |
| Maximum advance | | $4,903,720.62 | | | | | | |
| | | | | | | | | |
| Outstanding: | | | | | | | | |
| Credit line | | $3,746,230.00 | | | | | | |
| Term loan | | $373,621.23 | | | | | | |
| | | $4,119,851.23 | | | | | | |
| | | | | | | | | |
| Excess available | | $784,869.39 | | | | | | |

MLBFS 00916

# Exhibit C

FROM PITTRA G.B. Intl 973 660 1070                    (THU)JAN 2 2003 7:53/ST. 7:52/NO. 6320062744 P 1

# PIT TRA   G.B. Inter ntional,   Inc .

123 Madison Avenue
Madison, New Jersey 07940 USA

*Telefax transmission*

---

Date:        1/2/03

To:          Merrill Lynch Business Financial Services
             Jessica Schultz
             Phone:     [1] 312-499-3056
             Fax:       [1] 312-499-3256

From:        Arthur Kupperman
             Phone:     [1] 973-660-1060
             Fax:       [1] 973-660-1040
             E-mail:    akupperman@pittra.com

Pages:       *10, including this cover page*

---

Subject:     **Financial statement**

Attached you will find a copy of the audited statement.

Please note the differences between this report and the previous internal report relate to accruals of bonuses and taxes on income.

If you have any questions, please do not hesitate to contact me.

FROM PITTRA G.B. Intl  973 660 1070          (THU)JAN  2 2003  7:53/ST. 7:52/NO. 6320062744 P  2



**AMPER, POLITZINER & MATTIA** P.A.
CERTIFIED PUBLIC ACCOUNTANTS
and CONSULTANTS

EDISON, NEW JERSEY
(732) 287-1000

PRINCETON, NEW JERSEY
(609) 897-0200

FLEMINGTON, NEW JERSEY
(908) 782-3011

MONMOUTH SHORES CORPORATE PARK
1350 CAMPUS PARKWAY
P.O. BOX 1728
WALL, NJ 07719

(732) 919-1400
FAX (732) 919-6230

Independent Auditors' Report

Board of Directors
PITTRA G. B. International, Inc.

We have audited the accompanying balance sheet of PITTRA G. B. International, Inc. as of September 30, 2002, and the related statements of income and retained earnings, and cash flows for the year then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of PITTRA G. B. International, Inc. as of September 30, 2002, and the results of its operations and cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.

*Amper, Politziner & Mattia P.A.*

AMPER, POLITZINER & MATTIA P.A.

December 12, 2002
Wall, New Jersey

MEMBERS OF AICPA DIVISION FOR CPA FIRMS - SEC AND PRIVATE COMPANIES PRACTICE SECTIONS

PITTRA G. B. INTERNATIONAL, INC.
Balance Sheet
September 30, 2002

Assets

| | | |
|---|---|---|
| **Current assets:** | | |
| Cash | | $204,372 |
| Accounts receivable: | | |
| Direct sales | $3,581,348 | |
| Indirect sales | 1,612,408 | |
| Other accounts receivable | 397,042 | |
| Total accounts receivable | | 5,590,798 |
| Inventory | | 1,418,283 |
| Income paid in advance | | 325,280 |
| Prepaid expenses and other current assets | | 103,963 |
| | | $7,642,696 |
| Furniture and equipment | | 41,443 |
| Goodwill | | 500,000 |
| | | $8,184,139 |

Liabilities and Stockholders' Equity

| | |
|---|---|
| **Current liabilities:** | |
| Asset based loan payable | $1,625,384 |
| Accounts payable | 3,739,297 |
| Accrued expenses | 813,132 |
| Total current liabilities | 6,177,813 |
| Subordinated debt payable | 542,748 |
| Total liabilities | 6,720,561 |
| **Stockholders's equity** | |
| Common stock, no par value | |
| 100 shares authorized, issued and outstanding | 15,000 |
| Additional paid-in capital | 1,239,185 |
| Retained earnings | 209,393 |
| | 1,463,578 |
| | $8,184,139 |

