Randall M. Lending
Michael M. Eidelman
Michael J. Goettig (MG-3771)
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019

222 North LaSalle Street
Chicago, Illinois 60601
*Attorneys for Plaintiff*
*Merrill Lynch Business Financial Services Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.,

    Plaintiff,

-against-

ARTHUR KUPPERMAN; E. ROSS BROWNE; PAULETTE KRELMAN; PGB INTERNATIONAL, LLC; and J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION,

    Defendants.

---

Case No. 06-Civ-4802 (DMC)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY PLAINTIFF MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. FOR SUMMARY JUDGMENT AGAINST CHASE**
**(Returnable November 2, 2009)**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY ...................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

SUMMARY JUDGMENT STANDARD ................................................................. 4

ARGUMENT ............................................................................................................. 4

    PITTRA's Assets Were Fraudulently Conveyed to PGB ................................ 5

    PITTRA's Assets Remain Subject to MLBFS's Lien ..................................... 8

CONCLUSION ........................................................................................................ 10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .............. 4

*Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .................................. 4

*Chase Manhattan Bank, N.A. v. Frenville*, 67 B.R. 858 (Bankr. D.N.J. 1986) ............................. 4

*Flood v. Caro Corp.*, 272 N.J. Super. 39 (App.Div. 1994) ........................................................ 7-8

*Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 709 (Bankr. D.N.J. 2009) ...................... 6

*Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463 (N.J. 1999) ...................................... 6, 7

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) .. 4

*Stanziale v. Finova Capital Corporation (In re Tower Air, Inc.)*, 397 F.3d 191 (3d Cir. 2005) ..... 9

*Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264 (3d Cir. 1980) .................................................. 4

*Truong v. Kartzman*, 2007 U.S. Dist. LEXIS 48614 (D.N.J. July 5, 2007) ................................. 6

*Wawel Savings Bank v. Jersey Tractor Trailer Training Inc. (In re Jersey Tractor Trailer Training Inc.)*, 2009 U.S. App. LEXIS 19597 (3d Cir. N.J. Sept. 1, 2009) .................. 8-9

*Yale Factors NJ LLC v. Wawel Savings Bank (In re Jersey Tractor Trailer Training Inc.)*, 2008 U.S. Dist. LEXIS 53512 (D.N.J. 2008) ............................................................... 9

**Rules**

Fed. R. Civ. P. 56 (c) ................................................................................................................. 4

**Treatises**

William D. Hawkland, et al., 9B Hawkland U.C.C. Series § 9-315:1 (Rev. ed. 2008) ................. 9

**Uniform Commercial Code**

N.J. Stat. § 12A:9-315 ............................................................................................................ 8, 9

**Uniform Fraudulent Transfer Act**

N.J. Stat. § 25:2-20 ................................................................................................................... 5

N.J. Stat. § 25:2-22 ................................................................................................................... 6

N.J. Stat. § 25:2-25 ................................................................................................................... 5

N.J. Stat. § 25:2-26 ................................................................................................................ 6-7

N.J. Stat. § 25:2-29 ................................................................................................................... 7

Plaintiff Merrill Lynch Business Financial Services Inc. ("Plaintiff" or "MLBFS"), by its attorneys, Vedder Price P.C., submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment in Plaintiff's favor on the Tenth Count (Priority of Lien) of Plaintiff's Second Amended Verified Complaint, and for entry of an Order that Plaintiff has a first priority right to the assets of PGB International LLC ("PGB") as a consequence of 1) those assets being fraudulently transferred from PITTRA G.B. International, Inc. ("PITTRA"); and 2) the lien of MLBFS being superior to that of defendant and counterclaim plaintiff JPMorgan Chase Bank, N.A. ("Chase").

## PRELIMINARY STATEMENT

On or around November 19, 2002, MLBFS extended a line of credit in the amount of $2,750,000.00 to PITTRA pursuant to a Working Capital Management Account ("WCMA"). On December 3, 2002, MLBFS filed a UCC Financing Statement asserting a blanket lien over all PITTRA assets. On July 5, 2003, without providing notice to MLBFS, Kupperman transferred PITTRA's assets to PGB, purportedly free of the blanket lien to which those assets were subject under the WCMA. Because this was a fraudulent transfer under New Jersey law, all of the assets transferred to PGB remain subject to the blanket lien of MLBFS, which predates and is superior to that of Chase. Furthermore, MLBFS retains its lien over all PITTRA assets as reflected in the UCC Financing Statement because it did not authorize the transfer of those assets or waive its interest in them.