See accompanying notes to financial statements

-2-

## G. B. INTERNATIONAL, INC.
### Statements of Income and Retained Earnings
### For the Year Ended September 30, 2002

| | | |
|---|--:|--:|
| Sales: | | |
| Direct | $32,476,401 | |
| Commissionable | 15,387,208 | |
| | | $47,863,609 |
| Cost of sales | | |
| Direct | 30,647,557 | |
| Commissionable | 14,654,284 | |
| | | 45,301,841 |
| Gross profit | | 2,561,768 |
| Selling, general and administrative expenses | | 2,028,220 |
| Income from operations | | 533,548 |
| Other expense | | |
| Interest expense | | 132,408 |
| Financing commissions | | 63,247 |
| Total | | 195,655 |
| Income before provision for income taxes | | 337,893 |
| Provision for income taxes | | 128,500 |
| Net income | | 209,393 |
| Retained earnings - beginning | | 0 |
| Retained earnings - ending | | $209,393 |

See accompanying notes to financial statements

-3-

FROM PITTRA G.B. Intl  973 660 1070          (THU)JAN  2 2003  7:53/ST. 7:52/NO. 6320062744 P  5

PITTRA G. B. INTERNATIONAL, INC.
Statement of Cash Flows
For the Year Ended September 30, 2002

| | |
|---|---:|
| Cash flows from operating activities: | |
| Net income | $209,393 |
| Adjustments to reconcile net income to net | |
| cash from operating activities | |
| Depreciation and amortization | 822,488 |
| (Increase) in: | |
| Accounts receivable | (5,590,798) |
| Inventory | (1,418,283) |
| Income paid in advance | (325,280) |
| Prepaid expenses and other current assets | (103,963) |
| Increase in: | |
| Accounts payable | 3,739,297 |
| Accrued expenses | 813,132 |
| Total adjustments | (2,876,539) |
| Cash flow (used in) operations | (2,667,146) |
| Cash flows from investing activities: | |
| Acquisition of furniture and equipment | (50,799) |
| Goodwill paid in connection with acquisition | (500,000) |
| Cash flows provided by (used in) investing activities | (550,799) |
| Cash flows from financing activities: | |
| Net increase in asset based loans payable | 1,625,384 |
| Proceeds from subordinated debt | 542,748 |
| Proceeds from sale of common stock | 1,254,185 |
| Cash flows provided by (used in) financing activities | 3,422,317 |
| Net change in cash | 204,372 |
| Cash - beginning | 0 |
| Cash - ending | $204,372 |
| Supplemental disclosures of cash paid: | |
| Interest | $124,787 |

See accompanying notes to financial statements

-4-

PITTRA G. B. INTERNATIONAL, INC.

Notes to Financial Statements

Note 1   Organization

The company was incorporated in October 2001 to acquire the net assets of G.B. International, Inc. and simultaneously acquire accounts receivable, inventory and the goodwill of the PITTRA division of Camerican International, Inc.

In connection with the acquisitions, the amounts paid in excess of the net book value have been recorded as goodwill.

Note 2   Summary of significant accounting policies

Operations

PITTRA G.B. International, Inc. (the "Company") is primarily an importer and distributor of fruit juice concentrates. The company imports the concentrates primarily from countries in Europe, Asia, Africa, and South America. Distribution of the concentrates is principally to companies located throughout the United States. Credit is granted to substantially all customers, the majority of whom are in the juice industry.

Use of estimates

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

Revenue Recognition

Revenue is recognized upon shipment to customers.

PITTRA G. B. INTERNATIONAL, INC.

Notes to Financial Statements

Note 2    Inventory

Inventory, consisting primarily of fruit juice concentrates, is stated at the lower or cost (determined on a specific identity basis) or market.