## PROCEDURAL HISTORY

On October 5, 2006, MLBFS filed the Verified Complaint in the immediate action. (Docket # 1) On October 6, 2006, the Court issued an Order for a Writ of Attachment to "immediately" issue as to the property held by PGB (Docket # 4), and on that date, the Clerk of the Court issued a Writ of Attachment against the "[p]roperty of Defendant PGB International,

LLC to the extent of $4,139,146.78 to satisfy the complaint of Plaintiff [MLBFS] in the above-entitled action[.]" (Docket # 10)

Chase filed a Notice of Appearance the following week, on October 13, 2006. (Docket # 5)

On October 16, 2006, the Court issued a supplemental Order for Attachments (Docket # 18), and on that date the Clerk of the Court issued a supplemental Writ of Attachment as to the property of PGB "to satisfy the complaint of Plaintiff [MLBFS] in the above-entitled action[.]"

On October 20, 2006, MLBFS amended the Verified Complaint to name Chase as an additional defendant, and on December 27, 2007, MLBFS filed a Second Amendment to the Verified Complaint alleging as a Tenth Count that it had priority of attachment over Chase on any property held by PGB.

## STATEMENT OF FACTS

Kupperman incorporated PITTRA on October 12, 2001 and did business as an importer and exporter of industrial food ingredients out of the address of 6 South Street, Suite 301 in Morristown, New Jersey. (56.1 ¶ 3[1]; 56.1 Supp. ¶ 3[2]) At the time of the execution of the WCMA, Kupperman was PITTRA's President (56.1 ¶ 3), E. Ross Browne ("Browne") was Vice President (56.1 ¶ 7) and Paulette Krelman ("Krelman") was Secretary and Treasurer (56.1 ¶ 6).

On or around November 19, 2002, MLBFS extended a line of credit to PITTRA in the form of a $2,250,000.00 Working Capital Management Account ("WCMA"). (56.1 ¶ 12) On or around December 3, 2002, MLBFS duly recorded a UCC Financing Statement putting creditors

---

[1] MLBFS's Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1 ("56.1") accompanied the motion papers filed on September 30, 2009.

[2] MLBFS's Supplemental Statement of Uncontested Material Facts ("56.1 Supp.") accompanies these papers.

2

on notice that it had a priority interest in all PITTRA assets. (56.1 Supp. ¶ 2) MLBFS increased its line of credit to PITTRA over time to $4,250,000.00 based on various forged documents and misrepresentations provided by Kupperman. (56.1 ¶¶ 14-17, 29-34, 38-95)

On April 30, 2003, Kupperman formed PGB International, LLC ("PGB"), a New Jersey limited liability company, also as an importer and exporter of industrial food ingredients with the same business address of PITTRA at 6 South Street, Suite 301, Morristown, New Jersey 07960. (56.1 ¶ 4; 56.1 Supp. ¶ 4)

On June 5, 2003, Kupperman facilitated the transfer of all of PITTRA's assets, including office furniture and equipment, customer lists, supplier lists, telephone numbers, and general goodwill to PGB in exchange for a promissory note. (56.1 ¶ 24) Kupperman did not inform MLBFS of the sale of all of PITTRA's assets to PGB. (56.1 ¶ 25) The Asset Purchase Agreement memorializing the transfer (the "APA") purported to sell PITTRA's assets to PGB free of the liens that MLBFS had as a secured lender under the terms of the WCMA and related documents. (56.1 ¶ 24) Under the terms of the promissory note accompanying the APA, PGB was to deliver $75,000.00 within ten days of the closing date and a total of $300,000.00 within thirty days of the closing date. (56.1 Supp. ¶ 6) A review of PITTRA's bank records from July and August 2003 indicates that no such payment was made. (56.1 ¶ 24; 56.1 Supp. ¶¶ 7-8) Krelman executed the APA on behalf of PGB, and Kupperman executed it on behalf of PITTRA. (56.1 Supp. ¶ 9) Krelman and Kupperman had been living together as "significant others" to one another since approximately 1996. (56.1 Supp. ¶ 5)

PITTRA ceased doing business in or about August or September 2003. (56.1 ¶ 26) On a regular basis after PITTRA ceased doing business, Kupperman continued to submit financial statements and other documents purporting to reflect PITTRA's ongoing business activities.