Furniture and Equipment

Furniture and equipment are stated at cost, less accumulated depreciation.  Depreciation is provided over the estimated useful lives of the assets as follows:

| Equipment | Declining balance | 5 year estimated useful life |
| Furniture | Declining balance | 5 -10 year estimated useful life |

Note 3    Concentration of Cash Balances

The Company maintains its cash in bank deposit accounts which, at times, may exceed federally insured limits.  The Company has not experienced any losses in such accounts. The Company believes it is not exposed to any significant credit risk on cash and equivalents.

Note 4    Prepaid Expense and Other Current Assets

| Prepaid insurance | $84,673 |
| Prepaid - miscellaneous | 29,390 |
| Total | $103,963 |

-6-

PITTRA G. B. INTERNATIONAL, INC.

Notes to Financial Statements

Note 5    Furniture and equipment

| | |
|---|---|
| Equipment | $42,049 |
| Furniture | 8,750 |
| Total | 50,799 |
| Accumulated depreciation | 9,356 |
| Net furniture and equipment | $41,443 |

Note 6    Asset Based Loan

The Company has entered into a financing agreement with an asset based lender. The agreement allows the Company to borrow up to 80% of the Company's eligible receivables, not to exceed $4 million.

The financing commission consists of 0.50% of the sales which have been financed. Outstanding loan balances bear interest at a rate of 2.50% plus the prime rate. The loan is collateralized by substantially all the assets of the Company and is personally guaranteed by the stockholders.

The prime rates at September 30, 2002 was 5.00%.

-7-

PITTRA G. B. INTERNATIONAL, INC.
Notes to Financial Statements

Note 7    Operating leases

The Company is leasing office space in New Jersey from a stockholder at a monthly rate of approximately $5,400.  The lease is a month to month lease.  Rent expense recorded in connection with the stockholder lease was $65,200 for the year ended September 30, 2002.

The Company leases warehouse space for inventory storage on a month-to-month basis. Monthly payments on the current lease are approximately $1,100.

Total office and warehouse rental expenses, including utilities, for the year ended September 30, 2002 was approximately $80,500.

The Company has other operating leases for transportation vehicles and office equipment. The lease expenses in connection with these operating leases were approximately $47,600 for the year ended September 30, 2001.  These leases expire at various times through December 2003.

Note 8    Income Taxes

The provision for income taxes differs from the amount expected using statutory rates because of permanent differences (officers's life insurance, entertainment expenses, etc.), state taxes, and other timing differences.

Note 9    Commitments

As of September 20, 2002  the Company had no open letters of credit.

-8-

# Exhibit D

**AMPER, POLITZINER & MATTIA P.A.**
CERTIFIED PUBLIC ACCOUNTANTS
and CONSULTANTS

EDISON, NEW JERSEY
(732) 287-1000

PRINCETON, NEW JERSEY
(609) 897-0200

FLEMINGTON, NEW JERSEY
(908) 782-3021

MONMOUTH SHORES CORPORATE PARK
1350 CAMPUS PARKWAY
P.O. BOX 1728
WALL, NJ 07719
(732) 919-1400
FAX (732) 919-6230

## Independent Auditors' Report

Board of Directors
PITTRA G. B. International, Inc.

We have audited the accompanying balance sheets of PITTRA G. B. International, Inc. as of September 30, 2005 and 2004, and the related statements of income and retained earnings, and cash flows for the years then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of PITTRA G. B. International, Inc. as of September 30, 2005 and 2004, and the results of its operations and cash flows for the years then ended in conformity with accounting principles generally accepted in the United States of America.

*Amper, Politziner & Mattia P.A.*

AMPER, POLITZINER & MATTIA P.A.