(56.1 ¶¶ 27, 30-33, 38-42, 45-50, 52-53, 56-61, 63, 69-76, 78-79, 83, 89, 92)  MLBFS relied upon these statements to determine that PITTRA was an ongoing and viable business in its extension of and increase of available funds on the WCMA line of credit.  (56.1 ¶ 28, 34, 43-44, 51, 54, 64, 77, 80, 84, 90, 94-95)

Chase filed a UCC Financing Statement recording its lien over PGB assets on or around October 20, 2004.  (56.1 Supp. ¶ 10)

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact, *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), but once such a showing has been made, "the responding party is required to come forth with proofs sufficient to show that there is a genuine issue as to a material fact."  *Chase Manhattan Bank, N.A. v. Frenville*, 67 B.R. 858, 860 (Bankr. D.N.J. 1986), citing *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 276 (3d Cir. 1980).  The summary judgment procedure enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89. 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## ARGUMENT

The Court should enter an Order granting summary judgment to MLBFS on the issue of MLBFS's priority interest over Chase in PGB's assets.  The transfer of those assets was fraudulent as a matter of New Jersey law, and consequently the Court should order that MLBFS

has the right to execute judgment on those assets, as well as all their proceeds. Moreover, because MLBFS never waived its security interest in the assets, and was not even aware of the unauthorized transfer of PITTRA assets to PGB, its lien retains priority over those of all others, including that of Chase.

### PITTRA's Assets Were Fraudulently Conveyed to PGB

The Uniform Fraudulent Transfer Act, N.J. Stat. § 25:2-20 *et seq.* (2009) ("UFTA") states in relevant part that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" N.J. Stat. § 25:2-25(a). The UFTA lists a number of factors to consider in determining whether a transfer of assets was fraudulent. Those factors include whether:

> a. The transfer or obligation was to an insider;
>
> b. The debtor retained possession or control of the property transferred after the transfer;
>
> c. The transfer or obligation was disclosed or concealed;
>
> d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> e. The transfer was of substantially all the debtor's assets;
>
> f. The debtor absconded;
>
> g. The debtor removed or concealed assets;
>
> h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J. Stat. § 25:2-26; *see also Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 709, 732 (Bankr. D.N.J. 2009) ("Generally, the existence of one badge can cast suspicion on the transferor's intent... A finding of several in one transaction generally provides conclusive evidence of an actual intent to defraud."), *citing Truong v. Kartzman*, 2007 U.S. Dist. LEXIS 48614 (D.N.J. July 5, 2007) *and Gilchinsky v. Nat'l Westminster Bank*, 159 N.J. 463, 477, 732 A.2d 482 (1999).

The "sale" of assets from PITTRA to PGB in July 2003 satisfies most of these "badges of fraud":

- The transaction was between company insiders. Kupperman, Krelman and Browne were the principals of both PITTRA and PGB. Moreover, Kupperman and Krelman – the two principals who executed the APA – had been in a longstanding committed relationship for approximately ten years.[3] (*See* N.J. Stat. § 25:2-26(a))

- As managing member of PGB, Kupperman maintained control of the PITTRA assets once they were transferred to PGB. (N.J. Stat. § 25:2-26(b))

- In violation of the terms of the WCMA line of credit, PITTRA provided no notice to MLBFS of the transfer of all of its assets to PGB. (N.J. Stat. § 25:2-26(c))

---

[3] The definition of an "insider" includes "[a] relative of a general partner, director, officer, or person in control of the debtor." N.J. Stat. § 25:2-22(b)(6).

6

- Moreover, under the terms of the APA, substantially all of PITTRA's assets were transferred to PGB. (N.J. Stat. § 25:2-26(e))

- To date, Kupperman has refused to offer testimony as to the location of the funds in excess of four million dollars that MLBFS extended to PITTRA under the WCMA line of credit, nor have those funds been located in any known PITTRA account. (N.J. Stat. § 25:2-26(g))

- While under the APA, PGB was to pay PITTRA $300,000.00 for its assets within 30 days of the transaction, PITTRA's bank records indicate that no such payment was made. (N.J. Stat. § 25:2-26(h))

- After the transfer of PITTRA's assets to PGB, Kupperman induced MLBFS to increase the WCMA line of credit from $2,750,00.00 to $4,250,000.00 to PITTRA, a non-functioning business. (N.J. Stat. § 25:2-26(j))

Consequently, the transfer of assets from PITTRA to PGB was fraudulent as a matter of New Jersey law. *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. at 483-84 ("Where several badges of fraud accompany one transaction ... a strong inference of fraud arises. Unless a sufficient explanation is supplied, clearly rebutting the inference of actual fraudulent intent, the conclusion that the debtor possessed the requisite intent is inescapable").