December 16, 2005
Wall, New Jersey

## PITTRA G. B. INTERNATIONAL, INC.

### Balance Sheet
September 30, 2005 and 2004

|  | 2005 | 2004 |
|---|---|---|
| **Current assets:** |  |  |
| Cash | $90,178 | $86,198 |
| Accounts receivable |  |  |
| Direct sales | 9,346,248 | 6,696,242 |
| Indirect sales | 152,190 | 209,834 |
| Other accounts receivable | 214,871 | 262,896 |
| Inventory | 728,190 | 967,298 |
| Prepaid expenses | 44,189 | 36,781 |
|  |  |  |
| Total current assets | 10,575,866 | 8,259,249 |
|  |  |  |
| Equipment | 43,459 | 53,693 |
|  |  |  |
| Goodwill | 500,000 | 500,000 |
|  |  |  |
| Total assets | $11,119,325 | $8,812,942 |
|  |  |  |
| **Current liabilities:** |  |  |
| Credit line payable | $3,748,948 | $3,747,688 |
| Current maturity of long term debt | 166,667 | 166,667 |
| Accounts payable | 2,780,676 | 1,369,643 |
| Accrued expenses | 783,271 | 381,903 |
|  |  |  |
| Total current liabilities | 7,479,562 | 5,665,901 |
|  |  |  |
| Long term debt, less current maturities | 42,621 | 305,342 |
| Subordinated loans | 542,748 | 542,748 |
|  |  |  |
| Total liabilities | 8,064,931 | 6,513,991 |
|  |  |  |
| Stockholder equity |  |  |
| Capital stock | 15,000 | 15,000 |
| Additional paid in capital | 2,739,185 | 2,039,185 |
| Retained earnings | 300,209 | 244,766 |
|  |  |  |
| Total stockholder equity | 3,054,394 | 2,298,951 |
|  |  |  |
| Total liabilities and equity | $11,119,325 | $8,812,942 |

## PITTRA G. B. INTERNATIONAL, INC.
### Statements of Income and Retained Earnings
### For the Years Ended September 30, 2005 and 2004

|  | 2005 | 2004 |
|---|---|---|
| **Sales** | | |
| Direct | $53,987,193 | $49,785,362 |
| Brokered | 1,987,204 | 5,735,179 |
| Total sales | 55,974,397 | 55,520,541 |
| **Cost of sales** | | |
| Direct | 50,812,746 | 47,416,789 |
| Brokered | 1,907,723 | 5,527,316 |
| Total cost of sales | 52,720,469 | 52,944,105 |
| Operating income | 3,253,928 | 2,576,436 |
| Selling, general, and administrative expenses | 3,196,383 | 2,551,897 |
| Income before provision for taxes | 57,545 | 24,539 |
| Provision for taxes on income | 2,102 | 1,690 |
| Net income | 55,443 | 22,849 |
| Retained earnings - beginning | 244,766 | 221,917 |
| Retained earnings - ending | $300,209 | $244,766 |

IRA G. B. INTERNATIONAL, INC.
Statement of Cash Flows
For the Years Ended September 30, 2005 and 2004

|  | 2004 | 2003 |
|---|---|---|
| Cash flows from operating activities: |  |  |
| Net income | $55,443 | $22,849 |
| Adjustments to reconcile net income to net cash from operating activities |  |  |
| Depreciation and amortization | 10,234 | 50,434 |
| Decrease (increase) in: |  |  |
| Accounts receivable | (2,544,337) | (1,386,830) |
| Inventory | 239,108 | (475,535) |
| Prepaid expenses and other current assets | (7,408) | (9,145) |
| Increase (decrease) in: |  |  |
| Accounts payable | 1,411,033 | 70,960 |
| Accrued expenses | 401,368 | (194,142) |
| Total adjustments | (490,002) | (1,944,258) |
| Cash flow (used in) operations | (434,559) | (1,921,409) |
|  |  |  |
| Cash flows from financing activities: |  |  |
| Net increase in credit lines payable | 1,260 | 1,011,361 |
| Proceeds of long-term borrowings | 0 | 500,000 |
| Repayment of long-term borrowings | (262,721) | (27,991) |
| Contributions to additional paid in capital | 700,000 | 500,000 |
| Cash flows provided by financing activities | 438,539 | 1,983,370 |
| Net change in cash | 3,980 | 61,961 |
| Cash - beginning | 86,198 | 24,237 |
| Cash - ending | $90,178 | $86,198 |
| Supplemental disclosures of cash paid: |  |  |
| Interest | $243,776 | $158,259 |

## PITTRA G. B. INTERNATIONAL, INC.
### Notes to Financial Statements

Note 1.  Organization

The company was incorporated in October 2001 to acquire the net assets of G.B. International, Inc. and simultaneously acquire accounts receivable, inventory and the goodwill of the PITTRA division of Camerican International, Inc.