The remedies available to a plaintiff in a fraudulent transfer action include:

> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee ...

N.J. Stat. § 25:2-29 (a). Furthermore, "If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." N.J. Stat. § 25:2-29 (b). *See, also, Flood v. Caro Corp.*, 272 N.J. Super. 398, 405

(App.Div. 1994) ("If the creditor has a judgment against the debtor, application may be made in the action for a court order permitting execution on the asset transferred or its proceeds").[4] Accordingly, the Court should enter judgment in favor of MLBFS on the issue of MLBFS's entitlement to PGB assets and all proceeds derived from those assets.

### PITTRA's Assets Remain Subject to MLBFS's Lien

Not only is MLBFS entitled to summary judgment by virtue of the fraudulent nature of the transfer of PITTRA's assets, but it continues to have a valid lien over those assets under Section 9-315 of the New Jersey Uniform Commercial Code. This section provides:

> (1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and
>
> (2) a security interest attaches to any identifiable proceeds of collateral.

N.J. Stat. § 12A:9-315 (a) (2009).

It is undisputed that MLBFS did not authorize the transfer of PITTRA's assets to PGB. Accordingly, its lien over those assets and their proceeds remains intact and superior to those of Chase. On September 1, 2009, the Third Circuit Court of Appeals resolved any ambiguity about priority of liens under the UCC in the context of an unauthorized transfer of assets in *Wawel Savings Bank v. Jersey Tractor Trailer Training Inc. (In re Jersey Tractor Trailer Training Inc.)*, 2009 U.S. App. LEXIS 19597 (3d Cir. N.J. Sept. 1, 2009). In applying UCC Section 9-315 to find that a bank's security interest in collateral survived the debtor's unauthorized transfer of collateral to a third party, the Third Circuit Court of Appeals recently observed that "a security

---

[4] A judgment as to PITTRA was precluded by PITTRA's bankruptcy. However, on August 7, 2007, MLBFS obtained a judgment against Kupperman as to his guaranty of the WCMA line of credit. (Docket # 180)

interest would be meaningless if the secured party could not reach the collateral in the hands of a third party ... when the debtor disposes of it without authorization." *Id.* at *22-23, *quoting* William D. Hawkland, Frederick H. Miller & Neil B. Cohen, 9B Hawkland U.C.C. Series § 9-315:1 (Rev. Ed. 2008). Consequently, all of the assets that PITTRA transferred to PGB remain subject to the blanket lien of MLBFS.

PGB had no assets prior to the APA. Any proceeds that flowed to PGB after its creation in 2003, immediately prior to the fraudulent conveyance of PITTRA assets to it, were by virtue of those collateralized assets, including PITTRA's inventory, office equipment and customer list. Consequently, pursuant to Section 9-315(a)(2) of New Jersey's UCC, MLBFS's priority lien extends not only to the assets themselves, but all proceeds emanating therefrom as well. *Yale Factors NJ LLC v. Wawel Savings Bank (In re Jersey Tractor Trailer Training Inc.)*, 2008 U.S. Dist. LEXIS 53512, *49 (D.N.J. 2008) ("it is clear that the creditor may receive both proceeds and collateral, and is limited only to the amount of its debt, not the value of the underlying property"), *quoting Stanziale v. Finova Capital Corporation (In re Tower Air, Inc.)*, 397 F.3d 191, 201 (3d Cir. 2005); *affirmed in part and vacated on other grounds by Wawel Savings Bank*, 2009 U.S. App. LEXIS 19597. Accordingly, the Court should enter summary judgment finding that MLBFS holds a first priority interest in any money owed to PGB as proceeds of assets subject to MLBFS's blanket lien.

## CONCLUSION

For the foregoing reasons, MLBFS respectfully requests an Order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment in its favor on Count Ten of its Second Amended Verified Complaint and declaring that MLBFS has priority over Chase and all other persons and entities with regard to all assets attached and their proceeds, and that MLBFS shall receive all amounts due it before any other person or entity receives any amounts from such assets.

Dated: New York, New York
      October 7, 2009

VEDDER PRICE P.C.

By: _____
Randall M. Lending
Michael M. Eidelman
222 North LaSalle Street, Suite 2600
Chicago, IL 60601

Michael J. Goettig (MG 3771)
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

*Attorneys for Plaintiff*
*Merrill Lynch Business Financial Services, Inc.*