In connection with the acquisitions, the amounts paid in excess of the net book value have been recorded as goodwill.

Note 2   Summary of significant accounting policies

Operations

PITTRA G.B. International, Inc. (the "Company") is an importer and distributor of fruit juice concentrates. The company imports the concentrates from countries in Europe, Asia, Africa, and South America. Distribution of the concentrates is principally to companies located throughout the United States. Credit is granted to substantially all customers, the majority of whom are in the juice industry.

Use of estimates

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

Revenue Recognition

Revenue is recognized upon shipment to customers.

-5-

PITTRA G. B. INTERNATIONAL, INC.
Notes to Financial Statements

Note 2   <u>Inventory</u>

Inventory, consisting primarily of fruit juice concentrates, is stated at the lower or cost
(determined on a specific identity basis) or market.

<u>Furniture and Equipment</u>

Furniture and equipment are stated at cost, less accumulated depreciation.
Depreciation is provided over the estimated useful lives of the assets as follows:

| Equipment | Declining balance | 5 year estimated useful life |
| Furniture | Declining balance | 5 -10 year estimated useful life |

Note 3   <u>Concentration of Cash Balances</u>

The Company maintains its cash in bank deposit accounts which, at times, may exceed
federally insured limits.  The Company has not experienced any losses in such
accounts.  The Company believes it is not exposed to any significant credit risk on cash
and equivalents.

Note 4   <u>Prepaid Expense and Other Current Assets</u>

|  | 2005 | 2004 |
|---|---|---|
| Prepaid insurance | $36,901 | $32,031 |
| Prepaid - miscellaneous | 7,288 | 4,750 |
| Total | $44,189 | $36,781 |

-6-

Case 2:06-cv-04802-DMC-MCA   Document 301-1   Filed 09/30/09   Page 76 of 89 PageID: 4062
SEC v. Pittra G. B. International, Inc. Document 451-1 Filed 05/02/2006 Page 18 of 38

## PITTRA G. B. INTERNATIONAL, INC.
### Notes to Financial Statements

Note 5    Furniture and equipment

|  | 2005 | 2004 |
|---|---|---|
| Equipment | $67,409 | $67,409 |
| Furniture | 8,750 | 8,750 |
| Total | 76,159 | 76,159 |
| Accumulated depreciation | 32,700 | 22,466 |
| Net furniture and equipment | $43,459 | $53,693 |

Note 6    Credit line payable

The Company maintains a credit line facility with a credit line of $3,750,000. Borrowings on the credit line are based on 80% of the eligible accounts receivable.

The credit line bears interest at the London Interbank Offering Rate (LIBOR) plus 3.15%. The term of the credit facility is one year. The credit facility is secured by all assets of the Company and is personally guaranteed by the stockholders of the Company.

Note 7    Long term debt

In June 2004 the Company entered into a term loan for $500,000 payable over a period of three years. Payments are made in equal monthly installments of principle plus interest at the London Interbank Offering Rate (LIBOR) plus 3.15%. The term loan is from the same financial institution as the credit line referred to in Note 6 and is secured with the same collateral as the credit facility.

-7-

Case 2:06-cv-04802-DMC-MCA   Document 301-1   Filed 09/30/09   Page 77 of 89 PageID: 4263
SEC v. Pittra... Case 2:06-cv-04802-DMC-MCA   Document 45-1   Filed 12/05/2006   Page 20 of 38

PITTRA G. B. INTERNATIONAL, INC.
Notes to Financial Statements

Note 8    Operating leases

The Company leases office space at a monthly rate of approximately $3,770 plus certain expenses. The lease is for a term of five years and expires on December 31, 2008.

Note 9    Income Taxes

The provision for income taxes differs from the amount expected using statutory rates because of permanent differences (officers's life insurance, entertainment expenses, etc.), state taxes, and other timing differences.

Note 10    Commitments

As of September 20, 2005  the Company had no open letters of credit.

Note 11    Retirement Plan

The Company maintains a 401(K) profit-sharing plan ("Plan"). Employees become eligible to participate in the Plan after completing nine months of continuous service for the Company. The Company, at its discretion, can make a contribution not exceeding 5% of the employees' salaries. For the years ended September 30, 2005 and 2004 the contribution expense was approximately $40,100 and $37,600, respectively.

-8-

# Exhibit E

**Abbott, Raymond (MLBFS-Chicago)**

| | |
|---|---|
| From: | Latulippe, Laura (BFS - Wayne) |
| Sent: | Friday, September 08, 2006 7:12 AM |
| To: | Abbott, Raymond (MLBFS-Chicago); Spencer, Daniel (MLBFS-Chicago) |
| Subject: | Fw: Escrow and closing |

```
--------------------------
Laura Latulippe
Finance Manager
Merrill Lynch Business Financial Services
610-687-7578 - Office
484-798-9063 - Cell
610-687-7947 - Fax
```

-----Original Message-----
From: Arthur Kupperman
To: Latulippe, Laura (BFS - Wayne); Stein, Kurt (PHILADELPHIA, PA-2)
Sent: Fri Sep 08 07:35:16 2006
Subject: Escrow and closing

Laura


IMAGE (126).TIF

I do            ot have an e-mail address for Ray in Chicago, so please forward the attached to him.

Although it took a few more days than anticipated, all was finalized last night around 6:30 PM.

We end up with a 20% interest in a holding company that has now acquired a few operating plants as well as our businesses in the US and Europe.

Sorry for the delays and any problems.

I will speak with you next week, as I am taking the day off today.


Best regards
Arthur Kupperman

1

**Abbott, Raymond (MLBFS-Chicago)**

| | |
|---|---|
| **From:** | Arthur Kupperman [akupperman@pittra.com] |
| **Sent:** | Friday, September 08, 2006 7:52 AM |
| **To:** | Abbott, Raymond (MLBFS-Chicago) |
| **Subject:** | Escrow and disbursement |



IMAGE (126).TIF

Ray

Thank you for your e-mail information.

Since I did not have you in my address book, your e-mail went to a spam file for my review. Sorry for any confusion in my voice mail since it was not until this morning that I found your message in my spam folder.

Attached you will find the escrow agent disbursement schedule. I have blacked out the banking information for all but your information. I will have the actual bank wire instruction documents today and will forward these to you upon receipt. I did notice the value date in September 11 since I am told they need one day to record all of the financing documents. At least there is third party confirmation of the funds and the instruction to pay off the PITTRA accounts.

I will be out for part of today, since I need a day off after the hectic week, but will be checking messages and forwarding information as received.

Sorry for the delays, but in the end it all worked out as planned.

Best regards
Arthur Kupperman

1

*Escrow and Closing Services Ltd.*
ROBERT A. COOPER
P. O. BOX 8745
NEWARK, NEW JERSEY 07101-8745

*Offices located worldwide*

September 7, 2006

Ladies and Gentlemen:

Thank you for your patience and cooperation during these past few days.  I know this was a complex series of transactions due to the numerous closings that needed coordination in South America as well as the British Virgin Islands.

Attached you will find the schedule of disbursements to be made from the escrow funds on deposit in our account.  All necessary filings will be recorded on Friday, September 08, 2006 and disbursements will be made at the start of business on Monday, September 11, 2006.  Payments have been calculated according to this schedule.

The full book of closing documents, loan and security agreements, and filings will be bound and sent by courier to each party by the end of next week.

Documents evidencing the release of liens against the assets of PITTRA G.B. International, Inc. and PGB International LLC will be obtained and recorded within the next 15 days.

It was a pleasure working with you and I look forward to any future opportunity to be of service.

Very truly yours,

Robert A. Cooper

Enc.

## Escrow fund payment directives

| Payee | Description | Payments | Balance |
|---|---|---|---|
| Beginning balance<br>Wachovia Bank<br>Account 1008784650891<br>Sub-account control 4312894-98 | | | $10,000,000.00 |
| **Disbursements:** | | | |
| For IHIG US, Inc. | | | |
| Merrill Lynch Business Financial Services, Inc.<br>Bank of America<br>ABA 026009593<br>Account 8188101946<br>Reference - PITTRA G.B. International, Inc. 871-07772 | Credit line payoff<br>Per PGB International LLC | $3,785,350.90 | $6,214,649.10 |
| Merrill Lynch Business Financial Services, Inc.<br>Bank of America<br>ABA 026009593<br>Account 8188101946<br>Reference - PITTRA G.B. International, Inc. 912886907 | Term loan payoff<br>Per PGB International LLC | $151,020.92 | $6,063,628.18 |
| PGB International, LLC<br>JP[redacted]<br>ABA [redacted]<br>Account [redacted] | Net proceeds of purchase price<br>Per closing statement | $1,494,026.25 | $4,569,601.98 |
| Arthur Kuppeman<br>JP[redacted]<br>ABA [redacted]<br>Account [redacted] | Commissions<br>Per PGB International LLC | $650,000.00 | $3,919,601.98 |

| Payee | Description | Payments | Balance |
|---|---|---|---|
| N&A Business Consulting Services, Inc. <br> ABA <br> Account | Commissions <br> Per PGB International LLC | $350,000.00 | $8,569,601.93 |
| For IFIG Argentina, S.A. | | | |
| Orfiva S.A. <br> SWIFT <br> Account | Net proceeds of purchase price <br> Per closing statement | $1,812,984.02 | $1,756,617.91 |
| Coarex S.A. <br> SWIFT <br> Account | Net proceeds of purchase price <br> Per closing statement | $1,134,783.79 | $621,834.12 |
| For IFIG BVI Ltd. | | | |
| ABIMCO Ltd. <br> SWIFT <br> Account | Net proceeds of purchase price <br> Per closing statement | $621,834.12 | $0.00 |

# Exhibit F

## Abbott, Raymond (MLBFS-Chicago)

From:            Latulippe, Laura (BFS - Wayne)
Sent:            Friday, September 08, 2006 7:12 AM
To:              Abbott, Raymond (MLBFS-Chicago); Spencer, Daniel (MLBFS-Chicago)
Subject:         Fw: Escrow and closing


-----------------------------
Laura Latulippe
Finance Manager
Merrill Lynch Business Financial Services
610-687-7578 - Office
484-798-9063 - Cell
610-687-7947 - Fax

-----Original Message-----
From: Arthur Kupperman
To: Latulippe, Laura (BFS - Wayne); Stein, Kurt (PHILADELPHIA, PA-2)
Sent: Fri Sep 08 07:35:16 2006
Subject: Escrow and closing


Laura



IMAGE (126).TIF

I do              ot have an e-mail address for Ray in Chicago, so please forward the
attached to him.

Although it took a few more days than anticipated, all was finalized last
night around 6:30 PM.

We end up with a 20% interest in a holding company that has now acquired a
few operating plants as well as our businesses in the US and Europe.

Sorry for the delays and any problems.

I will speak with you next week, as I am taking the day off today.


Best regards
Arthur Kupperman


1

**Abbott, Raymond (MLBFS-Chicago)**

| | |
|---|---|
| **From:** | Arthur Kupperman [akupperman@pittra.com] |
| **Sent:** | Friday, September 08, 2006 7:52 AM |
| **To:** | Abbott, Raymond (MLBFS-Chicago) |
| **Subject:** | Escrow and disbursement |



IMAGE (126).TIF

      Ray

Thank you for your e-mail information.

Since I did not have you in my address book, your e-mail went to a spam file for my review.  Sorry for any confusion in my voice mail since it was not until this morning that I found your message in my spam folder.

Attached you will find the escrow agent disbursement schedule.  I have blacked out the banking information for all but your information.  I will have the actual bank wire instruction documents today and will forward these to you upon receipt.  I did notice the value date in September 11 since I am told they need one day to record all of the financing documents.  At least there is third party confirmation of the funds and the instruction to pay off the PITTRA accounts.

I will be out for part of today, since I need a day off after the hectic week, but will be checking messages and forwarding information as received.


Sorry for the delays, but in the end it all worked out as planned.


Best regards
Arthur Kupperman

1

## Escrow and Closing Services Ltd.

ROBERT A. COOPER
P. O. BOX 8745
NEWARK, NEW JERSEY 07101-8745

*Offices located worldwide*

September 7, 2006

Ladies and Gentlemen:

Thank you for your patience and cooperation during these past few days. I know this was a complex series of transactions due to the numerous closings that needed coordination in South America as well as the British Virgin Islands.

Attached you will find the schedule of disbursements to be made from the escrow funds on deposit in our account. All necessary filings will be recorded on Friday, September 08, 2006 and disbursements will be made at the start of business on Monday, September 11, 2006. Payments have been calculated according to this schedule.

The full book of closing documents, loan and security agreements, and filings will be bound and sent by courier to each party by the end of next week.

Documents evidencing the release of liens against the assets of PITTRA G.B. International, Inc. and PGB International LLC will be obtained and recorded within the next 15 days.

It was a pleasure working with you and I look forward to any future opportunity to be of service.

Very truly yours,

Robert A. Cooper

Enc.

| Payee | Description | Payments | Balance |
|---|---|---|---|
| Escrow fund payment directives | | | |
| Beginning balance<br>Wachovia Bank<br>Account 10037846650891<br>Sub-account control 4312894-98 | | | $10,000,000.00 |
| **Disbursements:** | | | |
| For IFXG US, Inc. | | | |
| Merrill Lynch Business Financial Services, Inc.<br>Bank of America<br>ABA 026009598<br>Account 8188101946<br>Reference - PITTRA G.B. International, Inc. 871-07172 | Credit line payoff<br>Per PGB International LLC | $3,785,350.90 | $6,214,649.10 |
| Merrill Lynch Business Financial Services, Inc.<br>Bank of America<br>ABA 026009598<br>Account 8188101946<br>Reference - PITTRA G.B. International, Inc. 912836907 | Term loan payoff<br>Per PGB International LLC | $151,020.92 | $6,063,628.18 |
| PGB International, LLC<br>JPM ~~~~~~~~<br>ABA ~~~~~~~~<br>Account ~~~~~~~~ | Net proceeds of purchase price<br>Per closing statement | $1,494,026.25 | $4,569,601.98 |
| Arthur Kupperman<br>JPM ~~~~~~~~<br>ABA ~~~~~~~~<br>Account ~~~~~~~~ | Commissions<br>Per PGB International LLC | $650,000.00 | $3,919,601.98 |

| Payee | Description | Payments | Balance |
|---|---|---|---|
| N&A Business Consulting Services, Inc.<br>First ...ank<br>ABA<br>Account | Commissions<br>Per PGB International LLC | $350,000.00 | $8,569,561.98 |
| **For IFHG Argentina, S.A.** | | | |
| Orfiva S.A.<br>B... N...<br>SWIFT<br>Account | Net proceeds of purchase price<br>Per closing statement | $1,812,984.02 | $1,755,617.91 |
| Coatex S.A.<br>B...<br>SWIFT<br>Account | Net proceeds of purchase price<br>Per closing statement | $1,184,788.79 | $681,834.12 |
| **For IFHG BVI Ltd.** | | | |
| ABIMCO Ltd.<br>H...t<br>SWIFT<br>Account | Net proceeds of purchase price<br>Per closing statement | $681,834.12 | $0.00 |